**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2018

<u>Via ECF</u>
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United State Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

        **Re:** *United States* **v.** *Sayfullo Habibullaevic Saipov*, **17 Cr. 722 (VSB)**

Dear Judge Broderick:

     On January 4, 2018, defense counsel filed a partially redacted letter on ECF that appears to have been submitted to the Court *ex parte* on December 15, 2017. In the letter, defense counsel requests an Order prohibiting the Government from seeking access to the defendant's Bureau of Prisons ("BOP") visitor log. In the unredacted portions of the letter, the defense states that it is making its request in connection with its intention to consult defense experts. On January 5, 2018, the Court granted that request and ordered that the Government could not seek the BOP visitor log without prior Court approval and redactions of any defense witnesses. Because the defendant has no right to privacy over his visitor log, the log is not privileged, and the Government has compelling national security and public safety interests in viewing the log, the Government respectfully requests that the Court reconsider its prior decision and deny the defense request.

     Motions for reconsideration in criminal cases traditionally are governed by Local Civil Rule 6.3. *See United States* v. *Yannotti*, 457 F. Supp. 2d 385, 388-89 (S.D.N.Y. 2006); *United States* v. *Ramirez*, No. 03 CR. 834 (SHS), 2004 WL 1252940, at *1 (S.D.N.Y. Jun. 7, 2004). Under Local Civil Rule 6.3, the movant must set forth the matters that counsel believes the Court has overlooked. *See* Local Civil Rule 6.3. In this regard, Local Rule 6.3 is narrowly construed and strictly applied. *See generally Ramirez*, 2004 WL 1252940, at *1; *Dellefave* v. *Access Temps., Inc.*, No. 99 Cr. 296, 2001 WL 28677, at *1 (S.D.N.Y. 2001). A court therefore should reconsider its prior decision if the movant can point to controlling decisions or factual matters "that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re BDC 556 LLP*, 330 F.3d 111, 123 (2d Cir. 2003) (citation omitted), *abrogated on other grounds by In re Zarnel*, 619 F.3d 156 (2010); *Yan Ping Xu* v. *City of New York*, No. 08 Civ. 11339 (DLC), 2010 WL 4878949, at *3 (S.D.N.Y. Dec. 1, 2010); *Yannotti*, 457 F. Supp. 2d at 389; *see also Shamis* v. *Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (collecting cases).

Hon. Vernon S. Broderick, U.S.D.J.
January 5, 2018
Page 2

As noted above, the Court granted the defense request without benefit of the Government's views.  Defense counsel cited no legal authority supporting this request, and the Government is aware of none.  To the extent defense counsel is attempting to assert the attorney-client privilege over the visitor log, this argument should be rejected.  While the contents of communications may be privileged, the mere fact of a communication (here, a meeting with defense counsel and a particular expert) is not protected by any privilege.  *See generally Ramseur* v. *Chase Manhattan Bank*, 865 F.2d 460, 456 (2d Cir.1989) (date and fact of meeting between attorneys and client not privileged); *United States* v. *Weisberg*, No. 08 Cr. 347 (RML), 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011) ("These records—reflecting the fact that attorneys worked on the Escrow Account and communicated or met with certain individuals, but not revealing the contents of the attorneys' advice—are presumably not privileged."); *Sprint Comms. Co. L.P.* v. *Comcast Cable Comms. LLC*, No. 11 Civ. 2684 (JWL), 2014 WL 5581274, at *4 (D. Kan. 2014) (rejecting claim that all communications made in course of legal relationship may be privileged and noting that the attorney-client privilege "does not protect the mere fact of a communication").  Nor is any privilege with respect to defense strategy or interference with the defendant's right to counsel implicated. "A defendant's Sixth Amendment rights are not violated 'unless [the Government gained access to] the *substance* of the [attorney-client] conversations and thereby created at least a realistic possibility of injury to [defendant] or benefit to the State.'"  *United States* v. *Rosario*, No. 03 Cr. 501 (GEL), 2005 WL 2414551, at *3 (S.D.N.Y. Sept. 26, 2005) (emphasis added) (quoting *Weatherford* v. *Bursey*, 429 U.S. 545, 558 (1977)); *see also United States* v. *Ginsberg*, 758 F.2d 823, 833 (2d Cir. 1985) ("[T]o make out a violation of his sixth amendment rights, [a defendant] would need to establish that privileged information [was] passed to the government or that the government . . . intentionally invaded the attorney client relationship, and resulting prejudice." (internal quotation marks omitted)).

Moreover, even assuming the fact of a meeting with a particular third party could be construed as a communication, it is not one in which the defendant has any reasonable expectation of confidentiality, and thus it cannot be privileged.  Individuals who visit incarcerated defendants are necessarily observed, at a minimum, by BOP staff who control access to the facility.  It is well-settled law in this Circuit that the presence of such third parties necessarily destroys any claim of privilege.  *See United States* v. *Mejia*, 655 F.3d 126, 134 (2d Cir. 2011) (holding that calls made by an inmate could not be privileged where inmate knew the calls were recorded and the fact of the recording "amount[ed] essentially to the presence of an unsympathetic third party (BOP) listening in").[1]  To the extent the defendant wishes to keep confidential the identities of third parties retained by defense counsel, defense counsel may facilitate communications between those parties and the defendant via unmonitored calls or legal mail.

Finally, the Government has strong countervailing national security and public safety interests in maintaining access to the defendant's visitor log.  The defendant continues to pose a

---

[1] This principle is not limited to incarcerated defendants.  If a defendant worked in an office building that required visitors to sign a log, and met with experts in that building, the Government could subpoena the log from that building.  Even a defendant who chose only to meet with experts at his residence could not prevent law enforcement from conducting surveillance outside to view who entered and exited the house.

Hon. Vernon S. Broderick, U.S.D.J.
January 5, 2018
Page 3

serious threat to the public.  In the name of ISIS, a designated foreign terrorist organization, the defendant murdered eight innocent civilians and injured at least twelve more, some critically and permanently.  Following his attack along the West Side Highway, the defendant expressed no remorse, and instead made clear his allegiance to ISIS.  ISIS publicly proclaimed the defendant a solider of the caliphate, and the defendant remains the subject of ISIS propaganda calling for additional attacks.  Thus, it is absolutely necessary that the Government and law enforcement know who is visiting the defendant.

In sum, the defendant has no privacy protection or privilege to assert over his visitor log, and imposition of such a protection or privilege here presents a serious risk to national security and public safety.  Accordingly, the Government respectfully requests that the Court grant the Government's motion for reconsideration, and deny the defendant's January 4, 2018 request.

       Respectfully submitted,

       GEOFFREY S. BERMAN
       United States Attorney

by: /s/ Amanda Houle
    Andrew Beaty
    Amanda Houle
    Matthew Laroche
    Assistant United States Attorneys
    (212) 637-2198 / 2194 / 2420

Cc: Defense Counsel (Via ECF)