


**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 26, 2018

Via ECF
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United State Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

>    **Re:**   *United States* **v.** *Sayfullo Habibullaevic Saipov*, **17 Cr. 722 (VSB)**

Dear Judge Broderick:

The Government respectfully writes in response to the defendant's letter, dated March 23, 2018.  In an attempt to file a joint status letter on March 23, the Government provided defense counsel with its draft letter and the comparator death penalty cases it intended to bring to the Court's attention.  Defense counsel responded that they did not agree with the comparator cases provided by the Government and that they would be filing a separate letter to update the Court regarding defense preparation.  Accordingly, this letter is the Government's first opportunity to respond to the cases and statistics cited in the defendant's letter.

In particular, the defendant cites to five capital cases in this District and notes that the average time from indictment to trial in those cases was approximately 45.4 months. This statistic elides the many procedural complications in those cases. For example, in four of those cases, a substantial amount of time (often multiple years) passed between the time of the filing of the Indictment and the filing of the Notice of Intent to Seek the Death Penalty.  *See United States* v. *Khalid Barnes*, 04 Cr. 186 (SCR) (approximately 1 year and 11 months between Indictment and the initial Notice of Intent to Seek the Death Penalty); *United States* v. *Darryl Henderson*, 02 Cr. 451 (PKC) (approximately 3 years and 10 months between Indictment and the initial Notice of Intent to Seek the Death Penalty); *United States* v. *Elijah Williams*, 00 Cr. 1008 (NRB) (approximately 2 years and 5 months between Indictment and the initial Notice of Intent to Seek the Death Penalty); *United States* v. *Alan Quinones*, 00 Cr. 761 (JSR) (approximately 1 year and 3 months between Indictment and the initial Notice of Intent to Seek the Death Penalty).  In three of those cases, the Government filed multiple superseding indictments and multiple Notices of Intent to Seek the Death Penalty.  *See Barnes*, 04 Cr. 186 (SCR) (ninth superseding indictment filed on August 7, 2006, and amended Notice of Intent to Seek the Death Penalty filed on January 28, 2008); *Henderson*, 02 Cr. 451 (ninth superseding indictment filed on July 24, 2006 and second Notice of Intent to Seek the Death Penalty filed on July 26, 2006); *Quinones*, 00 Cr. 761 (JSR)

The Honorable Vernon S. Broderick, U.S.D.J.
March 26, 2018
Page 2

(sixth superseding indictment filed on August 22, 2002 and second Notice of Intent to Seek the Death Penalty filed on December 19, 2002).  And in one of those cases, the Government sought the death penalty, for a time, against multiple individuals.  *See Williams*, 00 Cr. 1008 (NRB) (filing separate Notices of Intent to Seek the Death Penalty against three defendants).

The procedural histories in the foregoing cases make clear that simply considering the average time between indictment and trial is not informative when setting a trial date in this case.  Nonetheless, the defendant's letter cites but largely overlooks a relevant comparator case from this District: *United States* v. *Mohamed*, 98 Cr. 1023 (LBS), in which—notably—one of Saipov's attorneys represented the death-eligible defendant.  In that case, Khalfan Khamis Mohamed and others were charged with numerous capital and non-capital offenses arising out of their participation in the August 7, 1998 bombing of the U.S. Embassy in Dar es Salaam, Tanzania.  Mohamed was arrested in South Africa on October 5, 1999, and had his first appearance in the District on October 8, 1999.  The Government's Notice of Intent to Seek the Death Penalty was filed on June 28, 2000, approximately nine months after Mohamed's arrest.  *See* 98 Cr. 1023, Dkt. 230.  Jury selection—in a trial against Mohamed and three co-defendants—commenced less than six months later on January 3, 2001.  The trial itself began on February 5, 2001.  *See United States* v. *Bin Laden*, 156 F. Supp. 2d 359, 363 (S.D.N.Y. 2001).

In short, just 15 months passed between Mohamed's arrest abroad and the start of his trial.  This schedule was achieved despite many of the same factors that Saipov's counsel argues make this case unique and unusually burdensome.  In *Mohamed*, as here, much of the mitigating evidence would also have been abroad: Mohamed is a national of Tanzania, he received training from al Qaeda in Afghanistan, and he assisted in assembling the bomb used in Dar es Salaam, Tanzania.  He was later arrested in South Africa after traveling through Mozambique.  There was also substantial foreign language discovery.  In fact, Judge Sand highlighted these difficulties while lamenting the excessive delay of even two years from the time of the first defendant's arrest:

> The process of preparing for a trial in this case has been unusually protracted.  The complexity of the charges, the voluminous discovery that needs to be exchanged, the location of many relevant documents and witnesses in various countries around the world, special procedures for handling classified material, the need to translate literally thousands of documents, and the potential availability of capital punishment for some of the Defendants have combined to require an extraordinary amount of work on the part of all parties involved.  Despite everyone's best efforts, it is anticipated at this time that the earliest possible date that this case could be ready for trial is September 5, 2000—almost two years after the first Defendant was brought into custody and incarcerated under restricted conditions.

*United States* v. *Bin Laden*, 92 F. Supp. 2d 225, 232 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008).

The Honorable Vernon S. Broderick, U.S.D.J.
March 26, 2018
Page 3

      The Government understands that defense counsel may be hesitant to agree to a trial date prior to the Government determining whether or not it will seek the death penalty, and it is cognizant of counsel's duty to represent the defendant.  The Government also recognizes that no two cases are exactly alike.  It is nevertheless concerning to the Government that the defendant is unwilling to propose any meaningful comparators to this case and instead relies on nationwide statistics to imply that it would be entirely appropriate for this trial to be delayed for years, notwithstanding the rights of the defendant and the public to a speedy trial.  There are cases, like *Mohamed* discussed above, and *Tsarnaev* and *Roof* discussed in the Government's letter of March 23, with similar circumstances that were brought to trial in a reasonable period of time.  There is simply no reason that the facts and circumstances of this case are so unique as to justify years' delay between indictment and trial.

      Respectfully submitted,

      GEOFFREY S. BERMAN
      United States Attorney


by: _____/s/_____
      Andrew Beaty
      Amanda Houle
      Matthew Laroche
      Assistant United States Attorneys
      (212) 637-2198 / 2194 / 2420

CC: Defense Counsel (via ECF)