

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 8, 2018

**By ECF**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United State Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

             Re:    *United States* v. *Sayfullo Habibullaevic Saipov*, 17 Cr. 722 (VSB)

Dear Judge Broderick:

       The Government writes respectfully to apprise the Court that the Attorney General has imposed Special Administrative Measures ("SAMs") on the defendant in the above-captioned case, and to request that the Court clarify the role of the Wall Team (which was instituted based on the Court's January 23, 2018 Order) in light of the Attorney General's imposition of SAMs.

       As detailed below, the measures imposed by the SAMs include verification of family members by the Federal Bureau of Investigation ("FBI") and monitoring of communications with all non-legal contacts. These monitoring requirements are not consistent with the function the Government understands the Court to have contemplated for the Wall Team and are at odds with the universally prevailing practice in cases involving pre-trial SAMs as well as unusually significant national security and public safety interests in this case. For the reasons set out below, the Government respectfully requests that the Wall Team continue reviewing all legal visitor applications, including experts, while the Assistant U.S. Attorneys and FBI agents with primary responsibility for the investigation and prosecution of this case (collectively, the "Prosecution Team") review all applications for non-legal contacts and conduct the monitoring required by the SAMs for those contacts.

### The Wall Team

On December 15, 2017, the defendant moved *ex parte* for an order prohibiting the Government from viewing the defendant's Bureau of Prisons ("BOP") visitor log in connection with the defendant's intention to consult expert witnesses. On January 5, 2018, the Court granted that request and ordered that the Government could not seek the BOP visitor log without prior Court approval and redactions of any defense experts. Dkt. No. 19. The same day, the Government asked the Court to reconsider its January 5 order arguing, among other things, that the defendant has no right to privacy over his visitor log, the log is not privileged, and the Government has compelling national security and public safety interests in viewing the log. Dkt. No. 20. On January 8, 2018, the defendant responded arguing, among other things, that permitting the Government to review the defendant's "legal visitors" would implicate his "Sixth Amendment right to prevent disclosure of defense strategy to the Government." Dkt. No. 21.

During the January 23, 2018 conference, the Court ordered that the Prosecution Team could not have ordinary access to the defendant's visitor log. Instead, to balance the protection of defense strategy against national security risks, the Court directed the creation of the Wall Team and indicated that all visitor applications—expert or otherwise—would be first considered by the Wall Team. In so ruling, the Court noted that the Wall Team's "sole responsibility with regard to this case would be to review names." 1/23/2018 Hr'g Tr. at 8.

### Relevant SAMs Provisions

On March 27, 2018, the SAMs were imposed on the defendant. The imposition of the SAMs was based on a finding by the Attorney General that there is a "substantial risk that [the defendant's] communications or contacts with persons could result in death or serious bodily injury to persons." SAMs at 2. (In light of the sensitivities of unredacted SAMs memoranda, a copy of the SAMs will be delivered to chambers as Exhibit A.) As relevant here, the SAMs limit the defendant's non-legal contacts to his immediate family members and provide:

> All calls with the inmate's immediate family member(s) may be:
>
> i. Contemporaneously monitored by the FBI.
>
> ii. Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.
>
> iii. A copy of each telephone call recording involving an inmate/immediate family member shall be provided to the FBI by

>       the [U.S. Marshals Service ("USMS")]/BOP/[Metropolitan Correctional Center ("MCC")].

SAMs ¶ 3(d).

The SAMs further provide that all non-legal visits may be "[c]ontemporaneously monitored by the USMS/BOP/[MCC] and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM." SAMs ¶ 3(f)(iii)(1). When communications will not be in English, the SAMS require that "a fluent USMS/BOP/[MCC]- or FBI-approved interpreter/translator is readily available to contemporaneously monitor the communication/visit." SAMs ¶ 3(f)(ii).

The SAMs also require that all non-legal mail be copied and forwarded to the FBI for translation and analysis. SAMs ¶ 3(g)(iii).

Discussion

As set out above, the SAMs impose substantial monitoring requirements for non-legal contacts with the defendant's immediate family. On April 4 and 6, 2018, the Government advised defense counsel of its position that the Wall Team should continue reviewing legal visitor applications but that the Prosecution Team should review all applications for non-legal contacts (*i.e.*, contacts under paragraph 3 of the SAMs) and conduct the monitoring required by the SAMs for those contacts. On May 4, 2018, defense counsel responded that they believed the Wall Team should review and monitor non-legal contacts. Defense counsel has indicated that the defendant's communications with his immediate family members are relevant to the defense's development of mitigation evidence. Counsel also noted that allowing the Prosecution Team to monitor or have access to those communications would give the Government unfair insight into defense strategy.[1] For the reasons described below, the Court should reject the defense's argument and enter an Order (i) limiting the Wall Team's review to legal visitor applications, and (ii) allowing the Prosecution Team to review and monitor non-legal contacts.

First, there is no Sixth Amendment right implicated by the Prosecution Team monitoring non-legal communications. These communications are not privileged, and the defendant has not explained how communications with his immediate family members have any connection to the strategy being formulated by defense counsel. The Court put the Wall Team in place in response to the defendant's specific concern that disclosure of his potential expert witnesses would implicate his Sixth Amendment right against early disclosure of defense strategy. That basis cannot justify the relief the defendant now seeks—barring the Prosecution Team from having any access to the

---

[1] While the parties have been discussing this issue, the MCC has provided to the Prosecution Team no non-legal contact requests, nor has the FBI undertaken any monitoring.

defendant's non-legal communications.  The Government routinely has access to the content of inmates' non-legal communications.  In the normal course, the BOP records inmates' non-legal calls and emails and provides them to the Government upon request.  There is simply no reason to deviate from that approach in this case.  Indeed, based on conversations with the Department of Justice's Office of Enforcement Operations and the FBI's national SAMs supervisor, the Government understands that purely non-legal contacts in SAMs cases are universally reviewed by members of the Prosecution Team, not a wall team.[2]

Moreover, compelling national-security and public-safety interests counsel in favor of having the Prosecution Team monitor non-legal contacts here.  In this respect, the SAMs are based on the Attorney General's finding that the defendant continues to pose a serious threat to the public.  The Attorney General concluded that the monitoring requirements were "reasonably necessary to prevent the inmate from committing, soliciting, or conspiring to commit additional criminal activity," and that there is a "high probability of [the defendant making] calls to others to arrange, inspire, or incite terrorist or criminal activities."  SAMs at 15.  Because the Prosecution Team has familiarity with the intricacies of the case and with the defendant's associates, it is crucial that it be allowed to monitor his communications with non-legal contacts.

At bottom, the defendant is requesting that the Court set a new precedent whereby the Prosecution Team is unable to monitor or obtain information concerning the defendant's non-legal contacts—even where, as here, the Attorney General has determined that the defendant presents a continuing threat to public safety.  There is no legal basis for such an order, and as noted above, there are a number of reasons why the Court should reject it.  Accordingly, the Government respectfully requests that the Court issue an order (i) directing the Wall Team's continued review of legal visitor applications; (ii) directing that all non-legal visitor applications be reviewed by the

---

[2] The Government is aware of only two recent cases in which a wall team was used in connection with pre-trial SAMs.  In one, *United States* v. *al Farekh*, 15 Cr. 268 (BMC) (E.D.N.Y.), a wall AUSA handled defense requests for expert access to the defendant under the SAMs in order to avoid alerting the prosecution team to experts' names.  The Wall Team in place here already satisfies this concern.  In the other, *United States* v. *Tsarnaev*, 13-10200-GAO (D. Mass.), a very limited wall team was put in place to monitor in-person meetings between Tsarnaev, his sisters, and defense investigators who were cleared pursuant to the SAMs.  The *Tsarnaev* court did not order any such wall team for any other communications or for monitoring purely non-legal contacts.

The Honorable Vernon S. Broderick  Page 5
May 8, 2018

Prosecution Team; and (iii) directing that all non-legal communications and visits be monitored in a fashion to be determined by the FBI, but which may include review by the Prosecution Team.

                    Respectfully submitted,

                    GEOFFREY S. BERMAN
                    United States Attorney

By: /s/
                    Andrew D. Beaty / Amanda Houle /
                          Matthew Laroche
                    Assistant United States Attorneys
                    (212) 637-2198 / 2194 / 2420

Cc:    Defense Counsel (by ECF)