# Exhibit M

*PARTLOW  INSURANCE  AGENCY INC*

Grange  Indemnity  Insurance  Co.





**DBC**

www.partlowinsurance.com

Named    Insured    and   Address

| Policy   Type: | *Commercial   AutoAccel* |
|---|---|

**Reason   Issued:** *New Business*
**Policy   Number:**   *XA    2046808-00*
**Issue   Date:**   *08/02/13*

BRIGHT  AUTO  LLC



**From: 08/02/13     To: 08/02/14**     12:01 a.m. standard time at the address of the named insured as shown above. These declarations together with the application, common policy conditions, forms and endorsements, if any, complete the above numbered policy. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

Commercial    Auto  Coverage    Part/Business  Auto  Coverage    Form  Declarations

Named    Insured's    Legal    Entity  is: *LIMITED  LIABILITY  CO*

Item   2 - Schedule   of Coverages   and   Covered   Autos

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Auto  Symbols | Limit<br>*The most we will pay for any one accident or loss.* | Premium |
|---|---|---|---|
| Liability   Coverage | 07 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | $   8,054.00 |
| | | | |
| Maximum     PIP Benefits | | | |
| | | | |
| Maximum    Added    PIP Benefits | | | |
| Medical    Payments | 07 | $5,000 Per Person /Per Accident | 66.00 |
| Uninsured   Motorists | 07 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | 252.00 |
| | | | |
| Underinsured    Motorists | 07 | | |
|   Combined  Single Limits | | $1,000,000 Per Accident | Incl |
| Motor   Truck  Cargo | 07 | See Item 10 for limits and deductible | 1,824.00 |
| Physical   Damage    Insurance | | Actual cash value or cost of repair, or the amount stated in the Declarations, whichever is less, minus deductible shown. | |
|   Comprehensive | 07 | See Item 3 for deductible for each covered auto. No deductible applies to loss caused by fire or lightning. | 455.00 |
| | | | |
|   Collision | 07 | See Item 3 for deductible for each covered auto. | 1,333.00 |
| Rental   Reimbursement | 07 | Refer to form CA9923 for specific limits | 181.00 |
| On-Hook   Towing | | | |
| Acts  of Terrorism | | | 7.00 |
| Municipal   Taxes | | | |
| Other  State  Specific    Charge | | | |
| Fees | | State/Federal   Filing | 150.00 |
| Fees | | Financial  Responsibility | |

Premium   for Endorsements

**THIS IS NOT A BILL.** Any outstanding   balance due will be billed at a later date.

Your Estimated  Total Policy Premium  Is   **$ 12,322.00**

Premium   does  not include  service  charges.

| Item 3 - Schedule   of Covered   Autos  You  Own |
|---|

| Unit | State | Ter. | Zip Code | Year | Description | Vehicle Identification Number | Non-Truc k Use | Class | Stated Amount | Change Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 010 | OH | 017 | 44224 | 06 | FRHT TRACTOR | ████████ | | 400880 | 30000 | 08/02/13 |
| 011 | OH | 017 | 44224 | 13 | TRLR AUTO HAULER | NONOWNEDTRAILER1 | | 682980 | | 08/02/13 |

| Item 3 - Schedule   of Covered   Autos  You  Own - Premiums |
|---|

| Unit | Liab. | PD Ded. | Me d Pay | UM | UMP D | UI M | PIP | API P | RENTAL |
|---|---|---|---|---|---|---|---|---|---|
| 010 | 6799 | | 66 | 252 | | Incl | | | 181 |
| 011 | 1255 | | | | | | | | |

| Item 3 - Schedule   of Covered   Autos  You  Own - Premiums |
|---|

| Uni t | On-Hook Ded. | On-Hook Prem . | Comp . Ded. | Comp . Prem. | Coll. Ded. | Coll. Prem . | Spec . Perils Ded. | Spec . Perils Prem . | Other | Total Prem. |
|---|---|---|---|---|---|---|---|---|---|---|
| 010 | | | 1000 | 455 | 1000 | 1333 | | | | 10910 |
| 011 | | | | | | | | | | 1255 |

**Item  7 - Driver  Information**

| Driver | Name | Sex | Marital Status | Date of Birth | Status |
|--------|------|-----|----------------|---------------|--------|
| 01 | SAIPOV SAYFULLO | Male | Single | ███████ | |

    *EXC=Excluded     **FR=Financial  Responsibility

**Named   Insured:**   *BRIGHT  AUTO  LLC*
**Policy   No.** *XA    2046808*      ***Commercial  AutoAccel***      ***page   3***

| Policy | Forms | Inventory |
|--------|-------|-----------|

**Endorsement**

```
CA 50       (01/05) *  Asbestos, Silica, Mixed Dust Excl
CA 75       (03/12) *  Policy Changes - Who Is An Insured
IL 00 21    (07/02) *  Nuclear Energy Liability Exclusion
XA 01       (10/08) *  Commercial Auto Coverage Form
XA 02       (05/11) *  Common Policy Conditions-Ohio
XA 42       (02/11) *  Punitive Damages Exclusion
CA 21 33    (06/10) *  OH Uninsured Motorists Coverage
XA 08       (10/08) *  Ohio Amendment of Policy Provisions
FORM F      (06/71) *  Uniform Motor Carrier BI and PD Liab. Ins. Endorsement
FORM I      (09/99) *  Uniform Motor Carrier Cargo Insurance Endorsement
MCS 90      (03/96) *  Motor Carrier Safety Act
XA 03       (05/11) *  Auto Medical Payment Coverage
CA 99 23    (12/93) *  Rental Reimbursement Coverage
XA 35       (10/08) *  Motor Truck Cargo Liability Coverage


            *  Indicates Added Form
```

**Named Insured:** *BRIGHT AUTO LLC*
**Policy No.** *XA   2046808*         ***Commercial AutoAccel***         *page* **4**

**Item 10 - Motor Truck Cargo-Legal    Liability**

| Vehicle    Limit | Deductible | Total  Premium |
|---|---|---|
| $250,000    any one vehicle | $1,000 | $1,824 |

| Catastrophe      Limit |
|---|
| $250,000      any one catastrophe |

| Year | Description | VIN |
|---|---|---|
| 2006 | FRHT TRACTOR | ███████████ |

**Covered     Property    of Others:**

Non-Owned   Cargo

Named      Insured:    *BRIGHT AUTO  LLC*

Policy    No.   *XA      2046808*        ***Commercial  AutoAccel***

XA 241 (10-2008)

POLICY NUMBER:                                                        **COMMERCIAL AUTO**
                                                                 **CA 99 23 12 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

        BUSINESS AUTO COVERAGE FORM
        GARAGE COVERAGE FORM
        MOTOR CARRIER COVERAGE FORM
        TRUCKERS COVERAGE FORM
        BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective | |
|---|---|
| Named Insured | Countersigned By |

                                                    (Authorized Representative)

### SCHEDULE

| Coverages | Auto No. | Designation or Description of Covered "Autos" to which this insurance applies | Maximum Payment Each Covered "Auto" | | | Premium |
|---|---|---|---|---|---|---|
| | | | Any One Day | No. of Days | Any One Period | |
| Comprehensive | 1 | 010 | $ 175 | 30 | $ 5250 | $    181 |
| | 2 | | $ | | $ | $ |
| | 3 | | $ | | $ | $ |
| | 4 | | $ | | $ | $ |
| | 5 | | $ | | $ | $ |
| Collision | 1 | 010 | $ 175 | 30 | $ 5250 | $ INCL |
| | 2 | | $ | | $ | $ |
| | 3 | | $ | | $ | $ |
| | 4 | | $ | | $ | $ |
| | 5 | | $ | | $ | $ |
| Specified | 1 | | $ | | $ | $ |
| Causes of Loss | 2 | | $ | | $ | $ |
| | 3 | | $ | | $ | $ |
| | 4 | | $ | | $ | $ |
| | 5 | | $ | | $ | $ |
| | | | Total Premium | | | $    181 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

**B.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto." No deductibles apply to this coverage.

**C.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

  **1.** The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

  **2.** The number of days shown in the Schedule.

**D.** Our payment is limited to the lesser of the following amounts:

  **1.** Necessary and actual expenses incurred.

  **2.** The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

**E.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**F.** If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the PHYSICAL DAMAGE COVERAGE Coverage Extension.

**ENDORSEMENT FOR**
**MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY**
**UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Form Approved
OMB No. 2125-0074

Issued to __BRIGHT AUTO LLC__

of _____

Dated at _____ this _02_ day of _AUGUST_____ , 20__13_

Amending Policy Number __XA 2046808____ Effective date __08/02/2013____

Name of Insurance Company __Grange Indemnity Insurance Co.____

Telephone Number _____ COUNTERSIGNED BY

(Authorized Company Representative)

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "X", for the limits shown:

[X] The insurance is primary and the company shall not be liable for amounts in excess of $ _1,000,000_____ for each accident.

[ ] The insurance is excess and the company shall not be liable for amounts in excess of $ _____ for each accident

in excess of the underlying limit of $ _____ for each accident.

Whenever required by the Federal Highway Administration (FHWA) or the Interstate Commerce Commission (ICC), the company agrees to furnish the FHWA or the ICC a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FHWA or the ICC, to verify that the policy is in force as of a particular date.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the ICC's jurisdiction, by providing (30) days notice to the ICC (said 30 days notice to commence from the date the notice is received by the ICC at its office in Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**ACCIDENT** includes continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation

thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amount prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

The Motor Carrier Act of 1980 requires limits of financial responsibility according to the type of carriage and commodity transported by the motor carrier. It is the MOTOR CARRIER'S obligation to obtain the required limits of financial responsibility.
THE SCHEDULE OF LIMITS SHOWN ON THE REVERSE SIDE DOES NOT PROVIDE COVERAGE.
The limits shown in the schedule are for information purposes only.

MCS-90 (3-96)                                    (over)

**SCHEDULE OF LIMITS**
**Public Liability**

| Type of Carriage | Commodity Transported | Minimum Insurance |
|---|---|---|
| (1) For-hire (In interstate or foreign commerce). | Property (nonhazardous). | $   750,000 |
| (2) For-hire and Private (In interstate, foreign, or intrastate commerce). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Divisions 1.1, 1.2 and 1.3 materials; any quantity of Division 2.3 Hazard Zone A or Division 6.1, Packing Group 1, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | 5,000,000 |
| (3) For-hire and Private (In interstate or foreign commerce: in any quantity) or (In intrastate commerce: in bulk only). | Oil listed in 49 CFR 172.101; hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | 1,000,000 |
| (4) For-hire and Private (In interstate or foreign commerce). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group 1, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | 5,000,000 |

**Note:** The type of carriage listed under numbers (1), (2), and (3) applies to vehicles with a gross vehicle weight rating of 10,000 pounds or more. The type of carriage listed under number (4) applies to all vehicles with a gross vehicle weight rating of less than 10,000 pounds.

**SCHEDULE OF LIMITS**
**Public Liability**

For-hire motor carriers of passengers operating in interstate or foreign commerce

| Vehicle Seating Capacity | Minimum Insurance |
|---|---|
| (1) Any vehicle with a seating capacity of 16 passengers or more. | $   5,000,000 |
| (2) Any vehicle with a seating capacity of 15 passengers or less. | 1,500,000 |

MCS-90 (3-96)

**Grange Indemnity Insurance Co**

| Endorsement | CA 50 |
|---|---|

**Policy Number: XA      2046808**

**Asbestos Exclusion
Silica Exclusion
Mixed Dust Exclusion**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS COVERAGE FORM**

This insurance does not apply to:

1. "Bodily injury" or "property damage" arising out of, caused by, contributed by, or resulting from, exposure to or the use of:

   a. Asbestos including, but not limited to, the cost of abatement, mitigation, removal and disposal of asbestos from any good, product or structure;

   b. Silica including, but not limited to, exposure to silica or the use of silica;

      i. Silica means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and sand.

   c. Mixed dust

      i. Mixed dust means a mixture of dusts composed of silica or asbestos or one or more other dusts.

2. Any damage or any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of mixed dust, silica, or asbestos, or any other material or substance containing asbestos, silica, or mixed dust;

   b. Claim or suit by or on behalf of any governmental authority or any other alleged responsible party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of mixed dust, asbestos or silica, or any other material or substance containing silica, asbestos, or mixed dust.

3. Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with any of the substances named in 1.a., b., or c.; or

4. Any obligation to share damages with or repay someone else in connection with any of the substances named in 1.a., b., or c.

*AK843 (1-2005)*

**Grange Indemnity Insurance Co.**

| Endorsement | CA 75 |

**Policy Number: XA      2046808**

**Policy Changes - Who Is An Insured**

This endorsement modifies insurance provided under the following:

**Business Auto Coverage Form**

Paragraph **1.b(1)** of **Who Is An Insured** in **Section II - Liability Coverage** is deleted and replaced by:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto", directly or indirectly, including their agents or "employees". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

*AN165 (03-2012)*

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

' ISO Properties, Inc., 2001

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

' ISO Properties, Inc.,  2001

**Grange Indemnity Insurance Co.**

| | |
|---|---|
| **Endorsement** | **XA 01** |

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

### SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of "your" coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

  **1. "7" "Specifically Described "Autos"**
  Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" "you" don't own while attached to any power unit described in Item Three).

  **2. "8" "Hired "Autos" Only**
  Only those "autos" "you" lease, hire, rent or borrow. This does not include any "auto" "you" lease, hire, rent, or borrow from any of "your" "employees", partners (if "you" are a partnership), members (if "you" are a limited liability company) or members of their households.

  **3. "9" "Nonowned "Autos" Only**
  Only those "autos" you" do not own, lease, hire, rent or borrow that are used in connection with "your" business. This includes "autos" owned by your "employees", partners (if "you" are a partnership), members (if "you" are a limited liability company), or members of their households

but only while used in " your" business or "your" personal affairs.

**B. Owned Autos You Acquire After The Policy Begins**

Per Item Two of the Declarations, an "auto" "you" acquire will be a covered "auto" for that coverage only if:

  **a.** "We" already cover all "autos" that "you" own for that coverage or it replaces an "auto" "you" previously owned that had that coverage; and "you" tell us within 30 days after "you" acquire it that "you" want "us" to cover it for that coverage.

  **b.** For all other newly acquired "autos", not subject to paragraph a. above, "you" must tell "us" before any accident or loss, and no longer than 30 days after "you" acquire it, that you want "us" to cover it, and for what specific coverages. "You" must tell us also its Stated Amount if a Physical Damage coverage is to apply to the newly acquired "auto".

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

  **1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

  **2.** "Mobile equipment" while being carried or towed by a covered "auto".

  **3.** Any "auto" "you" do not own while used with the permission of its owner as a temporary substitute for a covered "auto" "you" own that is out of service because of its:

    **a.** Breakdown;
    **b.** Repair;
    **c.** Servicing;
    **d.** "Loss"; or
    **e.** Destruction.

**BK1188 (10-2008)**                                    *continued...*

**Grange Indemnity Insurance Co.**

| Endorsement | XA 01 |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**SECTION II - LIABILITY COVERAGE**

**A.  Coverage**

"We" will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

"We" will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, "we" will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

"We" have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, "we" have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. "We" may investigate and settle any claim or "suit" as "we" consider appropriate. "Our" duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1.  Who Is An Insured**

The following are "insureds":

**a.**  "You" for any covered "auto".

**b.**  Any other person driving "your" covered "auto", including "listed driver(s)" shown in the declarations, used with "your" permission and within the scope of that permission except:

**(1)** the owner or anyone else from whom "you" hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" "you" own.

**(2)** "Your" "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is "yours".

**(4)** Anyone other than "your" "employees", partners (if "you" are a partnership), members (if "you" are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if "you" are a partnership), or a member (if "you" are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.**  Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2.  Coverage Extensions**

**a.**  Supplementary Payments

In addition to the Limit of Insurance, "we" will pay for the "insured":

**(1)** All expenses "we" incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" "we" cover. "We" do not have to furnish these bonds.

**Grange Indemnity Insurance Co.**

| Endorsement | XA 01 |
| --- | --- |

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" "we" defend, but only for bond amounts within "our" Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at "our" request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" "we" defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" "we" defend, but "our" duty to pay interest ends when "we" have paid, offered to pay or deposited in court the part of the judgment that is within "our" Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed "we" will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

"We" will not pay anyone more than once for the same elements of loss

because of these extensions.

**B. Exclusion**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

**Grange Indemnity Insurance Co.**

███████████████████████

| **Endorsement** | **XA 01** |
|---|---|

**Policy Number: XA     2046808**

**BUSINESS AUTO COVERAGE FORM**

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of "your" business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of "your" work after that work has been completed or abandoned.

In this exclusion, "your" work means:

**a.** Work or operations performed by "you" or on "your" behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your" work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

"Your" work will be deemed completed at the earliest of the following times:

**1.** When all of the work called for in "your" contract has been completed.

**2.** When all of the work to be done at the site has been completed if "your" contract

**Grange Indemnity Insurance Co.**

| Endorsement | XA 01 |
| --- | --- |

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

calls for work at more than one site.

**3.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury", "property damage" or "covered pollution cost or expense" arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority in hindering or defending against any of these.

**13. Racing**

Any covered "auto" for "bodily injury" or "property damage" that occurs while the "auto" is;

**Grange Indemnity Insurance Co.**

| Endorsement | XA 01 |
|---|---|

Policy Number: XA      2046808

**BUSINESS AUTO COVERAGE FORM**

**a.** participating   in; or

**b.** practicing   or preparing   for; any race, speed or demolition   contest; or

**c.** while being  operated   on a driving   track in a facility designed   for racing  vehicles.

**14. Wrongful  Delivery**

"Bodily Injury" or " Property  Damage" result-ing from the delivery of any liquid  into the wrong receptacle  or the wrong  address  or from the delivery of one liquid  in place of another,  if the "bodily injury"  or "property damage"  occurs  after delivery  has been completed.

Delivery is considered   completed   even if further  service  or maintenance   work,  or correction,  repair or replacement   is required  because  of wrong  delivery.

**15. Explosion**

"Bodily Injury or "Property   Damage" resulting  from the explosion  or discharge  of Class A and B explosives,  poisonous  gas, liquid gas, compressed   gas, or radioactive material  and all other materials  and/  or commodities   as listed in the Motor  Carrier Act of 1980 (49 CFR 173, 172, 101, 173.389, 171.389, 171.8), manufactured,   sold, trans-ported,  handled  or distributed   by an insured.

**16. Auto Business**

Bodily injury  " or "property   damage" involv-ing an "auto"  while being operated,  used or maintained   by any person  when employed  or engaged  in the business  of selling, repairing, parking  storing,  servicing,  or while delivering, testing,  road testing,  parking  or storing "autos", unless the business  is "your" business and it was warranted   in "your" application.

**17. Trailers**

"Bodily injury"  or "property   damage"  if "your"  covered  "auto" is attached  to a "trailer" with load capacity  in excess of two thousand (2,000) pounds  if it is not listed  in the Declarations   and it:

**a.** is owned  by "you" or "your " employee;  or

**b.** has been hired  or borrowed   by "you" or "your"  employee  for more than 60 consecutive   days.

**18. Permissive  Drivers**

For "bodily injury"  or "property  damage" caused  by "your "covered  "auto" when it is driven,  operated   or used with "your" permission   by a person  "you" know:

**a.** is under  the minimum  age to obtain  a driver's  license;

**b.** does not have a valid driver's license;

**c.** has a suspended   driver's  license;

**d.** has a revoked  driver's  license; or

**e.** has a restricted  driver's  license and is oper-ating a vehicle  beyond  the scope of such.

**C. Limit Of Insurance**

Regardless  of the number  of covered  "autos", "insureds",  premiums  paid, claims made, claim-ants or injured  persons  or vehicles involved  in the "accident",  the most "we" will pay for the total of all damages  and "covered pollution  cost or expense"  combined,  resulting  from any one "accident"  is the Limit of Insurance  for Liability Coverage  shown  in the Declarations.

All "bodily injury",  "property  damage" and "covered pollution  cost or expense"  resulting from continuous  or repeated  exposure  to substantially  the same conditions  will be considered  as resulting  from one "accident".

**1. Combined  Bodily Injury and Property Damage  Limits**

If "your " Declarations  indicates  that a combined  "bodily injury"  and "property damage"  liability  limit applies,  the most "we" will pay for the aggregate  of all damages  resulting  from any one "accident" is the combined  liability insurance  limit shown  in the Declarations.

**2. Separate Bodily Injury and Property Damage  Limits**

**Grange Indemnity Insurance Co.**

| Endorsement | XA 01 |
|---|---|

**BUSINESS AUTO COVERAGE FORM**

**Policy Number: XA      2046808**

If "your" Declarations indicates that separate "bodily injury" and "property damage" liability limits apply;

**a.** For each person for "bodily injury" liability "our" maximum limit of liability for all damages due to a "bodily injury", including damages for care, loss of services, loss of consortium, loss of companionship or death, arising out of "bodily injury" sustained by any one person in any one "auto" "accident" is the limit of liability per person shown in the Declarations.

Subject to this limit for each person, the limit of liability shown in the Declarations for each "accident" for "bodily injury " liability is "our" maximum limit of liability under this coverage for all damages for "bodily injury" resulting from any one "accident".

The limit of liability shown in the Declarations for each "accident" for " property damage" liability is "our" maximum limit of liability under this coverage for all "property damage" resulting from any one "auto" "accident."

**b.** "We" will apply the limit of liability to provide any separate limits required by law for " bodily injury" and "property damage" liability. However, this provision (b.) will not change "our" total limit of liability.

**3.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**D. Payment Required By Filings**

If "we" are required by any applicable filing which "we" have made on "your" behalf to provide payment not otherwise provided by this Policy under SECTION II - LIABILITY COVERAGE to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law. If "we" are required to make any payment under this Policy that would not have been made except for the certification, "you" must reimburse us.

**SECTION III - PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

**1.** "We" will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or
**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;
**(2)** Theft;
**(3)** Windstorm, hail or earthquake;
**(4)** Flood;
**(5)** Mischief or vandalism; or
**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or
**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**Grange Indemnity Insurance Co.**

| Endorsement | XA 01 |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", "we" will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, "you" have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extension**

   **Transportation Expenses**

   "We" will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by "you" because of the total theft of a covered "auto" of the private passenger type. "We" will pay only for those covered "autos" for which "you" carry either Comprehensive or Specified Causes of Loss Coverage. "We" will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or "we" pay for its "loss".

B. **Exclusions**

   1. "We" will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a.** Nuclear Hazard

   **(1)** The explosion of any weapon employing atomic fission or fusion; or

   **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b.** War Or Military Action

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

   2. "We" will not pay "loss" to any covered "auto" that occurs while an "auto" is;

   **a.** participating in; or

   **b.** practicing or preparing for; any race, speed or demolition contest; or

   **c.** while being operated on a driving track in a facility designed for racing vehicles.

   3. "We" will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

   **a.** wear and tear , freezing, mechanical or electrical breakdown.

   **b.** blowouts, punctures or other road damage to tires.

   4. "We" will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

Grange Indemnity Insurance Co.

██████████████████████████

| Endorsement | XA 01 |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph c. above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** "We" will not pay for "loss" to a covered "auto" due to "diminution in value".

**6.** "We" will not pay for "loss" to camper units, pickup covers, caps or shells, which are not permanently installed in "your" insured "auto".

**7.** "We" will not pay for "loss" to tarpaulins, binders, chains, or any other cargo securing devices.

**8.** "We" will not pay for "loss" to wearing apparel, tools or personal effects.

**9.** "We" will not pay for "loss" while "your" insured "auto" is used in any illicit trade or transportation

**10.** "We" will not pay for "loss" to "your" covered "auto" resulting from the explosion or discharge of Class A and B explosives, poisonous gas, liquid gas, compressed gas, or radioactive material and all other materials and/ or commodities as listed in the Motor Carrier Act of 1980 (49 CFR 173, 172, 101, 173.389, 171.389, 171.8), manufactured, sold, transported, handled or distributed by an insured.

**11.** "We" will not pay for "loss" to "your" covered "auto" when it is in the care, custody or control of any person for the purpose of selling it.

**12.** "We" will not pay for "loss" while "your" covered "auto " is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described on the Declarations.

**13.** "We" will not pay for "loss" due to theft or conversion of "your" covered "auto"

**a.** prior to its delivery to "you"; or

**b.** while it is in the care, custody or control of anyone for the purpose of selling "your " covered "auto".

**Grange Indemnity Insurance Co.**

███████████████████████

| **Endorsement** | **XA 01** |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**14.** "We" will not pay for "loss" to "your" covered "auto" while in anyone else's possession under a written trailer exchange agreement, provided that this exclusion shall not apply to a loss payee. If "we" pay the loss payee, "you" must reimburse "us" for payment.

**C. Limit Of Insurance**

**1.** The most "we" will pay for "loss" in any one "accident" is the lesser of:

   **a.** The actual cash value of the damaged or stolen property as of the time of the "loss" reduced by the applicable deductible;

   **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality reduced by the applicable deductible.

   **c.** The Stated Amount shown in the Declarations page.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, "we" will not pay for the amount of the betterment and the increase in value from the repair of prior damage.

**4.** If "we" repair the property, "we" shall not be responsible for any diminution in value of the property caused by the loss. If repair or replacement of damaged property increased the overall value of "your" covered "auto", "we" may deduct this amount from the repair cost.

**5.** If the Stated Amount shown in the Declarations for the insured "auto" involved in the "loss" is less than 90% of the "actual cash value" at the time of "loss", "you" will share with "us" in the cost of repair or replacement as follows:

   **a.** "We" will pay the same proportion of the "loss" which the Limit of Liability shown in the Declarations or in the endorsements to this policy for "your" insured "auto" involved in the "loss" bears to the actual cash value of "your" insured "auto" at the time of "loss".

   **b.** "We" will reduce the amount of "loss" by the appropriate deductible shown in the Declarations prior to calculating the proportionate amount "we" will pay.

**D. Deductible**

For each covered "auto", "our" obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV - BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

   **1. Appraisal For Physical Damage Loss**

If "you" and "we" disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

If "we" submit to an appraisal, "we" will still retain "our" right to deny the claim.

**Grange Indemnity Insurance Co.**

███████████████████████

| Endorsement | XA 01 |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

"We" have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", "you" must give "us" or "our" authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, "you" and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without "our" consent, except at the "insured's" own cost.

**(2)** Immediately send "us" copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with "us" in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize "us" to obtain medical records or other pertinent information.

**(5)** Submit to examination, at "our" expense, by physicians of "our" choice, as often as "we" reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment "you" must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of "your" expenses for consideration in the settlement of the claim.

**(3)** Permit "us" to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at "our" request and give "us" a signed statement of "your" answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, "we" agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring "us" into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At "our" option "we" may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at "our" expense. "We" will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value, but there shall be not abandonment to "us".

If "we" pay for the "loss", "our" payment will include the applicable sales tax for the damaged or stolen property.

**Grange Indemnity Insurance Co.**

| Endorsement | XA 01 |
|---|---|

**BUSINESS AUTO COVERAGE FORM**

Policy Number: XA      2046808

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom "we" make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to "us". That person or organization must do everything necessary to secure "our" rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve "us" of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by "you" at any time as it relates to this Coverage Form. It is also void if "you" or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** "Your" interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If "we" revise this Coverage Form to provide more coverage without additional premium charge, "your" policy will automatically provide the additional coverage as of the day the revision is effective in "your" state.

**4. No Benefit To Bailee - Physical Damage Coverages**

"We" will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" "you" own, this Coverage Form provides primary insurance. For any covered "auto" "you" do not own the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle "you" do not own.

**(2)** Primary while it is connected to a covered "auto" "you" own.

**b.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**c.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, "we" will pay only "our" share. "Our" share is the proportion that the Limit of Insurance of "our" Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Estimated Premium Calculation and Audit**

The premium for this Coverage Form is determined two ways:

**a. i.** Part of the premium for this Coverage Form is based on the "Listed Driver(s)" "you" told "us" "you" had when this policy began. "You" agree to report all changes in "Listed Driver(s)" including additional "Listed Driver(s)" as they begin to operate covered "autos".

**Grange Indemnity Insurance Co.**

██████████████████████

| Endorsement | XA 01 |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**ii.** Part of the premium for this Coverage Form is based upon other exposures, upon which "we" may calculate premium.

"We" will compute the final premium due when "we" determine "your" actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on "our" rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, "we" cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada.

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement "we" agree to.

"We" also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V - DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement; or

**Grange Indemnity Insurance Co.**

███████████████████████████

| **Endorsement** | **XA 01** |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

   **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

   **(2)** Otherwise in the course of transit by or on behalf of the "insured";

   **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

   **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value, which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**Grange Indemnity Insurance Co.**

| Endorsement | XA 01 |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**H.** "Insured  contract"  means:

**1.** A lease  of premises;

**2.** A sidetrack  agreement;

**3.** Any easement  or license agreement,  except in connection  with construction  or demolition  operations  on or within  50 feet of a railroad;

**4.** An obligation,  as required  by ordinance,  to indemnify  a municipality,  except in connection  with work  for a municipality;

**5.** That part of any other  contract  or agreement  pertaining  to "your" business (including  an indemnification  of a municipality  in connection  with work performed  for a municipality)  under which "you" assume  the tort liability  of another  to pay for "bodily  injury"  or "property damage"  to a third  party  or organization. Tort liability  means a liability  that would  be imposed  by law in the absence  of any contract  or agreement;

**6.** That part of any contract  or agreement entered  into, as part of "your" business, pertaining  to the rental  or lease, by "you" or any of "your"  "employees",  of any  "auto". However,  such contract  or agreement  shall not be considered  an "insured  contract"  to the extent  that it obligates  "you" or any of "your"  "employees"  to pay for "property damage"  to any "auto" rented  or leased by "you" or any of "your  " "employees".

An "insured  contract"  does not include  that part of any contract  or agreement:

**a.** That indemnifies  a railroad  for "bodily injury"  or "property  damage"  arising  out of construction  or demolition  operations, within  50 feet of any railroad  property and affecting  any railroad  bridge  or trestle,  tracks,  roadbeds,  tunnel, underpass  or crossing;  or

**b.** That pertains  to the loan, lease or rental of an "auto" to "you" or any of "your" "employees",  if the "auto" is loaned, leased  or rented  with a driver;  or

**c.** That holds  a person  or organization engaged  in the business  of transporting property  by "auto" for hire harmless  for "your" use of a covered  "auto" over a route  or territory  that person  or organization  is authorized  to serve by public  authority.

**I.** "Leased  worker"  means a person  leased  to "you" by a labor leasing  firm under an agreement  between  "you" and the labor leasing  firm, to perform  duties  related  to the conduct  of "your" business. "Leased worker" does not include  a "temporary  worker".

**J.** "Listed  Driver(s)"  means  driver(s)  shown  in the declarations,  who regularly  or frequently operate  covered  "autos". "Listed driver(s)" include  employees.

**K.** "Loss" means  direct  and accidental  loss or damage.

**L.** "Mobile  equipment"  means any of the following  types of land vehicles,  including  any attached  machinery  or equipment:

**1.** Bulldozers,  farm machinery,  forklifts and other  vehicles  designed  for use principally off public  roads;

**2.** Vehicles  maintained  for use solely on or next to premises  "you" own or rent;

**3.** Vehicles  that travel  on crawler  treads;

**4.** Vehicles,  whether  self-propelled  or not, maintained  primarily  to provide  mobility  to permanently  mounted:

**a.** Power cranes,  shovels,  loaders,  diggers or drills;  or

**b.** Road construction  or resurfacing equipment  such as graders,  scrapers  or rollers.

**Grange Indemnity Insurance Co.**

█████████████████████████████

| **Endorsement** | **XA 01** |
|---|---|

**Policy Number: XA      2046808**

**BUSINESS AUTO COVERAGE FORM**

**5.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  **b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **a.** Equipment designed primarily for:

    **(1)** Snow removal;

    **(2)** Road maintenance, but not construction or resurfacing; or

    **(3)** Street cleaning;

  **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicles insurance law are considered "autos".

**M.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**N.** "Property damage" means damage to or loss of use of tangible property.

**O.** "Suit" means a civil proceeding in which:

  **1.** Damages because of "bodily injury" or "property damage"; or

  **2.** A "covered pollution cost or expense", to which this insurance applies, are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with "our" consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with "our" consent.

**P.** "Temporary worker" means a person who is furnished to "you" to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**Q.** "Trailer" includes a semitrailer.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Grange Indemnity Insurance Co.**

| Endorsement | XA 02 |
|---|---|

Policy Number: XA      2046808

**COMMON POLICY CONDITIONS - OHIO**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

All Coverage Parts included in this policy are subject to the following conditions.

**A. Payment of Initial Premium**

If "you" make "your" initial premium payment by check, draft, or any remittance other than cash, and it is nonnegotiable or not honored on presentment to the bank or other financial institution, "we" may void this policy from inception. Coverage under this policy is conditioned upon the initial check, draft, or remittance being honored upon presentment to the bank or other financial institution.

Examples of nonnegotiable instruments include, but are not limited to:

a. Checks dishonored due to insufficient funds;

b. Checks drawn from closed accounts; and

c. Invalid credit cards.

**B. Cancellation**

With respect to a policy which has been in effect for more than 90 days or more or is a renewal of a policy we issued;

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** "We" may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below:

   **a.** Nonpayment of premium;

   **b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

   **c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part, which increases any hazard insured against;

   **d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

   **e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

   **f.** Failure of an "insured" to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

   **g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

**3.** "We" will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to "us". Proof of mailing will be sufficient proof of notice.

**4.** "We" will mail the notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation, if "we" cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation, if "we" cancel for a reason stated in **2.b.** through **2.g.** above.

*CK1189 (05-2011)*                                          *continued...*

**Grange Indemnity Insurance Co.**

| Endorsement | XA 02 |
|---|---|

**Policy Number: XA      2046808**

**COMMON POLICY CONDITIONS - OHIO**

5. The notice of cancellation will:

    **a.** State the effective date of cancellation. The policy period will end on that date.

    **b.** Contain the date of the notice and the policy number, and will state the reason for cancellation.

6. Policies written for a term of more than one year or on a continuous basis may be cancelled by "us" for any reason at an anniversary date, upon 30 days' written notice of cancellation.

7. If this policy is cancelled, "we" will send the first Named Insured any premium refund due. If "we" cancel, the refund will be pro rata. If the first Named "Insured" cancels, the refund may be less than pro rata. The cancellation will be effective even if "we" have not made or offered a refund.

**C. NonRenewal**

1. If "we" elect not to renew this policy, "we" will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to "us". The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

2. "We" will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient proof of notice.

**D. Changes**

This policy contains all the agreements between "you" and "us" concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only

by endorsement issued by "us" and made a part of this policy.

**E. Examination Of Your Books And Records**

"We" may examine and audit "your" books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**F. Inspections And Surveys**

1. "We" have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions "we" find; and

    **c.** Recommend changes.

2. "We" are not obligated to make any inspections, surveys, reports or recommendations and any such actions "we" do undertake relate only to insurability and the premiums to be charged. "We" do not make safety inspections. "We" do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And "we" do not warrant that conditions:

    **a.** Are safe or healthful; or

    **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to "us", but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations "we" may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.



**Grange Indemnity Insurance Co.**

| Endorsement | XA 02 |
|---|---|

**Policy Number: XA      2046808**

**COMMON POLICY CONDITIONS - OHIO**

**G. Premiums**

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums "we" pay.

**H. Transfer Of Your Rights And Duties Under This Policy**

"Your" rights and duties under this policy may not be transferred without "our" written consent except in the case of death of an individual named "insured".

If "you" die, "your" rights and duties will be transferred to "your" legal representative but only while acting within the scope of duties as "your" legal representative. Until "your" legal representative is appointed, anyone having proper temporary custody of "your" property will have "your" rights and duties but only with respect to that property.

**I. Our Right to Use Other Resources**

"You" and any insured seeking coverage under this policy agree that "we" have the right to utilize outside sources, vendors, experts, consultants, and software tools of "our" choosing to assist "us" in underwriting, pricing, and issuing "our" insurance policies and to assist "us" in adjusting claims.

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

**Grange Indemnity Insurance Co.**

████████████████████████████

| Endorsement | XA 42 |
|---|---|

**Policy Number: XA      2046808**

**Punitive Damages Exclusion**

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

The following exclusion is added to Paragraph **B. Exclusions** in **SECTION II - LIABILITY COVERAGE:**

This insurance does not apply to punitive or exemplary damages. This insurance does not apply to any other damages or awards associated with punitive or exemplary damages, including but not limited to fines, penalties, attorney fees, litigation expenses, legal fees, or interest.

All other terms and conditions of this policy remain unchanged.

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

*IN150 (02-2011)*

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 21 33 06 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OHIO UNINSURED AND UNDERINSURED MOTORISTS COVERAGE - BODILY INJURY

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Ohio, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| Limit Of Insurance | | |
|---|---|---|
| **Uninsured Motorists Coverage:** | $ | **Each "Accident"** |
| **Underinsured Motorists Coverage:** | $ | **Each "Accident"** |

| |
|---|
| Uninsured and Underinsured Motorists Coverage applies unless an "X" is entered in the corresponding box below: |
| [  ] If an "X" is entered in this box, this endorsement provides Uninsured Motorists Coverage only, and all references to "underinsured motor vehicle" do not apply. |
| [  ] If an "X" is entered in this box, this endorsement provides Underinsured Motorists Coverage only, and all references to "uninsured motor vehicle" do not apply. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

## A. Coverage

**1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident".

The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

**2.** With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under the coverage selected under this endorsement only if Paragraph **a.** or **b.** below applies:

**a.** The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

**b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

**(1)** Have been given prompt written notice of such settlement; and

**(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**3.** Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

**a.** The Named Insured and any "family members".

**b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction. However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this coverage form.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction. However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this coverage form.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled without our consent, if the settlement prejudices our right to recover payments. However, this exclusion does not apply to a settlement made with the insurer of an "underinsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** Any "insured" using a vehicle without a reasonable belief that the person is entitled to do so.

**4.** Punitive or exemplary damages.

**5.** "Bodily injury" sustained by:

**a.** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage under this coverage form;

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage under this coverage form; or

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage on a primary basis under any other coverage form or policy.

**6.** "Bodily injury" arising directly or indirectly out of:

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage and/or Underinsured Motorists Coverage shown in the Schedule or Declarations.

**2.** The coverage limit for Uninsured and Underinsured Motorists Coverage applies separately to damages caused by an "accident" with an "uninsured motor vehicle" and an "underinsured motor vehicle".

**3.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form, any Liability Coverage form or any Medical Payments Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage form for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

**4.** With respect to coverage provided for damages resulting from an "accident" with an "underinsured motor vehicle", the limit of insurance shall be reduced by all sums paid for "bodily injury" by or on behalf of anyone who is legally responsible.

**E. Changes In Conditions**

The conditions of the policy for Ohio Uninsured and Underinsured Motorists Insurance are changed as follows:

**1. Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

    **a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

    **b.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

    **c.** If the coverage under this coverage form is provided:

        **(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

        **(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

    **a.** Promptly notify the police if a hit-and-run driver is involved;

    **b.** Promptly send us copies of the legal papers if a "suit" is brought; and

c. A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle" and allow us 30 days to advance payment to that insured in an amount equal to the tentative settle- ment to preserve our rights against the in- surer, owner or operator of such "underin- sured motor vehicle". However, this Provi- sion **2.c.** does not apply if failure to notify us does not prejudice our rights against the in- surer, owner or operator of such "underin- sured motor vehicle".

**3. Transfer Of Rights Of Recovery Against Others To Us** is amended by adding the fol- lowing:

If we make any payment and the "insured" re- covers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to Underinsured Motorists Cover- age if we:

a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Mo- torists Coverage; and

b. We also have a right to recover the ad- vanced payment.

**4.** The following conditions are added:

**a. Arbitration**

**(1)** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or "underin- sured motor vehicle" or do not agree as to the amount of damages that are re- coverable by that "insured", then the matter may be arbitrated. However, dis- putes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbi- trator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having ju- risdiction. Each party will pay the ex- penses it incurs and bear the expenses of the third arbitrator equally.

**(2)** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be bind- ing.

**b. Statute Of Limitations**

Any claim or suit for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage must be brought within three years after the date of the "accident" caus- ing the "bodily injury" or one year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later, provided that our rights are not prejudiced.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle:

  **a.** For which no liability bond or policy applies at the time of an "accident";

  **b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

  **c.** That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

    **(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

    **(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

    The facts of the "accident" or intentional act must be proved by independent corroborative evidence, other than the testimony of the "insured" making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

However, "uninsured motor vehicle" does not include any vehicle:

  **a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

  **b.** Designed for use mainly off public roads while not on public roads; or

  **c.** Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:

    **(1)** An immunity under the Ohio Political Subdivision Tort Liability Law; or

    **(2)** A diplomatic immunity.

**4.** "Underinsured motor vehicle" means a land motor vehicle for which the sum of all liability bonds or policies applicable at the time of an "accident" is either:

  **a.** Less than the limit of liability for this coverage; or

  **b.** Reduced by payments to others injured in the "accident" to an amount which is less than the limit of liability for this coverage.

However, "underinsured motor vehicle" does not include any vehicle:

  **a.** Owned or operated by a self-insurer under any applicable motor vehicle law;

  **b.** Owned by a governmental unit or agency;

  **c.** Designed for use mainly off public roads while not on public roads; or

  **d.** That is insured for Liability Coverage under this policy.

**Grange Indemnity Insurance Co.**

| Endorsement | XA 08 |
| --- | --- |

**Policy Number: XA     2046808**

**OHIO AMENDMENT OF POLICY PROVISIONS**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**I.  BUSINESS AUTO COVERAGE FORM**

Under **SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions,** amending the following:

**1. Concealment, Misrepresentation or Fraud**
the following paragraph is added:

**e.** With respects to a policy issued as a result of fraud or material misrepresentation by the Named Insured in the Application or in subsequent change requests initiated by the Named Insured, if "we" discover fraud or material misrepresentation in the procurement of the insurance, "we" may void the policy and all coverages back to the inception date of the policy, and return your premium.

**II.  OHIO UNINSURED AND UNDERINSURED MOTORISTS COVERAGE - BODILY INJURY ENDORSEMENT**

**A.** Paragraphs **1.c.** and **2.b.** of **B. Who Is An Insured** are deleted.

**B.** The following is added to paragraph **C.5. EXCLUSIONS**

**d.** Anyone while "occupying" a covered "auto" while being driven or operated by any person who is specifically excluded from coverage for loss, damage and / or liability, including "bodily injury", in this policy.

The following are added to paragraph **E. 4. CHANGES IN CONDITIONS:**

**C. Interpretation**

Interpretation of this policy will be governed by the laws of the State of Ohio.

**D. Prejudgment Interest**

Should contractual prejudgment interest be awarded by any judicial tribunal on the amount due and payable under this policy pursuant to Ohio Revised Code Section 1343.03(A), such interest shall be calculated based on the 'federal short-term rate,' computed in accordance with Ohio Revised Code Section 5703.47.

**Grange Indemnity Insurance Co.**



| Endorsement | XA 03 |
|---|---|

**Policy Number: XA      2046808**

**AUTO MEDICAL PAYMENTS COVERAGE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay "reasonable" expenses incurred for "necessary" medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. "You" while "occupying" a covered "auto", when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household

or domestic work performed principally in connection with a residence premises.

3. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by "you" or furnished or available for "your" regular use.

4. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

5. "Bodily injury" sustained by any person while "occupying" "your" insured "auto" while it is being used or maintained by a person when employed or engaged in the business of selling, repairing, parking, storing, servicing, delivering or while testing, road testing, parking or storing "autos" unless the business is "yours".

6. "Bodily injury" arising directly or indirectly out of:

   **a.** War, including undeclared or civil war;

   **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained while "occupying" any vehicle, for the purpose of:

   **a.** participating in; or

   **b.** practicing or preparing for any race or speed contest; or

**BK1190 (05-2011)**                                        **continued...**

**Grange Indemnity Insurance Co.**

██████████████████████████

| Endorsement | XA 03 |
|---|---|

**Policy Number: XA      2046808**

## AUTO MEDICAL PAYMENTS COVERAGE

   c. being operated on a driving track in a facility designed for racing vehicles.

9. "Bodily injury" sustained while "occupying" any vehicle while the "insured" is committing or attempt to commit a felony, or while the "insured' is involved in an illegal occupation.

10. "Bodily injury" sustained while "occupying" any motorized vehicle having fewer than four wheels.

11. "Bodily injury" caused by the operation of "your" covered "auto" by any driver not meeting legal age requirements to operate a vehicle in the state shown in the Declarations.

12. "Bodily injury" sustained in any "accident " which occurs outside the coverage territory.

### D. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

The limit for funeral expenses shall not exceed $1,500 per person, subject to the Limit Of Insurance listed in the Declarations for this coverage.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

We will not be liable under this policy for any medical expenses paid or payable under the provisions of any:

1. Worker's Compensation or disability benefits law or any similar law;

2. State No-Fault Law requiring personal injury protection;

3. Premises insurance providing coverage for medical expenses; or

4. Individual, blanket, or group accident, disability or hospitalization; or

5. Medical, surgical, hospital or funeral services, benefit or reimbursement plan.

### E. Changes In Conditions

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. The reference in Other Insurance in the Business Auto Coverage Form to other collectible insurance applies only to other collectible auto medical payments insurance.

2. We have the right to utilize outside sources, vendors, experts, consultants, and software tools of our choosing to review the medical expense invoices and medical records to assist us in determining, among other things, if the expenses and treatment are reasonable and necessary.

### F. Additional Definitions

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Reasonable", as used in this endorsement, means expenses that are consistent with the usual charges of the majority of similar medical providers in the geographic area in which the expenses were incurred for the specific medical service.

Grange Indemnity Insurance Co.

██████████████████████

| **Endorsement** | **XA 03** |
|---|---|

**Policy Number: XA     2046808**

## AUTO MEDICAL PAYMENTS COVERAGE

**4.** "Necessary", as used in this endorsement, means services that are rendered by a medical provider within the legally authorized scope of the provider's practice and are recognized within that practice as being appropriate treatment in achieving maximum medical improvement for the "bodily injury" sustained in the accident.

**Grange Indemnity Insurance Co.**

████████████████████████

| **Endorsement** | **XA 35** |

**Policy Number: XA      2046808**

## Motor Truck Cargo Liability Coverage
## SCHEDULE VEHICLE FORM

This endorsement modifies insurance provided under the following:

### BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Business Auto Coverage Form apply unless modified by the endorsement.

### I. AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Motor Truck Cargo Liability Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Additional Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

### II. ADDITIONAL DEFINITIONS

1. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

2. "Limit" means the amount of coverage that applies.

3. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radio-active irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot,

vapor, and waste. Waste includes materials to be disposed of as well as recycled, re-claimed, or reconditioned, as well as disposed of; and

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

4. "Specified perils" means fire; lightning; wind-storm; hail; collision, overturn, or derailment of a transporting conveyance; collapse of a bridge or culvert; and theft.

5. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

6. "Vehicle" means any one truck, tractor, trailer, semitrailer or combination of these pulled by one power unit.

### III. COVERAGE

"We" cover "your" legal liability for loss to covered property while under "your" care, custody, and control that "you" become legally obligated to pay as a common or contract carrier under a bill of lading, contract of carriage, or shipping receipt issued by "you".

"We" do not pay for costs, expenses, fees, fines, penalties, or damages resulting from "your" violation of any law or regulation relating to any delay in payment, denial, or settlement of any claim.

### IV. PROPERTY COVERED

**Vehicles** -- "We" cover direct physical loss caused by a covered peril to property of others described on the "declarations". "We" cover described property while in due course of transit on or in a vehicle described on the "declarations".

continued...

**Grange Indemnity Insurance Co.**

| Endorsement | XA 35 |

**Policy Number: XA      2046808**

**Motor Truck Cargo Liability Coverage
SCHEDULE VEHICLE FORM**

## V.  PROPERTY NOT COVERED

1. **Art** -- "We" do not cover objects of art including paintings and statuary.

2. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

3. **Explosive or Radioactive Material** -- Explosives, ammunition, fireworks, or radioactive material.

4. **Jewelry, Stones, and Metals** -- "We" do not cover jewelry, precious or semi-precious stones, gold, silver, platinum, or other precious metals or alloys.

5. **Live Animals** -- "We" do not cover live animals including cattle or poultry unless death is caused or made necessary by a "specified peril".

6. **Money and Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

7. **Other Carriers** -- "We" do not cover property while in the custody of any other carrier.

8. **Property Not Under a Bill of Lading** -- "We" do not cover property for which no bill of lading or shipping receipt has been issued.

9. **Property On Vehicles** -- "We" do not cover property in or on any one "vehicle" if the "vehicle" is under "your" control and has remained at any dock, depot, station, terminal, or other location for more than 72 hours after arrival.

10. **Storage** -- "We" do not cover property in due course of transit that is held in storage unless storage is specified in a bill of lading, shipping receipt, or contract of carriage.

11. **Vehicles** -- "We" do not cover transporting vehicles including tarpaulins.

## VI.  ADDITIONAL COVERAGES

1. **Debris Removal** -

   a. **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

   b. **We Do Not Cover** -- This coverage does not include costs to:

      1) extract "pollutants" from land or water; or

      2) remove, restore, or replace polluted land or water.

   c. **Limit** --" We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for damaged property.

   d. **Additional Limit** --"We" pay up to an additional $10,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

   e. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

**Grange Indemnity Insurance Co.**

███████████████████

| Endorsement | XA 35 |
|---|---|

Policy Number: XA     2046808

**Motor Truck Cargo Liability Coverage**
**SCHEDULE VEHICLE FORM**

2. **Defense Costs** -

   a. **Coverage** -- "We" have the option to defend any "suit" brought against "you" as a result of damage to covered property caused by a covered loss. "We" may investigate and settle a claim or "suit".

   b. **Coverage Limitation** -- "We" do not have to provide a defense after "we" have paid the "limit" as a result of a judgment or written settlement.

   c. **You Must Not** -- "You" must not:

      1) admit liability for a loss, settle a claim, or incur expense without "our" written consent; or

      2) interfere with "our" negotiation for a settlement.

   d. **Covered Expenses** -- "We" will pay the following expenses associated with any "suit" "we" defend:

      1) expenses that "we" incur while investigating and defending the "suit";

      2) actual loss of "your" salary, up to $250 per day, for "your" time spent away from work at "our" request;

      3) expenses that "you" incur at "our" request;

      4) all costs that "you" are required to pay as a result of any "suit" "we" defend;

      5) interest that accrues after entry of a judgment, until "we" tender, deposit in court, or pay "our" part of the judgment;

      6) interest that is awarded against "you" before the entry of a judgment. If "we" make an offer to settle the "suit", "we" will not pay any interest that accrues after the offer to settle; and

      7) cost of a bond for the release of attachments. "We" are not required to furnish a bond itself.

      No deductible applies.

3. **Freight Charges** -

   a. **Coverage** -- "We" pay freight charges that are due "you" which become uncollectible because of a direct physical loss to covered property caused by a covered peril.

   b. **Limit** -- The most "we" pay under this additional coverage for all freight charges in any one loss is $2,500.

4. **Pollutant Cleanup and Removal** -

   a. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

   b. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

   c. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

**Grange Indemnity Insurance Co.**

| Endorsement | XA 35 |

**Policy Number: XA     2046808**

**Motor Truck Cargo Liability Coverage**
**SCHEDULE VEHICLE FORM**

d. **Limit** -- The most "we" pay for each location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

5. **Vehicle Substitution --** "You" may use a temporary substitute if a vehicle described on the "declarations" is disabled or replaced. The most that "we" pay for loss involving a substitute vehicle is the "limit" indicated on the "declarations" for the vehicle that has been disabled or replaced.

6. **Protection of Property**

a. **Coverage --** "We " will pay the reasonable cost incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property.

b. **We Do Not Cover** -- This coverage does not include repairs or emergency measures performed on property which has not been damaged by a peril insured against.

c. **Time Limitation** -- The reasonable cost incurred for the protection of property must incur within a 12 hour period after the covered peril occurs.

d. **Limit** -- The most "we" will pay for the aggregate of all expenses under sub part a. above is $5,000.

## VII.   PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## VIII.   PERILS EXCLUDED

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

c. **War And Military Action** -- "We" do not pay for loss caused by:

1) war, including undeclared war or civil war; or

2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

**Grange Indemnity Insurance Co.**

██████████████████████████

| Endorsement | XA 35 |

**Policy Number: XA      2046808**

**Motor Truck Cargo Liability Coverage
SCHEDULE VEHICLE FORM**

3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

   a. **Contamination or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; insects; vermin; change in flavor; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

   b. **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

      1) "you";

      2) others who have an interest in the property;

      3) others to whom "you" entrust the property;

      4) "your" partners, officers, directors, trustees, or joint adventurers; or

      5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

   c. **Labor Disturbances** -- "We" do not pay for loss caused by labor disturbances including strikes, lock outs, riots, civil commotion, or the acts of any person taking part in a labor disturbance.

   d. **Loss of Use** -- "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

   e. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

   f. **Shifting, Packing, and Handling** -- "We" do not pay for loss caused by shifting of load, improper packing, or rough handling. "We" do pay for loss caused by a "specified peril".

   g. **Temperature/Humidity** -- "We" do not pay for loss caused by humidity, dampness, dryness, or changes in or extremes of temperature.

   h. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

   i. **Wear and Tear** -- "We" do not pay for loss caused by wear and tear.

**Grange Indemnity Insurance Co.**

| Endorsement | XA 35 |
|---|---|

**Policy Number: XA      2046808**

**Motor Truck Cargo Liability Coverage
SCHEDULE VEHICLE FORM**

## IX.  WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

3. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- If the damaged and undamaged property is in "your" care, custody, or control, "you" must exhibit the property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## X.  VALUATION

1. **Invoice** -- The value of covered property is based on the amount indicated on the invoice.

2. **No Invoice** -- If there is no invoice, the value of covered property will be based on the actual cash value at the time of the loss (with a deduction for depreciation). The value will not exceed the value, if any, stated in bills of lading or shipping receipts.

**Grange Indemnity Insurance Co.**

██████████████████████████

| Endorsement | XA 35 |
|---|---|

**Policy Number: XA      2046808**

**Motor Truck Cargo Liability Coverage**
**SCHEDULE VEHICLE FORM**

## XI.  HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "declarations" in any one occurrence.

   "We" may pay all or a portion of the deductible amount to settle a loss or "suit". If "we" do pay all or a portion of the deductible amount, "you" must promptly reimburse "us" for the amount the "we" paid.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., and 5. under How Much We Pay:

   a. **We pay the Lesser Of** -- "We" pay the lesser of:

      1) the amount determined under Valuation;

      2) the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

      3) the "limit" for "vehicle" indicated on the "declarations".

   b. **Catastrophe Limit** -- In no event will "we" pay more than the catastrophe "limit" indicated on the "declarations" regardless if a loss involves one or more "vehicles".

4. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

5. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## XII.  LOSS PAYMENT

1. **Our Options** -- "We" have the following options:

   a. pay the value of the loss;

   b. pay the cost of repairing or replacing the loss;

   c. rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

   d. take all or any part of the damaged property at the agreed value.

   "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Payment of Loss** -- An insured loss will be payable 30 days after a satisfactory proof of loss is received or a final judgment award has been entered. If a loss has been paid or made good by others "we" will not be liable for any part of the loss.

**Grange Indemnity Insurance Co.**

███████████████████████████████

| Endorsement | XA 35 |
|---|---|

**Motor Truck Cargo Liability Coverage
SCHEDULE VEHICLE FORM**

**Policy Number: XA      2046808**

### XIII.   OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applic-able law, that condition is amended to conform to that law.

3. **Estates** -- This provision applies only if the insured is an individual.

   On "your" death, "we" cover "your" legal representative as an insured.

   This person or organization is an insured only with respect to property covered by this coverage. This coverage does not extend past the policy period indicated on the "declarations".

4. **Misrepresentation,   Concealment,   or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or

      2) "your" interest herein; or

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

5. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

6. **Recoveries** -- If "we" pay for a loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

**Grange Indemnity Insurance Co.**

████████████████████████████

| Endorsement | XA 35 |
|---|---|

**Policy Number: XA      2046808**

**Motor Truck Cargo Liability Coverage**
**SCHEDULE VEHICLE FORM**

c. any recovery expenses incurred by either are reimbursed first;

d. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

7. **Restoration of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

8. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

9. **Suit Against U**s -- No one may bring a legal action against "us" under this coverage unless all of the "terms" of this coverage have been complied with and the suit has been brought within two years after "you" first have knowledge of the loss. If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

No one has the right under this coverage to join "us" as a party or otherwise bring "us" into a legal action asking for damages from "you". Legal action may be brought against "us" to recover an agreed upon settlement on a final judgment award, subject to the "terms" of this coverage.

10. **Your Reimbursement To Us** -- "You" will reimburse "us" if "we" pay a loss because of any endorsement to this policy:

a. that is required by law or any regulatory authority; and

b. which extends "our" liability for loss.

Includes copyrighted material of American Association of Insurance Services, with its permission.

**Form F**
**UNIFORM MOTOR CARRIER BODILY INJURY AND**
**PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT**

It is agreed that:

1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2. The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commissions indicated below.

3. This endorsement may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

Attached to and forming part of policy No.  XA 2046808-00

issued by  Grange Indemnity Insurance Co. , herein called

Company, of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

to  BRIGHT AUTO LLC

of ▮▮▮▮▮▮▮▮▮▮▮▮

Dated at ▮▮▮▮▮▮▮▮▮▮▮▮  this 02 day of AUGUST 20 13

Countersigned by ▮▮▮▮▮▮▮▮▮▮▮▮

Authorized Representative

**STATE COMMISSIONS WITH WHOM UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE HAS BEEN FILED WITH:**

OHIO

MC 1632 (Ed. 6-71)

**Form I**
**UNIFORM MOTOR CARRIER CARGO**
**INSURANCE ENDORSEMENT**

It is agreed that:

1. The certification of the policy as proof of responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for motor carrier cargo liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2. The Uniform Motor Carrier Cargo Certificate of Insurance has been filed with the State Commissions indicated below.

3. This endorsement may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.



Attached to and forming part of policy No.  XA  2046808-00

issued by     Grange Indemnity Insurance Co.                                       , herein called

Company, of ████████████████████████

to             BRIGHT AUTO LLC

of  ████████████████████████

Dated at  ████████████████████         this  02   day of  AUGUST         20 13

Countersigned by ████████████████████████

Authorized Company Representative

This form determined by the National Association of Railroad and Utilities Commissioners and promulgated by the Interstate Commerce Commission pursuant tot the provisions of Section 202 (b) (2) of the Interstate Commerce Act (49 U.S.C., Sec. 302 (b) (2)).

**STATE COMMISSIONS WITH WHOM UNIFORM MOTOR CARRIER CARGO CERTIFICATE OF INSURANCE HAS BEEN FILED WITH:**

OHIO

MC 2444A (Ed. 9-99)