**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 28, 2019

<u>Via ECF</u>
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United State Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

> **Re:** ***United States v. Sayfullo Habibullaevic Saipov*, S1 17 Cr. 722 (VSB)**

Dear Judge Broderick:

We write in response to Saipov's October 25, 2019 letter requesting that the Court order the Government to prepare and submit, if necessary, parole applications for five additional penalty phase witnesses (the "Additional Witnesses").  (Dkt. No. 209 ("Ltr.")).  Saipov's request should be denied because it is premature and misstates the record.

As the Court is aware, on September 9, 2019, the Court issued an order directing the Government to submit parole applications for four of Saipov's immediate family members ("Saipov's Relatives").  (Dkt. No. 205 ("Order") at 12-14).  The Court issued the Order after extensive briefing concerning Saipov's Relatives, including the various steps they had taken to attempt to gain entry into the United States.  With respect to other potential mitigation witnesses, the Court directed the defense "to begin [the] visa application process as soon as possible, and to also begin exploring alternative arrangements for obtaining testimony from those individuals."  (Order at 13).  Saipov now seeks to compel the Government to submit more than double the number of parole applications ordered by the Court just a month ago.  In making this application, Saipov provides virtually no information about the Additional Witnesses other than that they are not his immediate family members, and Saipov fails to explain why the Additional Witnesses were not identified in his initial application for immigration relief for Saipov's Relatives filed on May 31, 2019.  Saipov's request should be denied for several reasons.

*First*, Saipov misrepresents the Government's position.  The defense initially advised the Government that it viewed the Court's Order as requiring the Government to submit parole applications for not only Saipov's Relatives, but also the Additional Witnesses.  The Government disagreed, and it seems the defense has now conceded that position.  Instead, the defense now seeks an Order compelling the Government to prepare parole applications for the Additional Witnesses in the event their visa applications are denied—a request that is entirely premature.  As of October 3, 2019, when the defense first identified the Additional Witnesses to the Government,

The Honorable Vernon S. Broderick
October 28, 2019
Page 2

those individuals had not yet even applied for visas, and even now, according to Saipov, they only "are in the process of attempting to obtain visas." (Ltr. at 2).

*Second*, Saipov's request is premised on a fundamental misunderstanding of the parole application process. Directing the Government to submit a parole application is an extraordinary remedy, and the process of submitting a parole application is not a rote administrative task. In order to prepare such an application, a high-ranking official from the requesting agency—here, the Federal Bureau of Investigation (the "FBI")—must certify that the parolee does not pose a threat to national security, is not a risk of absconding, and that the FBI will take full responsibility for the oversight of the parolee. These issues require careful consideration of, among other things, whether the presence of one or more parolees would create an unacceptable safety risk and the likelihood that a parolee will try to remain in the United States by seeking asylum or asking for protection under the Convention Against Torture, all of which requires extensive research.[1]

By ordering the Government to submit parole applications for the Additional Witnesses, the Court would be, in essence, directing the FBI to conduct this labor-intensive analysis now, regardless of whether the witness is eligible for a visa. The adjudication of the Additional Witnesses' visa applications (once submitted), including the background information and immigration history developed as part of the application process, will likely guide the FBI's and Department of Homeland Security ("DHS")'s analysis of whether parole applications are appropriate for those individuals. Similarly, Saipov should provide the Government with his *ex parte* submission concerning the materiality of the Additional Witnesses' testimony, which will further inform the Government's view on the appropriateness of parole applications. Indeed, to submit a parole application, the FBI must also explain the significance of the applicant to the case—key information that Saipov is currently withholding from the Government with respect to the Additional Witnesses.

Saipov's reliance on *United States v. Tsarnaev*, No. 13 Cr. 10200 (D. Mass.) in this regard is misplaced. Saipov cites *Tsarnaev* as a case "fully consistent" with his motion to compel the Government to submit nine parole applications. (Ltr. at 2). However, the Court in *Tsarnaev* did not "order" the Government to submit parole applications. (*Id.*). Rather, the Court "advise[d]" the Department of Homeland Security that certain individuals were necessary for the penalty phase of trial and "requested that the applications for entry filed by these witnesses be expedited so that the trial can proceed expediently." (*United States v. Tsarnaev*, No. 13 Cr. 10200, Dkt. 1182 at 1-2). Moreover, while it is true that defendants have secured the appearance of foreign nationals via parole in *Tsarnaev* and other cases, these are case- and witness-specific determinations that require careful consideration by the DHS with input from law enforcement. The fact that paroles have been issued to defense witnesses in previous cases does not mean that paroles are appropriate here.

---

[1] Saipov's broad representations to the Court and the Government that the Additional Witnesses do not present a safety risk are insufficient to satisfy this rigorous process and, in any event, provide little comfort given that Saipov "neglected to mention" key information about the immigration history of Saipov's Relatives in his application to seek immigration relief for them (Order at 10), such as the fact that they had over-stayed their visas in the past.

The Honorable Vernon S. Broderick
October 28, 2019
Page 3

*Third*, the time it will take for Saipov to use the appropriate channels to seek visas for the Additional Witnesses before any consideration of paroles is made will not prejudice him.  The Government and the Court will be able to evaluate whether parole applications are appropriate in advance of trial.  And even if parole applications are not sought, or are denied, for the Additional Witnesses, the Court has already explained that "Saipov has no constitutional right to present evidence through live, in-person testimony only."  (Order. at 5).  In that respect, and as Saipov notes in his letter, the parties are conferring with respect to Rule 15 depositions for over a dozen potential defense witnesses.  The Government has told Saipov that it has no general objection to those depositions—subject to Saipov identifying those individuals and providing basic information concerning their ability to travel to the United States and proposed testimony.  While Saipov has not yet provided this information to the Government, we presume that the Additional Witnesses are captured within Saipov's intended list of Rule 15 deponents.  To ensure an expeditious process once Saipov provides the requested information to the Government, the Government has already begun coordinating with the State Department, the Department of Justice's Office of International Affairs, and the FBI in advance of those potential depositions.

*Finally*, Saipov's implication that he has somehow been wrongfully prevented from presenting testimony of witnesses already present in the United States is incorrect.  Saipov contends that some of these potential witnesses are "afraid" to cooperate with the defense, and implies that this is because they have allegedly been subjected to "interrogation, detention, and FBI surveillance." (Ltr. at 3).  What Saipov claims to be impermissible conduct on the part of the FBI is merely appropriate law enforcement investigation into the deadliest terrorist attack in New York City since September 11, 2001.  Following Saipov's terrorist attack—in which he mercilessly ran over dozens of people, ultimately killing eight and injuring many more—the FBI and other law enforcement agencies appropriately conducted a comprehensive, professional, and lawful investigation, which included surveillance and interviews of  hundreds of witnesses.  To not conduct these common-sense investigative steps would have exposed the public to the potential of additional attacks and risked the loss of important evidence.

To be clear, at no point during that investigation has the Government or the FBI prevented potential witnesses from speaking with the defense or discouraged them from doing so.  Rather, as the Government has reiterated to the defense on multiple occasions in written correspondence, the Government has made clear to witnesses that the decision whether to speak with defense counsel is entirely their own, and the Government understands that efforts to speak with witnesses are an important part of Saipov's preparation for trial.  Far from trying to hinder the defense's ability to speak with witnesses, the Government has, in fact, produced witness interviews and contact information far in advance of trial and the typical deadline for doing so.

\* \* \*

The Honorable Vernon S. Broderick
October 28, 2019
Page 4


       In sum, Saipov has provided no justification for his extraordinary request to compel the Government to prepare five additional parole applications even before knowing whether those witnesses can obtain visas.  While the Government will, as it has throughout this case, continue to work with the defense on witness availability issues in good faith, Saipov's present request should be denied.

                                      Respectfully submitted,

                                      GEOFFREY S. BERMAN
                                      United States Attorney


                    by: _____/s/_____
                                    Amanda Houle
                                      Sidhardha Kamaraju
                                      Matthew Laroche
                                      Jason Richman
                                      Assistant United States Attorneys
                                      (212) 637-2194/6523/2420/2589


cc:  Defense Counsel (via ECF)