UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/29/2019
```

-------------------------------------------------------X
                                   :

UNITED STATES OF AMERICA        :
                                   :

        -against-               :            S1 17-CR-722 (VSB)
                                   :

SAYFULLO HABIBULLAEVIC SAIPOV,   :       **OPINION & ORDER**
                                   :

           Defendant.         :
                                   :
-------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

        Defendant Sayfullo Habibullaevic Saipov is charged in a twenty-eight count superseding

indictment, filed on June 19, 2018 (the "Indictment").  The Indictment charges Saipov with:

(1) eight counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); (2) eight

counts of assault with a dangerous weapon and attempted murder in aid of racketeering, in

violation of 18 U.S.C. § 1959(a)(3); (3) ten additional counts of attempted murder in aid of

racketeering, in violation of 18 U.S.C. § 1959(a)(5); (4) one count of providing material support

to a designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B; and (5) one

count of violence and destruction of a motor vehicle resulting in death, in violation of 18 U.S.C.

§§ 33(a) and 34.

        Before me is Saipov's Motion to Compel Notice and Discovery of Government

Surveillance Related to Sayfullo Saipov and His Associates, (the "Motion to Compel

Discovery," Doc. 142), as well as the Government's classified, *ex parte* submissions

(1) opposing Saipov's Motion to Compel Discovery and (2) seeking a protective order pursuant

to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3 § 4, and

Federal Rule of Criminal Procedure 16(d)(l), authorizing the Government to withhold certain

classified material from discovery.  Because I find that (1) it is appropriate to utilize *ex parte* proceedings to decide these motions, (2) the materials in question qualify as classified information, and (3) a protective order withholding the classified information from discovery is warranted, the Government's motion for a protective order is GRANTED.  Because I also find that the classified information is not discoverable under Federal Rule of Criminal Procedure 16 or the *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), line of cases, Saipov's Motion to Compel Discovery is DENIED.

**I.**   **Background**

On November 20, 2018, the Government produced to Saipov certain recorded communications between Saipov and other individuals (the "Intercepts").  (Saipov Br. 2.)[1]  The Government's disclosures did not explain how the Government obtained the Intercepts, or whether and/or "how the government used this intelligence to develop its trial and potential penalty phase evidence."  (*Id.*)  On March 18, 2019, Saipov filed a motion to compel discovery of (1) the surveillance program(s) or technique(s) the Government used to monitor Saipov's communications; (2) the purported legal authority for that surveillance; and (3) the warrants, orders, directives, and/or applications that supported the surveillance used.  (*Id.* at 6.)  In his motion, Saipov acknowledges the Government's representation that "Saipov was never an investigative target" of the surveillance at issue, (*id.* at 3); however, he contends that the requested discovery is necessary to challenge the lawfulness of surveillance that the Government used to record his conversations with others; to litigate whether the Government derived any of the evidence it plans to introduce during trial from unlawful surveillance techniques; and to

---

[1] "Saipov Br." refers to the Motion to Compel Notice and Discovery of Government Surveillance Related to Sayfullo Saipov and His Associates, filed March 18, 2019.  (Doc. 142.)

prepare a defense against the death penalty that examines "whether others share moral culpability for the events of October 31, 2017, because they influenced Mr. Saipov's behavior," (*id.* at 1).

On April 5, 2019, the Government submitted a letter requesting that I hold an *ex parte* conference pursuant to CIPA Section 2, 18 U.S.C. app. 3 § 2.  (Doc. 149.)  That conference was held on April 9, 2019.  (*See* Doc. 154.)  On April 16, 2019, the defense submitted an objection to future Government requests for *ex parte* CIPA conferences and/or for leave to file any CIPA applications *ex parte*.  (Doc. 157.)  The defense further requested an opportunity to "substantively brief [its] objections" before I relied on any information I received on an *ex parte* basis "to decide the scope of Mr. Saipov's discovery of classified information, including his Motion to Compel [Discovery]."  (*Id.*)  On May 21, 2019, the Government requested another *ex parte* conference to address the Government's anticipated motion to "delete certain materials from discovery pursuant to [CIPA] Section 4 so that it will not need to reveal those materials." (Doc. 172.)  I granted the Government's request but advised the defense that I would "refrain from ruling on the substance of any Government motion pursuant to Section 4 of the CIPA before Defendant has had an opportunity to object to my deciding such a motion on an ex parte basis."  (Doc. 175.)  This second *ex parte* conference was held on May 22, 2019.  (*See id.*)

On July 19, 2019, the Government made two submissions in connection with Saipov's Motion to Compel Discovery.  First, the Government publicly filed a three-page letter in opposition to Saipov's motion on the public docket.  (Doc. 191.)  In that letter, the Government explained that the Motion to Compel Discovery should be denied for two reasons:

> First, as the Government has told Saipov, the Government is not using the Intercepts at any stage of this case and did not rely on the Intercepts to derive evidence against Saipov.  .  .  .  Second, consistent with the Government's prior representations to Saipov, the Government has not identified any information concerning Saipov's

connections to ISIS, or how or by whom Saipov was radicalized in support of ISIS or any other terrorist group—other than what has already been produced in discovery.

(Gov't Opp'n 1.)[2]  On the same day, the Government also made a classified, *ex parte* submission pursuant to CIPA Section 4, 18 U.S.C. app. 3 § 4, and Federal Rule of Criminal Procedure 16(d)(1) ("Rule 16(d)(1)"), seeking leave to withhold certain classified information (the "Classified Materials") from discovery.[3]  On July 22, 2019, I instructed Saipov to "raise any objection he has to my considering the Government's [July 19, 2019 submission] in camera and ex parte" on or before August 9, 2019.  (Doc. 193.)  On August 9, 2019, Saipov submitted his reply in further support of his Motion to Compel Discovery, and objected to the Government's failure to address Saipov's arguments "through adversarial briefing."  (Saipov Reply 1.)[4]

On September 13, 2019, I directed the Government to appear for a third *ex parte* conference in connection with its July 19, 2019 classified, *ex parte* submission.  (Doc. 206.)  That conference was held on September 17, 2019.  (*See id.*)  In response to certain questions that I posed during that conference, the Government filed a supplemental classified, *ex parte* submission on October 4, 2019.  (*See* Doc. 207.)

## II.    *Ex Parte* Proceedings

I first analyze the appropriateness of deciding the Government's motion for a protective order *ex parte* and without an adversary proceeding.  I have considered Saipov's objections to my review of the Government's classified submission on an *ex parte* basis; however, I conclude

---

[2] "Gov't Opp'n" refers to the July 19, 2019 letter submitted by the Government in opposition to Saipov's Motion to Compel Discovery.  (Doc. 191.)

[3] The Government's *ex parte* submission addresses four categories of Classified Materials, identified as "Classified Information-1," "Classified Information-2," "Classified Information-3," and "Classified Information-4."  The conclusions set forth in this Opinion & Order apply equally to each of these four categories of Classified Materials.

[4] "Saipov Reply" refers to the Reply Motion to Compel Notice and Discovery of Government Surveillance Related to Sayfullo Saipov and His Associates, filed August 9, 2019.  (Doc. 199.)

that, in light of the national security risks that disclosure of the Classified Materials would present, it is proper for me to consider the Government's motion *ex parte*, including by holding *ex parte* conferences.

Courts routinely permit the Government to proceed *ex parte* "when the substance of classified information that the Government seeks to [] withh[o]ld from discovery is explicitly discussed in the relevant motion." *United States v. Mostafa*, 992 F. Supp. 2d 335, 339 (S.D.N.Y. 2014); *see also United States v. Ng Lap Seng*, No. S5 15-CR-706 (VSB), 2017 WL 2693625, at *1 (S.D.N.Y. June 21, 2017); *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 346121, at *6 (D. Conn. Feb. 4, 2008), *aff'd*, 630 F.3d 102 (2d Cir. 2010).  Contrary to Saipov's suggestion that the Government's request to utilize *ex parte* proceedings "misapprehends the purpose of CIPA," (Saipov Reply 1), both CIPA and Rule 16(d)(1) expressly contemplate *ex parte* proceedings.  Rule 16(d)(1) states that, in conjunction with a request to "deny, restrict, or defer discovery[,] . . . . [t]he court may permit a party to show good cause by a written statement that the court will inspect ex parte"; similarly, CIPA Section 4 provides, "[t]he court may permit the United States to make a request for [] authorization [to delete specified items of classified information from discovery] in the form of a written statement to be inspected by the court alone," 18 U.S.C. app. 3 § 4.

Saipov contends that consideration of the Government's motion *ex parte* would violate his constitutional rights.  (*See generally* Saipov Reply.)  Saipov is wrong.  The Second Circuit has consistently recognized that "a method for protection of classified material is necessary, and [CIPA] procedures have been established by Congress and held to be constitutional." *United States v. Stewart*, 590 F.3d 93, 132 (2d Cir. 2009).  Moreover, the Circuit has emphasized that, "where the government moves to withhold classified information from the defense, 'an adversary

hearing with defense knowledge would defeat the very purpose of the discovery rules.'"  *United States v. Abu-Jihaad*, 630 F.3d 102, 143 (2d Cir. 2010) (quoting *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008)); *see also United States v. Zazi*, No. 10-CR-60 (JG), 2011 WL 2532903, at *3 (E.D.N.Y. June 24, 2011) ("With respect to the government's request to delete irrelevant classified materials from discovery, an adversary proceeding would be particularly anomalous, as it would provide defense counsel access to sensitive information to which, if the government is correct, they are not entitled under any theory.").  Therefore, I grant the Government's request to proceed *ex parte* in connection with its motion under CIPA Section 4 and Saipov's Motion to Compel Discovery, and overrule Saipov's objection to my use of *ex parte* proceedings in connection with my consideration of the pending motions.

### III.    The Classified Information Procedures Act

The fundamental purpose of CIPA is to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial."  *Aref*, 533 F.3d at 78 (internal quotation marks omitted); *see also United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (explaining that CIPA "was designed to establish procedures to harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest").  CIPA defines "classified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute or regulation, to require protection against unauthorized disclosure for reasons of national security."  18 U.S.C. app. 3 § l(a).  As a threshold matter, the Government must first demonstrate that the information at issue is, in fact, classified.  *See Abu-Jihaad*, 2008 WL 346121, at *2 ("Because CIPA applies to classified information, any motion under CIPA must first establish that the information in question is classified.").  This is

typically achieved through the submission of a declaration executed by a Government official with authority over the material at issue, which describes "the reasons for the classification of the information and the harm to the national security that could result from its disclosure." *Id.*; *see also United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) ("In order to show that material is classified, the government must make a formal claim of state secret privilege," which "must 'be lodged by the head of the department which has actual control over the matter . . . .'" (quoting *United States v. Reynolds*, 345 U.S. 1, 7–8 (1953))).

After determining that the material in question qualifies as classified information, the court must next decide whether the Government will be permitted to withhold the classified information at issue from discovery.  CIPA Section 4 provides that

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

18 U.S.C. app. 3 § 4.  According to the Second Circuit, this provision "does not confer on the government a privilege to refrain from disclosing classified information," but rather "presupposes" such a privilege, and "clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(l) to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security."  *Abu-Jihaad,* 630 F.3d at 140 (internal quotation marks omitted); *see also Aref*, 533 F.3d at 78.

The governmental privilege contemplated under CIPA has its origins in the common-law privilege against disclosure of state secrets, which "allows the government to withhold information from discovery when that disclosure would be inimical to national security."  *Abu-Jihaad*, 630 F.3d at 140–41 (quoting *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546

(2d Cir. 1991)).  In determining whether a criminal defendant's right to present a defense overrides the state secrets privilege, courts apply a three-part test, which first asks "whether the material in dispute is discoverable."  *Id.* at 141.  The discoverability of evidence is governed by Rule 16, which, at "its most inclusive," "requires the government to produce any written or recorded statements made by the defendant and in the government's possession if the statements are 'relevant.'"  *United States v. El-Hanafi*, No. S5 10 CR 162 (KMW), 2012 WL 603649, at *3 (S.D.N.Y. Feb. 24, 2012) (quoting Fed. R. Crim. P. 16(a)(1)(B)(i)); *see also Abu-Jihaad*, 2008 WL 346121, at *3 ("CIPA was not 'intended to expand the traditional rules of criminal discovery . . . .'" (quoting *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990))).

If the classified information is discoverable, the court then determines "whether the state-secrets privilege applies."  *Abu-Jihaad*, 630 F.3d at 141.  "For purposes of this test, the state-secrets privilege applies if '(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'"  *Id.* (quoting *Aref*, 533 F.3d at 80).  If the material is both discoverable and privileged, the court then evaluates whether the information is "material to the defense, i.e., useful to counter the government's case or bolster a defense."  *Id.* (quoting *Stewart*, 590 F.3d at 131); *see also Aref*, 533 F.3d at 79 (noting that the privilege must "give way when the information is relevant and helpful to the defense of an accused," and explaining that "we have interpreted 'relevant and helpful' . . . to mean 'material to the defense'" (internal quotation marks omitted)).

"'[I]n assessing the materiality of withheld information,' a court must 'consider not only the logical relationship between the information and the issues in the case, but also the

importance of the information in light of the evidence as a whole.'" *Zazi*, 2011 WL 2532903, at

*2 (quoting *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 125 (2d Cir.

2008)).  Importantly, "[t]o be helpful or material to the defense, evidence need not rise to the

level that would trigger the Government's obligation under *Brady v. Maryland*, to disclose

exculpatory information." *Aref*, 533 F.3d at 80 (citation omitted).  Information is helpful if,

when viewed against discovery already provided, it "creates 'a reasonable likelihood that the

testimony could affect the judgment of the trier of fact.'" *El-Hanafi*, 2012 WL 603649, at *4

(quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 874 (1982)).  Only when the

information at issue is either relevant or helpful to the defense must the court take the final step

of balancing the "public interest in protecting the flow of information against the individual's

right to prepare his defense." *Mostafa*, 992 F. Supp. 2d at 338 (quoting *Roviaro v. United States*,

353 U.S. 53, 62 (1957)).

## IV.    Discussion

In reaching a determination as to the parties' respective motions, I have reviewed, *in

camera*, the Government's classified submissions—including the declarations of various

Government officials submitted in support of the Government's motion—and certain non-

classified materials and documents that were produced to the defense.  Although I have not

reviewed all of the underlying Classified Materials, the Government provided detailed

summaries of the materials in its possession.  After carefully examining the Government's

submissions, I find that a protective order withholding the Classified Materials from discovery is

warranted.

I first conclude, based on a review of declarations from several Government officials, that

the information at issue is in fact classified.  *See Abu-Jihaad*, 2008 WL 346121, at *2;

*Klimavicius-Viloria*, 144 F.3d at 1261.  Upon close examination of the Government's motion

papers and the other aforementioned documents, I further find that the Classified Materials are

not discoverable under the *Brady v. Maryland*, 373 U.S. 83, and *Giglio v. United States*, 405

U.S. 150, line of cases or under Federal Rule of Criminal Procedure 16.  The Government has

repeatedly represented that it does not intend to use the Intercepts at trial, either during the guilt

phase or during a potential penalty phase.  (*See, e.g.*, Gov't Opp'n 1 ("[T]he Government is not

using the Intercepts at any stage of this case . . . ."); *see also* Fed. R. Crim. P. 16(a)(1)(E)

(requiring the Government to provide defendants with any document or object that "the

government intends to use . . . in its case-in-chief at trial").)  The Government has also

established to my satisfaction that none of the evidence it intends to introduce—including

evidence gathered as a result of Saipov's post-arrest interrogation[5]—was derived from the

surveillance at issue.[6]  In addition, I find that the Government has adequately identified specific

facts demonstrating that disclosure of the Classified Materials would be expected to cause

serious and, in some cases, exceptionally grave damage to national security.  *See United States v.*

---

[5] This ruling is not and should not be construed as a ruling on Saipov's pending motion to suppress his post-arrest statements, (Doc. 101).

[6] Saipov appears to seek notice of the specific surveillance methods the Government employed so that he can then challenge the lawfulness of that surveillance.  (*See* Saipov Br. 20 ("Mr. Saipov is entitled to know how the government monitored his communications and activities, and litigate whether the government lawfully obtained or derived the evidence it plans on using at trial . . . from that surveillance.").)  However, because the Government has agreed not to introduce any of the Intercepts—or evidence derived therefrom—at trial, I find that any challenge by Saipov to the lawfulness of the surveillance, (*see* Saipov Br. 1), would be moot.  *See United States v. Rivera*, No. 16 Cr. 175 (LGS), 2017 WL 1843302, at *1 (S.D.N.Y. May 8, 2017) (denying as moot motion to suppress evidence recovered from allegedly unconstitutional search of defendant's cell phone where Government "represent[ed] that it d[id] not intend to offer such evidence at trial"); *United States v. Barrett*, No. 15-CR-103, 2016 WL 3014667, at *6 (E.D.N.Y. May 23, 2016) (same, with respect to motion to suppress audit findings); *United States v. Conde*, No. 84 Cr. 180-CSH, 1984 WL 566, at *5 (S.D.N.Y. July 10, 1984) (finding Government's "represent[ation] to the Court that it d[id] not intend to offer" certain videotape evidence at trial mooted defendants' motion to suppress that evidence); *cf. United States v. Ullah*, No. 04-CR-30A(F), 2005 WL 629487, at *8 (W.D.N.Y. Mar. 17, 2005) (denying discovery motion as moot where defendant requested materials "which the Government presently has no intention of using"), *aff'd in part, adopted in part*, 2006 WL 1994678 (W.D.N.Y. July 14, 2006).

*Ahmed*, No. 10 Cr. 131 (PKC), 2011 WL 4915005, at *2 (S.D.N.Y. Sept. 23, 2011).  I therefore

find that the Government has properly invoked the state secrets privilege and has complied with

the procedural requirements for asserting the privilege.

      Based upon the above findings and the *ex parte* proceedings, I also conclude that the

Classified Materials are neither helpful nor relevant to the defense.  *See Abu-Jihaad*, 630 F.3d at

142 n.35 ("'[C]lassified information is not discoverable on a mere showing of theoretical

relevance,' but only where relevant information 'is at least helpful to the defense of the

accused.'" (quoting *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989)).  During the

three *ex parte* conferences I held in connection with Saipov's Motion to Compel Discovery, I,

among other things, posed specific questions to the Government regarding the Classified

Materials.  The Government provided detailed responses to my inquiries and has complied with

my additional instructions for confirming that the Classified Materials are neither helpful nor

relevant to the defense.  After scrutinizing the Government's initial and supplemental classified

submissions, I agree with the Government's conclusions.

      Even if the Classified Materials were discoverable—which they are not—I find that

Saipov would not be able to use them to "bolster his defense or to counter the government's

case," nor would the information contribute to the formulation of "a more effective defense

strategy."  *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993).  None of the

information contained in the Classified Materials "goes to the innocence of the defendant *vel*

*non,* impeaches any evidence of guilt, or makes more or less probable any fact at issue in

establishing any defense to the charges."  *Yunis*, 867 F.2d at 624.  Moreover, as the Government

explained in its publicly filed opposition, the Classified Materials do not contain "any

information concerning Saipov's connections to ISIS, or how or by whom Saipov was

radicalized in support of ISIS or any other terrorist group—other than what has already been produced in discovery." (Gov't Opp'n 1.)[7] Thus, even assuming *arguendo* that the Classified Materials are discoverable, I find that they would not be helpful to the defense's preparation for the guilt phase or a potential penalty phase of trial.

Moreover, the Government asserts that many of the Classified Materials are unhelpful to the defense for the independent reason that they are cumulative of information already produced by the Government as part of the discovery in this case. I have reviewed some of the non-classified materials represented by the Government to be duplicative of certain Classified Materials and agree, in those instances, with the Government's conclusions. *See United States v. Passaro*, 577 F.3d 207, 220 (4th Cir. 2009) ("[CIPA] permits the district court to exclude irrelevant, cumulative, or corroborative classified evidence."); *United States v. Smith*, 780 F.2d 1102, 1110 (4th Cir. 1985) (explaining that information is not helpful to the defense where it is "merely cumulative" or "speculative").

Because the Classified Materials are not discoverable or otherwise relevant or helpful to Saipov, and because much of the information contained therein is duplicative of non-classified discovery already produced, I find that withholding the Classified Materials from discovery does not hinder the defense's ability to develop mitigation evidence relating to "any aspect of [Saipov's] character or record and any of the circumstances of the offense that [Saipov] proffers as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982).

---

[7] Through my review of the Classified Materials, I have confirmed the accuracy of the Government's statement. Because the materials that the Government seeks to withhold do not contain any new information relating to Saipov's radicalization or his connection to ISIS, I find that they will not assist the defense in its exploration of "whether others share moral culpability for the events of October 31, 2017, because they influenced Mr. Saipov's behavior." (Saipov Br. 1.)

V.      **Conclusion**

For the foregoing reasons, Saipov's Motion to Compel Discovery is DENIED.  The

Government's motion for a protective order is GRANTED.  The Government is authorized to

withhold the Classified Materials from discovery, pursuant to CIPA Section 4 and Federal Rule

of Criminal Procedure 16(d)(1).  The Government's submissions are hereby sealed, and shall

remain preserved in the custody of the Classified Information Security Officer, in accordance

with established court security procedures, to be made available to the Second Circuit for its

review in the event of any appeal.

SO ORDERED.

Dated:  October 29, 2019
        New York, New York

Vernon S. Broderick
United States District Judge