UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
UNITED STATES OF AMERICA                                    :
:
    -against-                                               :     S1 17-CR-722 (VSB)
:
SAYFULLO HABIBULLAEVIC SAIPOV,                              :     **OPINION & ORDER**
:
    Defendant.                                              :
:
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/27/2020

VERNON S. BRODERICK, United States District Judge:

    Defendant Sayfullo Habibullaevic Saipov is charged in a twenty-eight count superseding indictment, filed on June 19, 2018 ("Indictment"). The Indictment charges Saipov with, among other offenses, murder and attempted murder in aid of racketeering and provision of material support to a designated foreign terrorist organization, arising out of an attack in New York City on October 31, 2017 (the "October 31, 2017 attack"). During that attack, Saipov—purportedly acting on behalf of the Islamic State of Iraq and al-Sham ("ISIS")—allegedly drove a flatbed truck onto a cycling and pedestrian pathway on the west side of lower Manhattan, resulting in eight fatalities and injuring numerous others. (Doc. 61, at ¶ 15.)

    Currently before me are a number of issues relating to jury selection and the jury selection process. I am in receipt of Saipov's November 18, 2019, letter, (Doc. 226), the Government's December 6, 2019, letter, (Doc. 236), Saipov's December 10, 2019, letter, (Doc. 237), Saipov's February 7, 2020, letter, (Doc. 262), and Saipov's February 10, 2020, letter, (Doc. 264). I will address each issue in turn.

### a. Instructions to Potential Jurors

In his February 10, 2020, letter, Saipov requests that I address the prospective jurors when they assemble to complete the questionnaires at the courthouse with all parties present. Specifically, Saipov requests that I introduce the parties and the attorneys, and give an introduction to the case with preliminary instructions. This request is GRANTED. The parties are directed to appear in the John F. Keenan Ceremonial Courtroom in the Daniel Patrick Moynihan Courthouse, 500 Pearl Street on February 19 and 20, 2020, at 10:00 a.m. and again at 3:00 p.m., so I may address the prospective jurors and introduce the parties.

### b. *Voir Dire* by Counsel

In his December 10, 2020, letter, Saipov requests that the attorneys be allowed to conduct *voir dire* instead of court-conducted *voir dire*. (Doc. 237, at 1–2.) The Government opposes this request. (Doc. 236). Federal Rule of Criminal Procedure 24(a) provides that the "court may examine prospective jurors or may permit the attorneys for the parties to do so." Fed. R. Crim. P. 24(a). The parties agree that under Rule 24 I have broad discretion in determining how to best conduct *voir dire*. Saipov fails to put forth a persuasive argument concerning why attorney conducted *voir dire* is necessary in this case. Saipov states that having attorneys lead *voir dire* is "most likely to lead to honest answers from prospective jurors" without providing any case citations or stating any basis to support this statement, or providing any reason to believe that *voir dire* conducted by a federal judge would not be just as likely, if not more likely, to lead to honest answers from prospective jurors. (Doc. 237, at 2). I also find Saipov's practicality and efficiency arguments unpersuasive. The potential logistical hurdles of court-conducted *voir dire* raised by Saipov can be overcome with advanced planning and preparation. Additionally, as the Government points out, court-conducted *voir dire* assures that the parties do not stray into

2

impermissible areas that could potentially taint the prospective jurors' answers or points of view. In addition, court-conducted *voir dire* also permits each party the opportunity to evaluate the questions proposed by their adversary. In light of these considerations, as well as my belief that jurors will respond honestly to questions directed to them by a federal judge, I will conduct *voir dire*. However, if as *voir dire* continues I find reason for the attorneys to lead *voir dire*, I will direct them to do so.

### c. Peremptory Challenges and Non-Stipulated Strikes

In his December 10, 2020, letter, Saipov requests that I allow additional peremptory challenges above what is set forth in Federal Rule of Criminal Procedure 24(b). (Doc. 237, at 5–6). Saipov explains that under Rule 24(b), in a capital case each side is granted twenty peremptory challenges, while in other felony cases the government is granted six peremptory challenges and the defense is granted ten. Saipov asks that I rectify this difference, and allow for a similar 6:10 ratio in this capital case as exists in other felony cases, which would grant Saipov thirty-two challenges and the Government twenty. Saipov provides no legal authority for this argument, and there is substantial authority to the contrary. *See, e.g.*, *United States v. Awadallah*, 457 F. Supp. 2d 246, 252 (S.D.N.Y. 2006) (finding that there is no case law in the Second Circuit allowing the allotment of additional peremptory challenges to a defendant tried alone) (citing *United States v. Wilson*, 571 F. Supp. 1422, 1429–30 (S.D.N.Y. 1983)).[1] Rule 24(b) provides for an equal number of peremptory challenges in capital cases for both the Government and a defendant, at twenty each. Although the legislative history surrounding this

---

[1] I note that in felony cases with multiple defendants, "the court has broad discretion to change th[e] allotment and provide additional peremptory challenges." *United States v.* Allen, 289 F. Supp. 2d 230, 241 (N.D.N.Y. 2003); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 970–71 (2d. Cir 1990) (reviewing allocation of additional peremptory challenges among multiple defendants under an abuse of discretion standard); *cf. Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178 (2d Cir. 1995) (allowing an increase in the number of statutorily-granted peremptory challenges in cases where there are several defendants and several plaintiffs).

3

decision is sparse, the history of the number of peremptory challenges available in capital cases demonstrates that Congress felt it necessary to prescribe, for both sides, an equal number of challenges, as opposed to granting defendants a greater number of challenges as in other felony cases.[2] There is no reason to believe that this was a mistake or an oversight, and Saipov has not provided a persuasive reason under the facts presented by his case to revisit this decision. Therefore, Saipov's request for additional peremptory challenges is DENIED.

In his November 18, 2019, letter, Saipov requests two days to review the qualified jury panel before exercising peremptory challenges. (Doc. 226, at 3.) This request is DENIED. The parties will have one day or no less than 24 hours, depending on the timing of the conclusion of *voir dire*, to review the panel and make peremptory strikes.

On February 7, 2020, Saipov filed a letter regarding the process for making strikes for cause following the completion of the juror questionnaires but before *voir dire*. (Doc. 262.) Saipov requests that when the parties disagree about whether a juror should be struck for cause based on the answers to the questionnaire alone, I permit that juror to proceed to *voir dire* and not rule on the non-stipulated strike based on the questionnaire alone. "[A] district judge does not abuse his discretion simply by using a written questionnaire in the *voir dire* process. Although *voir dire* ordinarily contemplates seeing the jurors and hearing them speak, any court-supervised examination of prospective jurors is reasonably understood to be part of *voir dire*. District courts routinely employ questionnaires to facilitate *voir dire* in a number of

---

[2] The Supreme Court outlined the statutory history leading up to the modern Rule 24(b)(1) in *Swain v. Alabama*, 380 U.S. 202, 214–215 (1965). Congress originally prescribed twenty peremptory challenges for defendants in capital cases in the 1790 Act. *See id.* (citing 1 Stat. 119 (1790)). In 1865, the Government was given by statute five peremptory challenges in capital cases, with the defendant being entitled to twenty. *See id.* (citing 13 Stat. 500 (1865)). In 1911, the Government's peremptory challenges in capital cases was increased to six. *See id.* (citing 36 Stat. 1166 s 287 (1911)). The modern iteration of the Rule 24(b)(1), prescribing twenty peremptory challenges each, was adopted by the Supreme Court on December 26, 1944, transmitted to Congress by the Attorney General on January 3, 1945, and became effective on March 21, 1946. *See Rules of Criminal Procedure*, 323 U.S. 821 (1944); *Federal Rules of Criminal Procedure*, 327 U.S. 821 (1945).

4

circumstances, *e.g.*, where a large number of prospective jurors must be screened, where an anonymous jury is to be empaneled, where there has been extensive pre-trial publicity, or where the death penalty is sought," as is the case here. *United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007) (internal citations omitted). However, the Second Circuit also "commend[s] the practice of some oral examination of prospective jurors in capital cases preliminary to any removal for cause based on their views about the death penalty." *Id.*, at 300–301. Accordingly, Saipov's request is GRANTED.



████████████████████████████████████████
████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
██████████
        ██████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██
        ██████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



In addition, consistent with the Government's motion, I will permit the parties to conduct research in advance of and as part of the *voir dire* process. The parties are to be mindful of their ethical obligations when conducting such research. *See, e.g.,* ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 466 (April 24, 2014), *available at* https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/formal_opinion_466_final_04_23_14.authcheckdam.pdf; NYCLA Committee on Professional Ethics, Formal Opinion No. 433 (May 18, 2011), *available at* https://www.nycla.org/siteFiles/Publications/Publications1450_0.pdf. In order to facilitate a fair and meaningful *voir dire*, the parties are directed to share the results of any research they conduct of the prospective jurors with their adversary. The information that must be disclosed does not include privileged information, attorney work-product, or attorney strategy, such as search terms or analysis of the information gathered. Rather the parties must only share the facts/information/data they unearth by their research. This information should be shared on a

weekly basis within 24 hours of it being discovered leading up to *voir dire*, starting three weeks before *voir dire* is scheduled to commence.

Accordingly it is:

ORDERED that the parties are directed to appear in the John F. Keenan Ceremonial Courtroom in the Daniel Patrick Moynihan Courthouse, 500 Pearl Street on February 19 and 20, 2020 at 10:00 a.m. and again at 3:00 p.m., so I may address the prospective jurors and introduce the parties;

IT IS FURTHER ORDERED that Saipov's request that counsel conduct *voir dire* is DENIED without prejudice;

IT IS FURTHER ORDERED that Saipov's motion for thirty-two peremptory challenges is DENIED;

IT IS FURTHER ORDERED that the parties will have one day or no less than 24 hours, depending on the timing of the conclusion of *voir dire*, to review the panel and make peremptory strikes;

IT IS FURTHER ORDERED that any juror against whom there is a non-stipulated strike based on the questionnaire alone shall proceed to *voir dire*;

████████████████████████████████████████████
████████████ ; and

IT IS FURTHER ORDERED that the parties shall share all information collected about prospective jurors as outlined in this Opinion & Order.

9

The Clerk's Office is respectfully requested to terminate the motions relating to Documents 262, 264.

SO ORDERED.

Dated: February 13, 2020
      New York, New York

*[signature]*

Vernon S. Broderick
United States District Judge