Case 1:13-cr-10200-GAO   Document 1506   Filed 04/21/29   Page 1 of 33
Case 1:13-cr-10200-GAO   Document 1001   Filed 02/02/29   Page 1 of 33

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


```
                          )
UNITED STATES OF AMERICA, )
                          )
        Plaintiff,        )
                          )   Criminal Action
v.                        )   No. 13-10200-GAO
                          )
DZHOKHAR A. TSARNAEV, also )
known as Jahar Tsarni,    )
                          )
        Defendant.        )
                          )
```


BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE


**SEALED LOBBY CONFERENCE**


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Friday, March 17, 2015
12:08 p.m.


Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By: William D. Weinreb, Aloke Chakravarty and
 3              Nadine Pellegrini, Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
 4         Suite 9200
           Boston, Massachusetts  02210
 5         - and -
           UNITED STATES DEPARTMENT OF JUSTICE
 6         By: Steven D. Mellin, Assistant U.S. Attorney
           Capital Case Section
 7         1331 F Street, N.W.
           Washington, D.C.  20530
 8         On Behalf of the Government

 9         FEDERAL PUBLIC DEFENDER OFFICE
           By: Timothy G. Watkins, Federal Public Defenders
10         51 Sleeper Street
           Fifth Floor
11         Boston, Massachusetts  02210
           - and -
12         CLARKE & RICE, APC
           By: Judy Clarke, Esq.
13         1010 Second Avenue
           Suite 1800
14         San Diego, California  92101
           - and -
15         LAW OFFICE OF DAVID I. BRUCK
           By: David I. Bruck, Esq.
16         220 Sydney Lewis Hall
           Lexington, Virginia  24450
17         On Behalf of the Defendant

18

19

20

21

22

23

24

25
```

Case 1:13-cr-00200-VSP  Document 309-4  Filed 02/02/29  Page 3 of 33
Case 1:13-cr-10200-GAO  Document 1566  Filed 04/21/15  Page 3 of 33

3

<pre>
 1                    P R O C E E D I N G S

 2           THE CLERK:  All rise.

 3           (The Court enters the courtroom at 12:08 p.m.)

 4           THE CLERK:  The United States District Court for the

 5    District of Massachusetts.  Court is in session.  Be seated.

 6           For a lobby conference in the case of United States

 7    versus Dzhokhar Tsarnaev, 13-10200.  Will counsel identify

 8    yourselves for the record.

 9           MR. WEINREB:  Good afternoon, your Honor.  William

10    Weinreb for the United States.

11           MR. CHAKRAVARTY:  As well as Aloke Chakravarty, your

12    Honor.

13           MS. PELLEGRINI:  Good afternoon, your Honor.  Nadine

14    Pellegrini.

15           MR. BRUCK:  Good afternoon, your Honor.  David Bruck,

16    Judy Clarke and Tim Watkins for the defendant.

17           THE COURT:  Okay.  Let me begin by resolving some of

18    the issues that were discussed the last occasion.  The

19    government's motion in limine to preclude reference to the

20    Waltham triple homicide or other alleged bad acts is granted as

21    to the Waltham events.  The reason is that there simply is

22    insufficient evidence to describe what participation Tamerlan

23    may have had in those events.  I know that the defense has a

24    theory about what those things were, but I don't believe

25    there's any evidence that would permit a neutral finder of fact
</pre>

1    to conclude that from the evidence.

2          From my review of the evidence, which includes an in

3    camera review of some Todashev 302s, it is as plausible, which

4    is not very, that Todashev was the bad guy and Tamerlan was the

5    minor actor.  There's just no way of telling who played what

6    role, if they played roles.  So it simply would be confusing to

7    the jury and a waste of time, I think, without very -- without

8    any probative value.

9          As to other bad acts, it will depend.  I mean, I see

00:07 10    on the witness list witnesses who might be able to testify to

11    behavior of Tamerlan that would be relevant to the defense

12    theory of domination.  So I'm not going to, as a blanket

13    matter, exclude all bad acts.  We'll deal with those issues as

14    they arise.

15          With respect to the government's motion to preclude

16    reference to plea negotiations, to the extent the government

17    presses its non-statutory aggravating factor of absence of

18    remorse, I think it's fair that the defendant could respond by

19    showing an offer to plead guilty, but it would then be open to

00:08 20    the government to explain the conditions that were attached,

21    including with respect to the sentence and the refusal to

22    participate in a proffer.  If that goes forward, let me just

23    suggest that the best way to handle that, if the parties wanted

24    to, would be by stipulation, perhaps.

25          MR. WEINREB:  Your Honor, I consider it unlikely the

1  parties will be able to agree on a stipulation of what actually

2  happened.  There was so much back-and-forth over this over

3  time, plus there are additional documents, draft proffer

4  agreements, that went back and forth.  It's going to be too

5  complicated.  It's going to require witnesses.

6  　　　　THE COURT:  Well, I didn't say that I thought it was a

7  likely way of proving it; I said I thought it would be the best

8  way.

9  　　　　With respect to the defendant's motion to exclude the

00:09 10  testimony of Dr. David King, that's denied, but I do want to

11  emphasize that he's got to stay on relevant message for this

12  phase.  And so some background to support his testimony is

13  appropriate, of his experience in Afghanistan and Iraq, but I

14  don't want it overdone.  And I don't think there's any need to

15  tell the story of the day, which includes his having finished

16  the marathon and so on.  I think he can testify to the medical

17  evidence without telling the tale of the day and its

18  particulars.

19  　　　　With respect to issues raised in the government's

00:09 20  omnibus motion with respect to the evidence of -- or argument

21  about Massachusetts not having a death penalty, the motion in

22  limine is granted as to that, to exclude that, as well as to

23  the -- any evidence or argument about the effect on the risk of

24  future terrorism attacks.  That is not, in my view, evidence

25  about the defendant's personal background or character or about

```
 1    the circumstances of the crime and, therefore, is outside the

 2    scope of mitigation under the law as I regard it.

 3          Now, let's get on to the -- so later today, I guess,

 4    we'll get from the defense a response to the motion in limine

 5    and the defense experts which was filed, I think on Monday, and

 6    we set today as the date for response.

 7          So you have both now filed witness lists and exhibit

 8    lists.  With respect to the issue of how they should be filed,

 9    my inclination is that they be filed in the open docket.  I

10    mean, they'll soon enough be open to the public.  I don't see

11    why they now need to be under seal.

12          MR. WEINREB:  We have no objection to them being filed

13    on the open docket.

14          MS. CLARKE:  We do, your Honor.  They're defense

15    witnesses.  We struggled as it is to get people to respond to

16    us, talk with us and come in with subpoenas, and the press

17    being all over them is not appropriate.  I mean, the Court --

18          THE COURT:  I don't know whether that's true, that

19    it's not appropriate.  But let me just say that it's the normal

20    course of events.

21          MS. CLARKE:  Well, the Court ordered us to provide a

22    witness list, and no rule requires that, and we think the Court

23    would be putting our case at great risk by publicizing that

24    list at this point.

25          THE COURT:  Okay.  Well, I think it should be public,
```

Case 1:13-cr-00722-VSB Document 300-4 Filed 02/02/20 Page 7 of 33
Case 1:13-cr-10200-GAO Document 1306 Filed 04/21/19 Page 7 of 33

7

1  but I will do this:  We will docket it on Tuesday rather

2  than -- so it doesn't get any press over the weekend.

3        All right.  And the same -- I guess I have the same

4  issue with respect to the mitigating factors.  I believe the

5  government's, at least, statutory factors are probably in the

6  indictment?

7        MR. WEINREB:  That's correct, your Honor.

8        THE COURT:  So they're public.  I don't think -- are

9  the non-statutory as well?

00:12 10        MR. WEINREB:  They're in the notice of intent.

11        THE COURT:  And that's public?

12        MR. WEINREB:  That was public.

13        THE COURT:  Okay.  So there's a new -- there's a, I

14  guess, substitute list now from the defense of mitigating

15  factors.

16        MR. BRUCK:  Yes, your Honor, there is.  Of course,

17  again, there is no rule or statute that requires us to provide

18  these prior to the submission of the case to the jury.  The

19  Court, of course, ordered us to provide those, my understanding

00:13 20  was in fairness to the government's ability to prepare to meet

21  them.  We expect to revise these factors to conform to the

22  proof, and I may withdraw some.  Indeed, we've decided -- we

23  wish to withdraw one of those on the list right now.

24        This is provisional, in other words, and --

25        THE COURT:  Well, at some point Tuesday morning, as a

Case 1:13-cr-00722-VSB   Document 1306   Filed 02/02/20   Page 8 of 33
Case 1:13-cr-10200-GAO   Document 1306   Filed 04/21/15   Page 8 of 33

8

1  matter of fact, there will be an opening statement.  I assume

2  the defendant will outline the mitigation at that point, or

3  perhaps after the government's -- maybe -- you can defer your

4  opening, I guess, until the beginning of your case.

5          MR. BRUCK:  We are considering doing that.

6          THE COURT:  Okay.  But at least at that point -- I

7  mean, the jury has to know what to listen for.

8          MR. BRUCK:  Yes.  Yes, we'll make sure they know what

9  to listen for in our case.

00:14 10          THE COURT:  Well, I'd do this:  I'll defer until then,

11  but I think then they ought to be a matter of record.  After

12  all, it would be on the verdict slip.

13          MR. BRUCK:  Well, the verdict slip, of course, is --

14  the jury receives that at the end of the case.

15          THE COURT:  Right.  But there will be -- in other

16  words, there will be a specification of propositions that the

17  jury will be asked to consider.

18          MR. BRUCK:  Absolutely.

19          THE COURT:  And my only point is I think it makes

00:14 20  sense just from -- for the jury's purposes that they have some

21  information about that before the defense evidence begins so

22  they can listen to the evidence with those things in mind.

23          MR. BRUCK:  Well, we did some very brief pleading,

24  along with the mitigating factors, asking the Court not to

25  include what would be a very lengthy list of aggravating

1    factors and then a relatively short list of mitigating factors

2    in the preliminary instructions.  The Court obviously has

3    discretion to do it either way.  But thinking about this case,

4    we think it would be quite unfair and imbalanced to include the

5    aggravating and mitigating factors in the preliminary

6    instructions, and the primary reason for that is that the jury

7    has already had the evidence of the government's aggravating

8    factors.  They're going to add some victim impact testimony,

9    and that will be new, but by and large everything that is

00:15 10   alleged in their list of aggravation the jury has already

11   heard, so it will click with the jury.  You will read those

12   aggravating factors, and they will go, "Got it."

13           Our mitigating case has not been heard except for

14   little dribs and drabs that we were able to put in to correct

15   what we thought were misimpressions in the guilt phase.  But by

16   and large, these are mere allegations, and it -- it seems quite

17   unfair to have the jury start this sentencing process by

18   hearing proven allegations from one side and unproven

19   allegations from the other.  It has an appearance of symmetry,

00:16 20   but if you think about it for a moment, there's no symmetry at

21   all.

22           I understand that Judge Sand's pattern instructions do

23   provide to include the mitigating and aggravating factors, but

24   they're not -- it's not essential.  It's not a core aspect of

25   those instructions or any other.  Simply to say that the

1    parties will present evidence of mitigation and aggravation and

2    at the close of the evidence the jury will be instructed on

3    exactly what those are, the jury didn't have the indictment

4    read to them before the beginning of the trial.  They were just

5    generally told what the charges were and told to listen to the

6    evidence, and the specifications were given to them at the end.

7    We think that's how this ought to be done.

8            MR. WEINREB:  Your Honor, we disagree, at least with

9    respect to the aggravating factors.  You proposed --

00:17 10         THE COURT:  Just to shortcut it, I'm not sure he's

11   objecting to that.  In other words, let me clarify because that

12   was a question I was going to ask.  Do you object to the

13   inclusion of the aggravating factors if the mitigating factors

14   are omitted?

15           MR. BRUCK:  Well, that creates a different problem --

16           THE COURT:  Right.

17           MR. BRUCK:  -- which is also imbalance.

18           THE COURT:  Why I put them in there.

19           MR. BRUCK:  The aggravating factors are not

00:17 20  controversial.  It's not that the government in this particular

21   case is really going to be prejudiced in any way, shape or

22   form.  Some of them are built right into the charges of

23   conviction.  And so there's no -- it's not as though the jury

24   is going to miss the evidence that they need if they haven't

25   been read a three- or four- or five-page list of aggravating

1  factors.  So we just think the Court ought to give the

2  instructions that provide the framework of what they're about

3  to hear and get the specifications at the end.  So, yes, we

4  would object to doing it either way.

5          MR. WEINREB:  Your Honor, virtually the entire bulk of

6  the Sand's proposed instruction, which is the one that both

7  parties have previously agreed could be given pretty much

8  verbatim, is all about the difference between threshold

9  aggravating factors, statutory aggravating factors and

00:18 10  non-statutory aggravating factors, which the government has to

11  prove in order to go from one to the next and so on.  We

12  absolutely believe the jury needs to be told this, that they

13  need an explanation of what the penalty phase is all about and

14  what their job is, what their task is during the penalty phase.

15          Unless threshold aggravating factors are proven, they

16  don't go on to consider anything else.  Unless one of the

17  statutory aggravating factors is proved, they don't go on to

18  consider non-statutory aggravating factors.  Non-statutory

19  aggravating factors play a different role, a selection role in

00:19 20  terms of whether the death penalty -- not eligibility for the

21  death penalty, but whether it should be given or not.  They

22  absolutely need to know what that sequence of findings they

23  need to make is, and they need to know which are the threshold

24  factors, which are the statutory aggravating factors and which

25  are the non-statutory aggravating factors.

1    I think it is hardly self-evident to them what all of

2    that is going to be, on the contrary.  Even for a lawyer who's

3    not a death penalty lawyer, it takes a lot of study to

4    understand the whole framework, and the jury's going to have to

5    absorb it very rapidly.

6        So we would very much object to the elimination of

7    that from the instruction, not to mention that the government

8    will be mentioning all of these factors in its opening

9    statement anyway, so they're going to hear them whether they

00:19 10   hear them initially from the Court versus from us; however, we

11   don't intend to try to supplant the Court and instruct the jury

12   at length on what the law is.  That's not appropriate.  It's

13   not our job.  And that runs other risks that we would prefer

14   not to run.

15       We would vastly prefer that the Court do what it

16   proposed to do and both parties agreed that it could do, which

17   is give an instruction that is a tried-and-true instruction and

18   is the one given in many cases because it is well accepted.

19       As for the mitigating factors, the reading of the

00:20 20   mitigating factors to the jury, I'd just note that the

21   government runs the same risk in every case.  It's very often

22   the case that the jury is told what the charges will be, what

23   the allegations are that the government will seek to prove.

24   Sometimes it doesn't prove them, and sometimes counts get

25   struck at the end of a case.  Sometimes there's a Rule 29

motion; sometimes counts are dismissed.  There may be -- in a
conspiracy case, there may be overt acts that are read to the
jury and never proved.  So I don't think that that is so great
a risk in a case that creates so great a risk of prejudice that
they need to be withheld from the jury for fear that one or
more of them would be proven.

            MR. BRUCK:  Very briefly, your Honor, I just think the
Court would do best to approach this from a realistic and
common sense point of view.  Yes, the verdict forms are
complicated, but in this case they present no real challenge of
any sort.  A jury that worked their way through the verdict
form in this case without being prepped about how many special
findings and special verdicts and guilty verdicts and
sub-verdicts they were going to have to come up with is more
than capable of receiving the detailed instructions at the end
of the case.

            THE COURT:  Okay.  I'll think about it.

            So I guess as I understand it, the government
obviously will open, and the defense has not decided whether it
will open on Monday or defer until the beginning of its case.

            MR. BRUCK:  That's correct.

            THE COURT:  Let me ask you about foreign witnesses who
may testify by video.  Can you tell us who those are?

            MS. CLARKE:  Well, your Honor, we have looked at those
again and decided to not call anyone by video.  And we

```
 1   had -- the one witness that's at issue for us right now is

 2   Elmirza.  We thought that he was going to be approved for

 3   parole.  He was -- he's fluent in English.  He's lived in this

 4   country.  And we thought he was going to be approved for

 5   parole, and we learned, I think yesterday, he is not.  We would

 6   like to ask the Court to intervene and assist with that.

 7            But as to the other potential video witnesses, we have

 8   decided not to rely on their testimony.  So he's the one at

 9   issue that --

10            THE COURT:  But he might be videoed?

11            MS. CLARKE:  Well, we're going to have to figure out

12   how to video him if we can't figure out how to get him to the

13   United States.

14            THE COURT:  Where is he?

15            MS. CLARKE:  He's in Kazakhstan.

16            THE COURT:  Just a trivial matter, but I see who he is

17   from the list.

18            What's the time difference?  Do you know offhand?

19            MS. CLARKE:  I can't remember.

20            THE COURT:  Eight or nine hours?

21            MS. CLARKE:  Seven or eight hours.

22            THE COURT:  I was going to guess eight, but okay.  As

23   I say, I'm just curious.

24            MS. CLARKE:  It's off of us.

25            But that's the one.  And we -- I think we're going to
```

00:23 10

00:23 20

 1    ask the Court to intervene on due process grounds and assist

 2    us, and perhaps the government can assist as well.  There was

 3    some discussion that he was going to be approved and at the

 4    last minute was not.

 5            THE COURT:  Okay.  Now, I presume you've each

 6    exchanged the list, the exhibit list and so on and so forth.

 7    Let me -- so does that include the exhibits themselves as well

 8    to the extent they're new exhibits?

 9            MS. CLARKE:  Yes.

00:24 10            THE COURT:  They've been exchanged?

11            MR. CHAKRAVARTY:  We haven't looked at them, but we

12    just did.

13            THE COURT:  Okay.  Are they in JERS form?

14            MS. CLARKE:  I sure hope so.

15            THE CLERK:  I got them from the defendant, but I'm

16    still waiting for the government's.

17            THE COURT:  Okay.  All right.  But you think so?

18            MS. CLARKE:  Would you repeat that last statement,

19    please, that you do have them from the defense but you're

00:25 20    waiting for the government's?

21            THE COURT:  Why?  Because it's so odd?

22            (Laughter.)

23            MS. CLARKE:  Oh.

24            THE COURT:  I don't know if it's that odd, actually.

25            MS. CLARKE:  And we were also here early, your Honor.

1        THE COURT:  Yes, I noted that, by the way.

2        And with respect to witnesses, I assume this is a

3   comprehensive list and we don't have to expect 74 defense

4   witnesses?

5        MS. CLARKE:  Yes.  And if I could prevail on the Court

6   again, it really puts us -- our case at great risk by

7   publication of this list.  We were overinclusive, even last

8   night began to discuss a couple that are not likely witnesses.

9   And it certainly would be helpful to us not to have this be

00:25 10   public until we've made some more decisions and provided the

11   Court with a revised list.

12        We also included in that list a little summary of, you

13   know, what the relationship to the case was.  I mean, that

14   really is kind of discovery, and we provided it to the Court

15   out of courtesy to the Court because the Court asked for it,

16   not so that the --

17        THE COURT:  Well, I will agree that in the form that

18   it is, where it has the commentary, it's different than just a

19   witness list.  I'll agree with that.  Of course, I presume all

00:26 20   these people have been listed on Question A to the

21   questionnaire?  Or Exhibit A and B, I guess, to the

22   questionnaire?

23        MS. CLARKE:  That's so long ago, I hope so.

24        THE COURT:  Anyway, all right.

25        MS. CLARKE:  So if we could ask the Court to at least

1    reconsider that or delay production until we can at least trim

2    it slightly more so that we don't put people who may not be

3    witnesses -- expose them to the public.

4         THE COURT:  Okay.  Let me just ask the government, I'm

5    not entirely clear what the objective is with respect to the

6    victim witnesses, and I think the parties have some

7    understanding about limits, but I'm not sure they have the same

8    understanding.  And so I just want to vet that a little bit.

9         First, for some of these people, I guess, they've

00:27 10    already testified.  Karen McWatters, for example, has already

11    testified.  I guess -- I presume she's not going to just repeat

12    what she's already said, so what is it that you would offer

13    through somebody like her?

14         MS. PELLEGRINI:  Your Honor, with respect to

15    Ms. McWatters, I know the little explanation there includes

16    everything that she previously testified to.  I think that the

17    only thing that she would be testifying to is the inclusion of

18    the true impact of Krystle's death as a friend and as a

19    coworker, and following her death.

00:28 20    THE COURT:  I see.  Okay.  So is that true of others

21    who have --

22         MS. PELLEGRINI:  Yeah, that would be true -- if

23    Danling Zhou, for example, testifies, it would no longer be

24    about her and her injury or about necessarily that day, but it

25    would be about the loss and what it means to the family and

```
 1   friends.  That's on victim impact.

 2              THE COURT:  Okay.

 3              MR. WEINREB:  Your Honor, it may be useful for the

 4   Court to note Lingzi Lu's parents are in China and not

 5   intending to come back over here for this for a variety of

 6   personal reasons, so the government is trying to find other

 7   ways to put on testimony about the -- about who Lingzi was and

 8   about the impact of her loss on the family and the community of

 9   which she was a part.  So all of the witnesses who are listed

10   on our list as victim impact witnesses, that only has to do

11   with the impact of the loss of decedents.

12              THE COURT:  Okay.

13              MR. WEINREB:  With respect to witnesses who are listed

14   for grave risk of death, we won't be calling all of them, so --

15   we'll only be calling a few who I think -- who we believe their

16   injuries highlight and -- that are extremely probative with

17   respect to that factor, that the offense created grave risk of

18   death to others besides the decedents.

19              THE COURT:  Okay.  Well, that responds to one of my

20   concerns which was cumulativeness.

21              Okay.  I think that covers mostly what I had in mind.

22   How long will the opening be?  Who's giving the opening?

23              MS. PELLEGRINI:  I am, your Honor.  Approximately 30

24   minutes.

25              THE COURT:  Thirty minutes?
```

Case 1:13-cr-90200-USR Document 3004 Filed 02/02/20 Page 19 of 33
Case 1:13-cr-10200-GAO Document 1306 Filed 04/21/15 Page 19 of 33

19

```
 1            MS. PELLEGRINI:  Thirty minutes.

 2            THE COURT:  Can I just stay on the schedule for a

 3    minute?  So there's been some suggestion from the government

 4    that you thought the case might be two, three days, something

 5    like that?

 6            MR. WEINREB:  Our case-in-chief, yes.

 7            THE COURT:  So you'll probably finish before -- I told

 8    the jury they'll have to be here on Friday, but they may well

 9    not.

 10           MS. PELLEGRINI:  It's possible; however, a few of our

 11   witnesses simply can't testify until Thursday so --

 12           THE COURT:  We could have shorter days, I guess.  But

 13   the defense won't have to start until Monday, just so we have a

 14   predictable place to start.  And I just want to run off the

 15   top, who's opening for --

 16           MR. BRUCK:  I am, your Honor.

 17           THE COURT:  Do you have an estimate yet?

 18           MR. BRUCK:  It will be more than 30 minutes.  I think

 19   more like an hour, most likely.

 20           The --

 21           THE COURT:  Okay.  I wanted to go back to recognizing

 22   Mr. Weinreb who was next in line, if you're going to change the

 23   topic.

 24           MR. WEINREB:  Thank you, your Honor.

 25           So there are just a few -- so we just got the defense
```

00:30 (line 10)
00:31 (line 20)

1    exhibit list, and as we predicted earlier, there is certainly

2    going to be items on which we want to move in limine.  We don't

3    have -- and it may also be true, frankly, with respect to some

4    of the witnesses.  For example -- it's a little hard for us to

5    determine.  There are four witnesses listed, for example, among

6    the EMT personnel who transported Tamerlan Tsarnaev to the

7    hospital.  Even assuming any of them are offering testimony

8    relevant to the defendant's character, of the circumstances of

9    his offense or his history, it's hard to see why four would be

00:31 10   needed.  I assume they're all on there because the defense

11   hasn't decided yet which one to call, but perhaps by conversing

12   with them we'll be able to narrow down the scope of what we

13   need to do here.

14        But there are a few things that jumped out at us, and

15   it might be useful to voice them now to avoid some things down

16   the road.  There was a -- the government filed a motion in

17   limine with respect to Dr. --  I don't know if it's "Giedd" or

18   "Giedd."

19        MS. CLARKE:  Giedd.

00:32 20        THE COURT:  Giedd.

21        MR. WEINREB:  And if the Court allows that testimony,

22   then the government's going to be seeking an order to obtain

23   films of CT scans that were taken of the defendant when he was

24   at Beth Israel Hospital.  We've previously obtained all of the

25   defendant's medical records, but Beth Israel is quite concerned

1    that it not exceed the scope of anything that it has previously

2    been ordered to do, and it deems these films to be not a

3    medical record but some other protected healthcare information.

4    So I just wanted the Court to know that's coming.

5              THE COURT:  Okay.

6              MR. WEINREB:  And with respect to the exhibits that

7    the government seeks to move in limine, we were concerned that

8    some of them were ones that the defense might want to mention

9    in their opening statements and that that would demand a quick

00:33 10    ruling, but since -- I guess that will depend in part now on

11    whether the defense is opening on Monday or the following -- on

12    Tuesday or the following Monday.

13              THE COURT:  Right.

14              MR. WEINREB:  So I don't know how quickly we need to

15    get that matter resolved.

16              THE COURT:  Well, in the usual course we need to get

17    it resolved before the opening.

18              MR. WEINREB:  Yeah.  So I mean, we'll -- so we'll just

19    let you know.  Today's Friday.  You know, it's a weekend, a

00:34 20    holiday, and then Tuesday.  So we'll file something with the

21    Court over the weekend in the fashion we've been doing

22    previously, and we'll let the defense have it as soon as it's

23    ready.

24              THE COURT:  Perhaps you can get a better answer in a

25    day or so from the defense as to what their plans are.

```
 1              MR. WEINREB:  We'll --

 2              THE COURT:  That would be nice.

 3              MR. WEINREB:  Yeah, that would be helpful.

 4              THE COURT:  I'll invoke the nice rule.

 5              MR. WEINREB:  In addition, we will have a motion to

 6    strike some of the mitigators.  Just to give a preview,

 7    primarily we're looking at the range of 11 through 15, the ones

 8    at the end which -- except for 12.  To the extent that 12

 9    relates to the defendant's character, meaning his propensity
```
00:34 10   for future violence based on things that people may have to say

```
11    about him or have observed about him in the past or anything

12    related to that, then we wouldn't have an objection to it, but

13    to the extent that it deals with the capacity of the Bureau of

14    Prisons to incapacitate people in general, we would have an

15    objection to it as being not a proper mitigator.

16              And then we believe the same is true with respect to

17    11, 12 -- I'm sorry -- 11, 13, 14 and 15.  In our view, none of

18    those relate to the defendant's character, criminal history or

19    the circumstances of the offense, but largely relate to
```
00:35 20   general, more policy arguments.  So --

```
21              THE COURT:  Okay.

22              MR. WEINREB:  -- that again we thought would be

23    something that would need to be resolved before the --

24              THE COURT:  Now, of course, it will depend on whether

25    they get mentioned at that point or not.
```

 1          MR. WEINREB:  Well, they would be mentioned in opening

 2  statement.

 3          THE COURT:  In the opening, right.

 4          MR. WEINREB:  But -- or in the Court's --

 5          THE COURT:  Well, the earliest point would be if I put

 6  it in the preliminary instructions because that would be

 7  Tuesday.  It might be as late as next Monday if it was an issue

 8  about the opening.

 9          MR. WEINREB:  Right.

00:36 10          (Counsel confer off the record.)

11          MR. WEINREB:  One -- there's...

12          (Counsel confer off the record.)

13          MR. WEINREB:  One of the exhibits that the defense put

14  on its list is a note that the -- I think it was Mr. Bruck

15  mentioned in our last hearing.  This was something that the

16  defendant wrote and presented to the government through his

17  attorneys.  We regard that as an unsworn allocution by the

18  defendant.  We had understood the defense to say that they were

19  not going to be offering any unsworn allocution evidence, and

00:37 20  so that's something that I believe -- that's the kind of bell

21  that can't be unrung once the jury's heard it.  So that's

22  something that we think --

23          First of all, we're confused about whether we now need

24  to renew our motion with the Court to bar unsworn allocution

25  testimony when the defense already seemed to have conceded that

they weren't going to do that, and if not, then have some kind

of clear understanding among the parties that that's not going

to be mentioned or offered.

THE COURT:  Okay.  Mr. Bruck, you had something?

MR. BRUCK:  Well, to respond to those matters, I

should -- I can make things a little simpler for Mr. Weinreb by

advising that we intend to withdraw, or at least not to allege,

at least at this point, Number 13 on our list of mitigating

factors.  As far as the -- and I should say generally that the

matters that Mr. Weinreb is objecting to are certainly

litigated in the vast majority of federal capital cases.  It

would -- I suppose we'll have to brief the issue, but this is

not -- these are not unusual or uncommon facts to be litigated

at a sentencing hearing.

In fact, as to Number 11, I think the Court will note

in Judge Sand's treatise that he actually recommends that with

respect to Number 11, that the Court issue a peremptory

instruction directing the jury to find that as a fact rather

than allow that to be something that the jurors think they can

either find or not, depending.

I just mention that as some indication of the fact

that these factors, whether they concern the defendant

personally or not, are very commonly litigated.  And in that

connection, I just should mention that this is an area that the

Supreme Court really has spoken in, and in the case of *Simmons*

1    *v. South Carolina*, which is the case that said that the

2    defendant is entitled to show that he's not eligible for parole

3    if he gets a life sentence.  It's an example of how the court

4    has taken a common sense approach to this rather than a rigid

5    doctrinaire and limiting approach to the issues that are

6    relevant to the jury.  I realize this should probably await

7    full briefing, but I did want to respond to that -- so much of

8    the argument that Mr. Weinreb just made.

9         As far as the note that the defendant wrote, it gets

00:40 10  complicated because there was an expression of remorse that he

11   submitted in connection with plea negotiations.  And I suppose

12   one could view that as somewhat closer to -- well, it's not

13   allocution, but a statement.  The statement that he submitted,

14   or that we submitted on his behalf, that is in the evidence

15   list is not that; it is an offer to the government to use a

16   statement as a way of counteracting propaganda that had -- that

17   was exploiting -- jihadi propaganda that that was exploiting

18   the Boston Marathon bombing.  And so it's one of those things

19   that is not -- was not made sort of for the truth of the matter

00:41 20  asserted, but rather as a statement that the government could

21   use, if it wished to do so, in furtherance of counterterrorism

22   programming policy.

23        Be all that as it may, whether we make the opening

24   statement next week or the week after that, we're not going to

25   mention it in the opening, so there's no pressing decision on

1  that one way or the other.

2       One matter we had to raise with respect to victim

3  impact testimony, of course we've already argued and the Court

4  has heard the reasons why we don't think that the actual

5  injuries to people within the zone of danger is what is

6  encompassed by the grave-risk-of-death aggravator.  So we think

7  that all of it is key, but the issue is whether there were

8  people within the zone of danger that -- not actually the

9  horrific details of some of the injuries that were caused.

00:42 10      The one other matter is that the father of Lingzi Lu

11  has a videotaped elegy memorial talk that he gave at a very

12  large public gathering at BU before an enormous audience

13  shortly after her death, and we think it inappropriate to play

14  so public a videotape as opposed to simply introducing the

15  statement that he made.  It reflects, you know, the feelings

16  and emotions, or at least the honor being accorded to this

17  young lady and to her father by a very large group of people

18  who are not part of this case and should not be part of the

19  jury's considerations.

00:43 20      It is tearful, not inappropriately so considering what

21  it was.  But since it is on video and the Court can control for

22  displays of emotion by other means, and because this is at a

23  very large public gathering which injects the issue of public

24  opinion into the judicial proceeding and lets the jury know the

25  presence of hundreds, thousands of people who are -- who were

1    grieving along with this man and are going to perhaps have

2    reactions to their verdict, we think it better to simply submit

3    the statement.

4         The statement itself also includes a poem that

5    Ms. Lu's father described as having been published by a

6    newspaper in his hometown in China.  It doesn't tell who the

7    author is.  It's basically offered as sort of a public

8    expression from China of emotion and sorrow.  And it seems that

9    that once-removed public expression should not enter into these

00:44 10   proceedings.

11        So for all those reasons, we think the statement

12   should be edited and should be read to the jury rather than

13   played as a videotape from a public forum.

14        MR. WEINREB:  I can respond briefly just to two

15   things.  On that last point, the government disagrees that a

16   transcript is any substitute for seeing the actual statement of

17   Mr. Lu.  First of all, he's -- for the jury to know what weight

18   to assign his expressions of concern or his statements about

19   his daughter, they need to see his demeanor and his

00:45 20   presentation and how he speaks.  He's not overly emotional, and

21   among other things, he's speaking in Chinese.  So the

22   government has -- there was a -- he gave the speech entirely in

23   Chinese.  It was followed by a translation that was given by

24   somebody at BU who is fluent in both languages who spoke

25   without any tears or any emotion.  And we have essentially

1   overlaid the translation as if -- over the image of the father

2   speaking.  So --

3         THE COURT:  The audio of the translation over the

4   video of the father?

5         MR. WEINREB:  Correct.  Although it's true -- for the

6   most part the video remains a close-up of his face.  From time

7   to time it pulls back and shows a portion of the crowd, and

8   then sometimes an even larger portion of the crowd.  To the

9   extent that it shows a portion of the audience, we believe that

00:46 10   it's not the least bit prejudicial.  When people die, there are

11   funerals, and everybody knows that they're attended by a number

12   of people.  There's no reason to pretend that nobody besides

13   Mr. Lu was affected by the death of his daughter; and, in fact,

14   the entire community at Boston University was affected, and

15   there's no reason why the jury shouldn't know that.  That was

16   part of the loss that was experienced by the community as a

17   result of her death.

18         To the extent that any portion of it -- that some

19   shots are so wide or taken of so many people that it could be

00:46 20   said that there is a prejudicial impact that outweighs the

21   probative value of the evidence, then the government can

22   always -- we can always cut to a still shot of Lingzi Lu,

23   substitute that for the video portion, just for those few

24   seconds when the shot is that wide.  But we really don't think

25   it's necessary at all.

1        THE COURT:  How long is it?

2        MR. WEINREB:  It's about ten minutes?

3        MR. CHAKRAVARTY:  Ten minutes.

4        MR. WEINREB:  Ten minutes.

5        THE COURT:  Okay.  The best way to resolve it is for

6   me to look at it, I guess.

7        MR. WEINREB:  Yes.  And it's on the --

8        MS. PELLEGRINI:  It should be on the disk.

9        MR. CHAKRAVARTY:  Your Honor, it's on the disk.  And I

00:47 10   don't know why we didn't have a copy when we came down, when we

11   gave it.  So right after this hearing we'll get another copy.

12        THE COURT:  Okay.

13        MR. WEINREB:  And then the only thing I would add,

14   since Mr. Bruck discussed it at some length, with respect to

15   Mitigating Factor No. 11, the only reason we cited that as an

16   improper mitigating factor is precisely because it's a matter

17   that the judge should instruct the jury; it's not a matter for

18   them to determine whether it exists by the preponderance of the

19   evidence.

00:47 20        THE COURT:  Okay.  I think that's it.

21        MR. CHAKRAVARTY:  Your Honor, just to clarify so I

22   understand, in terms of -- there's some exhibits that we would

23   have some of these concerns that Mr. Weinreb articulated

24   earlier that we would file something over the weekend on.  That

25   may result in the defense, if they want to modify their witness

        1   and exhibit lists before they're made public, of actually

        2   removing some of these exhibits and witnesses from the -- I

        3   just wanted to both alert the Court that there are some

        4   exhibits as well as some of the witnesses that they noticed

        5   that the government has concerns about.

        6           THE COURT:  Okay.  All right.  Very good.

        7           MS. CLARKE:  One final thing while we have you.

        8           THE COURT:  All right.

        9           MS. CLARKE:  We've written to the government about

00:48  10   what I'll call *Jencks* for defense witnesses.  If they testified

       11   in front of the grand jury or they have a videotaped statement

       12   or some kind of statement that they've adopted, we've asked the

       13   government to produce that to us, and we've heard no response,

       14   and I wonder if the Court would encourage that.

       15           MR. WEINREB:  We'll provide a response.

       16           THE COURT:  When?

       17           MR. WEINREB:  We'll provide a response later today.

       18           THE COURT:  Is it clear who the witnesses are?  I

       19   mean, can you -- I know the long list.  I mean, do you have

00:49  20   some that you think you're particularly interested in?

       21           MS. CLARKE:  Yes.

       22           THE COURT:  I mean, it would be easier if you narrowed

       23   the list down.

       24           MS. CLARKE:  We don't know who testified in front of

       25   the grand jury, and that's what we've asked for.  And some

 1   witnesses, they've said they were tape-recorded, videotaped,

 2   and we haven't seen those.  So we thought the government would

 3   know from the list of witnesses.  We can tell them in greater

 4   detail if that will help.

 5        MR. WEINREB:  Just so we're clear, your Honor, this

 6   isn't a request for *Jencks* material.

 7        THE COURT:  Right.

 8        MR. WEINREB:  This is a request for information that

 9   is not *Jencks*, is not discoverable under Rule 16, is not *Brady*

00:50 10  material.  It is simply not discoverable at all.

11        MS. CLARKE:  Well, it's part of statements by these

12   witnesses, and we're calling them in our case in mitigation,

13   and we believe they have favorable mitigating things to say.

14        MR. WEINREB:  And to the extent that they do, that

15   those statements were disclosed long, long ago, and there was

16   much litigation over whether the defense was entitled to

17   verbatim copies of it or they were simply entitled to a fair

18   and accurate statement of what the witnesses had said.  That

19   was litigated and decided, relitigated and redecided, and

00:50 20  there's no reason to go yet another round.

21        MS. CLARKE:  I think we've gotten our response.

22        THE COURT:  Okay.

23        MR. CHAKRAVARTY:  Your Honor, as long as that's an

24   issue, we have made the reciprocal request and haven't received

25   anything with regards to prior statements of defense witnesses.

 1          MS. CLARKE:  I can tell them that we called no one in

 2   front of the grand jury.

 3          THE COURT:  Okay.  All right.  We'll see you on

 4   Tuesday.

 5          THE CLERK:  All rise for the Court.

 6          (The Court exits the courtroom and the proceedings

 7   concluded at 12:53 p.m.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:13-cr-10200-GAO Document 1004 Filed 02/02/20 Page 33 of 33

```
 1                    C E R T I F I C A T E

 2

 3          I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

 4   the United States District Court, do hereby certify that the

 5   foregoing transcript constitutes, to the best of my skill and

 6   ability, a true and accurate transcription of my stenotype

 7   notes taken in the matter of Criminal Action No. 13-10200,

 8   United States v. Dzhokhar Tsarnaev.

 9

10   /s/ Marcia G. Patrisso
     MARCIA G. PATRISSO, RMR, CRR
11   Official Court Reporter

12
     Date:  4/21/15
13

14

15

16

17

18

19

20

21

22

23

24

25
```