UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,            )
                                     )
          Plaintiff,                 )
                                     )    Criminal Action
v.                                   )    No. 13-10200-GAO
                                     )
DZHOKHAR A. TSARNAEV, also           )
known as Jahar Tsarni,               )
                                     )
          Defendant.                 )
                                     )

BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE

**JURY TRIAL - DAY FIFTY-NINE**

John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Wednesday, May 13, 2015
9:36 a.m.

Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By: William D. Weinreb, Aloke Chakravarty and
 3              Nadine Pellegrini, Assistant U.S. Attorneys
           John Joseph Moakley Federal Courthouse
 4         Suite 9200
           Boston, Massachusetts  02210
 5         - and -
           UNITED STATES DEPARTMENT OF JUSTICE
 6         By: Steven D. Mellin, Assistant U.S. Attorney
           Capital Case Section
 7         1331 F Street, N.W.
           Washington, D.C.  20530
 8         On Behalf of the Government

 9         FEDERAL PUBLIC DEFENDER OFFICE
           By: Miriam Conrad, William W. Fick and Timothy G. Watkins,
10              Federal Public Defenders
           51 Sleeper Street
11         Fifth Floor
           Boston, Massachusetts  02210
12         - and -
           CLARKE & RICE, APC
13         By: Judy Clarke, Esq.
           1010 Second Avenue
14         Suite 1800
           San Diego, California  92101
15         - and -
           LAW OFFICE OF DAVID I. BRUCK
16         By: David I. Bruck, Esq.
           220 Sydney Lewis Hall
17         Lexington, Virginia  24450
           On Behalf of the Defendant

18

19

20

21

22

23

24

25
```

1        <u>I N D E X</u>

2

3    CLOSING INSTRUCTIONS BY THE COURT..................PAGES 4, 172

4    CLOSING ARGUMENT BY MR. MELLIN.....................PAGE 61

5    CLOSING ARGUMENT BY MS. CLARKE.....................PAGE 96

6    REBUTTAL BY MR. WEINREB............................PAGE 137

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1
2    THE CLERK:  All rise for the Court and the jury.

3    (The Court and jury enter the courtroom at 9:36 a.m.)

4    THE CLERK:  Be seated.

5    THE COURT:  Good morning, jurors.

6    THE JURORS:  Good morning, your Honor.

7    THE COURT:  Once again, I will ask you whether you

8  have all faithfully abided by my instructions to avoid any

9  discussion of the case with anyone, including yourselves.  Is

10  that true?

11    THE JURORS:  Yes.

12    THE COURT:  And, again, have you also insulated

13  yourself, as far as practicable, from any media accounts of the

14  case?

15    THE JURORS:  Yes.

16    THE COURT:  Yes?  All right.

17    Members of the jury, it is again my duty to instruct

18  you as to the law applicable to this sentencing phase of the

19  case.  The sole question before you is whether Dzhokhar

20  Tsarnaev should be sentenced for his capital offenses to either

21  the death penalty or to life imprisonment without the

22  possibility of release.

23    There is no parole in the federal system.  Life

24  without possibility of release means just that.

25    The choice between these very serious alternatives is

1    yours, and yours alone, to make.  If you determine on any

2    particular count that Mr. Tsarnaev should be sentenced to death

3    or that he should be sentenced to life imprisonment without the

4    possibility of release, the Court is required to impose

5    whatever sentence you choose as to that count.

6           Remember that you have previously found Mr. Tsarnaev

7    guilty of the following capital counts in the indictment:

8    Counts 1 through 10 and Counts 12 through 18.  Substantively,

9    those counts are conspiracy to use a weapon of mass destruction

10   resulting in death, use of a weapon of mass destruction

11   resulting in death, conspiracy to bomb a place of public use

12   resulting in death, bombing of a public place -- place of

13   public use resulting in death, malicious destruction of

14   property resulting in personal injury and death, and possession

15   and use of a firearm during and in relation to a crime of

16   violence resulting in death.

17          Even though there are a total of 17 capital counts at

18   issue here, you must still approach the sentencing decisions

19   before you separately as to each count.

20          I stress to you the importance of you giving careful

21   and thorough consideration to all of the evidence.  As I

22   previously said to you, you must follow the principles of law

23   given to you in these instructions, regardless of any other

24   thought or opinion you may have as to what the law may be or

25   should be.

1          The instructions I am giving you now are a complete

2     set of instructions on the law applicable to the sentencing

3     decision as to Mr. Tsarnaev.  During your deliberations, you

4     should, thus, rely on these instructions.

5          We've also prepared a special verdict form that you

6     must complete.  The form details the special findings you must

7     make, and it will aid you in properly performing your

8     deliberative duties.

9          Now, although Congress in the relevant statute has

10    left it wholly to you, the jury, to decide Mr. Tsarnaev's

11    proper punishment, it has narrowed and channeled your

12    discretion in specific ways by requiring you to consider and

13    weigh any aggravating and mitigating factors that are present

14    in this case.

15         As I explained previously, aggravating and mitigating

16    factors pertain to the circumstances of the crime or the

17    personal traits, character or background of Mr. Tsarnaev or

18    anything else relevant to the sentencing decision.

19         Aggravating factors are those that would tend to

20    support imposition of the death penalty.  By contrast,

21    mitigating factors are those that suggest life in prison

22    without the possibility of release is an appropriate sentence

23    in this case.

24         By requiring you to consider what aggravating factors

25    and mitigating factors are present in this case, the statute

1     requires that you make a unique, individualized choice between

2     the death penalty and life in prison without the possibility of

3     release as to the appropriate sentence for the crimes

4     Mr. Tsarnaev has been convicted of.

5          The government at all times and as to each capital

6     count has the burden of proving its sentencing allegations

7     against the defendant beyond a reasonable doubt.  I have

8     previously instructed you about proof beyond a reasonable

9     doubt.  Let me remind you of those instructions.

10         The requirement of proof beyond a reasonable doubt is

11     a strict and heavy burden, but it is not an impossible one.  It

12     does not require the government to prove a necessary fact or

13     proposition beyond all possible, hypothetical or speculative

14     doubt.  There are probably very few, if any, things in human

15     affairs that can be proved to an absolute certainty.  The law

16     does not require that.  But the evidence must exclude, in your

17     minds, any reasonable doubt about the existence of the fact or

18     proposition in question.

19         A reasonable doubt may arise from the evidence

20     produced or from a lack of evidence.  If you conclude that the

21     evidence may reasonably permit alternate conclusions with

22     respect to the fact or proposition in question, then the

23     government has not proved that fact or proposition beyond a

24     reasonable doubt.

25         Reasonable doubt exists when, after you've considered,

compared and weighed all the evidence using your reason and your common sense, you cannot say that you have a settled conviction that the fact or proposition is true or correct. Conversely, we say a fact is proved beyond a reasonable doubt if, after careful consideration of all the evidence, you are left with a settled conviction based on the evidence and your reasoning about it that the fact or proposition is correct.

While the law does not require proof that overcomes every conceivable or possible doubt, it is not enough for the government to show that the fact or proposition it argues for is probably true.  The government's burden is to convince you that there is no reasonable doubt that the fact or proposition it argues for is correct.

A defendant never has the burden of disproving the existence of anything which the government must prove beyond a reasonable doubt.  The burden is wholly upon the government. The law does not at all require Mr. Tsarnaev to produce evidence that a particular aggravating factor does not exist or that death is not the appropriate sentence.

However, in this case, as he is entitled to do, Mr. Tsarnaev asserts that there are mitigating factors that should lead you to conclude that, all things considered, the death penalty is not the appropriate punishment for his offenses.  It is the defendant's burden to establish any mitigating factor by a preponderance of the evidence.

1          Requiring something to be proved by a preponderance of

2     the evidence is a lesser standard of proof than proof beyond a

3     reasonable doubt.  To prove something by a preponderance of the

4     evidence is to prove that it is more likely true than not; that

5     it is supported by the greater weight of the reliable evidence.

6     If, however, the evidence is equally balanced as to a

7     mitigating fact or proposition, the defendant will not have

8     carried the burden of proving the fact or proposition by a

9     preponderance of the evidence.  The preponderance of the

10    evidence is not determined by the number of witnesses or the

11    volume of evidence, but by the quality and persuasiveness of

12    the relevant evidence.

13          In making the determinations you're required to make

14    at this stage, you must consider the information presented

15    during this penalty phase.  You may also consider the evidence

16    previously admitted in the prior liability phase.  Let me

17    provide some reminders about evidence and how to think about

18    the evidence that you will remember from the first phase of the

19    trial.

20          First I'll remind you what is not evidence.  The

21    lawyers' summaries of the evidence in their openings, when

22    they're telling you what they expect the evidence will be, and

23    now, today, in their closings, when they try to recall it for

24    you, are not part of the evidence.  The summaries are an

25    attempt to marshal the evidence for you, to try to persuade you

1    to understand it in a way that is consistent with their view of

2    the case.  But to the extent your collective appreciation of

3    the evidence differs in any way from the way the lawyers have

4    predicted it or argued it, it is your understanding and your

5    assessment of the evidence that controls.

6         What the lawyers say in their closing statements

7    cannot add or subtract -- add to or subtract from the evidence.

8    You have heard the evidence, and it is your judgment on that

9    evidence that matters.

10        I told you at the beginning, and you have seen, that

11   I'd be ruling on any questions of the admissibility of evidence

12   as they have arisen.  I remind you there is no significance,

13   for your purposes, to any of the rulings, either admitting or

14   excluding evidence.  Those considerations are wholly separate

15   from the kinds of decisions you'll have to make, and you should

16   give no consideration of significance to any of my evidence

17   rulings.

18        I remind you that evidence that is offered but not

19   admitted is not to be considered by you.  Similarly, questions

20   by the attorneys which are not answered by the witness produce

21   no evidence.

22        The indictment is not evidence.  Anything you may have

23   read in the press, seen on television, heard on the radio,

24   viewed online or heard from others outside the courtroom at any

25   point is, of course, not evidence.

1          You have repeatedly assured me that you have abided by

2     my instructions to avoid such information which is not part of

3     the evidence in the case.  To the extent you had any prior

4     impressions of the facts of this case from the time before you

5     were called to be jurors, you must completely set aside any

6     such impressions.  Again, in the jury selection process, you

7     assured me that you could do that; and, frankly, I had -- if I

8     had not trusted your answers in that respect, you would not be

9     sitting here today.  Your focus as you deliberate must be

10    entirely and exclusively on the body of evidence produced in

11    the course of the trial.  It would be unfair and a violation of

12    your jurors' oath to do otherwise.

13         Let me now address some of the things that are

14    information or evidence for you to evaluate in this stage of

15    the case.  You have a very large number of exhibits in the

16    case.  You'll have access to all the exhibits that have been

17    admitted in evidence in both phases of the trial, and you may

18    consider those exhibits and give them whatever weight, value or

19    significance you think they are fairly entitled to receive.

20    The judgment is entirely yours.

21         The digital exhibits, which is a technical matter, can

22    be put on the JERS system, which you used in your prior

23    deliberations; will again be available to you via the monitor

24    in the jury room.  Because of some certain technical

25    limitations, some other exhibits are available to you by means

of a laptop computer, which does not have any other programs or
capabilities, such as word-processing or the Internet --
Internet access.  And I remind you there's no significance
regarding which exhibits are on JERS and which are on the
laptop.

Many exhibits in the case have been physical exhibits
or actual items.  As before, those are available to you as
well.  If you would like to view any of the physical exhibits,
you shall simply write a note indicating what exhibit or
exhibits you would like to view and give it to the court
security office, and we'll arrange for you to view those
exhibits.

Remember that sometimes a particular item of evidence
is received for a limited purpose rather than for general
consideration.  For example, some of the exhibits were admitted
under a limitation that they could be considered as evidence
that a particular event occurred, for example, that somebody
said something on a particular occasion, but not as evidence
that any affirmative assertion contained in that evidence was
accurate or true.

Of course, in addition to the exhibits, you have the
testimony of the witnesses who appeared here in the courtroom
and one via videoconference from abroad, who answered questions
that were put to them.  You ought to give the testimony of each
witness whatever weight, value or significance in your judgment

it is fairly entitled to receive.  With respect to each witness, you should think about the testimony and decide how much value or meaning it ought to have to fair-minded people like yourselves who are looking for the truth.

You may find, as you think about the evidence from any particular witness, that you find credible, reliable or meaningful just about everything that the witness has said, perhaps just about nothing that the witness has said, and perhaps something in between.  Maybe there are some things from a particular witness you find credible and reliable and other things from the same witness you're more skeptical of or doubtful about.  There is no automatic rule.  You don't have to accept any given witness's testimony in total or reject it in total.  You should think about the testimony itself and accept what is meaningful and reliable and reject what is not.

In deciding the credibility of a witness, you may consider the witness's appearance or demeanor on the witness stand as he or she testified, to the extent any such observations may have any bearing on your assessment of the reliability of that evidence.  The appearance or demeanor of other people in the courtroom, including the defendant, the lawyers for each side, spectators in the gallery or even me, should not be taken by you as evidence for any proposition or conclusion in the case.

You may also take into account any partiality or bias

1    that a witness might have toward one side or the other.  Does

2    the witness have any reason, motive or interest in the outcome

3    of the case or anything else that would lead the witness to

4    favor one side or the other in the testimony?  A tendency to

5    favor one side or the other might be deliberate, an intentional

6    effort to favor one side, or it might be unconscious, arising

7    out of some affiliation or affinity with one side or the other.

8    Again, such tendencies could affect the reliability of the

9    testimony, and you ought to consider whether there has been

10   such an effect with respect to the testimony you've heard.

11           Again, keep in mind in every case there are people who

12   have an association or connection with one side or the other,

13   and it is not automatic, of course, that people -- those people

14   must therefore be distrusted.  But potential bias or

15   partiality, conscious or unconscious, by a witness is a factor

16   that you can think about in evaluating the evidence.

17           You have heard testimony from witnesses described

18   generally as experts.  An expert witness is a witness who has

19   special knowledge or experience that allows the witness to

20   testify about matters within his or her expertise and to give

21   an opinion about the issues in the case based on his or her

22   knowledge and experience.  You should evaluate the testimony of

23   an expert witness with the same care that you employ in

24   evaluating the testimony of any other witness.  You may accept

25   or reject testimony of an expert witness as you judge is

1    appropriate.

2            In weighing expert testimony, you should consider the

3    factors that generally bear upon the credibility of witnesses

4    as well as the particular expert's qualifications, such as

5    education and experience, the soundness of the reasons given

6    for any opinion and any other evidence in the case that you

7    consider pertinent.  Remember that you alone decide how much of

8    a witness's testimony to believe and how much weight it should

9    be given.

10           You have heard the testimony of a number of law

11   enforcement officials.  The fact that a witness may be employed

12   as a law enforcement official does not mean that his or her

13   testimony is deserving of either more or less consideration or

14   greater or less weight than any other witness.  It is

15   legitimate for defense counsel to question the credibility or

16   reliability of a law enforcement witness on the ground that his

17   or her testimony may be colored by personal or professional

18   interest in the outcome of the case.  As with any witness, it

19   is up to you, after considering the matter, whether to accept

20   and rely on the testimony of a law enforcement witness, just as

21   with any other witness.

22           Consider the evidence as a whole.  You ought to

23   consider the evidence from each witness not only by itself, in

24   isolation, as if that witness were the only person to testify,

25   but also in the context of all the other evidence you have

heard.  For example, there might be a piece of evidence about
which you were originally skeptical, and then you might hear
other evidence that leads you to reexamine your initial
impression, and you being to trust the questioned evidence a
bit more.

The opposite might happen, of course.  You might tend
to accept something that sounds pretty good at first.  Then you
consider other pieces of evidence; you might begin to doubt
what you had first accepted.  So, again, think of the evidence
sensibly as a whole as you make sound judgments about it.

You may make inferences from the evidence.  An
inference is simply a conclusion that you might draw from the
available information that you have found to be reliable.  You
will recall I illustrated this point in my instructions at the
end of the first phase of the trial by pointing out that you
could draw an inference about how hot a stove burner is from
the observation of steam coming out of the teakettle on the
burner.  You must be careful that any inferences that you draw
are those that are genuinely supported by the information you
are relying on to make the inference.

An inference, and consequently proof of a fact by
circumstantial evidence, cannot be an excuse for guessing or
speculating.  If there are alternate possible inferences from
the evidence, you can't just pick one you happen to like.  You
have to be persuaded that any inference that you make is

1    superior to other possible inferences based on the same

2    evidence and information.

3         And, of course, to the extent that you rely in a

4    criminal case on an inference by circumstantial evidence, in

5    the end, any conclusions accepting the government's

6    propositions must be those that convince you beyond a

7    reasonable doubt.

8         Finally, I remind you that you will have the notes

9    that you have taken in both phases of the trial.  As before, do

10   not assume that simply because something appears in somebody's

11   notes it necessarily took place in the courtroom.  Instead, it

12   is your collective memory with respect to the information

13   that -- evidence presented that must control.

14        As I have previously instructed you, a defendant has a

15   constitutional right not to testify.  There may be many reasons

16   why a defendant would choose to invoke and exercise that right.

17   You may not, under any circumstance, draw any inference or

18   presumption against a defendant from his decision to invoke

19   that right and to decline to testify.  Accordingly, it should

20   not be considered by you in any way or even discussed in

21   arriving at any aspect of your sentencing decision, including

22   the existence or nonexistence of an alleged aggravating or

23   mitigating factor.

24        You must deliberate and determine the appropriate

25   sentence for each of the capital counts individually.  Although

1    I will be discussing the capital counts as a group, your

2    findings as to Mr. Tsarnaev's age, the gateway factors,

3    aggravating factors and all the other issues pertaining to

4    those counts must address each of the counts individually.

5         It is possible that, although there may be parallels

6    or connections between some counts, you may also find

7    differences that would justify different sentences on different

8    counts.  You should understand, however, that if you impose the

9    death penalty as to any count or counts, the death sentence

10   will control, regardless of any life sentence or sentence that

11   might be -- sentences that might be imposed on other counts.

12        As you know, there are 17 counts concerning a total of

13   four homicides.  You should not attach any significance to the

14   fact that these four homicides have given rise to more than

15   four capital counts.  The government is entitled to bring

16   multiple charges with respect to each homicide, but the number

17   of counts does not by itself mean that the defendant's conduct

18   is more blameworthy or that he is deserving of greater

19   punishment.

20        The instructions that I am going to give you, as well

21   as the verdict form that you will be completing, will address

22   first -- will first address your findings, if any, with respect

23   to the defendant's age at the time of the offenses, the four

24   so-called gateway factors, and the statutory aggravating

25   factors identified by the government with respect to each

1    capital count.

2          The instructions on the verdict form thereafter

3    address your findings, if any, as to each capital count

4    regarding the existence of any non-statutory aggravating

5    factors and mitigating factors, as well as the weighing of

6    aggravating and mitigating factors.

7          So let me now discuss with you in summary form, first,

8    the deliberative steps that you must follow in considering the

9    issues before you as to each capital offense.  I will then

10   discuss in greater detail each of these steps.

11         First, you will consider whether the government has

12   proven beyond a reasonable doubt and to your unanimous

13   satisfaction that the defendant was at least 18 years old at

14   the time of the capital offenses for which you have found him

15   guilty.

16         Second, you will consider, as appropriate, whether the

17   government has proven beyond a reasonable doubt and to your

18   unanimous satisfaction one or more threshold intent factors or

19   gateway factors established by Congress as to each of the

20   capital offenses for which you have found the defendant was at

21   least 18 years old at the time of the capital offense.

22         Third, you will consider, as appropriate, whether the

23   government has proven beyond a reasonable doubt and to your

24   unanimous satisfaction at least one statutory aggravating

25   factor alleged as to each of the capital offenses for which you

have found the defendant was at least 18 years of age at the time of the capital offense and have found the existence of at least one gateway factor.

Fourth, you will consider, as appropriate, whether any non-statutory aggravating factors identified by the government have been proven beyond a reasonable doubt and to your unanimous satisfaction as to each of the capital offenses for which you have found the defendant was at least 18 years of age at the time of the offense and have also found the existence of at least one gateway factor and the existence of at least one statutory aggravating factor.

Fifth, you will consider, as appropriate, whether any of you individually or together with other jurors find that the defendant has proved, by a preponderance of the evidence, any mitigating factor or factors.

Sixth, if you have found the defendant was at least 18 years of age at the time of the particular offense under consideration, and at least one gateway factor and at least one statutory aggravating factor, you must then weigh the aggravating factors, statutory and non-statutory, that you have unanimously found to exist and any mitigating factors that you personally have found to exist to determine the appropriate sentence.

You must decide, in regard to that particular capital offense, whether the aggravating factors that have been found

1     to exist sufficiently outweigh the mitigating factors found to

2     exist for that offense so as to justify imposing a sentence of

3     death on the defendant for that offense; or, if you do not find

4     any mitigating factors, whether the aggravating factors alone

5     are sufficient to justify imposing a sentence of death on the

6     defendant for that offense.

7           Now let me give you some greater detail.  Excuse me.

8     I'm fighting a spring cold here at an inopportune time.

9           Before you may consider the imposition of the death

10    penalty, you must first unanimously agree beyond a reasonable

11    doubt that Mr. Tsarnaev was 18 years of age or older at the

12    time of the offense.

13          I'm going to put on your monitors because we're going

14    to display for you the verdict slip that you will be filling

15    out because I think it may help you to track these instructions

16    as I go through them.

17          So in the event that you unanimously find beyond a

18    reasonable doubt that Mr. Tsarnaev was 18 years of age or older

19    at the time of the offenses as to all counts, you are to

20    indicate that finding on the appropriate line in Section I of

21    the verdict form.  And you'll see that's the top line, the

22    first one of the three.

23          In the event that you unanimously find beyond a

24    reasonable doubt that he was 18 years of age or older at the

25    time of the offenses as to some of the counts but not others,

1    you're to indicate that finding on the appropriate line in

2    Section I of the verdict form and also identify on the line

3    provided, by count number, those specific counts as to which

4    you find that he was at least 18.  And that, you will see, is

5    the third option.

6         If you do not unanimously find the government has

7    proven beyond a reasonable doubt that the defendant was 18

8    years of age or older as to any of the capital counts, then no

9    further deliberations will be necessary as to any such count.

10   And you see that's the second option:  "We find unanimously

11   that the age has not been proved as to any."  So you have the

12   three options to consider, and you'll indicate which represents

13   your decision.

14        Again, before you may consider the imposition of the

15   death penalty for any capital count, you must unanimously find

16   beyond a reasonable doubt the existence as to that count of one

17   of the so-called -- four so-called gateway factors, sometimes

18   also referred to as threshold intent factors, alleged by the

19   government.

20        The gateway factors alleged by the government are as

21   follows, and they're reproduced on the verdict form in

22   Section II:  First, that Mr. Tsarnaev intentionally killed the

23   victim or victims of that particular capital offense charged in

24   the respective count of the indictment; or, Number 2, that

25   Mr. Tsarnaev intentionally inflicted serious bodily injury that

resulted in the death of the victim or victims identified in

the particular offense charged in the respective count of the

indictment; or that Mr. Tsarnaev intentionally participated in

an act contemplating that the life of a person would be taken

or intending that lethal force would be used in connection with

a person other than one of the participants in the offense, and

the victim or victims of the particular capital offense charged

in the respective account of the indictment died as a direct

result of that act; and, fourth -- or, fourth, that

Mr. Tsarnaev intentionally and specifically engaged in an act

of violence, knowing that the act created a grave risk of death

to a person other than one of the participants in the offense

such that participation in the act constituted a reckless

disregard for human life, and the victim or victims of the

particular capital offense charged in the respective count of

the indictment died as a direct result of that act.

        Your findings as to whether the government has proven

the existence beyond a reasonable doubt of a particular factor

from among those four gateway factors must be individual and

unanimous as to each capital count.

        With regard to your findings, you may not rely solely

on your first-phase verdict of guilt or your factual

determinations in that phase.  Instead, you must now each

consider and decide the issue again for the purposes of this

trial.

1              Any finding that a gateway factor has been proven as

2       to a particular capital count must be based on Mr. Tsarnaev's

3       personal actions and intent and not on the actions or intent of

4       anyone else.  Intent or knowledge may be proved like anything

5       else.  You may consider any statements made or acts done by

6       Mr. Tsarnaev and all the facts and circumstances in evidence

7       which may aid in a determination of Mr. Tsarnaev's knowledge or

8       intent.  You may, but are not required to, infer that a person

9       intends the natural and probable consequences of acts knowingly

10      done or knowingly omitted.

11             In the event you unanimously find beyond a reasonable

12      doubt that a particular gateway factor exists as to all the

13      capital counts, you're to indicate that finding on the

14      appropriate line in Section II of the verdict form.  I think

15      you'll see, again, that is presented as the first of the

16      multiple choices.

17             In the event that you unanimously find beyond a

18      reasonable doubt that a particular gateway factor exists as to

19      some but not all of the capital counts, you're to indicate that

20      finding on the appropriate line in Section II and also identify

21      on the line provided, by the count number, the specific counts

22      as to which you find the gateway factor applies.  You'll see

23      that's the third choice presented again.

24             If you do not unanimously find a particular gateway

25      factor has been proved beyond a reasonable doubt and with

respect to any of the capital counts, you shall mark the
appropriate space in Section II, and that will be the second
option of the three.

I instruct you that any gateway factor found by you to
exist is not an aggravating factor -- that's a separate matter.
These are gateway factors -- and may not be considered by you
in the process of weighing any aggravating and mitigating
factors in ultimately deciding whether or not to impose a
sentence of death.

And for any capital count, if you do not unanimously
find that the government has proven beyond a reasonable doubt
the existence as to that count of any of the four gateway
factors, your deliberative task is -- as to that capital count
is over, and I will impose a mandatory sentence of life
imprisonment without the possibility of release.

Now let me turn to the statutory aggravating factors.
If you unanimously find the government has proven beyond a
reasonable doubt that at least one of the four gateway factors
exists as to a particular capital count and that the defendant
was 18 years or older at the time of the offense, you must then
proceed to determine whether the government has proven beyond a
reasonable doubt the existence of any of the following
statutory aggravating factors with respect to the same count.
You may consider only statutory aggravators alleged as to the
offenses for which you have found the defendant was 18 years

1    old and for which you have found at least one gateway factor.

2          The government alleges as a statutory aggravating

3    factor for each capital offense that the death or deaths

4    occurred during the commission of another crime or crimes.  The

5    government alleges as a statutory aggravating factor for each

6    capital offense, Counts 1 through 10 and 12 through 18, that

7    Mr. Tsarnaev knowingly created a grave risk of death to one or

8    more persons in addition to the victim of the offense in the

9    commission of the offense and in escaping apprehension for the

10   violation of the offense.

11         The government alleges, as to Counts 1 through 10 and

12   12 through 15, excluding those that exclusively charge the

13   death of Sean Collier, that Mr. Tsarnaev committed the offense

14   in an especially heinous, cruel and depraved manner and that it

15   involved serious physical abuse to the victim; that he

16   committed the offense after substantial planning and

17   premeditation to cause the death of a person and to commit an

18   act of terrorism; and that he intentionally killed and

19   attempted to kill more than one person in a single criminal

20   episode.

21         The government also alleges, as to Counts 1, 4, 5, 6,

22   9, 10, 14 and 15, those involving the death of Martin Richard,

23   that the defendant is responsible for the death of a victim,

24   Martin Richard, who was particularly vulnerable due to youth.

25         At this step, the law directs you to consider and

decide separately, as to each of the capital counts for which
you have unanimously found that the defendant was at least 18
at the time of the crime and the existence of at least one
gateway factor, whether the government has proved to you
unanimously and beyond a reasonable doubt the existence of any
one or more of the statutory aggravating factors that are
specifically alleged.

Any finding that one or more of these factors has been
proven must be based on Mr. Tsarnaev's personal actions and
intent.  In making your findings regarding the statutory
aggravating factor, you may not rely solely on your previous
verdict of guilt or your factual determinations therein.
Instead, you must now consider and decide the issues presented
in the present context.

In the event that you find unanimously beyond a
reasonable doubt that a particular statutory aggravating factor
exists as to all relevant capital counts for which you have
found the defendant was age 18 or older and the existence of at
least one gateway or threshold intent factor, you are to
indicate that finding on the appropriate line in Section III of
the verdict form.  And, again, you will see that is presented
as the first of the three options.

In the event you unanimously find beyond a reasonable
doubt that a particular statutory aggravating factor has been
proven as to some but not all of the relevant capital counts

for which you have found the evidence of at least one gateway

factor or threshold intent factor, you ought to indicate that

finding on the appropriate line in Section III of the verdict

form.  You're also to identify on the line provided, by count

number, those particular counts as to which you have found the

statutory aggravating factor applies.

       If you do not unanimously find that a particular

statutory aggravating factor has been proved beyond a

reasonable doubt with respect to any of the relevant capital

counts that you're considering, you should mark that in the

appropriate space in Section III of the verdict form.

       If you do not unanimously find that, as to any capital

count, the government has proved the existence of at least one

statutory aggravating factor, then your deliberative task on

that count will be over and I will impose a mandatory sentence

on that count of life imprisonment without the possibility of

release.

       Let me now set forth for you in detail the specific

elements necessary for the government to prove any of the

alleged statutory aggravating factors.

       The government alleges, as to all of the capital

counts, that death or injury resulting in death occurred during

the commission of or during the immediate flight from the

commission of another offense or offenses.  Specifically, the

government alleges that the death or deaths occurred during the

1    commission of a conspiracy to use a weapon of mass destruction

2    in violation of Title 18, United States Code, Section 2332(a)

3    or during the commission or immediate flight from the

4    commission of the use of a weapon of mass destruction, also a

5    violation of Title 18 of the United States Code,

6    Section 2332(a).

7            With regard to Counts 1 through 10 and 12 through 15,

8    that is the counts not addressed specifically to the death of

9    Sean Collier, the government alleges, in the alternative, that

10   the death occurred during the commission or during the

11   immediate flight from the commission of the destruction of

12   property affecting interstate commerce by explosive, a

13   violation of Title 18 of the United States Code,

14   Section 844(i).

15           Though you have already, in the prior phase, convicted

16   the defendant of those crimes, I will summarize for you again

17   the elements of those offenses so that you can determine

18   whether the deaths alleged occurred during the course of that

19   conduct.

20           The crime of conspiracy to use a weapon of mass

21   destruction has two elements:  First, that the defendant and

22   another agreed to use a weapon of mass distraction; and,

23   second, that the defendant knowingly and voluntarily joined in

24   the agreement, intending that the crime of using a weapon of

25   mass destruction be committed.

1          The crime of the use of a weapon of mass destruction

2    has three elements:  first, that the defendant knowingly used a

3    weapon of mass destruction; second, that it was knowingly used

4    against a person or against personal property within the United

5    States; and, third, that such property was used in interstate

6    or foreign commerce or in an activity that affects interstate

7    or foreign commerce or, alternatively, that the offense or the

8    results of the offense affected interstate or foreign commerce.

9          "A weapon of mass destruction" means a destructive

10   device, which is defined by statute to include any explosive

11   bomb.

12         "Knowingly" in this context means that the act was

13   done voluntarily and intentionally and not because of mistake

14   or accident.

15         The crime of destruction of property affecting

16   interstate commerce by explosive has four elements:  first,

17   that the defendant damaged or destroyed or attempted to damage

18   or destroy, by means of fire or an explosive, any building,

19   vehicle or other personal property; second, that the defendant

20   did so maliciously; third, that he did so by means of fire or

21   an explosive; and fourth, that the building, vehicle or other

22   real or personal property was used in interstate or foreign

23   commerce or in an activity affecting interstate or foreign

24   commerce.

25         "Explosive" in this context means gunpowders, powders

1    used for blasting, blasting materials, fuses other than

2    electric circuit breakers, detonators and other detonating

3    agents, or a device that contains any oxidizing and combustible

4    units or other ingredients in such proportions, quantities or

5    packing that ignition by fire or detonation of the compound,

6    mixture or about device on the part -- or any part thereof may

7    cause an explosion.

8         To act maliciously means to act intentionally or with

9    deliberate disregard of the likelihood that damage or injury

10   will result.

11        "Use in interstate or foreign commerce or in any

12   activity affecting interstate or foreign commerce" means

13   current, active employment for commercial purposes and not

14   merely a passive, passing or past connection to commerce.

15   Property's function must affect interstate commerce.

16        As I instructed you during the liability phase, a

17   person may be found guilty of a non-conspiracy federal offense

18   if he aided or abetted another person in committing the

19   offense.  To aid or abet means intentionally to help someone

20   else commit an offense.

21        Aiding and abetting has two elements:  first, that

22   someone else committed the charged crime; and, second, that the

23   defendant consciously shared the other person's knowledge of

24   the underlying criminal act, intended to help him, and

25   willfully took some part in the criminal endeavor seeking to

help it succeed.  An act is done willfully if it is done

voluntarily and intelligently -- and intentionally.  I'm sorry.

Voluntarily and intentionally.

A person who aids and abets another to commit a crime

need not be present when the underlying criminal act is

performed or be aware of all the details of its commission to

be guilty of the crime by aiding and abetting, but a general

suspicion that a crime may -- an unlawful act or a crime may

occur or that something criminal is happening is not enough.

Mere presence at the scene of a crime and knowledge that the

crime is being committed are also not sufficient to establish

aiding and abetting.  To be guilty of a crime by aiding and

abetting, a person must act in some way to affirmatively assist

another person to commit that crime.

The government must prove beyond a reasonable doubt

that the death or deaths charged in a given count occurred

during at least one of the offenses identified in the alleged

aggravating factor.  Whereas here there are alternate ways of

proving the existence of the factor, you must be unanimous as

to which alternative or alternatives you find to have been

proved.

Your determination of which offense or offenses the

defendant was committing when he caused the charged death or

deaths must be unanimous.  Likewise, your determination as to

which death, if any, was caused by the given offense must be

1    unanimous.

2           Your finding as to this statutory aggravating factor

3    must be indicated in the appropriate space in Section III of

4    the verdict form.

5           The next statutory aggravating factor alleged by the

6    government with regard to all capital counts is that, in the

7    commission of the particular offenses and in escaping

8    apprehension for the offense, Mr. Tsarnaev knowingly created a

9    grave risk of death to one or more persons in addition to the

10   deceased victim or victims identified in the particular count.

11          To establish the existence of this aggravating factor,

12   the government must prove beyond a reasonable doubt that

13   Mr. Tsarnaev, in committing the offense described in the

14   capital count you're considering, knowingly created a grave

15   risk of death to one or more persons in addition to the

16   deceased victim or victims identified in a particular count.

17          "Knowingly" creating such a risk means that

18   Mr. Tsarnaev was conscious and aware that his conduct in the

19   course of committing the offense might realistically have this

20   result.  His conduct cannot merely have been the product of

21   ignorance, mistake or accident.  Knowledge, again, may be

22   proved, like anything else.  You may consider any statements

23   made or acts done by Mr. Tsarnaev and all the facts and

24   circumstances in the evidence which may aid in a determination

25   of Mr. Tsarnaev's knowledge.

1          "A grave risk of death" means a significant or

2     considerable possibility that another person might be killed.

3          In order to find that the government has proven this

4     factor beyond a reasonable doubt, you must unanimously agree on

5     the particular person or class of persons who were placed in

6     danger by Mr. Tsarnaev's actions.

7          Persons in addition to the victims include innocent

8     bystanders in the zone of danger created by the defendant's

9     acts but do not include other participants in the offense, such

10    as Tamerlan Tsarnaev.

11         Your finding as to this statutory aggravating factor

12    must be indicated in the appropriate space in Section III of

13    the form.

14         The next statutory aggravating factor alleged by the

15    government with regard to certain capital counts is that

16    Mr. Tsarnaev committed the offenses in an especially heinous,

17    cruel and depraved manner in that it involved serious physical

18    abuse to the victim.  The government alleges this factor with

19    respect to Counts 1 through 10 and 12 through 15 only, again,

20    omitting the counts specifically relating to Sean Collier.

21         "Heinous" means shockingly atrocious.  For the killing

22    to be heinous, it must involve such additional acts of serious

23    physical abuse of the victim as to set it apart from other

24    killings.

25         "Cruel" means the defendant intended to inflict a high

1    degree of pain by serious physical abuse of the victim in

2    addition to killing the victims.

3         "Depraved" means that the defendant relished the

4    killing or showed indifference to the suffering of the victim,

5    as evidenced by the serious physical abuse of the victim.

6         "Serious physical abuse" means a significant or

7    considerable amount of injury or damage to the victim's body,

8    which involves a substantial risk of death, unconsciousness,

9    extreme physical pain, substantial disfigurement or substantial

10   impairment of a function of a bodily member, organ or mental

11   faculty.  The defendant must have specifically intended the

12   abuse apart from the killing.

13        Pertinent factors in determining whether a killing was

14   especially heinous, cruel or depraved include infliction of

15   gratuitous violence upon the victim above and beyond that

16   necessary to commit the killing, needless mutilation of the

17   victim's body and helplessness of the victim.

18        For these purposes, the word "especially" should be

19   given its ordinary, everyday meaning of being highly or

20   unusually great, distinctive, peculiar, particular or

21   significant.

22        For each of the capital counts you are considering

23   with respect to this factor, in order to find that the

24   government has satisfied its burden of proof beyond a

25   reasonable doubt that Mr. Tsarnaev committed the offenses in an

especially heinous, cruel or depraved manner in that it involved serious physical abuse to the victim, you may only consider the acts of Mr. Tsarnaev.  You may not consider the manner in which any accomplice or coconspirator committed the offenses.

Again, your finding as to this statutory factor must be indicated in the appropriate space in Section III of the verdict form.

The next statutory aggravating factor alleged by the government with regard to certain capital counts is that Mr. Tsarnaev committed the offenses under the particular counts after substantial planning and premeditation to cause the death of a person and to commit an act of terrorism.  The government alleges this factor in connection in Counts 1 through 10 and 12 through 15 only, again omitting the counts specific to Sean Collier.

"Planning" means mentally formulating a method for doing something or achieving some end.

"Premeditation" means thinking or deliberating about something and deciding beforehand what to do about it and whether to do it.

"Substantial planning and premeditation" means a considerable or significant amount of time -- or amount of planning or premeditation.

"An act of terrorism" for these purposes is an act

1    calculated to influence or affect the conduct of the United

2    States government by intimidation or coercion or to retaliate

3    against government conduct.

4            To find the defendant [*sic*] has satisfied its burden

5    of proving beyond a reasonable doubt that Mr. Tsarnaev engaged

6    in substantial planning and premeditation either to cause the

7    death of a person or to commit an act of terrorism, you must

8    unanimously agree on the particular object of the substantial

9    planning and premeditation, either to cause the death of a

10   person, to commit an act of terrorism or both.

11           Again, your finding as to this statutory aggravating

12   factor must be indicated in the appropriate space in

13   Section III of the verdict form.

14           I think it might be a good idea if everybody just

15   stood and stretched for a minute.

16           MR. WEINREB:  Does that include the lawyers?

17           THE COURT:  It includes the lawyers.  I don't think it

18   includes the gallery.

19           (Brief pause.)

20           THE COURT:  The next statutory aggravating factor

21   alleged by the government with regard to certain capital counts

22   is that Mr. Tsarnaev intentionally killed or -- and attempted

23   to kill more than one person in a single criminal episode.  The

24   government alleges this factor in connection with Counts 1

25   through 10 and 12 through 15 only, again excluding the counts

1    pertaining exclusively to the death of Sean Collier.

2           To establish the existence of this factor, the

3    government must prove beyond a reasonable doubt that

4    Mr. Tsarnaev intentionally killed or attempted to kill more

5    than one person in a single criminal episode.  You must

6    unanimously agree on the particular actual or intended victims

7    or class of intended victims in order to find that this factor

8    has been proved beyond a reasonable doubt.

9           "More than one person" means one or more other people

10   in addition to killing any single named homicide victim.

11          The government has named Krystle Campbell as a victim

12   in Counts 1, 2, 3, 6, 7, 8, 12 and 13.  It has named Lingzi Lu

13   and Martin Richard as victims in Counts 1, 4, 5, 6, 9, 10, 14

14   and 15.  It has named Sean Collier as a victim, in relevant

15   part, in Counts 1 and 6.

16          "Intentionally killing a person" means killing a

17   person on purpose; that is, willfully, deliberately or with a

18   conscious desire to cause a person's death, and not just

19   accidentally or involuntarily.

20          "Attempting to kill" means purposely doing some act

21   which constitutes a substantial step beyond mere preparation or

22   planning toward killing a person and doing so with an intent to

23   cause a person's death.

24          "A single criminal episode" is an act or series of

25   related criminal acts which occur within a relatively limited

1    time and place or are directed at the same person or persons or

2    are a part of a continuous course of conduct related in time,

3    place or purpose.

4         Again, you may, but are not required to, infer that a

5    person of sound mind intended the ordinary, natural and

6    probable consequences of his knowing and voluntary acts.  Thus,

7    you may infer from Mr. Tsarnaev's conduct that he intended to

8    kill a person if you find, first, that he was a person of sound

9    mind; second, that the victim's death was an ordinary, natural

10   and probable consequence of his acts, even if the death did not

11   actually result, in the case of an attempt; and, third, that

12   Mr. Tsarnaev committed these acts knowingly and voluntarily.

13   Once again, you're not required to make any such inference.

14        Your finding as to this statutory factor again must be

15   indicated in the appropriate place on Section III of the

16   verdict slip.

17        The final statutory aggravating factor alleged by the

18   government with regard to certain capital counts is that

19   Mr. Tsarnaev is responsible for the death of a victim, Martin

20   Richard, who was particularly vulnerable due to age.  The

21   government alleges this factor in connection with Counts 1, 4,

22   5, 6, 9, 10, 14 and 15 only.

23        The word "youth" should be given its ordinary,

24   everyday meaning.  "Youth" refers to a period when one is young

25   and has not yet reached adulthood.  A juvenile is a youth.

1          To find that the government has satisfied its burden

2    of proving beyond a reasonable doubt that Mr. Tsarnaev

3    committed the offenses on a victim who was particularly

4    vulnerable due to youth, you must unanimously agree that the

5    victim was vulnerable due to his youth and that there was a

6    connection between the victim's vulnerability and the offense

7    committed upon him.  A connection does not necessarily mean

8    that the defendant targeted the victim because of the

9    vulnerability; it means that once targeted, the victim was more

10   susceptible to death because of the vulnerability.

11         Again, your finding as to this statutory aggravating

12   factor must be indicated in the appropriate place on -- in

13   Section III of the verdict form.

14         Finally, let me reiterate that if, with respect to any

15   capital count, you do not unanimously find the government has

16   proven beyond a reasonable doubt at least one of the several

17   statutory aggravating factors, your deliberations as to that

18   count are concluded.

19         Let me turn now to non-statutory aggravating factors.

20   If you have unanimously found that the government has proven

21   beyond a reasonable doubt that the defendant was 18 years of

22   age or older at the time of the particular offense, has proved

23   the existence of a particular -- as to that particular count of

24   at least one gateway or threshold intent factor, and at least

25   one statutory aggravating factor alleged by the government, you

1    must then consider whether the government has proven the

2    existence of any alleged non-statutory aggravating factors with

3    regard to that same count.

4            You must agree unanimously and separately as to each

5    count that the government has proved beyond a reasonable doubt

6    the existence of any of the alleged non-statutory aggravating

7    factors before you may consider that statutory -- that

8    non-statutory aggravating factor in your deliberations.  Again,

9    any such finding must be based on Mr. Tsarnaev's actions and

10   intent.

11           The law permits you to consider and discuss only the

12   six non-statutory aggravating factors specifically claimed by

13   the government and listed below.  You're not free to consider

14   any other facts in aggravation that you may think of on your

15   own.

16           The non-statutory aggravating factors alleged by the

17   government with regard to the capital counts are as follows:

18   First, in conjunction with committing acts of violence and

19   terrorism, Mr. Tsarnaev made statements suggesting that others

20   would be justified in committing additional acts of violence

21   and terrorism against the United States.  The government

22   alleges this factor in connection with all of the capital

23   counts.

24           Second, the government alleges that Mr. Tsarnaev

25   caused injury, harm and loss to Krystle Marie Campbell and her

1   family and friends in Counts 1, 2, 3, 6, 7, 8, 12 and 13; to

2   Martin Richard and his family and friends, Counts 1, 4, 5, 6,

3   9, 10, 14, and 15; to Lingzi Lu and her family and friends,

4   Counts 1, 4, 5, 6, 9, 10, 14 and 15; and to Officer Sean

5   Collier and his family and friends, Counts 1, 6, 16, 17 and 18.

6           The third non-statutory aggravating factor alleged is

7   that Mr. Tsarnaev targeted the Boston Marathon, an iconic event

8   that draws large crowds of men, women and children to its final

9   stretch, making it especially susceptible to the act and

10  effects of terrorism.  The government alleges this factor in

11  connection with Counts 1 through 10 and Counts 12 through 15

12  only.

13          The government alleges that Mr. Tsarnaev demonstrated

14  a lack of remorse.  The government alleges this factor in

15  connection with all of the capital counts.

16          The government alleges that Mr. Tsarnaev murdered

17  Officer Sean Collier, a law enforcement officer who was engaged

18  in the performance of his official duties at the time of his

19  death.  The government alleges this factor in connection with

20  Counts 1, 6, 16, 17 and 18 only.

21          Finally, the government alleges that Mr. Tsarnaev

22  participated in additional uncharged crimes of violence,

23  including assault with a dangerous weapon, assault with intent

24  to maim, mayhem and attempted murder on April 15 in 2013 in

25  Boston, Massachusetts -- that's for Counts 1 through 10 and 12

1    through 15 -- and on or about April 19, 2013, in Watertown,

2    Massachusetts.  That relates to Counts 1 through 10 and 12

3    through 18.  That is all the capital counts.

4         These non-statutory aggravating factors are set forth

5    in the verdict slip, and they are generally self-explanatory

6    and do not require further amplification or instruction.  I do

7    want to provide further instructions, however, regarding two of

8    the non-statutory aggravating factors.

9         The first non-statutory aggravating factor I would

10   like to address is the government's allegation that

11   Mr. Tsarnaev has, quote, demonstrated a lack of remorse.  In

12   determining whether the government has proven this fact beyond

13   a reasonable doubt, you may not consider the fact that the

14   defendant has not testified or made any statement here in

15   court.  I remind you the defendant has a constitutional right

16   not to testify or speak both at the first phase of the trial

17   and at his sentencing hearing.

18        Again, there may be many valid reasons why a defendant

19   would exercise his constitutional right not to testify.  You

20   must, therefore, not draw any conclusion against him as to any

21   issue from his failure to testify at this stage of the trial.

22        The second non-statutory factor on which I need to

23   provide some additional information is the allegation that

24   Mr. Tsarnaev participated in uncharged crimes of violence,

25   either directly or as an aider and abetter, as I've previously

1    defined that term.  To find the defendant committed -- and

2    you'll recall that I listed the ones that -- and you'll see it

3    in the verdict form, lists the other uncharged crimes the

4    government claims.

5         So to find the defendant committed an assault with a

6    dangerous weapon, the government would be required to prove

7    that the defendant forcibly assaulted another -- a person with

8    a deadly or dangerous weapon; and, secondly, the assault was

9    done voluntarily and intentionally.

10        To find the defendant the committed an assault with

11   the intent to maim, you would be required to unanimously and

12   beyond a reasonable doubt find that the defendant had forcibly

13   assaulted a person; that the assault was done voluntarily and

14   intentionally; and, third, that the defendant intended to cause

15   a permanent disability.

16        An assault is any intentional and voluntary attempt or

17   threat to do injury to the person of another.  When coupled

18   with the apparent present ability to do so sufficient to put

19   the person against whom the attempt is made in fear of

20   immediate bodily harm.

21        "Forcibly" means by the use of force.  Physical force

22   is sufficient, and actual physical contact is not required.

23        You may also find that a person who, in fact, has the

24   present ability to inflict bodily harm upon another and who

25   threatens or intends to inflict bodily harm upon such person

1    acts forcibly.  In such a case, the threat must be a present

2    one.

3         A deadly and dangerous weapon is an object used in a

4    manner likely to endanger life or inflict serious bodily harm.

5    A weapon intended to cause death or danger but fails to do so

6    because of a defective component is, nevertheless, a deadly or

7    dangerous weapon.

8         To find the defendant committed the uncharged crime of

9    mayhem, you must find beyond a reasonable doubt and unanimously

10   the defendant maliciously disabled or disfigured someone

11   permanently or deprived someone else of a limb, organ or part

12   of his or her body; second, that when the defendant acted, he

13   intended to permanently disable or disfigure the other person

14   or deprive the person of a limb, organ or part of his or her

15   body.

16        To act maliciously means to act with the intent or

17   with the willful -- to do that, or with willful disregard of

18   the likelihood that damage or injury would result.

19        To find the defendant committed the uncharged crime of

20   attempted murder, you must find unanimously and beyond a

21   reasonable doubt that the defendant intend to commit the crime

22   of murder; and, second, that the defendant engaged in a

23   purposeful act that, under the circumstances as he believed

24   them to be, amounted to a substantial step toward the

25   commission of that crime and strongly corroborated his criminal

1    intent.

2         "A substantial step" is an act in furtherance of the

3    criminal scheme.  It must be something more than mere

4    preparation but less than the last act necessary before the

5    substantive crime is completed.  The substantial step may

6    itself prove the intent to commit the crime but only if it

7    unequivocally demonstrates such an intent.

8         "Murder" is defined as the unlawful killing of a human

9    being with malice aforethought.

10        "Malice aforethought" means an intent at the time of

11   the killing willfully to take the life of a human being or an

12   intent willfully to act in a callous and wanton disregard of

13   the consequences of human life.  But malice aforethought does

14   not necessarily imply any ill will, spite or hatred towards the

15   individual killed.

16        In determining whether a victim was unlawfully killed

17   with malice aforethought, you should consider all the evidence

18   considering the facts and circumstances preceding, surrounding

19   and following the killing which tend to shed light upon the

20   question of intent.

21        Again, your findings regarding these non-statutory

22   aggravating factors must be separate as to each count and

23   unanimous.  You must also unanimously agree beyond a reasonable

24   doubt that the non-statutory aggravating factor alleged by the

25   government is, in fact, aggravating.  As I mentioned at the

1    beginning, an aggravating factor is a fact or circumstance that

2    would tend to support the imposition of the death penalty.

3         In the event that you unanimously find beyond a

4    reasonable doubt that a particular alleged non-statutory

5    aggravating factor applies to all of the relevant capital

6    counts for which you have found the defendant 18 years or older

7    and at least one gateway factor and at least one statutory

8    aggravating factor, then you are to indicate that finding on

9    the appropriate line in Section IV of the verdict form.  And

10   you'll see that again; that is presented as the first option.

11        In the event that you unanimously find a particular

12   non-statutory aggravating factor applies to some but not all of

13   the relevant counts, you're to indicate that finding on the

14   appropriate line in Section IV and also to identify on the line

15   provided by count number the particular counts to which you

16   find the non-statutory aggravating factor applies.

17        If you do not unanimously find that a non-statutory

18   aggravating factor has been proven beyond a reasonable doubt

19   with regard to any of the relevant capital crimes, you should

20   indicate that in Section IV of the form.

21        Now, unlike the rules relating to the gateway factors

22   or the statutory aggravating factors, you're not required to

23   find a non-statutory aggravating factor with regard to a

24   particular count before you may consider the death penalty as a

25   possible sentence for that count.  The law requires only that

1    before you may consider an alleged non-statutory aggravating

2    factor as to any particular capital count, you must first

3    unanimously agree that the government has proven beyond a

4    reasonable doubt the existence of that factor as to that count.

5            After you've completed your findings regarding the

6    existence or non-existence of non-statutory aggravating

7    factors, you should proceed to Section V of the verdict form to

8    consider whether any mitigating factors exist.  Again, remember

9    unless you're unanimous that the existence of a particular

10   statutory or non-statutory factor has been proven by the

11   government beyond a reasonable doubt, you may not give that

12   factor any consideration beyond -- in your deliberations.  That

13   is, as to any statutory or non-statutory factor you do not find

14   to be proved, you may not consider that in your deliberations.

15           Let me turn now to mitigating factors.  Before you may

16   consider the appropriate punishment for any one of the capital

17   counts for which you have unanimously found that Mr. Tsarnaev

18   was 18 years old or older and the existence of at least one

19   gateway factor and at least one statutory aggravating factor,

20   you must also consider whether Mr. Tsarnaev has proved the

21   existence of any mitigating factors pertinent to the question

22   of punishment for that particular count.

23           A mitigating factor is not offered to justify or

24   excuse Mr. Tsarnaev's conduct; instead, a mitigating factor is

25   a fact about Mr. Tsarnaev's life or character or about the

1    circumstances surrounding the particular capital offense or

2    anything else relevant that would suggest in fairness that life

3    in prison without possibility of release is a more appropriate

4    punishment than a sentence of death.

5            Unlike aggravating factors, which you must unanimously

6    find proved beyond a reasonable doubt in order for you to even

7    consider them in your deliberations, the law does not require

8    unanimity with respect to mitigating factors.  Any one juror

9    who's persuaded of the existence of a mitigating factor must

10   consider it in his or her sentencing decision.

11           Furthermore, as I've said, it is Mr. Tsarnaev's burden

12   to establish a mitigating factor only by a preponderance of the

13   evidence.  I've previously instructed you about that standard

14   of proof.

15           So Mr. Tsarnaev alleges or urges as mitigating factors

16   the following:  first, that he was 19 years old at the time of

17   the offenses; second, that he has had no prior history of

18   violent behavior; third, that he acted under the influence of

19   his older brother; fourth, whether because of Tamerlan's age,

20   size, aggressiveness, domineering personality, privileged

21   status in the family, traditional authority as the eldest

22   brother or other reasons, Dzhokhar Tsarnaev was particularly

23   susceptible to his older brother's influence; fifth, Dzhokhar

24   Tsarnaev's brother, Tamerlan, planned, led and directed the

25   marathon bombing; sixth, Dzhokhar Tsarnaev's brother, Tamerlan,

1    was the person who shot and killed Officer Sean Collier;

2    seventh, Dzhokhar Tsarnaev would not have committed the crimes

3    but for his older brother, Tamerlan;

4         Eighth, Dzhokhar Tsarnaev's teachers in elementary

5    school, middle school and high school knew him to be hard

6    working, respectful, kind and considerate; ninth, Dzhokhar

7    Tsarnaev's friends in high school and college knew him to be

8    thoughtful, caring and respectful of the rights and feelings of

9    others; tenth, Dzhokhar Tsarnaev's teachers and friends still

10   care for him; 11, Dzhokhar Tsarnaev's aunts and cousins love

11   and care for him;

12        12, mental illness and brain damage disabled Dzhokhar

13   Tsarnaev's father; 13, Dzhokhar Tsarnaev was deprived of needed

14   stability and guidance during his adolescence by his father's

15   mental illness and brain damage; 14, Dzhokhar Tsarnaev's

16   father's illness and disability made Tamerlan the dominant male

17   figure in Dzhokhar's life; 15, Dzhokhar Tsarnaev was deprived

18   of the stability and guidance he needed during his adolescence

19   due to his mother's emotional volatility and religious

20   extremism; 16, Dzhokhar Tsarnaev's mother facilitated his

21   brother, Tamerlan's radicalization;

22        17, Tamerlan Tsarnaev became radicalized first and

23   then encouraged his younger brother to follow him; 18, Dzhokhar

24   Tsarnaev's parents' return to Russia in 2012 made Tamerlan the

25   dominant adult male -- the adult in Dzhokhar's life; 19,

1       Dzhokhar Tsarnaev is likely -- is highly unlikely to commit,

2       incite or facilitate any acts of violence in the future while

3       serving a life-without-release sentence in federal custody; 20,

4       the government has the power to severely restrict Dzhokhar

5       Tsarnaev's communications with the outside world; 21, Dzhokhar

6       Tsarnaev has expressed sorrow and remorse for what he did and

7       for the suffering he caused.

8               In Section V of the verdict form you will be -- after

9       each of the proposed mitigating factors, you are to indicate

10      the total number of jurors who individually find that that

11      particular mitigating factor has been established by the

12      defendant by a preponderance of the evidence.  As I say, that

13      can be any number because any number of jurors could make the

14      decision.  So it could be anywhere from zero to 12.

15              In addition to the mitigating factors specifically

16      raised by Mr. Tsarnaev, the law also permits each of you to

17      consider anything about the offense, the circumstances of the

18      offense or anything about Mr. Tsarnaev's background, record or

19      character or anything else relevant that you individually

20      believe should mitigate in favor of the imposition of life

21      imprisonment without the possibility of release instead of the

22      death penalty.

23              In other words, the law does not limit your

24      consideration of mitigating factors to those that have been

25      proposed or articulated by the defendant.  Accordingly, if

1    there are any mitigating factors not argued by the attorneys

2    for Mr. Tsarnaev by which any juror, on his or her own or with

3    others, finds to be established by a preponderance of the

4    evidence, the juror's free to consider such factor or factors

5    in his own determination as to the appropriate sentence.  And

6    you will see in Section V of the verdict form you're able to

7    identify any such additional mitigating factors that one or

8    more of you independently find to exist by a preponderance of

9    the evidence.

10           Please note the existence of a mitigating factor is a

11   distinct consideration from what weight, if any, should

12   ultimately be given to that factor in your deliberations.  For

13   example, any number of jurors might first find that a

14   particular mitigating factor exists, but those jurors as

15   individuals might later choose to give that same mitigating

16   factor differing levels of significance in the weighing

17   process.  With this distinction in mind, Section V of the

18   verdict form only asks you to report the total number of jurors

19   who individually find the existence of a particular mitigating

20   factor to be established by a preponderance of the evidence.

21           In addition, you should understand that the law does

22   not require that there be a connection between the mitigating

23   evidence and the crime committed, though you may conclude that

24   there is.  It is not necessary, for example, for the defense to

25   prove that adverse circumstances in the defendant's childhood

1    or family background caused him to commit the crime -- the

2    offense.  Whether any mitigating factor has a direct connection

3    to the crime does not affect its status as a -- mitigating

4    circumstances that you're required to consider in the weighing

5    process.

6            After you've completed your findings with respect to

7    the existence or nonexistence of mitigating factors, you should

8    then proceed to Section VI of the verdict form to weigh the

9    aggravating factors and the mitigating factors with regard to

10   each of the counts for which you have unanimously found that

11   the defendant was 18 years old at the time of the offense and

12   you found the existence of at least one gateway factor and at

13   least one statutory aggravating factor.

14           If you unanimously find beyond a reasonable doubt that

15   the government has proven that the defendant was 18 years or

16   older at the time of the offense and the existence of at least

17   one gateway or threshold intent factor and at least one

18   statutory aggravating factor with regard to any capital count;

19   and after you determine whether the government has proven

20   beyond a reasonable doubt the existence of any non-statutory

21   aggravating factors with regard to that count; and, further,

22   after you consider whether Mr. Tsarnaev has proven, by a

23   preponderance of the evidence, the existence of any mitigating

24   factors, then you must engage in a weighing process with regard

25   to that count.

1          You must consider whether you are unanimously

2    persuaded that the aggravating factors sufficiently outweigh

3    any mitigating factors or, in the absence of any mitigating

4    factors, that the aggravating factors are themselves sufficient

5    to call for a sentence of death on that particular count that

6    you are considering.

7          You are to conduct this weighing process separately

8    with respect to each of the capital counts for which you have

9    found the defendant was 18 years of age or older and you have

10   found at least one gateway or threshold intent factor and at

11   least one statutory aggravating factor.

12         Each juror must individually decide whether the facts

13   and circumstances in this case as to each count call for death

14   as the appropriate sentence.  In determining the appropriate

15   sentence for any particular capital count you're considering,

16   each of you must independently weigh the aggravating factor or

17   factors that you unanimously found to exist with regard to that

18   count, whether those aggravating factors are statutory or

19   non-statutory; and each of you must weigh any mitigating

20   factors that you individually or with others have found to

21   exist.

22         You're not to weigh, in the process, any of the

23   gateway or threshold intent factors.  In the weighing process

24   you must avoid any influence of passion, prejudice or any of

25   the arbitrary considerations.  Your deliberations must be based

1    on your reasoned evaluation of the evidence as you have seen it

2    and heard it and on the law which I am instructing you in.

3          Now, you've heard evidence about the impact of the

4    deaths of the deceased victims' -- deaths on the deceased

5    victims' families -- family members and friends.  You may not

6    consider that evidence in deciding whether any of the gateway

7    or statutory aggravating factors have been proved.

8          If you have found with respect to any particular count

9    that Mr. Tsarnaev was 18 years old or older at the time of the

10   offense and have found the existence of a gateway factor and at

11   least one statutory aggravating factor, then you may consider

12   the victim impact evidence in deciding what the appropriate

13   punishment should be.

14         Again, I remind you that you are not to be influenced

15   by speculation concerning what sentence you think anyone else,

16   including victims' families, might wish to see imposed on the

17   defendant.  You have been selected to decide this case because

18   you committed to be fair and impartial in all respects, and you

19   made your oath or affirmation to that effect.  It is for you

20   alone, the fair-minded jurors, to decide the appropriate

21   punishment in this case based on your careful evaluation of the

22   evidence that you have heard and seen.

23         I also want to caution you again, as I did during the

24   trial, that you are not to consider any possible financial

25   costs to the government that may be involved in carrying out

1    either the death penalty or life imprisonment without the

2    possibility of release.  This is so for two reasons:  First,

3    whether one sentence may be more expensive than another is

4    simply not a proper basis upon which to decide a matter as

5    grave as this; and, second, even it were proper to impose

6    either the death penalty or life imprisonment to save money,

7    there's no evidence before you as to which sentence, if either,

8    is actually more expensive to carry out.  For both of these

9    reasons, it would be improper for you to base any part of your

10   decision on the notion that the government could save money by

11   imposing one sentence rather than another.  And that is, again,

12   a subject that should not even be discussed by you in the jury

13   room.

14        Again, whether or not the circumstances in this case

15   call for the sentence of death is a decision that the law

16   leaves entirely to you.  All 12 jurors must agree that death

17   is, in fact, the appropriate sentence in order for it to be

18   imposed.  And no juror is ever required to impose a sentence of

19   death.  The decision is yours, as individuals, to make.

20        The process of weighing aggravating and mitigating

21   factors against each other or weighing the aggravating factors

22   alone, if you find no mitigating factors, in order to determine

23   the proper punishment is by no means a mathematical or

24   mechanical process.  In other words, you should not simply

25   count the total number of aggravating and mitigating factors

1    and reach a decision based on which number is greater.  Rather,

2    you should consider the weight and significance of each factor.

3    As I've said, in carefully weighing these factors, you are

4    called upon to make a unique, individual judgment about the

5    sentence Mr. Tsarnaev should receive.

6         The law contemplates that different factors may be

7    given different weights or values by different jurors.  Thus,

8    you may find that one mitigating factor outweighs all

9    aggravating factors combined or that aggravating factors proved

10   do not, standing alone, justify the imposition of a sentence of

11   death.  Similarly, you may instead find that a single

12   aggravating factor sufficiently outweighs all mitigating

13   factors combined so as to justify a sentence of death.

14        Any one of you is free to decide that a death sentence

15   should not be imposed so long as, based on the evidence and

16   your sense of justice, you conclude that the proven aggravating

17   factors do not sufficiently outweigh the mitigating factors

18   such that the death penalty should be imposed.  Each juror is

19   to individually decide what weight or value is to be given to

20   any particular aggravating or mitigating factor in the

21   decision-making process.

22        Bear in mind, of course, that in order to find that a

23   sentence of death is appropriate for a particular count, the

24   jurors must be unanimous in their conclusion that the

25   aggravating factor or factors proven as to that count

1    sufficiently outweigh any mitigating factors found or, in the

2    absence of any mitigating factors, that the aggravating factors

3    alone are sufficient to call for a sentence of death.

4          In the event that you unanimously find as to all the

5    capital counts that the aggravating factor or factors found to

6    exist sufficiently outweigh the mitigating factor or factors

7    found to exist or, in the absence of any mitigating factors,

8    that the aggravating factor or factors alone are sufficient to

9    justify a sentence of death, then you will indicate that in

10   Section VI of the verdict form.

11         In the event you -- that you unanimously find that a

12   sentence of life in prison without the possibility of release

13   is the appropriate sentence for Mr. Tsarnaev for all of the

14   capital counts, then you would indicate that in Section VI,

15   which is the second option.

16         In the event that you unanimously find that some of

17   the capital counts -- for some of the capital counts that the

18   aggravating factor or factors found to exist sufficiently

19   outweigh the mitigating factor or factors found to exist or, in

20   the absence of mitigating factors, the aggravating factor or

21   factors are alone sufficient to justify death, with respect to

22   those counts, please indicate also in Section VI and then

23   identify those counts by number.

24         In the event that the jury is unable to reach a

25   unanimous verdict in favor of a death sentence or in favor of a

1     life sentence for any of the capital counts, please so indicate

2     in Section VI of the verdict form.  Before you reach any

3     conclusion based on a lack of unanimity on any count, you

4     should continue your discussions until you are fully satisfied

5     that no further discussion will lead to a unanimous decision.

6           After you have completed your sentence determination

7     in Section VI, regardless of what the decision determination

8     was, continue on to Section VII and complete the certificate

9     regarding the determination of sentence.

10          As I instructed you at the beginning of the penalty

11    phase, in your consideration whether the death sentence is

12    appropriate you must not consider the race, color, religious

13    beliefs, national origin or sex of either Mr. Tsarnaev or of

14    the victims.  You are not to return a sentence of death unless

15    you would return a sentence of death for the crime in question

16    without regard to the race, color, religious beliefs, national

17    origin or sex of either Mr. Tsarnaev or any victim.

18          To emphasize the importance of this consideration,

19    Section VIII of the verdict form contains a certification

20    statement.  Each juror should carefully read -- when you've

21    completed your deliberations, each juror should carefully read

22    the statement and sign your name in the appropriate place if

23    the statement accurately reflects the manner in which each of

24    you reached your individual decision.

25          So that is the conclusion of my instructions at this

```
1    stage.  We'll have some further -- few thing to say later.  We
2    will now turn to the closing statements by counsel.  And when
3    they have finished, I will have some final issues to discuss
4    with you.
5            As we did before, the order of the closing arguments
6    is the government will proceed first, followed by the
7    defendant, followed by a brief rebuttal by the government.
8    Again, at least we should -- I think perhaps we should actually
9    take a short break.  Very short.
10           THE CLERK:  All rise for the Court and the jury.  The
11   Court will take a very short recess.
12           (The Court and jury exit the courtroom and there is a
13   recess in the proceedings at 11:05 a.m.)
14           THE CLERK:  All rise for the Court and the jury.
15           (The Court and jury enter the courtroom at 11:26 a.m.)
16           THE COURT:  All right.
17           THE CLERK:  Be seated.
18           THE COURT:  All right.  We're ready for the
19   government's main closing argument.
20           Mr. Mellin?
21           MR. MELLIN:  Thank you, your Honor.  Your Honor, may I
22   ask that the feed be shifted to the government so...
23           THE COURT:  Yes.  Tell me when you're ready.
24           MR. MELLIN:  Thank you.
25           THE COURT:  Go ahead.  I'm just waiting for you to get
```

1    night.

2         MS. CONRAD:  You can't do that.

3         MS. CLARKE:  Can we get our notes?

4         THE COURT:  This is the time it's usually done while

5    it's still possible to correct any misstatement.

6         (Discussion off the record.)

7         MS. CONRAD:  Are you going to have them begin

8    deliberating?

9         THE COURT:  Yeah.  They'll have a half an hour, 45

10   minutes, just so they -- really to make the point of beginning.

11        MR. BRUCK:  Part of this is to object to the

12   instructions you're about to give.  So is this the time for

13   that too?

14        MS. CONRAD:  No, we'll have to come back.

15        THE COURT:  I think I have to give it first.  So if

16   you want me to do that and then we'll do everything.

17        MR. BRUCK:  Then we'll do everything.  Let's do that.

18        THE COURT:  All right.

19        (In open court:)

20        THE COURT:  Jurors, I'm going to just complete my

21   instructions with a few relatively brief remarks.

22        I've outlined for you the rules of law applicable to

23   your consideration of the death penalty and the process by

24   which you should determine the facts and weigh the evidence.

25   And in a few moments, you'll retire to the jury room.

1          The importance of your deliberations should be

2    obvious.  I remind you that you can return a decision

3    sentencing Mr. Tsarnaev to death only if all 12 of you are

4    unanimously persuaded that the death penalty is, in fact,

5    appropriate.  And, again, I remind you that no juror is ever

6    required by law to impose a death sentence.

7          When you're in the jury room, please discuss all

8    aspects of these sentencing issues among yourselves with candor

9    and frankness, but also with a due regard and respect for the

10   opinions of one another.  This has been a long case, and you

11   have spent a lot of time together as jurors.  Regardless of any

12   personal regard you may have for each other, you must each

13   decide this case for yourself.  No juror should surrender his

14   or her own conscientious conclusion merely because other jurors

15   might feel otherwise or simply to get to a unanimous decision.

16         Remember that the parties and the Court are relying on

17   you to give full, considered and mature consideration to the

18   question of sentencing.  By so doing, you carry out, to the

19   fullest, your oath as jurors, that you will well and truly try

20   the issues of this case and render a just verdict.

21         As with the prior phase, if it becomes necessary

22   during your deliberations to communicate with me for any

23   reason, simply send a note signed by the foreman of the jury.

24   If you send a note, do not indicate any decision-making on any

25   of the issues that are before you or provide any details about

1    your progress.  And additionally, do not attempt to communicate

2    with the Court or any other court personnel, except the court

3    security officer by telling him that you have the need for him

4    to convey it, other than in writing, a signed writing.  There

5    will be no oral communications.  Any questions you have, you

6    should present in writing.

7            When you have reached a decision, send me a note

8    signed by the foreman that you have reached a decision.  Do not

9    indicate on the note what the decision is.  And in no

10   communication with the Court prior to a verdict should you ever

11   give a numerical count of where the jury stands in its

12   deliberations on any issue.

13           Whichever decision you reach, the foreman must also

14   sign and fill out the verdict form accordingly, according to

15   the verdict, and be prepared to report to the Court your

16   findings as to the issues in the verdict form, the defendant's

17   age, the gateway, aggravating and mitigating factors and your

18   sentencing decision.

19           As we did in the prior phase, you will have an

20   envelope in the room that at the end of the day, each day, as

21   you deliberate, you will put the verdict slip inside the

22   envelope and seal it, and it will remain sealed and be returned

23   to you in a sealed condition the following day and you will

24   remove it from the envelope yourselves.

25           I note for the record that you will not have your

1    cellular phones, PDAs or other electronic devices during the

2    deliberations.  I understand they have already been collected

3    from you and will not be returned to you until the court

4    recesses each day.

5         Of course, as I previously said, it would be improper

6    and a violation of your oath as a juror to conduct any outside

7    research or investigation on the Internet or otherwise to -- or

8    otherwise, or to communicate with anyone, including your fellow

9    jurors, outside the deliberations conducted by the jury as a

10   whole in the jury room.

11        As in the first phase, only 12 jurors will be

12   deliberate.  The alternates remain important because you may be

13   called to serve in the event that a deliberating juror is no

14   longer able to participate in the deliberations.  But as

15   before, the alternate jurors will be separated from the

16   deliberating jurors during the deliberations.

17        And among the alternate jurors, you're not to discuss

18   anything about the case or the penalty among each other.  In

19   other words, you're not to act as if you were also a

20   deliberating jury.

21        When the court is in session, you will return to the

22   courtroom as well so that you may hear any responses to jury

23   questions and any other remarks that are necessary from me.

24        Let me conclude by reminding you again that nothing I

25   have said in my instructions and nothing I've done or said

1   during the course of the trial has been said or done to suggest

2   to you what I think the outcome should be.  What the sentencing

3   decision should be is your exclusive duty and responsibility.

4            Let me see counsel again at the side, please.

5            (Discussion at sidebar and out of the hearing of the

6   jury:)

7            MR. BRUCK:  Well, the first objection we'd like to

8   make is the Court's refusal of our Instruction No. 3, which is

9   the instruction that -- concerning the consequences of a

10  deadlock.

11           THE COURT:  Okay.  All right.

12           MR. BRUCK:  And I understand that the rule may require

13  me to spell that out unless --

14           THE COURT:  I don't think so.

15           MS. CONRAD:  The First Circuit does.  You can't just

16  refer to it by the number.  You actually have to state what was

17  requested and what's not --

18           MR. BRUCK:  No, that's not the one.

19           THE COURT:  I think that's stating a summary.

20           MR. BRUCK:  Maybe I should read it to be sure.

21           MS. CONRAD:  The First Circuit says -- it's very

22  short.  The First Circuit says you have to read it.

23           MR. BRUCK:  The request --

24           THE COURT:  Well, I'm concerned about the jury hearing

25  it.