# Federal Defenders
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

March 6, 2020

**By ECF**
Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United States Courthouse
40 Centre Street
New York, NY 10007

The Government is directed to respond to any of the arguments/concerns raised in Saipov's March 6, 2020, letter by Wednesday March 11, 2020.

SO ORDERED:

*/s/ Vernon Broderick*

HON. VERNON S. BRODERICK  3/10/2020
UNITED STATES DISTRICT JUDGE

Re:   *United States v. Sayfullo Saipov*
      (S1) 17 Cr. 0722 (VSB)

Dear Judge Broderick,

The Court issued an Opinion and Order regarding miscellaneous jury issues on February 13, 2020 ("Order"). We write to raise two issues from the Order.

## Sharing Juror Research

First, we ask the Court to reconsider ordering the parties to exchange the "facts/information/data" they gather regarding potential jurors starting three weeks before *voir dire*. Dkt. No. 296 at 8 ("In order to facilitate a fair and meaningful *voir dire*, the parties are directed to share the results of any research they conduct of the prospective jurors with their adversary."). This procedure, which was requested by neither party, and to our knowledge has never been implemented in a capital case, risks substantially infringing upon the defense team's work product. It also imposes a resource-intensive and time-consuming burden just as we enter the final weeks of preparing for trial. Accordingly, we respectfully request that the Court rescind it and instead enter an Order requiring only that the government share its criminal history reports of potential jurors with the defense as has been done in several recent capital cases with the government's consent. We have conferred with the government about this topic and they are currently considering their position.

Our primary objection to the Order is that it requires disclosure of work product and defense strategy. Although it draws a distinction between "attorney work-product, or attorney strategy" and "facts/information/data," requiring only that the latter be disclosed to the other side, that distinction is impossible to implement in practice. The process of culling information from publicly-available social media necessarily involves deciding what is important with the goals of the case in mind.

1

Our investigators will primarily undertake electronic social media research of potential jurors. In doing so, they will need to choose what information to gather on hundreds of prospective jurors, from an extraordinary amount of social media data. Further, they will need to decide how best to document and present the culled information to the attorneys who are primarily responsible for preparing for *voir dire*. This process directly implicates work product because it reveals defense strategy, *i.e.* making judgment calls about what information is important with the goals of the case in mind.

For example, if an investigator reviews a prospective juror's public Facebook account, she may decide that certain posts are relevant to document and present to the attorneys, whereas others are not. Such investigative fact-gathering, *i.e.* selection of a limited number of "facts/information/data" from a much larger universe of social media data, qualifies for protection as work product and should not be disclosed.

The Second Circuit endorsed this view of the work product protection in *In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156 (2d Cir. 2002):

> While it may well be that work product is more deeply concerned with the revelation of an attorney's opinions and strategies… we see no reason why work product cannot encompass facts as well. It is helpful to remember that the work product privilege applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information.… If an attorney for a suspect, or an investigator hired for the suspect, undertakes a factual investigation, examining *inter alia,* the scene of the crime and instruments used in the commission of the crime, we see no reason why a work product objection would not properly lie if the Government called the attorney or investigator before the grand jury and asked "What facts have you discovered in your investigation?"

*Id.* at 161 (internal citations omitted).

In line with the above, the overwhelming majority of the facts gathered by our investigators when conducting a search of a prospective juror would be protected by the work product doctrine. By mandating their disclosure, the Order would infringe on confidential work product and strategic decision-making.

Additionally, by requiring the defense to share facts that it has gathered with the government, the Order may unintentionally require our investigators to save or otherwise document electronic social media in a manner they otherwise would not. In the example above, our investigators may not need to create certain screenshots of particular Facebook posts, instead documenting them in a memorandum to the attorney. However, with the Order in mind, time and resources would be spent preparing the facts in a disclosable fashion. Our investigators' limited time needs to be devoted to preparing other aspects of the case.

We are mindful that the Order was designed to facilitate a meaningful *voir dire* that is fair for both parties. But both parties have equal access to publicly available information. The only area of asymmetry is the government's access to NCIC's database. The Court should rectify this imbalance, and consistent with orders in other capital cases, require that the government disclose its criminal history reports of prospective jurors to the defense team. *See, e.g.*, *United States v. Fell*, 01 Cr. 12 (D.

Vt.) (Dkt. No. 1332); *United States v. Sampson*, 01 Cr. 10384 (D. Mass.) (*See* Conf. Tr. Sept. 7, 2016); and *United States v. Smith*, 16-Cr-86 (D. Alaska) (Dkt. No. 684). Running a prospective juror's criminal history does not implicate the same strategic decision-making involved in the culling of information from social media, and therefore does not require disclosure of the government's work product.

**Attorney Conducted Voir Dire**

Second, the Court denied the defense's request for attorney-conducted *voir dire*, but stated that it remained open to the possibility of permitting it if, as *voir dire* proceeds, the Court finds reason to do so. We ask the Court to consider the information below as it continues to determine whether to permit attorney-conducted *voir dire*.

In denying our request, the Court wrote that "Saipov states that having attorneys lead *voir dire* is 'most likely to lead to honest answers from prospective jurors' without providing any case citations or stating any basis to support this statement, or providing any reason to believe that *voir dire* conducted by a federal judge would not be just as likely, if not more likely, to lead to honest answers from prospective jurors." Feb. 13 Order at p. 2. In that paragraph – and in the entire '*voir dire* by counsel' section of the Court's Order – the Court relies solely on Mr. Saipov's December 10, 2019 letter. *See id.* (referencing Mr. Saipov's December 10 letter, at Dkt. No. 237).

In fact, Mr. Saipov made his initial request for attorney-conducted *voir dire* on November 18, 2019. *See* Dkt. No. 226. The support and reasons the Court found missing are in the November 18 letter. *See id.* As laid out in that filing: "In a capital case it is particularly desirable to ensure that counsel for both parties have the opportunity to plumb the venireperson's views on capital punishment, their understanding of mitigating and aggravating factors, and other issues . . . ." (*Id.* at 18 (quoting *United States v. Taveras*, 436 F. Supp. 2d 483, 504 (E.D.N.Y. 2006), affirmed in part and vacated in part on other grounds by *United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008)). In the November 18 letter, we cited to Supreme Court precedent that contemplates attorney questioning in a capital case:

> "As with any other trial situation where an adversary wishes to exclude a juror because of bias, then, it is the adversary seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality." [*Wainwright v.*] *Witt*, 469 U.S. [412,] 423 [(1985)]. *See also United States v. Ible*, 630 F.2d 389, 395 (5th Cir. 1980) ("[V]oir dire may have little meaning if it is not conducted at least in part by counsel. . . . [I]t is the parties, rather than the court, who have a full grasp of the nuances and the strength and weaknesses of the case.").

*Id.*

We also laid out extensive social science research that supports the statement that the Court's Order found unsupported:

> Studies indicate that people are more willing to disclose information to those whom they perceive as having similar status to themselves than to those of higher status. *See* Suggs and Sales, *supra*, at 254 ("A large status differential between the interactants will most likely reduce perceived similarity and, in turn, the degree of self-disclosure."). Highly-esteemed figures, such as judges, encourage potential jurors' tendency to offer the "socially desirable"

3

response. *See* Neil Vidmar, When All of Us Are Victims: Juror Prejudice and "Terrorist" Trials, 78 CHI.-KENT L. REV. 1143, n.88 (2003) ("Research findings suggest that judge-conducted voir dire is less likely to produce full disclosure in jurors than lawyer-conducted voir dire.") (internal citations omitted).

*Id.*

We continue to believe that the government's sole argument against attorney-conducted *voir dire* – that it will prevent the parties from "stray[ing] into . . . impermissible areas" (*see* Dkt. No. 236) – is invalid. Throughout this trial, like all trials, the parties will be obligated to follow the Court's directives and instructions regarding permissible and impermissible areas of inquiry. The government's logic would similarly dictate that the Court conduct all direct and cross examinations for fear that the parties stray into impermissible areas. Such an argument is counter to the basic tenets of the adversarial system.

Finally, the Court's decision to conduct the *voir dire* on its own will place this trial in the minority of federal capital cases. As detailed in our December 10, 2019 letter, the statistics support the use of attorney-conducted *voir dire*: 82 percent of federal capital cases from 1989 through February 2019 have allowed it and nine of the last ten federal trials (*i.e.* ninety percent) have allowed it. *See* Dkt. No. 237. Indeed, those statistics include cases in the Southern District of New York, despite the fact that attorney-conducted *voir dire* is not the norm in non-death penalty cases. *See id.*

The reason nine of the past 10 federal capital trials involved attorney-conducted voir dire, is that the process is highly constitutionalized and fact-specific. As discussed in previous briefing, a person may not serve as a juror if he or she would "unwaveringly impose death after a finding of guilt" or if he or she is "substantially impaired" in considering mitigation "following conviction." *Morgan v. Illinois*, 504 U.S. 719, 733-35 (1992). Regardless of the crime committed, a juror must be able to "consider and give effect to" mitigating evidence. *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989). For this reason, a defendant must be permitted to "lay bare the foundation" for a cause challenge on the ground that the prospective juror could not meaningfully consider mitigation evidence after convicting the defendant. *Morgan*, 504 U.S. at 733.

And just as *Morgan* requires the ability to "lay bare the foundation" for cause strikes based on juror views that make them too inclined toward the death penalty, *Witherspoon v. Illinois*, 391 U.S. 510 (1968) requires the ability to retain prospective jurors who oppose the death penalty. "A man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment" whether to impose a life or death sentence, and the defendant is entitled to have those jurors included in the venire. *Witherspoon,* 391 U.S. at 519.

Judge-conducted *voir dire* is not well-suited to exposing problematic jurors or retaining jurors who are constitutionally required to be included in the venire precisely because of the identity of the questioner: a high status figure whom jurors will seek to please with socially acceptable answers. In addition, although counsel will spend considerable time preparing follow-up questions of prospective jurors for the Court in advance of their appearance, there will be a constant need to follow up on specific answers in the moment in order to properly "lay bare the foundation" for cause strikes (not to mention, make an educated decision about exercising peremptory strikes). If

4

the questioning is conducted by the Court, the follow-up will necessarily involve constant interruptions and sidebars by counsel.

In sum, attorney-conducted *voir dire* will elicit more transparency from prospective jurors, be more tailored to the facts of the case (with which counsel are more familiar), and be far more efficient. It is for those reasons that it has become standard practice in federal capital cases.

Respectfully submitted,

_____/s/_____
David Patton
Counsel for Sayfullo Saipov