**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

August 1, 2022

**By ECF**
Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Centre Street
New York, NY 10007

Re: <u>United States v. Sayfullo Saipov</u>
**(S1) 17 Cr. 722 (VSB)**

Dear Judge Broderick,

    We write to request an Order requiring the Government to disclose to the defense no later than August 11, 2022, an informative outline of the statutory and non-statutory aggravating factors it intends to present to the jury in the event of a penalty phase in this matter.

    District courts in capital cases routinely order the Government to produce informative outlines of its penalty-phase case-in-chief—months before trial commences—to provide the defense with a meaningful opportunity to adequately investigate all necessary penalty-phase defenses and to mount appropriate challenges to the reliability and accuracy of the Government's penalty-phase presentation. <u>See, e.g.</u>, Exhibit A (Government's penalty-phase informative outline submitted in connection with <u>United States v. Con-Ui</u>, No. 3: CR-13-123 (M.D. Pa. Feb. 25, 2016)). In this case, the Government has agreed to provide an informative outline, but not until approximately two weeks before trial begins on October 11, 2022.

    As discussed in more detail below, disclosing an informative outline too close to trial thwarts its purpose, particularly where, as here, the Government's notice of intent to seek the death penalty ("Death Notice") contains barebones allegations of ill-defined aggravating factors like future danger, victim impact, and lack of remorse, the rebuttal to which concerns witnesses on three different continents.[1] Absent more particulars soon, Sayfullo Saipov will be unable to effectively defend

---

[1] Currently outstanding is Mr. Saipov's challenge to various aspects of the Government's Death Notice, including its ability to even argue certain aggravating factors to the jury. <u>See, e.g.</u>, Dkt. Nos. 97 and 98.

himself against the Government's pursuit of the death penalty, in violation of the Fifth, Sixth, and Eighth Amendments to the United States Constitution.

## Background

Mr. Saipov had previously moved to compel the Government's production of an informative outline through an in limine motion filed on February 18, 2020. Dkt. No. 287. Although the Government agreed to provide one no later than April 20, 2020 (Dkt. No. 300 at 8), the Court adjourned Mr. Saipov's trial sine die on March 18, 2020, due to COVID-19 (Dkt. No. 324) and the outline was never produced.

On June 27, 2022, the Government indicated its intent to produce an informative outline near the conclusion of the liability phase. The defense urged the Government to reconsider its position and to produce the informative outline at least two months before the October 11, 2022, trial date. The Government responded that it would agree to produce its informative outline approximately two weeks before trial begins, but not earlier.

## Argument

The penalty phase of a capital trial functions like an ordinary criminal trial in certain respects: the government must prove aggravating factors beyond a reasonable doubt, the jury must find aggravating factors unanimously, and the death penalty may not be imposed unless the Government proves certain elements of the capital offense (i.e., the defendant's age, his intent, and at least one statutory aggravating factor). As in any trial, the accused requires meaningful notice to prepare and present a defense, including any legal or evidentiary challenges. Unlike an ordinary case, however, death—the ultimate sanction—is at stake in a capital prosecution. As a result, a heightened standard of reliability applies and counsel face stringent performance obligations. To ensure that the accused receives adequate protection under these circumstances, courts have required the Government to plead the details of alleged aggravating factors, usually by informative outline, as described below.

In this case, an informative outline is critical given the barebones nature of the Government's Death Notice and the unbounded potential discovery on several of the Government's aggravating factors, particularly with respect to future danger and victim impact. Indeed, the Death Notice reveals nothing about the facts (acts, events, etc.) the Government intends to prove to demonstrate Mr. Saipov's alleged future dangerousness, nor does the victim-impact aggravator reveal anything about what effects and on whom the Government intends to prove to establish that the impact on victims justifies imposing the ultimate punishment on Mr. Saipov.

### A. Mr. Saipov is entitled to meaningful notice of the Government's penalty-phase presentation.

"Whether rooted directly in the Due Process Clause … or in the Compulsory Process or Confrontation clauses…, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal citation omitted). "This opportunity would hardly be meaningful' if the defense were forced to confront sentencing phase evidence without any notice of what that evidence might be." United States v. Llera Plaza, 179 F. Supp. 2d 464, 472 (E.D. Pa. 2001). See also United States v. Duncan, No. CR07-23, 2008 WL 656036, at *5 (D. Idaho Mar. 6, 2008) (same).

"[A]t a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and prepare his case in rebuttal." United States v. Wilson, 493 F. Supp. 2d 364, 377 (E.D.N.Y. 2006). See also United States v. Kaczynski, No. CR S-96-259, 1997 WL 34626785, at *18 (E.D. Cal. Nov. 7, 1997) (same); United States v. Rodriguez, 380 F. Supp. 2d 1041, 1057 (D.N.D. 2005) (calling defendant's ability to defend his case a "hallmark[]" of due process). As one court warned: "Absent further revelations by the government, Defendant may be forced to defend against these allegations for the first time during the prosecutor's case-in-chief at sentencing. This raises the specter of unfair surprise and potentially prejudices Defendant's ability to defend against the government's efforts to impose the death penalty." Rodriguez, 380 F. Supp. 2d at 1057.

Requiring the Government to provide advance notice of the facts and evidence it will use to establish aggravating factors also helps the trial court serve its essential "gatekeeping function." 18 U.S.C. § 3593(c).[2] By mandating disclosure now, the Court can make reasoned, deliberate choices as it "screen[s]" the Government's aggravation evidence, a task "essential in channeling, directing, and limiting the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty." United States v. Solomon, 513 F. Supp. 2d 520, 526 (W.D. Pa. 2007). See also United States v. Hammer, No. 4:96-CR-239, 2011 WL 6020157, at *3 (M.D. Pa. Dec. 1, 2011) (same). It also ensures that the government's case for death meets the Eighth Amendment's "heightened reliability" requirement. Cf. Gardner v. Florida, 430 U.S. 349, 358-59 (1977) (requiring disclosure to defendant of all information contained in confidential presentence investigation report in sufficient time to allow defendant a meaningful opportunity for response).

---

[2] The FDPA's gatekeeping provision is stricter than the one in the Federal Rules of Evidence. It provides: "[I]nformation may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Compare Fed. R. Evid. 403 ("substantially outweighed").

**B. Courts routinely order the Government to provide an "informational" or "informative" outline to advise the defense of the theories and facts underlying the aggravating factor allegations in the indictment and Death Notice.**

Defense counsel are held to the highest standard of care in capital sentencing proceedings. Those standards are described in the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases. See Wiggins v. Smith, 539 U.S. 510, 524 (2003) (citing ABA Guidelines as establishing the governing "norms"). In particular, the Court in Wiggins referenced the ABA Guideline which governs the investigatory duties of counsel with respect to the penalty phase of a capital trial, quoting the requirement that counsel "'discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" Wiggins, 539 U.S. at 524 (quoting ABA Guidelines 11.4.1(C), p. 93).

Since Wiggins, these Guidelines have been revised to be even more exacting insofar as they require counsel "to seek information that . . . rebuts the prosecution's case in aggravation," Guideline 10.11(A), and to "determine at the earliest possible time what aggravating factors the prosecution will rely upon in seeking the death penalty and what evidence will be offered in support thereof." Id. at 10.11(H). See also United States v. Karake, 370 F. Supp. 2d 275, 280-81 (D.D.C. 2005). Armed with this information, defense counsel should investigate whether the government's evidence "can be excluded, rebutted, or undercut." Guideline 10.11 cmt. "Where possible, counsel should move to exclude aggravating evidence as inadmissible, and, if that fails, rebut the evidence or offer mitigating evidence that will blunt its impact." Id.; see Rompilla v. Beard, 545 U.S. 374, 387 (2005) ("We long have referred to these ABA Standards as guides to determining what is reasonable.").

Counsel cannot perform this function—and therefore cannot provide the constitutionally required effective assistance—without advance notice of the Government's evidence. Numerous courts agree that "[i]n order for the government's evidence to be subjected to the crucible of meaningful adversarial testing, the [notices of intent], in conjunction with the indictment, must inform the defendants of the theories and facts that the government will use to establish each aggravating factor." Llera Plaza, 179 F. Supp. 2d at 472. See also Duncan, 2008 WL 656036, at *5. Accordingly, citing the commands of due process, and relying on their "inherent authority," courts frequently order the Government to provide defendants, ahead of sentencing, with more than bare minimum notice. See, e.g., United States v. Glover, 43 F. Supp. 2d 1217, 1222 (D. Kan. 1999). These courts direct the government to provide additional information about the information it will use to establish its aggravating factors See, e.g., United States v. Jacques, No. 2:08-cr-117,

4

2011 WL 1675417, at *29 (D. Vt. May 4, 2011), overruled in part on other grounds, 684 F.3d 324 (2d Cir. 2012); Glover, 43 F. Supp. 2d at 1222; United States v. Montgomery, 10 F. Supp. 3d 801, 830 (W.D. Tenn. 2014) (listing cases); Rodriguez, 380 F. Supp. 2d at 1058; Kaczynski, 1997 WL 34626785, at *19; Wilson, 493 F. Supp. 2d at 376; Karake, 370 F. Supp. 2d at 280-81; United States v. Gooch, No. 04-128-23, 2006 WL 3780781, at *23 (D.D.C. Dec. 20, 2006); United States v. Lujan, 530 F. Supp. 2d 1224, 1269-70 (D.N.M. 2008) ("Accordingly, in the exercise of the inherent authority given to the Court, I will order the Government to provide Mr. Lujan a written informative outline on certain statutory threshold findings and aggravating factors…. The document need not reveal evidentiary detail but should address the general nature of the information it will introduce to prove … statutory threshold findings and aggravating factors.").

This "additional information" typically takes the form of an "informational outline," Hammer, 2011 WL 6020157, at *2, or "informative outline," United States v. Bin Laden, 126 F. Supp. 2d 290, 304 (S.D.N.Y. 2001). See United States v. Diaz, No. CR 05-0167, 2007 WL 4169973, at *3 n.1 (N.D. Cal. Nov. 20, 2007) ("In the interest of protecting defendants' right to prepare an adequate defense, most federal district decisions have required an informative outline of the underlying facts the government plans to use to prove the aggravating factors indicated in Section 3593(a)."). This outline advises the defendant of "the general nature of the evidence [the government] will seek to introduce in support of the threshold findings and specified aggravating factors." Hammer, 2011 WL 6020157, at *3; see United States v. O'Reilly, No. 05- 80025, 2007 WL 4591856, at *5 (E.D. Mich. Dec. 28, 2007) (explaining that informative outline provides defendant with "more specific information" about the government's proposed aggravating factors).

It is no argument against early disclosure of an informative outline that sentencing information (including penalty-phase-witness 3500) has been disclosed in discovery, especially when the discovery is voluminous. To the contrary, extensive discovery reinforces the need for early disclosure:

> [T]he fact that the precise acts and/or events may have been disclosed in the course of discovery does not obviate the need for a more specific notice. Even if the government has provided Defendant with documents detailing specific acts, the government has not yet indicated which acts and/or events it intends to use at sentencing. In fact, the characterization of the discovery provided as extensive lends further support for requiring the government to identify the particular acts upon which it will rely. Extensive discovery could make it difficult for Defendant to ascertain which precise discovery will be used against him.

5

Rodriguez, 380 F. Supp. 2d at 1057-58; see Kaczynski, 1997 WL 34626785, at *19 (same); Diaz, 2007 WL 4169973, at *5 ("Merely referring to a range of several hundred pages (or thousands in some cases) in discovery is not an informative outline…. [T]oo much is left to guesswork. Notice means notice. It does not mean a scavenger hunt for clues in discovery, including in redacted pages."); United States v. Diaz, 2007 WL 196752, at *3 (N.D. Cal. Jan. 23, 2007) (holding that even if the revised notice of intent "will simply reiterate facts that are alleged in the indictment or supported elsewhere in the discovery … the government should lay out in its revised notice the factual details it intends to use to establish the aggravating factors at the penalty phase"); United States v. Rodriguez, 380 F. Supp. 2d 1041, 1057-58 (D.N.D. 2005) (directing the government to file an amended death penalty notice articulating the specific factual basis for each allegation, even though the government had already produced ample discovery).

### C. The superseding indictment and the Death Notice require substantial elaboration to serve any constitutional, statutory, or practical function in this case.

Together, the superseding indictment and the Government's Death Notice identify five statutory aggravating factors and six non-statutory aggravating factors on which the Government intends to rely at sentencing. See Death Notice at Dkt. No. 80. The Government's descriptions of the alleged aggravating factors contain only skeletal factual allegations (to the extent factual allegations appear at all). Because these pleadings do not provide sufficient information to satisfy Mr. Saipov's Fifth, Sixth, and Eighth Amendment rights—and because the Court cannot exercise its gatekeeping function based on these barebones pleadings—the Court should order the Government to file an informative outline as to each aggravating factor by no later than August 11, 2022. Absent a timely-produced informative outline, Mr. Saipov cannot meaningfully prepare for the penalty phase of his two-part capital trial.

#### 1. **Providing Mr. Saipov with adequate notice of the statutory aggravating factors he faces requires the Government's prompt filing of an informative outline.**

For example, and with respect to statutory aggravating factors, the Government has noticed its intent to argue that Mr. Saipov "committed the offense after substantial planning and premeditation to cause the death of a person and commit an act of terrorism." Dkt. No. 80 at 3. No facts are provided; no information beyond the statutory language appears. This is not the kind of notice that satisfies due process or enables Mr. Saipov to mount a defense. Such barebones notice also fails to enable the Court to screen the Government's evidence to guard against the arbitrary and capricious imposition of the death penalty. Neither the superseding indictment nor the Death Notice explain the alleged substantial planning and

6

premeditation performed by Mr. Saipov, and additional details are necessary. See, e.g., Hammer, 2007 WL 6020157, at *3 (ordering the government "to provide Defendant with Informational Outlines of the information it plans to present in support of … the statutory aggravating factor of substantial planning and premeditation."); United States v. Diaz, No. CR 05-00167, 2007 WL 196752, at *4 (C.D. Cal. 2015) ("The government must provide an informative outline of the factual basis on which it intends to show that the planning and premeditation were substantial."); United States v. Con-Ui, No. 3:CR-13-123, 2016 WL 9331115, at *18 (M.D. Pa. Jan. 28, 2016) (ordering government to provide defense with informational outline on substantial planning aggravator, specifying witnesses the government intends to call and evidence it intends to present); United States v. Ciancia, No. CR 13-902, 2015 WL 13798674, at *4 (C.D. Cal. Sept. 4, 2015) (ordering government to provide defense with "an informational outline as to the factual basis on which the Government intends to show that Defendant's planning and premeditation were substantial.").

Another example is the Government's allegation that Mr. Saipov "knowingly created a grave risk of death to one or more persons in addition to the victims of the offense," which is similarly nondescript. Dkt. No. 80 at 3. This language suggests there may be others ("in addition") that were at grave risk, which leaves the proof open ended. There is also no notice about how Mr. Saipov "knowingly" placed any other (un)identified person at grave risk of death. This Court should follow the lead of other courts and order the Government to produce more details about this aggravator. See, e.g., Llera Plaza, 179 F. Supp. 2d at 473 (ordering production of informative outline where "neither the indictment nor the NOIs specify which 'additional persons' the defendants are alleged to have put at risk during their alleged crimes"); Diaz, 2007 WL 196752, at *4 (ordering informative outline because "[t]he government did not explain in its briefs or at oral argument who was put at grave risk, what the grave risk was, or how the defendant 'knowingly' created the risk"); United States v. Savage, Nos. 07–550–03, 07–550–04, 07–550–05, 2013 WL 1934531, at *12 (E.D. Pa. May 10, 2013) ("Nowhere in the Revised Notice of Intent or in the Indictment does the Government allege any individuals, other than the victims, who were exposed to 'grave risk' during the commission of the charged murders. The Government shall submit an outline of the evidence it intends to use at the sentencing phase with respect to this aggravating factor.").

The "multiple killings" aggravator also fails to provide adequate notice on its face. Dkt. No. 80 at 3. It alleges that Mr. Saipov "killed and attempted to kill more than one person in a single criminal episode," incorporating by reference Counts One through Eight and Twenty Eight of the indictment. Missing is any identifying information about the individuals Mr. Saipov intended to kill but did not, and the Death Notice does not indicate whether the Government will pursue the attempted-to-kill prong of this factor. If the Government intends to prove both prongs, it must

7

identify whom it alleges Mr. Saipov intended to kill. Without this information, Mr. Saipov cannot advance arguments designed to ensure that the evidence offered in support of this factor is narrowed to only those facts relevant to proving the aggravator, and the Court will be unable to appropriately screen the evidence.

### 2. Adequate notice of the Government's non-statutory aggravating factors also compels its filing of an informative outline.

The Government's notice of its non-statutory aggravating factors suffers from similar deficiencies. For example, the Death Notice alleges that Mr. Saipov "caused injury, harm, and loss" to the families and friends of the eight decedents, evidenced by each victim's "personal characteristics and by the impact of the victim's death upon his or her family and friends." Dkt. No. 80 at 4. This is not enough information to provide Mr. Saipov with adequate notice.

"That the range of human suffering—whether physical, emotional, or economic—is vast goes without saying." Bin Laden, 126 F. Supp. 2d at 304; see Wilson, 493 F. Supp. 2d at 378 ("The category of 'victim impact' is vast."); United States v. Green, No. 5:06CR–19, 2008 WL 4000870, at *21 (W.D. Ky. Aug. 26, 2008) (same). An "oblique reference to victims' 'injury, harm, and loss,' without more, does nothing to guide [the defendant's] vital task of preparing for the penalty phase of trial." Bin Laden, 126 F. Supp. 2d at 304. It also hamstrings this Court's performance of its gatekeeping role in considering any objections Mr. Saipov may raise to this understandably sensitive and emotionally fraught aspect of the case.

Faced with similar victim-impact notices, courts in other cases have ordered the government to "more specifically articulate the nature of this aggravator." Glover, 43 F. Supp. 2d at 1225. One court directed the government to specify "which members of the [victim's] family have suffered, the nature of their suffering, and the nature of the 'permanent harm,'" for example, "whether members of the family sought counseling or other medical treatment, such as hospitalization, and whether and to what extent members of the family suffered financial harm." Id. Other courts have entered similar orders. See, e.g., United States v. Cooper, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) ("[T]he government shall amend its notice of intent … to include more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to prove."); United States v. Pleau, No. 10–184–1, 2013 WL 1673109, at *4 (D.R.I. Apr. 17, 2013) (ordering government to "provide an outline of its victim impact evidence"); United States v. Talik, No. 5:06CR51, 2007 WL 4570704, at *9 (N.D.W. Va. Dec. 26, 2007) (same); Llera Plaza, 179 F. Supp. 2d at 475 (same); Duncan, 2008 WL 656036, at *8 (same); Green, 2008 WL 4000870, at *20 (same); O'Reilly, 2007

WL 4591856, at *5 (same); United States v. Williams, No. 4:08-cr-00070, 2013 WL 1335599, at *40 (M.D. Pa. Mar. 29, 2013) (same).

"The propriety of providing a defendant with such information is further underscored by the particular danger of eliciting an emotional reaction inherent in victim impact evidence." United States v. Casey, No. 05-277, 2013 WL 12190487, at *2 (D.P.R. Mar. 1, 2013); see Jackson v. Dretke, 450 F.3d 614, 621–22 (5th Cir. 2006) (noting that victim impact evidence can be particularly prejudicial (citing Payne v. Tennessee, 501 U.S. 808 (1991)). Victim impact testimony has "unsurpassed emotional power … on a jury." United States v. Johnson, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa 2005). One federal judge has described such testimony as "the most forceful, emotionally powerful, and emotionally draining evidence that [he has] heard in any kind of proceeding in any case, civil or criminal, in [his] entire career as a practicing trial attorney and federal judge spanning nearly 30 years." Id.

Given the "heightened degree of reliability" required of fact-finding in capital cases, United States v. Bernard, 299 F.3d 467, 475 (5th Cir. 2002), courts have recognized that defendants in death cases specially need to know the nature of victim impact evidence well before sentencing:

> [T]he mantra that "death is different" really applies here. Presenting information about victim impact to a jury that has convicted a defendant of a capital crime is different than presenting such information to a judge months after a trial is completed and at a time when the parties (and jury) are no longer exhausted from trial and no longer have frayed nerves from deliberations.

Gooch, 2006 WL 3780781, at *23; see Montgomery, 10 F. Supp. 3d at 830 (same). This Court, like those, should therefore "order the Government to outline the type and scope of the 'loss, injury, and harm' suffered by each victim, his or her family members, and other individuals as relevant, and the 'personal characteristics' of each victim that it intends to prove." Gooch, 2006 WL 3780781, at *23; see Con-Ui, 2016 WL 9331115, at *19 (ordering informational outline on victim-impact aggravator specifying list of personal characteristics of victim, whether any testimony will be introduced from persons not named in the NOI, particularized categories of harm and loss that government intends to present, and any other pertinent information defendant would need to adequately prepare to respond.); Pleau, 2013 WL 1673109, at *4, *6 ("[T]he Court hereby orders the government to provide an outline of its victim impact evidence….").

The Government further contends that a death sentence is appropriate because Mr. Saipov poses a "future danger," in that he "is likely to commit criminal acts of violence in the future." Dkt. No. 80 at 4. In the Death Notice, the

9

Government ties Mr. Saipov's alleged "continuing and serious threat to the lives and safety of others" to ("among other things") the charges in the Indictment, aspects of his post-arrest statement, and his purported "continued support for the radical terrorist activities and goals of ISIS, which included the killing of U.S. nationals." Id. None of these claims notifies Mr. Saipov of the nature of the information that the Government will introduce to prove this aggravator, particularly given the "among other things" caveat. See, e.g., United States v. Schlesinger, 2021 WL 5578901, at *3 (D. Ariz. Nov. 30, 2021). Indeed, by using the term "among other things," the "factor creates ambiguity as to whether the Government will present evidence of additional sub-factors." Id. (quoting Lujan, 530 F. Supp. 2d at 1271); see also United States v. Davis, 1996 WL 6997, at *1 (E.D. La. Jan.5, 1996) ("[T]he government has listed certain acts 'among others' that it will seek to introduce against each defendant. The use of 'among others' in lieu of listing specific acts does not meet the notice requirement of the death penalty statute.").

Accordingly, the Government "must submit an informative outline of the general nature of the evidence it plans to use to prove future dangerousness, including each act and characteristic the Government intends to introduce." Schlesinger, 2021 WL 5578901, at *3 (citations omitted). See also, e.g., United States v. Fell, 2017 WL 10809983, at *9 (D. Vt. Jan. 20, 2017); Con-Ui, 2016 WL 931115, at *19; Llera Plaza, 179 F. Supp. 2d at 492.

The Government also alleges as an aggravating factor that Mr. Saipov "targeted the bike path on the West Side Highway on Halloween because he intended to maximize the devastation to civilians and in an attempt to instill fear in New Yorkers and tourists who use the bike path." Dkt. No. 80 at 5.

Breaking down the allegation reveals the following components: (1) that Mr. Saipov targeted a particular group, specifically civilians; (2) that he targeted a particular location, the West Side Highway; (3) that he targeted a particular day, Halloween; (4) that his targeting of Halloween and the West Side Highway was intended to (a) maximize devastation, (b) amplify the harm of his crimes, and (c) instill fear within New Yorkers and tourists who use the bike path. The Government has not explained its theory or its substantiation, and the aggravator as written is too broad to provide adequate notice.

The allegation that Mr. Saipov has "demonstrated a lack of remorse in the days and months following his crimes" is also vague and nebulous, lacking a definitive time frame. "Lack of remorse is a subjective state of mind, difficult to gauge objectively since behavior and words don't necessarily correlate with internal feelings." Glover, 43 F. Supp. 2d at 1226. Without knowing the statements or time frame for the statements, Mr. Saipov cannot prepare to rebut alleged statements

10

and actions—which may, in context, reflect states of mind that are less "difficult to gauge."

Moreover, "guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove their guilt beyond a reasonable doubt." Id. Lack-of-remorse evidence therefore "has a substantial possibility of encroaching on [a] defendant's constitutional right to remain silent." United States v. Cooper, 91 F. Supp. 2d 90, 113 (D.D.C. 2000). Because of this "substantial possibility," Mr. Saipov must be able to move before trial to exclude any lack-of-remorse evidence that "implicate[s his] constitutional right to remain silent." United States v. Nguyen, 928 F. Supp. 1525, 1542 (D. Kan. 1996). He cannot do so, however, unless he has notice of the specific actions and statements the government intends to introduce to establish lack of remorse. The Government should therefore be required to produce an informative outline on this aggravating factor. See, e.g., Kaczynski, 1997 WL 34626785, at *20; United States v. Diaz, No. CR 05-00167, 2007 WL 196752, at *7 (N.D. Cal. Jan. 23, 2007) (ordering the government to "detail the specific 'statements and actions' it intends to use to support the 'lack of remorse'" factor).

### D. The Government's prompt disclosure of its penalty-phase informative outline is essential to Mr. Saipov's ability to investigate and prepare a meaningful defense under Fifth, Sixth, and Eighth Amendment strictures.

As detailed above, the Government's production of an informative outline is crucial to Mr. Saipov's effective penalty-phase preparation. It is impossible for Mr. Saipov to make adequate use of the Government's informative outline, however, unless it is produced in a timely fashion, well in advance of the liability phase. The Government's proposal to provide an informative outline two weeks before individual voir dire hardly leaves the defense enough time to investigate and litigate any evidentiary or other legal challenges in a sufficiently thorough manner, particularly with a trial looming in the background.

Recognizing that informative outlines bear significantly on a defendant's right to adequate notice and to an effective defense, many courts have compelled their disclosure well before voir dire. For example, see:

1. United States v. Schlesinger, No. CR-18-02719-TUC-RCC (BGM) at Dkt. No. 432 (D. Ariz. June 3, 2022) (directing Government to provide its informative outline by July 28, 2022, in anticipation of a January 17, 2023, trial date (see Dkt. No. 220));

2. United States v. Con-Ui, 2016 WL 9331115, at *1 (M.D. Pa. Jan. 28, 2016) (in response to Court's order directing the Government to issue an informative outline, Government produced it on February 25, 2016 (see Dkt. No. 922 at 11), in anticipation of a September 2016 trial date (see Dkt. No. 864 at 3), which was ultimately continued to April 24, 2017);

3. United States v. Pleau, 2013 WL 1673109, at *4, 6 (D.R.I. Apr. 17, 2013) (Government ordered to disclose outlines of victim-impact and future-danger aggravators by August 5, 2013, in anticipation of a December 1, 2013, trial continuance date); and

4. United States v. Lujan, 530 F. Supp. 2d 1224, 1271-72 (D.N.M. 2008) (court ordered the Government to disclose and supplement its informative outline "within a reasonable time before trial," and directed production of a revised informative outline by March 24, 2011, for a June 20, 2011, trial date).

As illustrated above, it is now common in federal capital prosecutions for the Government to provide an informative outline of the factual basis for its aggravating factors, and the schedule proposed by the Government in this case is out of step with the general practice of producing the outline months before trial begins. In this case, delaying production of an informative outline to within two weeks of trial especially prejudices Mr. Saipov's ability to investigate defenses to the Government's presentation of facts collected from victims and their families, most of whom reside in Europe and South America, and to adequately prepare against the Government's future danger argument. This includes obtaining rebuttal evidence from the various places Mr. Saipov has lived, like Uzbekistan, where he spent most of his life. Compelling the Government to provide its informative outline now will necessarily minimize the likelihood of any investigation or litigation-related delays attributable to the defense's ethical obligations as capital counsel, and earlier disclosure will in no way prejudice the Government.

**Conclusion**

For the reasons stated herein, the Court should compel the Government's production of a penalty-phase-specific informative outline by no later than August 11, 2022.

Respectfully Submitted,

David Patton
Andrew J. Dalack
Sylvie J. Levine
Annalisa Mirón
David A. Ruhnke
David Stern

Cc: Government Counsel           Counsel for Sayfullo Saipov