UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                           :

UNITED STATES OF AMERICA        :

        -against-                   :
                                               :        S1 17-cr-722 (VSB)
SAYFULLO HABIBULLAEVIC SAIPOV,  :
                                               :        **<u>ORDER</u>**
        Defendant.           :
                                               :
------------------------------------------------------------X

<u>VERNON S. BRODERICK, United States District Judge</u>:

On September 9, 2022, the parties' submitted proposed pre-*voir dire* instructions with annotations from both parties and a joint document containing preliminary *voir dire* questions. (Doc. 557.) Attached are my edits to the parties' proposals. Accordingly, it is hereby

ORDERED that the parties submit any additional comments regarding these remarks by October 10, 2022.

SO ORDERED.

Dated: October 7, 2022
       New York, New York

_____
Vernon S. Broderick
United States District Judge

<u>JUDGE BRODERICK'S STATEMENT TO THE DAILY PANELS OF PROSPECTIVE JURORS PRIOR TO INDIVIDUAL VOIR DIRE</u>

Good morning, ladies and gentlemen. It is good to see you again.

My name is Vernon Broderick, and I am the judge presiding over this case.

I want to thank you for coming in this morning. Your presence reflects your serious commitment to your civic responsibilities. Jury service is one of the highest and most important duties of a citizen of the United States.

Each of you is a potential juror in the case of *United States versus Sayfullo Saipov*. As you know, you already completed the first portion of the jury selection process when you came in and filled out the juror questionnaire.

During today's proceeding I will be asking each of you questions. In a few minutes, you will be asked to make your way to an adjacent room to wait until your name is called to return to this courtroom for individual questioning. Before you head to the waiting room, you will be given a copy of your juror questionnaire so that you have an opportunity to review it. When you return for individual questioning, please bring the juror questionnaire with you. If we have some questions about certain answers in the questionnaire, you can review it.

While you are waiting – before or after you are individually questioned – please do not talk with each other about any aspects of this case, the juror questionnaire, or about questions that were asked of you or your answers. I wish to make this very clear; you may not have any discussions at all about the case, the juror questionnaire, or the questioning process with anyone, including other prospective jurors.

Before we begin, I would like to explain that there are no 'right' or 'wrong' answers to any of the questions that will be posed to you today.

1

Citizens in our community have and are entitled to hold a wide variety of different views and have had different life experiences that inform their feelings and views on different topics. Of course, this is also true of prospective jurors. We are genuinely interested in learning your views on issues related to this case, and because you may be called upon to determine punishment, we are interested in learning about your views and feelings about life imprisonment without the possibility of release and the death penalty. The integrity of the process depends on your truthfulness. You will all be treated with dignity and respect, and we simply ask you to provide honest and complete answers. Please don't answer based on what you think you should say, on what you think is a socially desirable and acceptable response, or what you believe I expect or wish you to say. Simply relax and answer our questions as honestly as you can.

The defendant in this case, Mr. Saipov, is charged in an indictment with the criminal offenses outlined in the Case Summary on page 3 of the juror questionnaire. Please review this summary before you return to this courtroom. I want you to have enough information about this case so that you are in a position to be able to make honest, accurate and informed assessments as you are responding to the questions today.

The charges contained in the Indictment stem from allegations that on the afternoon of October 31, 2017, the defendant intentionally used a truck to run over individuals on a bike path and pedestrian walkway along the West Side Highway in lower Manhattan, ultimately killing eight and severely injuring over a dozen more people. As you know from my prior remarks and the jury questionnaire, this trial may proceed in two phases. The first is the trial phase in which the jury determines whether Mr. Saipov is guilty of the crimes charged. The second is the penalty phase, which only occurs if Mr. Saipov is found guilty of certain capital charges. In the trial phase, your job will be to determine, according to my instructions, whether or not the

Government has proven Mr. Saipov guilty of the charges in the Indictment beyond a reasonable doubt. If you find that Mr. Saipov is guilty of one or more of the capital charges as I will define them for you at the conclusion of trial, there will be a penalty phase of the trial in which the same jurors will have the responsibility to decide whether Mr. Saipov is sentenced to life in prison without the possibility of release or, instead, sentenced to death. In the federal system there is no parole; therefore, if Mr. Saipov is sentenced to life imprisonment, he will spend the rest of his life in prison and never be released. A death sentence means that Mr. Saipov will be executed.

During a penalty phase, jurors consider certain evidence referred to in the law as "aggravating factors," and "mitigating factors." These factors have to do with the circumstances of the crime, or the personal traits, character, or background of the defendant, or anything else relevant to the sentencing decision. Aggravating factors are certain specified factors that could support a death sentence. In order for an aggravating factor to be considered, all twelve jurors must agree that the factor has been proved by the government beyond a reasonable doubt. Jurors may not consider anything else as an aggravating factor.

"Mitigating factors" are any circumstances or factors that would suggest, for any individual juror, that life imprisonment without possibility of release is an appropriate punishment. A mitigating factor is not offered to justify or excuse Mr. Saipov's conduct, and the law does not require that there be a connection between a mitigating factor and the crime committed. There are three important distinctions that I want to highlight for you with respect to mitigating factors as compared to aggravating factors. First, Mr. Saipov would not be required to prove beyond a reasonable doubt the existence of a mitigating factor; he need only establish its existence by a preponderance of the evidence. That is to say, you need only be convinced that a mitigating factor is more likely true than not true in order to find that the mitigating factor exists.

Second, each juror independently considers the mitigating factors; a unanimous finding is not required. Any juror may, individually and independently, find the existence of a mitigating factor, regardless of the number of other jurors who may agree, and any juror who so finds must give that mitigating factor whatever weight they think it deserves. Thus, if even a single member of the jury finds that a mitigating factor has been proved, that member of the jury is required to weigh that factor in making up his or her own mind on whether to vote for a death sentence or a sentence of life imprisonment without the possibility of release. Third and finally, unlike with aggravating factors, jurors are not limited in their consideration to the specific mitigating factors submitted to the jury. If, in addition to those specific mitigating factors, there is anything about the circumstances of the offense, Mr. Saipov's personal traits, character, or background, or anything else relevant that you individually believe mitigates against the imposition of the death penalty or supports a sentence of life imprisonment without the possibility of release, you are free to consider that factor in the balance as well.

In a penalty phase, the jurors' task is not simply to decide what aggravating and mitigating factors exist, if any. Rather, in addition to evaluating those factors, the jurors are called upon to make a unique, individualized moral decision between the death penalty and life in prison without the possibility of release. It is important that you understand the law never requires the imposition of a sentence of death and never assumes that any defendant found guilty of committing capital murder must be sentenced to death. The government must persuade each and every juror beyond a reasonable doubt that the aggravating factor or factors exist. You will then determine whether all of the aggravating factors found to exist sufficiently outweigh the mitigating factors to justify a sentence of death. Each juror must ultimately make a unique individual moral judgment about whether to sentence a defendant convicted of a capital crime to

life imprisonment without the possibility of release or to death.

At the conclusion of a penalty phase, if all 12 jurors unanimously find that life imprisonment without the possibility of release is appropriate, then a sentence of life imprisonment without the possibility of release will be imposed. If, and only if, all twelve jurors unanimously find that death is the only appropriate sentence, will a death sentence be imposed. If one or more juror finds that a sentence of life imprisonment without the possibility of release is the appropriate sentence, and the jury is not unanimous in its decision regarding punishment, then the Court will impose a sentence of life imprisonment without the possibility of release. The sentence imposed by the jury, whether a unanimous vote for life imprisonment, a unanimous vote for death, or a non-unanimous vote for life is final. I must follow the jury's sentencing determination.

This is only an overview of the law to provide you some context to answer our questions today. At trial, I will instruct jurors in greater detail about their duties.

I want to thank you again for your taking part in this important process, and for returning to the Courthouse today.

This completes my preliminary remarks, ladies and gentlemen. I will now ask my Deputy Clerk Leyni Rodriguez to re-administer the oath that will govern your participation in the jury-selection process.

[OATH ADMINISTERED]

<u>JUDGE BRODERICK'S STATEMENT TO THE DAILY PANELS OF PROSPECTIVE JURORS PRIOR TO INDIVIDUAL VOIR DIRE</u>

Good morning, ladies and gentlemen. It is good to see you again.

My name is Vernon Broderick, and I am the judge presiding over this case.

I want to thank you for coming in this morning. Your presence reflects your serious commitment to your civic responsibilities. Jury service is one of the highest and most important duties of a citizen of the United States.

Each of you is a potential juror in the case of *United States versus Sayfullo Saipov*. As you know, you already completed the first portion of the jury selection process when you came in and filled out the juror questionnaire.

During today's proceeding I will be asking each of you questions. In a few minutes, you will be asked to make your way to an adjacent room to wait until your name is called to return to this courtroom for individual questioning. Before you head to the waiting room, you will be given a copy of your juror questionnaire so that you have an opportunity to review it. When you return for individual questioning, please bring the juror questionnaire with you. If we have some questions about certain answers in the questionnaire, you can review it.

While you are waiting – before or after you are individually questioned – please do not talk with each other about any aspects of this case, the juror questionnaire, or about questions that were asked of you or your answers. I wish to make this very clear; you may not have any discussions at all about the case, the juror questionnaire, or the questioning process with anyone, including other prospective jurors.

Before we begin, I would like to explain that there are no 'right' or 'wrong' answers to any of the questions that will be posed to you today.

   Citizens in our community have and are entitled to hold a wide variety of different views and have had different life experiences that inform their feelings and views on different topics. Of course, this is also true of prospective jurors. We are genuinely interested in learning your views on issues related to this case, and because you may be called upon to determine punishment, we are interested in learning about your views and feelings about life imprisonment without the possibility of release and the death penalty. The integrity of the process depends on your truthfulness. You will all be treated with dignity and respect, and we simply ask you to provide honest and complete answers. Please don't answer based on what you think you should say, on what you think is a socially desirable and acceptable response, or what you believe I expect or wish you to say. Simply relax and answer our questions as honestly as you can.

   The defendant in this case, Mr. Saipov, is charged in an indictment with the criminal offenses outlined in the Case Summary on page 3 of the juror questionnaire. Please review this summary before you return to this courtroom. I want you to have enough information about this case so that you are in a position to be able to make honest, accurate and informed assessments as you are responding to the questions today.

   The charges contained in the Indictment stem from allegations that on the afternoon of October 31, 2017, the defendant intentionally used a truck to run over individuals on a bike path and pedestrian walkway along the West Side Highway in lower Manhattan, ultimately killing eight and severely injuring over a dozen more people. As you know from my prior remarks and the jury questionnaire, this trial may proceed in two phases. The first is the ~~culpability~~trial phase in which the jury determines whether Mr. Saipov is guilty of the crimes charged. The second is the ~~punishment~~penalty phase, which only occurs if Mr. Saipov is found guilty of certain capital charges. In the ~~culpability~~trial phase ~~of the trial~~, your job will be to determine, according to my

instructions, whether or not the Government has proven Mr. Saipov guilty of the charges in the Indictment beyond a reasonable doubt. If you find that Mr. Saipov is guilty of one or more of the capital charges as I will define them for you at the conclusion of trial, there will be a ~~punishment~~penalty phase of the trial in which the same jurors will have the responsibility to decide whether Mr. Saipov is sentenced to life in prison without the possibility of release or, instead, sentenced to death. In the federal system there is no parole; therefore, if Mr. Saipov is sentenced to life imprisonment, he will spend the rest of his life in prison and never be released. A death sentence means that Mr. Saipov will be executed.

During a ~~punishment~~penalty phase, jurors consider certain evidence referred to in the law as "aggravating factors," and "mitigating factors." These factors have to do with the circumstances of the crime, or the personal traits, character, or background of the defendant, or anything else relevant to the sentencing decision. Aggravating factors are certain specified factors that could support a death sentence. In order for an aggravating factor to be considered, all twelve jurors must agree that the factor has been proved by the government beyond a reasonable doubt. Jurors may not consider anything else as an aggravating factor.

"Mitigating factors" are any circumstances or factors that would suggest, for any individual juror, that life imprisonment without possibility of release is an appropriate punishment. A mitigating factor is not offered to justify or excuse Mr. Saipov's conduct, and the law does not require that there be a connection between a mitigating factor and the crime committed. There are three important distinctions that I want to highlight for you with respect to mitigating factors as compared to aggravating factors. First, Mr. Saipov would not be required to prove beyond a reasonable doubt the existence of a mitigating factor; he need only establish its existence by a preponderance of the evidence. That is to say, you need only be convinced that a

mitigating factor is more likely true than not true in order to find that the mitigating factor exists. Second, each juror independently considers the mitigating factors; a unanimous finding is not required. Any juror may, individually and independently, find the existence of a mitigating factor, regardless of the number of other jurors who may agree, and any juror who so finds must give that mitigating factor whatever weight they think it deserves. Thus, if even a single member of the jury finds that a mitigating factor has been proved, that member of the jury is required to weigh that factor in making up his or her own mind on whether to vote for a death sentence or a sentence of life imprisonment without the possibility of release. Third and finally, unlike with aggravating factors, jurors are not limited in their consideration to the specific mitigating factors submitted to the jury. If, in addition to those specific mitigating factors, there is anything about the circumstances of the offense, Mr. Saipov's personal traits, character, or background, or anything else relevant that you individually believe mitigates against the imposition of the death penalty or supports a sentence of life imprisonment without the possibility of release, you are free to consider that factor in the balance as well.

In a ~~punishment~~penalty phase, the jurors' task is not simply to decide what aggravating and mitigating factors exist, if any. Rather, in addition to evaluating those factors, the jurors are called upon to make a unique, individualized [~~The Government objects to the use of the word "moral"~~][1] moral decision between the death penalty and life in prison without the possibility of

---

[1] ~~**THE DEFENSE**: The Court has already included this instructional language in the questionnaire that prospective jurors read and completed (DE 476-1 at 42: Q129 & Q131) (DE 444, 444-1 at 41-42). The jurors relied on this language in answering the questions. It would be highly irregular and potentially confusing to the jurors for the Court to withdraw the language at this point based on the government's efforts to relitigate issues that have been previously resolved. The use of the descriptor "moral" in this context is also legally correct. *See e.g.*, *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 251 (2007); Tenth Circuit Criminal Pattern Instruction 3.11, *Weighing Aggravation and Mitigation*, para. 2 (2021).~~

4

release. ~~[The Government objects to the following two sentences:~~ It is important that you understand the law never requires the imposition of a sentence of death and never assumes that any defendant found guilty of committing capital murder must be sentenced to death.[2] ~~Indeed, the law carries with it a presumption in favor of a verdict other than death, a presumption that can be overcome only if the~~ The government ~~persuades~~ must persuade each and every juror beyond a reasonable doubt that the aggravating factor or factors exist.  You will then determine whether all of the aggravating factors found to exist ~~outweigh the mitigating factors found to exist and, if they do, that they~~ sufficiently outweigh the mitigating factors to justify a sentence of death.~~]~~[3] Each juror must ultimately make a unique individual ~~[The Government objects to the~~

---

~~**THE GOVERNMENT**: In deciding on the appropriate sentence in this case, the jury is called upon to make a unique, individualized judgement based on the facts and the law. Inserting the concept that a juror's judgment or choice with respect to the sentence in this case must be a "moral" one may be confusing to jurors, such as by suggesting that their ultimate decision regarding punishment must align with their religious faith, an important guide to morality in many people's lives.~~

[2] ~~**THE DEFENSE**: An instruction like this, which simply and correctly states the non-mandatory nature of a death sentence under the FDPA, was given in the most recent federal capital trial in this district, *United States v. Barnes*, as well as in each of the other three such trials in this district (copies of those charges are available upon request) and in many other such trials across the country. (A list is available to the Court upon request). *See also* 1 Modern Federal Jury Instructions Criminal P 9A.1, *Overview*, para. 25 (2022) (recommending such an instruction); Tenth Circuit Criminal Pattern Instruction 3.02, *Summary of Deliberative Process*, para. 10 (2021) (same).~~

~~**THE GOVERNMENT**: There is never a requirement that a jury return a verdict on any issue before it in any civil or criminal case. This language suggests that the jury can ignore the Court's instructions with respect to the aggravating and mitigating factors, and the weighing of those factors in determining the appropriate sentence in this case. Furthermore, it is inconsistent with the language in Section 3591 of Title 18 which states that "[T]he defendant . . . *shall* be sentenced to death *if*, after consideration of the factors set forth in section 3592 [delineating possible aggravating and mitigating circumstances] in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is *justified* . . . ." 18 U.S.C. § 3591(a)(2) (emphasis added).~~

[3] ~~**THE DEFENSE**: A presumption against death instruction like this, which correctly states the law under the FDPA, was given in the most recent federal capital trial in this district, *United States*~~

~~use of the word "moral"]~~[4] moral judgment about whether to sentence a defendant convicted of a capital crime to life imprisonment without the possibility of release or to death.

At the conclusion of a ~~punishment~~penalty phase, if all 12 jurors unanimously find that life imprisonment without the possibility of release is appropriate, then a sentence of life imprisonment without the possibility of release will be imposed. If, and only if, all twelve jurors unanimously find that death is the only appropriate sentence, will a death sentence be imposed.

[~~The Government objects to the following two sentences:~~ If one or more juror finds that a sentence of life imprisonment without the possibility of release is the appropriate sentence, and the jury is not unanimous in its decision regarding punishment, then the Court will impose a sentence of life imprisonment without the possibility of release. The sentence imposed by the

---

~~v. *Barnes* (a copy of which charge is available upon request). A "reasonable doubt" instruction like this was also given in *Barnes* as well as in the other previous federal capital trials in this district (copies of which charges are also available upon request) and in many other such trials across the country. (A list is available to the Court upon request). *See also* 1 Modern Federal Jury Instructions Criminal P 9A.04, Instructions 9A-19, 9A-20, 9A-22 (2022) (model instructions include this standard).~~

~~**THE GOVERNMENT**: In a capital case, there is no presumption in the law that favors a verdict other than death. The Federal Death Penalty Act of 1994 (the "FDPA") contains no such language. The FDPA provides that in order for a jury to impose a death sentence, it must unanimously find that (1) the aggravating factors "sufficiently outweigh" the mitigating factors to "justify a sentence of death"; or (2) in the absence of any mitigating factors, the aggravating factors alone "justify a sentence of death." *See* 18 U.S.C. § 3593(e). Because the FDPA does not require a jury to find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt, it follows that it would be improper to instruct the jury that there is a presumption in favor of a verdict other than death in a capital case. *See United States v. Wilson*, 2013 WL 3187036 *3 (E.D.N.Y. June 20, 2013). As the Government has previously argued, all courts of appeals to consider the issue have uniformly reached the conclusion that a jury's determination of whether a death sentence is justified based on the FDPA's weighing process is not itself a factual determination that must be made beyond a reasonable doubt. *See* Dkt. 285 at 74-77 (citing cases). Throughout these proposed instructions, wherever the Government has objected to inclusion of the "beyond a reasonable doubt" language, the objection can be addressed by simply striking that phase from the sentence and otherwise retaining the balance of the sentence.~~

[4] ~~*See* fn.1~~

6

jury, whether a unanimous vote for life imprisonment, a unanimous vote for death, or a non-unanimous vote for life is final.~~]⁵~~[5]. I must follow the jury's sentencing determination.

This is only an overview of the law to provide you some context to answer our questions today. At trial, I will instruct jurors in greater detail about their duties.

I want to thank you again for your taking part in this important process, and for returning to the Courthouse today.

This completes my preliminary remarks, ladies and gentlemen. I will now ask my Deputy Clerk Leyni Rodriguez to re-administer the oath that will govern your participation in the jury-selection process.

[OATH ADMINISTERED]

---

[5] ~~**THE DEFENSE**: The Court has already given this instruction in both the questionnaire that prospective jurors read and completed (DE 476-1 at 36) and in its preliminary statement to each group of prospective jurors before they did so (*e.g.*, 8/11/22 Tr.11). The jurors relied on this language in answering the questions. It would be highly irregular and potentially confusing to the jurors for the Court to withdraw the language at this point based on the government's efforts to relitigate issues that have been previously resolved. And an instruction like this, which accurately states the law, was given in the most recent federal capital trial in this district, *United States v. Barnes*, as well as in the previous such trials in this district (copies of those charges are available upon request) and in many other such trials across the country. (A list is available to the Court upon request). *See also*, 1 Modern Federal Jury Instructions-Criminal, ¶ 9A.04, Instruction 9A-20 (2022) (recommending such an instruction); Tenth Circuit Criminal Pattern Instruction 3.01, *Sentencing Choices and Responsibility* (2021) (same). Nor do *Jones* or *Whitten* forbid such an instruction; rather, they leave the matter to this Court's discretion.~~
~~**THE GOVERNMENT**: It is settled law that a capital defendant is not entitled to a jury instruction on the effect of a deadlock. Such an instruction can encourage a deadlock and has no bearing on the jury's role in the sentencing process. *See Jones v. United States*, 527 U.S. 373, 379-82 (1999); *United States v. Whitten*, 610 F.3d 168, 203 (2d Cir. 2010); *Wilson*, 2013 WL 3187036, at *3.~~

**I. Introductory General Questions (to each individual juror)**

Thank you for returning for individual questioning. Please remember that you are under oath to provide honest answers and that there are no right or wrong answers.

A. Since you were here last, have you read, seen or heard anything about this case or Mr. Saipov from any source?

B. Have you done any kind of research, internet or otherwise, about this case, Mr. Saipov, or the people involved in this trial, or posted anything online about this case or your jury service?

C. Have you spoken to anyone or has anyone spoken to you about this case or Mr. Saipov, including discussions with fellow prospective jurors?

D. Have you overheard any discussion about this case or Mr. Saipov, including discussions among fellow jurors?

E. As prospective jurors, you are to avoid all media associated with this case, you cannot research the case in any way, and you cannot talk or post about your jury service in this case until you have been formally excused from jury duty. Do you think you may have difficulty, for any reason, following those instructions?

F. Has anything changed about your ability to serve as a juror in this case, that is, something you have not already indicated in your questionnaire?

G. Do you know any person introduced here today or anyone else you think might be connected to this case in anyway, including but not limited to any witnesses, investigators, rescue workers, law enforcement officers or agents?

H. Are you "fully vaccinated" against COVID-19, meaning, as of September 27, 2022, had you received at least two doses of either the Pfizer or Moderna vaccine or at least one dose of the Johnson & Johnson vaccine?

I. We have provided you with a copy of your juror questionnaire. Would you like to change or amend any of your answers?

**I. Introductory General Questions (to each individual juror)**

~~A.~~ Thank you for returning for individual questioning. Please remember that you are under oath to provide honest answers and that there are no right or wrong answers.

~~B.~~A. Since you were here last, have you read, seen or heard anything about this case or Mr. Saipov from any source?

~~C.~~B. Have you done any kind of research, internet or otherwise, about this case, Mr. Saipov, or the people involved in this trial, or posted anything online about this case or your jury service?

~~D.~~C. Have you spoken to anyone or has anyone spoken to you about this case or Mr. Saipov~~? Including~~, including discussions with fellow prospective jurors~~.~~?

~~E.~~D. Have you ~~overhead~~overheard any discussion about this case or Mr. Saipov~~? Including~~, including discussions among fellow jurors~~.~~?

~~F.~~E. As prospective jurors, you are to avoid all media associated with this case, you cannot research the case in ~~anyway~~any way, and you cannot talk or post about your jury service in this case until you have been formally excused from jury duty. ~~Does anyone~~ Do you think ~~they~~you may have difficulty, for any reason, following those instructions?

~~G.~~F. Has anything changed about your ability to serve as a juror in this case~~? That~~, that is, something you have not already indicated in your questionnaire~~.~~?

~~H.~~G. Do you know any person introduced here today or anyone else you think might be connected to this case in anyway, including but not limited to any witnesses, investigators, rescue workers, law enforcement officers or agents?

H. Are you "fully vaccinated" against COVID-19, meaning, as of September 27, 2022, had you received at least two doses of either the Pfizer or Moderna vaccine or at least one dose of the Johnson & Johnson vaccine?

I. We have provided you with a copy of your juror questionnaire. Would you like to change or amend any of your answers?