

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 2, 2022

<u>Via ECF</u>
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

      Re:    *United States v. Sayfullo Habibullaevic Saipov*, S1 17 Cr. 722 (VSB)

Dear Judge Broderick:

      The Government writes in response to the defendant's October 13, 2022 letter concerning the disqualification of jurors whose opposition to the death penalty arises from their religious beliefs. (Dkt. 606). As the defendant acknowledges, his argument is foreclosed by controlling precedent. (*Id.* at 1, 3). As such, and for the reasons to follow, the Court should reject the defendant's objection to striking jurors who state that they cannot follow the Court's instructions in putting aside their opposition to the death penalty based on their religious views and apply the law impartially, including prospective Juror 17.

      **I.**    **Background**

      The defendant argues that the disqualification of jurors whose opposition to the death penalty is rooted in their religious beliefs violates the prospective juror's own rights under the Free Exercise Clause of the First Amendment, the Religious Freedom Restoration Act ("RFRA"), and the Jury Selection and Service Act ("JSSA"). For present purposes, the defendant focuses his argument on Juror 17. Juror 17 wrote on his jury questionnaire that he is "personally, morally, or religiously opposed to the death penalty and would never vote to impose it, regardless of the facts and the law in the case." During in-court *voir dire*, Juror 17 reaffirmed his religious and moral opposition to the death penalty. In response to a question from the Court, he confirmed that "[t]he death penalty is not an option for me" and that he could not evaluate the evidence and choose between a sentence of life imprisonment and the death penalty. (*See* Oct. 12, 2022 Tr. at 159-60, attached as Exhibit A). Outside the presence of Juror 17, the defense acknowledged that Juror 17 was "impaired and could be excused for cause" and confirmed "we are certainly not going to argue that the juror is not impaired under *Witt* and *Adams*." (*Id.* at 160-61). Juror 17 also informed the Court that he had a ringing in his ears and needed to care for his elderly father, and that these issues, too, may "affect my attention and my focus on the trial." (*Id.* at 163-64).

The Honorable Vernon S. Broderick, U.S.D.J.
November 2, 2022
Page 2

### II.     The Defendant Lacks Standing to Exercise Juror 17's Rights

One of the "judicially self-imposed limits in the exercise of federal jurisdiction" is "the general prohibition on a litigant's raising another person's legal rights." *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Kowalski v. Tesmer*, 543 U.S. 125, 136 (2004) (quoting *Barrows v. Jackson*, 346 U.S. 249 (1953)).  This rule has been applied to situations like this one, where a criminal defendant seeks to assert the third-party rights of an excluded juror and alleges it is based on the juror's religious beliefs.  *See United States v. Ciancia*, No. 13 Cr. 902 (PSG), 2015 WL 13798665, at *5 n.3 (C.D. Cal. Sept. 9, 2015) (questioning "a defendant's standing to raise the rights of jurors who are excluded from service allegedly due to their religious beliefs" given "[r]emoving jurors who are unable to follow the law . . . would raise the integrity of the judicial process rather than cast doubt on it"); *Catlin v. Davis*, No. 07 Civ. 1466 (LJO), 2019 WL 6885017, at *233 (E.D. Cal. Dec. 17, 2019) (on habeas review in a death penalty case, identifying no "clearly established Supreme Court precedent that [the defendant] has standing to assert third-party federal rights held by prospective jurors" on a basis other than race).  *But see United States v. McCluskey*, No. 10 Cr. 2734 (JCH) (D.N.M. Nov. 30, 2012), Dkt. 746, at 8 (noting there is "no governing case law on point" regarding third-party standing to bring such claims but finding standing for a defendant to raise a First Amendment challenge on behalf of excluded jurors); *Cain v. Woodford*, No. 96 Civ. 2584 (ABC), 2003 WL 27376296, at *22 (C.D. Cal. June 12, 2003).

The defendant relies on *Powers v. Ohio*, 499 U.S. 400 (1991), to argue that he has standing to bring these claims on behalf of disqualified jurors and thus can overcome the general prohibition on third-party standing.  (Dkt. 601 at 2 n.1).  *Powers* found standing for a criminal defendant to assert a claim on behalf of a juror who was excluded from jury service because of his race.  499 U.S. at 402.  The Court in *Powers* outlined the requirements for litigants to bring actions on behalf of third parties—that the litigant suffered an "injury in fact," that the litigant has a close relationship to the third party, and that there exists some hindrance to the third party's ability to protect his or her own interests.  *Id.* at 410-11.  The Court found that there was an "injury in fact" in a case with a juror improperly struck based on his race "not because the individual jurors dismissed by the prosecution may have been predisposed to favor the defendant [but] because racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process' and places the fairness of a criminal proceeding in doubt."  *Id.* at 411 (citations omitted).  This stands in stark contrast to the situation here—in which the Government seeks to strike jurors not because of their religion, but because they have made clear they are unable to follow the Court's instructions on the law, a distinction at least one court noted in considering whether a defendant lacked standing to bring these same religion-based claims.  *See Ciancia*, 2015 WL 13798665, at *5 n.3.  Indeed, the very purpose of striking jurors who are unable to obey the Court's instructions is to *uphold* the integrity of the judicial process and ensure that criminal proceedings are fair—and, thus, there is no injury in fact to be vindicated by the defendant.  As such, the Court should find that the defendant lacks standing to bring these claims.

The Honorable Vernon S. Broderick, U.S.D.J.
November 2, 2022
Page 3

### III. Jurors Whose Religious Beliefs Preclude Them from Following the Law Are Properly Excluded from a Death-Qualified Jury

#### A. Applicable Law

As relevant to the defendant's argument here, the RFRA prohibits the government from "substantially burden[ing] a person's exercise of religion" unless the government can demonstrate that the burden is "the least restrictive means of furthering [a] compelling governmental interest.'" 42 U.S.C. § 2000bb-(1)(a)-(b); *see generally Hankins v. Lyght*, 441 F.3d 96, 102, 105 (2d Cir. 2006) (describing RFRA's provisions and legislative history). Similarly, "the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulations or prohibits conduct because it is undertaken for religious reasons." *United States v. Fell*, No. 01 Cr. 12 (GWC), 2017 WL 10940966, at *3 (D. Vt. Jan. 15, 2017) (citation omitted). "A neutral, generally applicable governmental regulation will withstand a free exercise challenge when the regulation is reasonably related to a legitimate state interest." *United States v. Ofomata*, No. 17 Cr. 201 (LMA), 2019 WL 527696, at *9-12 (E.D. La. Feb. 11, 2019), at *11 (citations omitted).

Finally, the JSSA is designed to ensure that "grand and petit juries" are "selected at random from a fair cross section of the community[.]" 28 U.S.C. § 1861. Section 1862 addresses religion in particular and establishes that "[n]o citizen shall be excluded from service as a grand or petit juror in the district courts of the United States . . . on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862.

#### B. Discussion

##### 1. Courts Have Uniformly Rejected the Defendant's Argument

Courts have uniformly rejected the constitutional and statutory arguments raised by the defendant, including in capital cases. That is because there clearly exists a "compelling government interest" in seating jurors who can follow the law and court instructions. *See United States v. Mitchell*, 502 F.3d 931, 954 (9th Cir. 2007) ("The question is whether a juror is able to follow the law and apply the facts in an impartial way, which *is* a compelling government interest."). Moreover, excusing jurors from service who will refuse to follow the law and the court's instructions in a particular case is the "least restrictive means" of furthering this interest. *See id.* Indeed, "jurors are not excluded simply because they are opposed to the death penalty on religious grounds, but only if they are unable to set those views aside and apply the law impartially." *Id.* Accordingly, such "[j]urors are excluded because they cannot perform their duties in a capital case, [without regard to] whether that inability stems from a religious belief." *Fell*, 2017 WL 10940966, at *3.[1] The Court, in line with this precedent and sound reasoning, should reject the defendant's argument.

---

[1] *See also United States v. Brown*, 947 F.3d 655, 681-82 (8th Cir. 2020) (in non-capital case, finding no violation of RFRA or First Amendment where juror was excused based on apparent

The Honorable Vernon S. Broderick, U.S.D.J.
November 2, 2022
Page 4

For example, in *Ofomata*, the court first found that the defendant had not met his burden of establishing that the selection of a death-qualified jury substantially burdens the free exercise of religion, as required to bring an RFRA claim, because such jurors were not excluded for their religion—but because they refused to set aside their religious views and apply the law. *Ofomata*, 2019 WL 527696, at *11 (citations omitted). Beyond that, even assuming that the defendant had been able to show that the death-qualification process exacted a substantial burden on a religious group, the *Ofomata* court held that there existed a "compelling interest" in seating a jury that would follow the law, and that excluding people who refused to do so—for religious reasons or otherwise—was the "least restrictive means" to achieve that end, thus satisfying RFRA. *Id.* (citations omitted). Similarly, the court in *Ofomata* held that the First Amendment claims there failed "for substantially the same reasons," namely, because the death-qualification process does not exclude jurors on the basis of their religion, but merely ensures that jurors' views on imposition of the death penalty do not preclude them from performing their duty in accordance with their oaths as jurors and the instructions of the court. *Id.*

While the defendant cites to no cases in which a court has analyzed his claim under the JSSA, a similar analysis controls. Again, the jurors are not struck "on account of . . . [their] religion," 28 U.S.C. § 1862, but rather because they refuse to follow the law and their oaths as jurors. Accordingly, even if it applies, the JSSA provides no basis for relief.

For all of these reasons, Juror 17 is appropriately struck for cause not because of Juror 17's religion, but because Juror 17's "opposition to the death penalty is so strong that it would prevent or substantially impair the performance of [his] duties as [a] juror[ ] at the sentencing phase of the trial." *Lockhart v. McCree*, 476 U.S. 162, 165 (1986); (Ex. A at 160-61 (defense acknowledging that Juror 17 is "impaired" from performance of his duties as a potential juror in this case)).

### 2. The Recent Supreme Court Cases Cited by the Defendant Are Inapposite

While the defendant acknowledges that his argument is precluded by precedent, the defendant cites to *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) and *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2255 (2020) in detailing the contours of the Free Exercise Clause. (Dkt. 606 at 2). These cases are inapposite. At issue in *Kennedy* was whether

---

refusal to deliberate due to religious beliefs), *rev'd on other grounds en banc*, 996 F.3d 1171 (8th Cir. 2021); *Ofomata*, 2019 WL 527696, at *9-12 (rejecting First Amendment and RFRA claims); *United States v. Roof*, 225 F. Supp. 3d 413, 416 (D.S.C. 2016) (noting that "the 'death qualification' process eliminates from the prospective jury pool only those persons who state that they are unable to render a verdict based on the evidence presented during trial and the Court's instructions on the law. It does not require the Court or the parties to look to the sources of an excluded juror's beliefs.") (citation omitted); *United States v. McCluskey*, No. 10 Cr. 2734 (JCH), Dkt. 746 (D.N.M. Nov. 30, 2012) ("As discussed, any religious individual who may be excluded from McCluskey's jury during death-qualification will necessarily have stated that he would be unable to apply the law to this case because his religious ideology prohibits imposing a death penalty judgment. Thus, rather than excluding jurors because they are members of a particular religion, the Court may potentially exclude jurors who are unable to apply the law.").

The Honorable Vernon S. Broderick, U.S.D.J.
November 2, 2022
Page 5

private religious prayer by a high school football coach, after a game he coached, was protected by the First Amendment. *Kennedy*, 142 S. Ct. at 2415-16. After the coach was fired for conducting the prayer, he filed suit and alleged that his termination violated the First Amendment. *Id.* The Court found that the school district had "failed to act pursuant to a neutral and generally applicable rule," as it sought to restrict the coach's conduct "because of [its] religious character," which ordinarily triggers strict scrutiny. *Id.* at 2422-23. The Court found that the coach was entitled to summary judgment on his First Amendment claims. *Id.*

Similarly, in *Espinoza*, the Court considered a program established in Montana that granted tax credits to anyone who donated to certain organizations that awarded scholarships for students to attend particular schools. *Espinoza*, 140 S. Ct. at 2251. The Montana Supreme Court struck down the program when the eventual plaintiffs sought to use these scholarships at a religious school, relying on a provision of the state constitution that prohibited aid to a school controlled by a "church, sect, or denomination." *Id.* The Court evaluated the provision of the state constitution under the *Trinity Lutheran* rubric, which establishes that disqualifying otherwise eligible recipients from a public benefit "solely because of their religious character" imposes "a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Id.* at 2255 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 (2017)). Ultimately, the Court found that there was no "compelling interest" sufficient to save the otherwise impermissible provision, and it thus was in violation of the Constitution. *Id.* at 2262-63.

Thus, both cases—*Kennedy* and *Espinoza*—addressed state action directly targeting religious activity. This stands in stark (and dispositive) contrast to the issues at play here, where the prospective jurors are not struck because of their religion, but rather because they refuse to fulfill their responsibilities as jurors and thus inhibit an otherwise compelling government interest. These cases are therefore inapposite and do nothing to alter the logic underpinning the long line of precedent detailed above.

The Honorable Vernon S. Broderick, U.S.D.J.
November 2, 2022
Page 6

### IV. Juror 17 Was Also Excludable for Hardship

Finally, beyond the issue of standing and the merits discussed above, Juror 17 also informed the Court that he had a ringing in his ears and needed to care for his elderly father, and that these issues, too, may "affect my attention and my focus on the trial." (Ex. A at 163-64). This was in response to the Court's follow-on inquiry, at the Government's request, regarding whether these issues would "impact your service as a juror in this case in such a way that you would not be able to give attention to the evidence during trial[.]" (*Id.*). Given Juror 17's response, these issues likely would have provided an alternative ground to strike Juror 17 and provide an independent basis to deny the defendant's motion regarding the excusal of this juror. *See Hall v. Luebbers*, 341 F.3d 706, 714-15 (8th Cir. 2003) ("As an unchallenged alternative ground existed, we decline to address whether Washington's personal views on the death penalty would have prevented or substantially impaired her performance as a juror.").

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s/_____
Andrew Dember
Amanda Houle
Jason A. Richman
Alexander Li
Assistant United States Attorneys
(212) 637-2563/2194/2589/2265

cc:   Defense counsel (via ECF)