UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                               :
UNITED STATES OF AMERICA            :
                                               :
        -against-                        :
                                               :            S1 17-cr-722 (VSB)
SAYFULLO HABIBULLAEVIC SAIPOV,  :
                                             :            **<u>ORDER</u>**
             Defendant.           :
                                             :
------------------------------------------------------------X

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Individual *voir dire* began in this capital case on October 11, 2022. Prior to individual *voir dire*, 950 prospective jurors completed a 44-page questionnaire containing 140 questions. (Doc. 476-1.) The questionnaire contained questions that were intended to obtain information about prospective jurors' views concerning, among other things, terrorism, the religion of Islam, and the potential punishment in this case, specifically life in prison without the possibility of release or the death penalty. Many of the questions required narrative answers. The questionnaire took prospective jurors several hours to complete. When each prospective juror has been brought in for individual *voir dire*, I have asked the same nine general questions proposed by the parties, (Doc. 604), unless a juror's responses to questions concerning hardship or changed circumstances resulted in an excusal for cause. The parties have additionally proposed personalized *voir dire* questions ahead of each prospective juror's appearance, which I have generally asked verbatim after considering and ruling on any objections from the opposing party. (*See, e.g.,* Doc. 611.) I have also asked follow-up questions myself where I have deemed it appropriate. After reviewing each prospective juror's questionnaire and hearing each prospective juror's answers to the parties' general and personalized *voir dire* questions, the

parties have further proposed additional rounds of follow-up questions for many of the jurors. (*See, e.g.*, Doc. 611.)  To date, I have questioned 90 jurors and qualified 26 of them using this process.

The Second Circuit held in *United States v. Quinones*, 511 F.3d 289, 297–305 (2d Cir. 2007), that "the Constitution does not dictate a particular *voir dire* process" in capital cases, and that district courts are not constitutionally required to conduct any oral *voir dire* prior to removing jurors for cause based on their views about the death penalty.  Removal of prospective jurors for cause are "owed deference by reviewing courts" because the trial judge "is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).  Generally, "where . . . there is lengthy questioning of a prospective juror and the trial court has supervised a diligent and thoughtful *voir dire*, the trial court has broad discretion." *Id.* at 20 (noting that the entire *voir dire* process, "[s]panning more than two weeks," was "lengthy" and "diligent").

I find that I have generally been able to assess the attitude and qualifications of each potential juror based on their questionnaire responses, answers to the parties' general and personalized questions, and my own follow-up questions.  Further, I find that the prospective jurors' questionnaire responses, answers to the parties' general and personalized questions, and my own follow-up questions altogether provide a wealth of information for the parties to consider in exercising their peremptory strikes.  Accordingly, I find that further follow-up questioning is often not necessary, nor is it an efficient use of the judicial resources, counsels' time, or the prospective jurors' time.  Moreover, I find that it is prudent to expedite the individual *voir dire* process so that we may qualify a sufficient number of jurors, conduct peremptory

strikes, seat the jury, and complete the trial on the schedule identified for prospective jurors.

Accordingly, beginning the week of November 7, 2022, I intend to limit follow-up questions to only those necessary to clarify any genuine ambiguity as to whether a prospective juror is qualified to serve on this capital jury. In other words, if I determine that additional inquiry is necessary to determine whether the juror is qualified, I will ask appropriate follow-up questions, but as a general matter, I will no longer ask follow-up questions proposed by the parties. Further, I assume that the parties' proposed personalized *voir dire* questions to date have included all of the questions necessary in light of a prospective juror's answers to the questionnaire.

If either party believes that I do not have the legal authority to take the actions outlined in this order or that taking such actions would be otherwise legally objectionable, that party shall file a letter on or before November 4, 2022. In addition, during the jury selection process on November 2, 2022, the parties indicated that they had also been considering ways to accelerate the process, and I encouraged the parties to meet and confer concerning the issue. I am amenable to receiving additional suggestions from the parties.

SO ORDERED.

Dated: November 2, 2022
      New York, New York

_____
Vernon S. Broderick
United States District Judge