

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 17, 2022

<u>Via ECF</u>
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

      **Re:**    ***United States v. Sayfullo Habibullaevic Saipov*, S1 17 Cr. 722 (VSB)**

Dear Judge Broderick:

      The Government writes in response to the Court's request for briefing regarding whether Juror 360 should be struck for cause, and on the broader question of whether a juror who indicates that he can only vote for the death penalty if the Government proves a particular non-statutory aggravating factor (such as future dangerousness) can be qualified. (Tr. at 2733). As to Juror 360, for the reasons summarized below and detailed during individual *voir dire*, Juror 360 should be struck because he was, at best, ambiguous as to whether he could meaningfully consider voting for the death penalty in this case. Moreover, as set out below—and consistent with Second Circuit precedent—a juror who can only contemplate voting for the death penalty if the Government proves a non-statutory aggravating factor cannot follow the Court's instructions on the law, including the framework of the Federal Death Penalty Act, and should be struck for cause.

      **I.**    **Background**

      The question from the Court arose in connection with individual *voir dire* of Juror 360. The Court initially determined Juror 360 could be struck for cause based on his unclear and ambiguous answers concerning whether he could meaningfully consider voting for the death penalty in this case, and then reserved decision on the matter. (Tr. at 2733). A review of the transcript confirms the Government's argument that Juror 360's responses were confusing and ambiguous, and the Government continues to believe that Juror 360 should be struck on that basis.

      Because the Court noted that it would review the transcript in full before making a final determination as to Juror 360, the Government will not reproduce the entirety of the colloquy here. The record is replete, however, with indications by Juror 360 that he could not meaningfully consider voting for the death penalty in this case. (*See, e.g.*, Tr. at 2697 ("I don't know if I could vote for the death penalty. I honestly don't know"); 2699 ("If you're asking me could I conceive of voting for the death penalty in this case, I really don't know"); 2701 (stating that Juror 360 "possibly" would always choose life imprisonment); 2701 (stating he did not know if he could vote for the death penalty if the evidence established it was the appropriate sentence); 2704 ("I just

The Honorable Vernon S. Broderick, U.S.D.J.
November 17, 2022
Page 2

don't know, when push comes to shove, what I would do. It would be a very high bar for me personally to apply the death penalty. I mean, I'm not entirely sure I could do it."); 2704 (stating "I'm not really sure" when asked if he could impose the death penalty if the facts and the law support it)). While Juror 360 gave some indications that he could consider the death penalty, including in extreme hypothetical scenarios, those answers do not make Juror 360 qualified. Instead, given the totality of his responses, those answers yield Juror 360's position ambiguous, at best.

At the request of the defense, and over the Government's objection, the Court further asked Juror 360 about whether he could consider voting for the death penalty after hearing evidence of aggravating factors, including particular non-statutory aggravating factors alleged by the Government. (Tr. at 2730). Juror 360 responded by indicating that he understood the Court's question as being whether he would "vote no on the death penalty in all circumstances," and said "I don't think I would say that." (Tr. at 2731). The Court followed up with a question that, in essence, asked Juror 360 whether he could consider imposing the death penalty if the Government proved only the particular statutory aggravating factors alleged, and Juror 360 responded that he did not find those circumstances aggravating. (Tr. at 2731-32). Juror 360 then returned to discussing his views on aggravating factors, more generally, and said that, to be compelling to Juror 360, the aggravating factor would need to demonstrate "some superseding benefit" to society. (Tr. at 2733). Juror 360 further provided examples of the types of aggravating circumstances that would make him "comfortable" with the death penalty, including "inspiration to copycat people or rewarding terrorist behavior." (Tr. at 2733).

## II.     Applicable Law

Under well-settled precedent, "[t]he baseline rule is that a court appropriately may excuse a juror for his views on capital punishment if those views 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *United States v. Sampson*, 486 F.3d 13, 39 (1st Cir. 2007) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)); *accord Morgan v. Illinois*, 504 U.S. 719, 728 (1992). One of a juror's duties in a capital case is to fairly and impartially consider imposing the death penalty; if a juror's anti-death penalty views would "substantially impair" him from doing so, he must be excused. This standard does not require that a juror's anti-death penalty bias be so strong that he would "automatically" vote against the death penalty. *See Wainwright v. Witt*, 469 U.S. 412, 422 (1985). It "likewise does not require that a juror's [anti-death penalty] bias be proved with unmistakable clarity," because that is not realistic. *Id.* at 424. The Supreme Court has explained that question and answer with a prospective juror is unlikely to lead to "unmistakable clarity," but that deference is paid to trial judges who see and hear jurors and are left with the "definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Id.*

As the defense has acknowledged (*see* Tr. at 2466), a prospective juror who is not categorically opposed to the death penalty but who states that he could impose it only in extreme hypothetical situations is substantially impaired from performing his duties. *See, e.g.*, *United States v. Moore*, 149 F.3d 773, 780 (8th Cir. 1998) (holding it was proper to strike prospective juror who said he could only vote for the death penalty if the defendant "murdered . . . 100 or 200 people"); *Riles v. McCotter*, 799 F.2d 947, 949 (5th Cir. 1986) (holding it was proper to strike

The Honorable Vernon S. Broderick, U.S.D.J.
November 17, 2022
Page 3

prospective juror who said she could only impose death penalty if victim was "butcher[ed]"). Likewise, a prospective juror whose views substantially impair the juror from being able to follow the Court's instructions on the Government's burden, should be struck. *See, e.g.*, *Drew v. Collins*, 964 F.2d 411, 417 (5th Cir. 1992) (holding it was proper to strike one prospective juror who said "that he would apply a standard higher than what he understood as the reasonable doubt standard" and another prospective juror who would require the prosecution to prove that the defendant was likely to commit a future murder where the relevant state statute only required the prosecution to prove (as a threshold factor) that the defendant posed a continuing threat to society); *see also White v. Thaler*, 522 F. App'x 226, 229 (5th Cir. 2013) (holding it was proper for court to strike prospective jurors who would "hold the State to a higher burden of proof than required by law in a death penalty case"); *United States v. Honken*, 381 F. Supp. 2d 936, 994-95 (N.D. Iowa 2005) (holding that jurors who would hold the government to a higher standard than the law requires were properly struck).

Indeed, the Supreme Court has stated, and the Second Circuit has explicitly found, that a juror who "is substantially impaired in his or her ability to impose the death penalty under the [controlling legal] framework can be excused for cause." *Uttecht v. Brown*, 551 U.S. 1, 9 (2007) (finding that state court properly exercised discretion in excusing juror who said he could only vote for the death penalty if there was a possibility that the defendant could be released and reoffend). *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008) is particularly instructive in this regard. In *Fell*, the Government alleged that Fell and an accomplice killed two individuals by stabbing, then conducted a carjacking in which the victim died after being kicked and struck. *Id.* at 205-06. The charges relating to the carjacking resulting in death were the death-eligible offenses. As relevant here, in conducting *voir dire*, the district court struck two jurors who were substantially impaired because they would only consider imposing the death penalty if the Government proved certain factors that the Government was not required to prove; the Second Circuit affirmed the district court's determination that the jurors were substantially impaired; and the Second Circuit subsequently denied rehearing *en banc* on the precise issue of the jurors' excusal. *United States v. Fell*, 571 F.3d 264, 266 (2d Cir. 2009).

The first juror (Juror 141) in *Fell* was struck because he "was not consistent or clear on whether he understood that the death penalty could be imposed for murder resulting from reckless disregard for human life and whether he would be able to apply it under such circumstances." *Fell*, 531 F.3d at 215. While the Government had alleged as a threshold intent factor that Fell had intentionally killed the carjacking victim, it had also alleged that Fell's victim had died as a result of Fell's reckless disregard for human life. *Id.* at 206 & n.1. Accordingly, a juror who could not consider the death penalty unless the Government proved intentional murder could not follow the Court's instructions and was appropriately struck. A second juror was struck (Juror 195) because the juror, while "claiming that she could fulfill her duties as a juror and follow the court's instructions," also "maintained that she would not consider the death penalty for a single killing." *Id.* at 216. "Although Fell was charged with three statutory aggravating factors—including committing multiple killings in a single criminal episode under § 3592(c)—. . . . Fell would still be eligible for the death penalty if the jury found at least one of the threshold mental culpability factors and that he had caused [a single victim's] death . . . or that he had committed the offense in an especially cruel or depraved manner." *Id.* The Government argued, and the Second Circuit

The Honorable Vernon S. Broderick, U.S.D.J.
November 17, 2022
Page 4

ultimately agreed, that "if Juror 195 could not consider imposing the death penalty without finding that Fell engaged in multiple killings, she would be substantially impaired in her ability to follow the law." *Id.*

### III.   Discussion

The Government continues to believe that Juror 360 should be struck for cause because his answers on whether he could follow the Court's instructions and meaningfully consider imposing the death penalty were, at best, ambiguous as detailed above. *See Wainwright*, 469 U.S. at 434 (noting that the court is "entitled to resolve [ambiguity in a juror's responses] in favor of the State"). Moreover, just as with the rest of his answers, Juror 360's responses to questions regarding statutory and non-statutory factors were ambiguous. Even as to the Court's question in which the non-statutory aggravating factors were embedded, Juror 360's answer was not directly responsive. Juror 360 indicated that he understood the Court's question to be whether he would always vote against the death penalty, to which he responded that he did not think so and then proceeded subsequently to describe the types of aggravating circumstances that might be relevant to him, including whether "copycat" attacks were likely and whether the result would reward terrorism. (Tr. at 2733). Juror 360's responses, taken as a whole, were inconsistent and ambiguous, and for that reason he should be struck for cause.

Moreover, to the Court's broader question, a juror who says that he can only consider the death penalty if the Government proves a particular non-statutory aggravating factor is substantially impaired in his ability to follow the law. While the Government has alleged, for example, future dangerousness as a non-statutory aggravating factor (Dkt. 80), the Government is not required to prove this factor for the jury to contemplate imposing a death sentence. Instead, the Government need only prove one of the threshold intent factors and a single statutory aggravating factor. 18 U.S.C. § 3593(e) (if the jury finds a threshold intent factor and a single statutory aggravating factor, it "shall" consider a sentence of death). The Court will instruct the jury that, in the absence of any non-statutory aggravating factors, the jurors must still deliberate on whether to impose the death penalty. Just as in *Fell*, a juror who cannot meaningfully consider voting for the death penalty unless the Government proves a factor that it is not required to prove, is substantially impaired and should be struck.

Ultimately, the Government has not, and does not now, propose that jurors be asked to pre-commit to which aggravating factors they might find persuasive. It continues to object, however, to the defense suggestion—through questioning and argument—that any juror could be qualified where the juror would only meaningfully consider voting for the death penalty if the Government proved a particular non-statutory aggravating factor.

The Honorable Vernon S. Broderick, U.S.D.J.
November 17, 2022
Page 5

## IV. Conclusion

For the reasons set forth above, Juror 360 should be struck for cause and the Court should not qualify any juror who indicates that the juror can only vote for the death penalty if the Government proves a particular non-statutory aggravating factor. The Government is not, under the Federal Death Penalty Act, required to prove a non-statutory aggravating factor in order for jurors to consider imposing the death penalty. A juror who insists on such proof by the Government before the juror can meaningfully consider the death penalty cannot follow the Court's instructions and should be struck for cause.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s/_____
Andrew Dember
Amanda Houle
Jason A. Richman
Alexander Li
Assistant United States Attorneys
(212) 637-2563/2194/2589/2265

cc: Defense counsel (via ECF)