

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 22, 2022

<u>Via ECF</u>
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

   **Re:** *United States v. Sayfullo Habibullaevic Saipov*, **S1 17 Cr. 722 (VSB)**

Dear Judge Broderick:

  The Government writes in response to the defendant's motion to prelude the testimony of four witnesses at either the liability or sentencing phase of the trial. The defense argues that the Government failed to disclose the witnesses by the statutory deadline required by 18 U.S.C. § 3432.[1] The Government respectfully submits that the Court should deny the motion. One of the witnesses is a rebuttal witness not subject to Section 3432. As to the remaining three witnesses, while the Government acknowledges its short delay in producing the names of those witnesses to the defense, the Court should deny the motion because the defendant has not suffered any prejudice by the timing of the disclosure. One witness is a summary witness, and the other two witnesses are law enforcement witnesses whose testimony will cover subjects long known to the defense—the crime scene and evidence collection—and whose addition therefore causes the defendant no prejudice. If the Court disagrees, the Government would not object to a three-day adjournment of the liability phase, which would indisputably cure any prejudice given that Section 3432 requires disclosure of witnesses three days before trial.

  **A.** **Background**

  The underlying facts concerning the disclosure of the Government's witness list are not in dispute. On September 2, 2022, the Government produced to the defense a list of its witnesses for both the liability and penalty phases of the trial, consisting of more than 100 names. On September 22, 2022, the Government produced an updated list with the names of some additional witnesses. The trial of this case commenced on October 11, 2022, with the start of jury selection on that day.

---

[1] Section 3432 provides, in pertinent part, that "[a] person charged with treason or other capital offense shall at least three entire days before commencement of trial, . . . be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each venireman and witness . . . ." 18 U.S.C. § 3432.

On October 28, 2022, the Government supplemented its September 22 witness list with the names of four additional law enforcement witnesses. In providing the updated witness list on October 28, the Government advised defense counsel that it would facilitate contact for defense counsel with any of those witnesses. In response to the Government's invitation to facilitate contact, on November 6, 2022, the defense requested that the Government convey requests to interview three of the four additional witnesses provided on the October 28 witness list.[2] The liability phase of the trial is anticipated to begin not before December 2022.

The four additional witnesses whose testimony the defendant now moves to preclude are: FBI Special Agent Jess Huckenmeyer, Special Agent Kevin Song of this Office, former NYPD Detective Daniel Smith, and BOP Correctional Officer James Dupree.

**B. Applicable Law**

Section 3432 of Title 18, United States Code, requires the Government to furnish the defendant in a capital case with a list of the witnesses it will call in its case-in-chief at least three days before trial begins.[3] "The statutory requirement concerning the list of witnesses to be supplied before trial has been held inapplicable to a rebuttal witness." *United States v. Rosenberg*, 195 F.2d 583, 600 (2d Cir. 1952) (citing *Goldsby v. United States*, 160 U.S. 70, 76 (1895)).[4] As the Supreme Court explained nearly 125 years ago, the purpose of Section 3432 is "to inform the defendant of the testimony which he will have to meet and to enable him to prepare his defense." *Logan v. United States*, 144 U.S. 263, 304 (1892); *see also Gregory v. United States*, 369 F.2d 185, 187-89 (D.C. Cir. 1966) (Section 3432's purpose is to eliminate unfair surprise and enable the defense to prepare for trial by providing a "fair opportunity for interview"). For purposes of Section 3432, trial begins with the start of jury selection. *See United States v. Young*, 533 F.3d 453, 461 (6th Cir. 2008) (citing *United States v. O'Driscoll*, 229 F. Supp. 2d 370, 372-73 (M.D. Pa. 2002)).

Section 3432 does not specify the remedy for a violation of the statute, and courts that have addressed the issue of late-noticed witnesses have "determined that Section 3432 does not categorically preclude such witnesses from testifying at trial." *Young*, 533 F.3d at 462 (quoting *United States v. Fulks*, 454 F.3d 410, 423 (2006)). "With § 3432's focus being protection of the capital defendant's weighty interest in avoiding trial by surprise, courts look to balance that interest with the equally valid public interest in courts' truth-seeking function." *Id.* at 462. Accordingly, "a defendant claiming a violation of the right to access that § 3432 is designed to protect must show actual prejudice from any impairment or interference with the right." *United States v. Tipton*, 90 F.3d 861, 889 (4th Cir. 1996); *see also, e.g.*, *United States v. Chandler*, 996 F.2d 1073, 1098-99 (11th Cir. 1993) (no prejudice from failure to notice the testimony of "one police officer that

---

[2] The Government has conveyed these requests to the witnesses.

[3] "Enacted in present form in 1948, section 3432 traces back to the first Congress." *United States v. Taveras*, No. 04 Cr. 156 (JBW), 2006 WL 1875339, at *11 (E.D.N.Y. July 5, 2006). The original statute, enacted in 1790, "provided only two days' notice of witnesses and jurors in non-treason capital cases." *Id.*

[4] Unless otherwise specified, all internal quotation marks, citations, and alterations are omitted.

the prosecution used to establish the chain of custody for the introduction of a piece of evidence"); *United States v. Greene*, 497 F.2d 1068, 1083 (7th Cir. 1974) (rejecting argument based upon failure to disclose the names of five witnesses for "lack of prejudice to the defendant"); *United States v. DeLeon*, 406 F. Supp. 3d 1129, 1181 (D.N.M. 2019) ("Excluding Jaramillo's testimony is not an appropriate remedy in this case, because the [defendants] have not identified how the United States' failure to list Jaramillo as a potential witness prejudices them."); *United States v. Bodkins*, No. 04 Cr. 70083, 2005 WL 2044952, at *2 (W.D. Va. Aug. 23, 2005) ("Because defendant Plunkett has failed to demonstrate particularized prejudice in this case, the government's failure to provide the name of an individual to properly authenticate the telephone records in its list of witnesses provided prior to trial will be excused.").

If the defendant shows prejudice, the Court should consider "whether a brief adjournment to allow the defendant to meet the witness's testimony would eliminate the prejudice caused by the surprise." *Fulks*, 454 F.3d at 424. "[T]he focus of the prejudice inquiry is not the extent to which the . . . witness's *testimony* would be damaging to the defendant's case; rather, the prejudice must result from the *lack of notice* that the witness would testify." *Id.* As noted above, Section 3432 specifies a notice period of three days before trial.[5]

C. Discussion

One of the four witnesses at issue is a rebuttal witness and therefore not subject to the notice requirement of Section 3432. As to the remaining three witnesses, balancing the defendant's interest in avoiding trial by surprise and the public's interest in a court's truth-seeking function, the Court should exercise its discretion and permit the Government to call the witnesses because allowing them to testify will not prejudice the defense. As is evident from the nature of their anticipated testimony, which is described below, there is nothing new here; the defense has long been aware of the subject matter of the testimony. Should the Court disagree and find prejudice to the defendant, the Government would not object to a three-day adjournment of the start of the liability phase of trial.[6]

The Government does not intend to call Correctional Officer James Dupree in its direct case in either the liability or sentencing phases of this trial. If called, he will be a rebuttal witness. Because Section 3432's requirement to produce a witness list is "for proving the indictment," it does not require a listing of possible rebuttal witnesses. *Rosenberg*, 195 F.2d at 600. Thus, Officer Dupree's testimony is not subject to Section 3432 and should not be precluded.

---

[5] It also bears noting that the lengthy jury selection process in this case has already provided the defense with far more time to investigate the four witnesses at issue than would be the case in a trial involving a shorter *voir dire* process where the witnesses were notified three days before the start of trial.

[6] Given that the defense will have had the updated witness list for at least four weeks prior to the start of witness testimony, an adjournment of three days is not necessary. Nevertheless, given Section 3432 provides for a three-day notice period, an adjournment of testimony for that time period would cure any conceivable prejudice.

Special Agent Song's testimony will consist of reviewing exhibits already in evidence. He otherwise has had almost no involvement in this case and will not express any opinions.[7] Principally, Special Agent Song will assist in the Government's presentation of evidence from the defendant's cellphones, which is voluminous. For example, the defendant's cellphones contain voluminous evidence regarding ISIS attacks that have been marked as exhibits, and which Special Agent Song will assist in organizing and publishing for the jury. The Government also expects to publish through Special Agent Song transcripts and translations otherwise in evidence pertaining to the defendant's prison communications. As a summary witness publishing and organizing exhibits already in evidence, the delay in noticing Special Agent Song's testimony does not prejudice the defense.

Special Agent Huckenmeyer will testify about the crime scene in this case. She will testify that she was a member of the FBI's Evidence Response Team ("ERT") that responded to the crime scene on October 31, 2017 and managed the collection of evidence from that location. Through her testimony, the Government will introduce into evidence a diagram of the crime scene and photographs showing the locations along the bicycle path/crime scene where ERT found the six deceased victims who died on the scene, the damaged bicycles used by the victims in this case, and various truck parts from the Home Depot rented truck used by the defendant. All the photographs were produced in discovery to the defendant several years ago and were more recently provided to the defense as trial exhibits. The defense has already acknowledged that at trial "there will be no dispute Mr. Saipov killed the eight [deceased victims]" in this case and no dispute as to "where and how the victims were killed." *See* Sayfullo Saipov's First Omnibus Challenge to the Government's Penalty Phase Presentation, at 88. Thus, the delay in noticing Special Agent Huckenmeyer as a witness does not prejudice the defense.

Former NYPD Crime Scene Unit Detective Daniel Smith will testify about his collection of possible human blood, tissue, and hair from the Home Depot truck the defendant rented on October 17, 2017 and used to kill and injure the victims of his attack. Smith will testify that on November 2, 2017, he swabbed for possible DNA various locations on the truck, photographed those locations, and provided those swabs to the FBI. Those swabs were later provided to the FBI Laboratory in Quantico, Virginia where they were examined for the presence of blood and subject to DNA typing. Former Detective Smith's report of his activities that day, which includes the photographs he took, were produced to the defendant on or about December 29, 2017 (bate stamped 011588-011694). In a letter dated December 9, 2019, the Government advised the defendant that it anticipated calling, among other expert witnesses, FBI Analyst Lara Adams to testify about the recovery of DNA matching certain victims of the defendant's attack, including from multiple locations on the truck used by the defendant. Forensic examiner Adams is listed on each of the witness lists provided to the defense. Having had knowledge of the substance of Smith's testimony as long ago as December 2017, having been noticed that Ms. Adams would testify in this case regarding DNA collected from the crime scene, and given that the defendant

---

[7] Special Agent Song's other involvement was to aid in making the defendant's seized phones physically available to the defense for inspection. He will not be testifying about his involvement in that process.

has further said that he will not dispute how and where he killed the deceased victims with his truck, there is no prejudice resulting from the timing of noticing Smith as a witness.[8]

For the reasons set forth above, the defendant's motion to preclude the testimony of the Government's four late-noticed witnesses should be denied.

    Respectfully submitted,

    DAMIAN WILLIAMS
    United States Attorney

by: __/s/_____
    Andrew Dember
    Amanda Houle
    Jason A. Richman
    Alexander Li
    Assistant United States Attorneys
    (212) 637-2563/2194/2589/2265

cc:    Defense counsel (via ECF)

---

[8] Finally, the Government notes that in *Fulks* and *Young*, the Fourth and Sixth Circuits "identified three factors to be balanced by a trial court in deciding whether to exclude *after-discovered-witness* testimony: (1) the government's good faith; (2) the government's diligence in pretrial investigations; and (3) any prejudice to the defendant caused by unfair surprise that could not be cured by a brief adjournment." *Young*, 533 F.3d at 462 (citing *Fulks*, 454 F.3d at 424) (emphasis added). This balancing test applies to "after-discovered witnesses" like the "new eyewitness who saw Young leaving the murder scene," *id.* at 456, where the subject of the testimony is new and the risk of prejudice to the defendant from late disclosure is far greater. Here, the four witnesses at issue are not after-discovered witnesses, but rather law enforcement witnesses who will testify about the crime scene and evidence-collection matters long known to the defense. The balancing test of *Young* and *Fulks* is therefore inapposite. Even if the Court were to apply the balancing test, however, the defendant does not assert—and there is no basis to suggest—that the Government acted in bad faith or for strategic advantage in omitting the four witnesses from its earlier witness lists. Indeed, as explained above, the Government was not required to notice Correctional Officer James Dupree at all because he is a rebuttal witness. And at the time the Government produced its September 22, 2022 witness list to the defense, it intended to call a summary witness (subsequently identified as Kevin Song) and a witness to testify about where evidence was located at the crime scene (subsequently identified as Jess Huckenmeyer), but had not yet determined who in particular would testify. While, to be sure, the Government was capable of determining the identities of these witnesses at the time it transmitted its September 22 witness list, its failure to do so was not a result of any bad faith.