# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

January 16, 2023

**By ECF**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Centre Street
New York, NY 10007

Re:   ***United States v. Sayfullo Saipov***
      **17 Cr. 722 (VSB)**

Dear Judge Broderick,

　　We submit this letter brief in support of dismissing the alternate jurors if Mr. Saipov is convicted of one or more capital counts and proceeds to a capital-sentencing hearing.  As discussed below, the Federal Death Penalty Act (FDPA), the Rules of Criminal Procedure, and the Fifth and Sixth Amendments to the Constitution forbid substituting an alternate juror, who did not deliberate at the liability trial, at a capital-sentencing hearing, without the defendant's consent. Because Mr. Saipov would not provide such consent in the event one of the principal jurors is excused at the sentencing hearing before a sentencing verdict is rendered, the Court should dismiss the alternate jurors if and when the jury returns a liability verdict, even if that verdict includes a capital conviction and the case proceeds to a capital sentencing.

　　The FDPA provides that a capital sentencing "shall be conducted before the jury that determined the defendant's guilt," 18 U.S.C. § 3595(b)(1), and that the sentencing jury "shall consist of 12 members, unless at any time before the conclusion of the hearing, the parties stipulate, with the approval of the court, that it shall consist of a lesser number,"  18 U.S.C. § 3593(b).  The plain language of the statute requires any juror sitting in judgment at the penalty phase to have been part of the jury that "determined the defendant's guilt." A juror who does not deliberate and render a verdict in the liability phase therefore cannot serve as a juror in the penalty phase.

　　When the FDPA was enacted in 1994, the Rules of Criminal Procedure authorized a district court, for good cause, to excuse an alternate juror during trial deliberations and permit a jury of 11 to return a verdict, even without the defendant's consent.  *See* Fed. R. Crim. P. 23 (b)(3) ("After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror").

But Congress declined to incorporate this provision in the FDPA for capital-sentencing hearings so as to allow a non-stipulated jury of 11 if a juror is excused during sentencing deliberations.

The Rules of Criminal Procedure do not treat trials and capital-sentencing hearings alike when it comes to substituting an alternate juror. Five years after enacting the FDPA, Congress amended Rule 24 to authorize a district court to retain the alternate jurors after the jury retires and to substitute an alternate during deliberations, even without the defendant's consent. *See* Fed. R. Crim. P. 24(c)(3) (1999). But the version of Rule 24 in effect at the time the FDPA was enacted had no such provision. Rather, it called for dismissing alternate jurors once the jury retired to deliberate. Fed. R. Crim. P. 24(c) (1987). And when Congress later revised Rule 24, it said nothing in the new Rule, nor altered the FDPA's requirements of a sentencing jury "of 12 members" and the one "that determined the defendant's guilt," 18 U.S.C. § 3593(c), so as to indicate the substitution provision would apply at capital-sentencing hearings. Nor can a court simply assume, despite all this, that Congress would automatically have wanted these two very different kinds of jury proceedings to be treated identically for purposes of alternate substitution since, as discussed, Congress treated them differently when it comes to a non-stipulated jury of 11.[1]

This textual- and history-based understanding of the interplay between the FDPA and the Rules of Criminal Procedure is also supported by the policy considerations that spurred the revisions to Rule 23 and 24, namely, the problem of having to abort "lengthy" liability trials, thus "necessitat[ing] a second expenditure of substantial prosecution, defense and court resources." Advisory Committee Notes to Rule 23 (1983); *see also* Advisory Committee Notes to Rule 24 (1999). The Notes cite, as examples, two cases in which the discharge of a juror during deliberations had required a mistrial, and presumably a retrial, after trials lasting four and six months, respectively. But if a capital-sentencing jury does not culminate in a sentencing recommendation, for any reason—including because it is aborted by the mid-proceeding excusal of a juror—the result, it appears, would be judicial imposition of a non-death sentence, here, life imprisonment.[2] *See* 18 U.S.C. § 3594;

---

[1] In 2007 several bills were submitted to Congress that would have amended the FDPA to license both the substitution of an alternate and a jury of 11 at a capital-sentencing hearing, without the consent of the defendant. But none of them passed. *See* Congressional Research Service Report to Congress, *The Death Penalty: Capital Punishment Legislation in the 110th Congress*, at 21 (Sept. 7, 2007).

[2] Even if such an excusal allows for a new capital-sentencing proceeding, that still would hardly resemble the scenario that concerned the drafters of the revised Rules 23 and 24. Compared with a mistrial in a noncapital murder case, which would leave an accused violent criminal unpunished and thus the government no real choice but to pursue a retrial, a mistrial in a capital-sentencing hearing would allow

*see also Jones v. United States*, 527 U.S. 373, 381 (1999).

Moreover, as Congress likely recognized, substituting an alternate at any point at a capital sentencing differs enormously from substituting one during trial deliberations. At trial, as long as the reconstituted jury is instructed to begin deliberations anew (and disregard their prior deliberations with the excused juror), as required by Rule 24, *all* of the jurors will have participated in *all* of the deliberations and decision-making resulting in the verdict. But if a juror is replaced by an alternate during a capital-sentencing hearing, the 11 original jurors will have discussed and reached decisions about a myriad of factual issues during their trial deliberations, many of which are enmeshed with those they will confront at the sentencing hearing.[3] Because the alternate was not part of that process, and because the other 11 jurors would not be instructed to undo and forget their trial deliberations, findings, and verdicts, all 12 jurors would not have participated in all of the deliberations and decision-making resulting in any sentencing verdict.

Not only does this also help explain why Congress did not provide for substitution of an alternate at a capital sentencing. It also means that any such substitution would violate the defendant's Sixth Amendment right to jury trial and his Fifth Amendment right to due process. The Supreme Court has recognized that "group deliberation" is an "essential feature" of the jury-trial right. *Williams v. Florida*, 399 U.S. 78, 100 (1970). Moreover, even before *Ramos v. Florida*, 140 S. Ct. 1390 (2020), in the period when the Supreme Court permitted non-unanimous verdicts in state criminal cases, the Court emphasized that, even if a minority of jurors were outvoted in jury's reaching a verdict, they at least "will be present during all deliberations, and their views will be heard." *Apodaca v. Oregon*, 406 U.S. 404, 413 (1972) (plurality). And several lower courts construed this to mean the Sixth Amendment requires that all of the jurors rendering a verdict must have participated in all of the deliberations resulting in that verdict, and thus that substituting an alternate during trial deliberations is constitutional only if the reconstituted jury is instructed to begin deliberations anew, *i.e.*, to ignore any prior deliberations that occurred without the newly substituted juror. *See, e.g., Claudio v. Snyder*, 68 F.3d 1573, 1575-77 (3d Cir. 1995); *Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985); *Ramjit v. Warden*, 2006 U.S. Dist. LEXIS 15007, at **62-63 (N.D.

---

the government to opt to have a life sentence imposed by the court without empaneling a new jury.

[3] That is particularly true in Mr. Saipov's case, since it appears that much of the government's trial evidence about his mental state and motive in committing the truck attack, his comments and feelings about his conduct afterwards, his purported connections with ISIS, and the experiences of the surviving victims at the scene all will also be central to the government's case in support of several aggravating factors at any capital-sentencing hearing. *See* DE #80 at 3-5: government's death-penalty notice.

Ohio Mar. 31, 2006), *aff'd*, 243 Fed. Appx. 103 (6th Cir. 2007).

Mr. Saipov acknowledges that several other circuits have approved the substitution of an alternate at a federal capital-sentencing hearing. But most of those decisions involved unpreserved or even waived issues. *See, e.g., United States v. Johnson*, 223 F.3d 665, 669-670 (7th Cir. 2000). Those courts did not take account of the interplay and history of the FDPA and Rules 23 and 24. *See, e.g.,, United States v. Webster*, 162 F.3d 308, 345-47 (5th Cir. 1998). And they ignored the myriad ways in which the issues at trial and sentencing in a capital case are enmeshed such that a sentencing jury with a substituted alternate will inevitably be substantially influenced by the trial deliberations, findings, and verdicts. *See, e.g., United States v. Honken*, 541 F.3d 1146, 1165 (8th Cir. 2008).[4] Moreover, neither the Second Circuit nor the Supreme Court have addressed this issue. Perhaps for that reason, while it is true that a number of district courts in FDPA cases have retained the alternates after a capital conviction (though often without defense objection), at least some, including in this district, have dismissed them. *See, e.g., United States v. McGriff*, No. 1:04-cr-966, DE #675 (S.D.N.Y. Jan. 26, 2007) (Minute Entry: alternates dismissed when capital jury in authorized case began liability deliberations; penalty verdict later reached on Feb. 9, 2007).

Accordingly, for these reasons, the Court may not substitute an alternate juror at any capital-sentencing hearing in this case without the defendant's consent; and since the defendant would not give such consent, the Court should dismiss the alternate jurors if and when the jury returns a liability verdict, even if the case proceeds to a capital sentencing.

Respectfully Submitted,

/s/
David Patton
Andrew J. Dalack
Sylvie J. Levine
Annalisa Mirón
David Stern
David A. Ruhnke

Cc: Government Counsel

---

[4] *See also United States v. Runyon*, 707 F.3d 475, 516-19 (4th Cir. 2013); *Battle v. United States*, 419 F.3d 1292, 1301-02 (11th Cir. 2005).