**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

January 21, 2023

**By ECF**
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Centre Street
New York, NY 10007

>  Re:  *United States v. Sayfullo Saipov*
>        **(S1) 17 Cr. 722 (VSB)**

Dear Judge Broderick,

    We write in reply to the government's January 19, 2023, response in opposition to our memorandum in support of our proposed jury instructions as to the elements of VICAR murder, assault, and attempted murder (18 U.S.C. § 1959(a)), and of the destruction of a motor vehicle resulting in death (18 U.S.C. §§ 33(a) and 34).

    Rather than "heightening" the government's burden, the defense's proposed instructions comport with the plain language of 18 U.S.C. § 1959(a) and 18 U.S.C. § 33, relevant caselaw, constitutional precepts, and legislative intent. Indeed, in urging the Court to read the elements of the offenses to the jury without any real explanation of its terms, the government is effectively endorsing a downplaying of its burden that will leave the jury with the misimpression that §1959(a) covers all violent crimes committed by anyone for the purpose of promoting or furthering a criminal enterprise, and that §§ 33 and 34 extend to any case in which a vehicle is used to kill another. Of course, the relevant statutes are not so easily satisfied or broad, and the defense's proposed instructions are more consistent with their stated purpose, terms, and history.

**I.  The Court must provide the jury with some guidance regarding what it means "to gain entrance" to a criminal enterprise.**

    The government's January 19 letter not only opposes Mr. Saipov's proposed instruction on the motive element of the VICAR charges, *see* DE #567 at 7-8; DE #679 at 1-5, but it also proposes no real definition of its own and urges the Court to simply leave the critical term from the VICAR statute, "to gain entrance" (to the enterprise) unexplained, leaving each party to argue its own interpretation. *See* Gov't Letter at 1. But the unadorned term is vague and ambiguous. *See Bryson v. United States*, 396 U.S. 64, 69 (1969) (while the term "affiliated" in a criminal statute may have been vague, "the trial court narrowly defined the term in an

instruction"). And the government's approach would just kick the can down the road by leaving the deliberating jurors confused about the standard for judging the central disputed issue at the trial, which likely would prompt them to send the Court questions about the meaning of the term and which party's interpretation is correct.

There is also no merit to the government's criticisms of Mr. Saipov's proposed definition.

### A. "Gaining entrance to" and "membership" in an enterprise are interchangeable, and have functional meanings prescribed by statutory and constitutional tenets.

First, the government says that a motive to gain "entrance" to ISIS should not be equated with a motive to gain "membership" or become a "member." But a plain, common-sense "membership" definition has been employed by the government itself during the trial, as it acknowledges, *see* Gov't Letter at 1. More important, the Court has used that definition in its preliminary instructions at the start of the trial, as well as at other times, in the jury questionnaire and in its introductory remarks to jurors before they completed the questionnaires. In charting their trial strategy, Mr. Saipov's counsel have relied on that definition and have a reasonable expectation the Court will not reverse course and abandon it. *See Knox v. Collins*, 928 F.2d 657, 661-62 (5th Cir. 1991) (court's failure to give promised instruction violated capital defendant's right to due process, regardless of whether that instruction otherwise would have been required). *See also, infra, United States v. Blondet* (example of Judge Furman using "to gain entrance to" and "membership" interchangeably in the context of 18 U.S.C. § 1959(a)).

The government also ignores Mr. Saipov's most recent filing in asserting that there is "no basis in law" to equating "entrance" with "membership." Gov't Letter at 1. As Mr. Saipov discussed in some detail, this definition has been used in numerous Second Circuit decisions and the leading treatise on federal jury instructions. DE #679 at 2-3; *see also, e.g., United States v. Laurent*, 33 F. 4th 63, 76 (2d Cir. 2022) ("To prove murder in aid of racketeering … the government must show that a defendant committed murder 'for the purpose of gaining entrance to or maintaining or increasing position' in the racketeering enterprise. 18 U.S.C. § 1959(a)(l). That intent requirement can be proven by a showing that the defendant committed his violent crime because he knew it was expected of him by reason of his *membership* in the enterprise or that he committed it in furtherance of that *membership*.") (emphasis added).

Second, the government similarly misses the mark in denying that there is a functional test for "entrance" or "membership" under the VICAR statute—in other

words, that it simply requires *any* participation in the enterprise's activities or decision-making. *See* Gov't Letter at 1-2. The government's letter ignores most of the arguments and authorities (including Second Circuit decisions) that Mr. Saipov relies on to support his proposed instruction. *See* DE #679 at 4-5; *see also* DE #567 at 9. Instead, the government only engages with one decision that Mr. Saipov cites, *United States v. Brady*, 26 F.3d 282 (2d Cir. 1994), by arguing that the case actually supports its view because *Brady* supposedly held that a member under VICAR is anyone the enterprise "considered" to be a member. Gov't Letter at 1.

      Not so. The government selectively plucks out one word, "considered," while ignoring the surrounding language. Here is the passage:

> Pontillo contends that because he was merely an associate, he had no position in the Family … As a "non-member" he claims he had no position within the enterprise to increase or maintain. On the contrary, the testimony of Agent Gabriel and the superseding indictment make[s] it clear that associates are considered to be members of the enterprise, even though they are not "made members" of the Family. Agent Gabriel's testimony reveals that associates **play a significant role in organized crime operations**. His testimony was confirmed by other evidence including the testimony of the cooperating witnesses who recounted **significant criminal activity engaged in on behalf of the Family** by associates, including Pontillo. Two of the cooperating witnesses, Ambrosino and Imbriale, were themselves associates, rather than made members … Therefore, as an associate of the Colombo Family, Pontillo was a member of the enterprise charged by the government in its indictment.

*Brady*, 26 F.3d at 290 (emphasis added). In other words, *Brady* says two things, entirely consistent with Mr. Saipov's view of the statute and his proposed instruction: First (as even the government acknowledges) the terms or titles the particular enterprise uses to refer to the defendant or others connected with it is not what determines whether the defendant was a member (or was seeking membership) under the VICAR statute. And second, what is determinative is whether the defendant "play[ed] a significant role" in the enterprise's "operations" or "activities" (or was seeking to do so). Only because the defendant in *Brady* did so did the Second Circuit conclude that he "was a member." *Id.*

      The government's view of the statute and the instruction it seeks from the Court would cover anyone the enterprise calls a member or its equivalent (*e.g.*, "soldier of the caliphate"), even if only honorifically, indeed, even if the individual is dead. Tellingly, however, the government cites no authority for this view, which otherwise runs counter to common-sense usage, as it would not be said that

3

someone who is dead currently "is a member" of (or has "gained entrance" to) any organization. And instructing the jury in this way would constitute a serious, prejudicial error.

### B. A person cannot be convicted of committing an act of violence to join an enterprise that is unaware of his existence.

Similarly, it would be constitutional error for the Court to instruct the jury that it could conclude Mr. Saipov committed murder "for the purpose of" achieving membership in ISIS based solely on his secret interest in and consumption of ISIS propaganda—*i.e.*, absent some evidence of Mr. Saipov's two-way interaction with the terrorist organization. In this respect, the government has no meaningful response to the Fourth Circuit's main point in *United States v. Umana*, 750 F.3d 320, 335 (4th Cir. 2014) (emphasis added): That the statutory context and legislative history for § 1951(a) support the conclusion that the "for the purpose of" language "defines a motive element that includes a requirement that the defendant have **interacted with the enterprise with respect to his purpose**…." A contrary reading would lead to the "illogical—and possibly unconstitutional—result that § 1959(a) would criminalize a murder committed with a secret intent to join a gang where the murderer has absolutely no prior connection with the gang itself." *Id*. Indeed, given the parallel portion of the statute, which criminalizes violent crime conducted "as consideration for the receipt of … anything of pecuniary value," a reciprocal arrangement—*i.e.* "a manifest *quid pro quo*"—between the member of the gang is plainly a requirement of the "for the purpose of" prong.

On this point, Judge Jesse M. Furman's recent decision in *United States v. Blondet*, No. S13 16-CR-387 (JMF), 2022 WL 17370032, at *6-7 (S.D.N.Y. Dec. 2, 2022), provides helpful guidance. There, Judge Furman was tasked with deciding whether the government had offered sufficient evidence as a matter of law to convict the defendant of murder in aid of racketeering, for the purpose of maintaining or enhancing his status as a "high-ranking member of a violent drug-trafficking organization based primarily in Puerto Rico." *Id.*, at *1. Specifically, the defendant, Luis Blondet, was accused of killing a woman after she rebuffed his sexual advances at a party. *Id.* The government argued that because the woman had disrespected Blondet and embarrassed him in front of other gang members, Blondet killed her to promote and maintain his image as a "feared leader in a violent drug organization" who could not be seen as weak or tolerating disrespect. *Id.*, at *5. The defense countered that the killing was purely personal, and that the circumstances surrounding it—including Blondet's inebriation and the spontaneity of the killing—precluded a reasonable juror from determining that the murder was in furtherance of his status within the gang. *Id.*

In granting Blondet's motion, Judge Furman concluded that the evidence, even taken in a light most favorable to the government, demonstrated that, "as reprehensible as it was, Blondet's murder of [the woman] arose from a purely

4

personal dispute" and that there was "no evidence to support the government's theory that one of Blondet's purposes in committing the crime was to maintain or increase his position in the enterprise." *Blondet*, 2022 WL 17370032, at *1. Judge Furman explained that § 1959(a)'s motive requirement "is no mere technicality," and that Congress "included the requirement as a means of proscribing murder and other violent crimes committed 'as an integral aspect of membership' in such enterprises." *Id.*, at *7 (quoting S. Rep. No. 98-225, at 304 (1983)). That is, for murder to qualify as a "*federal* crime, a defendant's 'gang-related purpose' must 'be more than merely incidental: It must be within his 'general' purpose, or, in the alternative, the violence committed must be in some way 'integral' to the defendant's membership in the gang.'" *Id.* (emphasis in original) (quoting *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008)). Crucially, Judge Furman noted, the government's argument in support of Blondet's conviction was tantamount to federalizing any act of violence committed by a gang member or leaders, even though § 1959(a) "itself contains no indication that Congress intended it to make gang membership a status offense such that mere membership plus proof of a criminal act would be sufficient to prove a … violation. Otherwise, every traffic altercation or act of domestic violence, when committed by a gang member, could be prosecuted under Section 1959(a) as well.'" *Id.* (quoting *Banks*, 514 F.3d at 968).

Judge Furman's reasoning that not all violent acts committed by gang members or leaders—even in reaction to perceived slights or threats to their reputations—are covered by § 1959(a) extends to Mr. Saipov's point: Because Section 1959(a) is limited to those cases in which the defendant's general or dominant purposes was to gain membership (or maintain/enhance his status) in a racketeering enterprise, it is not so broad so as to encompass any violent crime committed by those merely inspired by, interested in, or infatuated with the enterprise. Indeed, if the enterprise has no idea that a particular person exists, then it cannot be said, as a matter of law, that a violent act by that person was committed "as an integral aspect of gang membership." *See generally Blondet*, 2022 WL 17370032, at *7 (quoting *Banks*, 514 F.3d at 969-70) (cleaned up). Accordingly, the jury should be so instructed in this case.

## II. The defense's proposed instruction on 18 U.S.C. § 33 comports with the plain terms of the statute and legislative intent, and the government's arguments to the contrary are unpersuasive.

As to Count 28, which charges Mr. Saipov with destruction of a motor vehicle resulting in death under 18 U.S.C. §§ 33 and 34, Mr. Saipov's proposed instructions, *see* DE #567-1 at 27-31; DE #679 at 5-10, diverge on three main issues from the government's, *see* DE #676-1 at 9-12; Gov't letter at 2-3. Below, Mr. Saipov responds to the government's arguments in its January 19 letter as to each of these issues.

First, the defense has asked the Court to instruct the jury that, to convict Mr. Saipov, it must find that the victims' deaths resulted from the damaging of the

5

truck; whereas it appears the government wants the jury to be instructed that this element is satisfied as long as it finds that the defendant, by his conduct, both damaged the truck and caused the victims' deaths. *See* Gov't letter at 2-3; *but see* DE #676-1 at 12 ("the death … resulted from the defendant's damage, disablement, or destruction of a motor vehicle"). Mr. Saipov has cited numerous cases from across the country and covering decades since the statute's enactment, in which his reading of it was followed, and thus § 34 was applied where the destruction of the vehicle caused death, but was not invoked where, as here, there was both a vehicle destruction and a death but the former did not cause the latter.

In its January 19 letter, the government dismisses all these cases as merely "suppositions drawn from circumstances in which" § 34 "has or has not been alleged" based on "prosecutorial discretion." Gov't letter at 2. But it does not cite a single contrary prosecution or, thus, dispute that an instruction authorizing a conviction under the statute and application of its death-penalty enhancement under these circumstances would be unprecedented. Nor does it explain how interpreting the words "crime prohibited by" § 33—the thing that § 34 says must "result" in the victim's death—to mean the defendant's conduct, rather than his destruction of the vehicle, comports with the statute's plain language, *see* § 33 (titled "Destruction of motor vehicles or motor vehicle facilities"), or the legislative history, *see* DE # 679 at 6-7.

The second disputed issue concerning the instructions on Count 28 involves the statutory requirement that the motor vehicle in question was "used for commercial purposes" at the time of the crime. 18 U.S.C. § 31(a)(6), (10). Both sides agree that the jury should receive the two statutory definitions that, to convict of this charge, the truck must have been "used for commercial purposes … in the transportation of passengers, passengers and property, or property or cargo" and that "used for commercial purposes means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit." *Id*. *See* DE #567-1 at 27; DE #676-1 at 11.

But the parties disagree about how to translate this somewhat stilted and opaque statutory definition of whether, at the time of the crime, a vehicle was being "used for a commercial purpose" (*i.e.*, "for any fare, fee … or other consideration, or directly or indirectly in connection with any business"). The government's proposal would, quite uninformatively, tell jurors: "While a private car is not within the statute, a rental car *can* be within the statute"—without offering any guidance on determining whether it in fact *is* or *is not* "within the statute." DE #676-1 at 9 (emphasis added). Whereas Mr. Saipov's proposal recites the simple translation recognized by the Sixth Circuit in *United States v. Lowe*, 65 F.3d 1137, 1149 (6th Cir. 1985), and set forth in the Congressional House Conference Report that accompanied the statute's enactment in 1956: namely, that "used for a commercial purpose" does not cover a "commercial motor vehicle" that was being used merely

"for personal or private purposes" at the time of the crime. DE #567-1 at 27; DE #679 at 8. Mr. Saipov's briefing also cites a series of additional cases from across the country over the years that have effectively adhered to this simple translation in determining whether or not to apply § 33. *See id.*

In response to all this, the government's January 19 letter ignores the Sixth Circuit's decision in *Lowe*, and dismisses all the other decisions as just "examples of prosecutions." Gov't Letter at 2-3. The government also mistakenly claims as an example that fits its interpretation one case, *United States v. Salameh*, 152 F.3d 88, 108 (2d Cir. 1998). Gov't Letter at 3. But as the Second Circuit noted (and as the actual jury instructions confirm) the defendant there was charged with "bombing *vehicles*," plural. It also appears that the "used for commercial purposes" element was not disputed since the crime involved a massive explosion in a parking garage beneath the World Trade Center that damaged many other cars and trucks parked or entering or exiting, including ones unquestionably used for a commercial purpose. (No doubt this was also why no issue appears to have been raised by the defense there about the jury charge on this element.)[1]

The government's letter also dismisses the House Conference Report as just a "note from particular congressmen." Gov't Letter at 3. But the Supreme Court and the Second Circuit have regularly relied on such reports, which often accompany final passage of a law, as authoritative sources of legislative history and Congressional intent. *See, e.g., Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 30 (2015); *Brathwaite v. Garland*, 3 F.4th 542, 549 (2d Cir. 2021). And while it is true, as Mr. Saipov acknowledged and the government notes, Gov't Letter at 3, n.2, that the statute has since been amended, those amendments did not touch on the issue of whether it applies to a "commercial" vehicle being used for a "private or personal purpose" at the time of the crime. Thus, they do not detract in any way from the original Conference Report direct statement on this issue. *See* DE #679 at 8, n.5.

Finally, the government insists that the language of the statute is sufficiently "plain" and opposes using the explanation contained in the House Conference Report (and adopted by the Sixth Circuit in *Lowe*) as an unnecessary departure. Gov't Letter at 2 ("The Government's proposal includes the precise language the statute uses … whereas the defendant's proposal departs from the statutory language"). But, as noted, the government, apparently recognizing that the statutory language is not sufficiently "plain," also proposes to add its own departure: "While a private car is not within the statute, a rental car *can* be within the statute." Thus, the government's proposal is hardly truer to the statute. Indeed, based purely on the text, Mr. Saipov has the better of the argument that a vehicle

---

[1] The government's other citation to *United States v. Tarantino*, 617 Fed. Appx. 62 (7th Cir. 2015), as a decision supposedly rejecting a defense argument about the scope of Section 33 based on legislative history, is puzzling since the opinion never mentions any such argument.

rented from a company by a private individual for a personal purpose is not then being used by him "for any fare, fee … or other consideration, or directly or indirectly in connection with any business." More important, as discussed, Mr. Saipov's proposal is amply supported by the legislative history and caselaw, while the government's is supported by nothing but its apparent determination to fit this square case into a round statutory hole so that Mr. Saipov will be eligible for the death penalty via a conviction on Count 28.

Third and finally, Mr. Saipov's proposed charge would instruct jurors that the element of Count 28 that he "willfully" destroyed or damaged the truck requires proof that he knew it was unlawful for him to do, DE #567-1 at 28, whereas the government's would require only that he "had an awareness of the general wrongfulness of his conduct." As Mr. Saipov explained in his briefing the mental state of "willfulness" under the plain language of § 33 applies to the crime of "damag[ing] the truck." *Id.*; *see* DE #676-1 at 9. But the government's proposed charge would allow jurors to find this element based on the "willfulness" behind the victims' deaths, which are not part of the *actus reus* of the crime.

### III. Conclusion

For the reasons set forth above and in Mr. Saipov's proposed instructions and memorandum in support, the Court should adopt the defense's proposed instructions to the jury. The defense also requests leave to be heard further on these issues at the charge conference.

Respectfully Submitted,

/s/
David Patton
Andrew J. Dalack
Sylvie J. Levine
Annalisa Mirón
David Stern
David A. Ruhnke

Counsel for Sayfullo Saipov

Cc: Government Counsel