UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                              :

UNITED STATES OF AMERICA,      :      (S1) 17 CR. 722 (VSB)

            -v-                             :

SAYFULLO SAIPOV,                   :

            Defendant.       :

------------------------------------------------------x

# SAYFULLO SAIPOV'S MOTION TO DISMISS THE GOVERNMENT'S DEATH NOTICE BECAUSE OF THE ARBITRARY PURSUIT AND IMPOSITION OF THE FEDERAL DEATH PENALTY

                                                       **DAVID E. PATTON, ESQ.**
                                                       Federal Defenders of New York, Inc.
                                                       Attorney for Defendant
                                                       **SAYFULLO SAIPOV**
                                                       52 Duane Street, 10th Floor
                                                       New York, NY 10007
                                                       (212) 417-8700

                                                     **Of Counsel: Andrew John Dalack, Esq.**
                                                                    Sylvie J. Levine, Esq.
                                                                    Annalisa Mirón, Esq.
                                                                    David Stern, Esq.
                                                                    David A. Ruhnke, Esq.

TO:   **DAMIAN WILLIAMS, ESQ.**
        Acting United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, NY 10007

        Attn:  **Andrew Dember, Esq.**
                  **Amanda Houle, Esq.**
                  **Zander Li, Esq.**
                  **Jason Richman, Esq.**
                  Assistant United States Attorneys

**Table of Contents**

I. Introduction ................................................................................................................. 1

II. Arbitrary pursuit and imposition of the death penalty is unconstitutional.......... 2

III. The federal death penalty is unconstitutional because there is no discernible, principled basis for why it is sought in some murder cases and not in others as evidence by Mr. Saipov's case in relation to others. ............................................... 3

IV. In the alternative, the Court should order discovery on DOJ's reasoning for distinguishing Mr. Saipov's case from the other deauthorizations and no-seeks. 8

V. Conclusion ................................................................................................................ 10

I. **Introduction**

Sayfullo Saipov stands as the only federal defendant nationwide against whom the Department of Justice is seeking the death penalty at trial. In light of recent decisions by DOJ not to seek the death penalty against a host of death-eligible defendants, Mr. Saipov renews his motion to dismiss the government's death notice because the federal death penalty is arbitrarily sought and imposed in violation of the Fifth and Eighth Amendments. Decisions by the current DOJ administration over the past two years, and in particular in the past few months, not to seek the death penalty in cases with greater numbers of victims and equally horrific facts, along with its decision to impose a moratorium on all federal executions in part because of concerns about the arbitrary application of capital punishment, highlight the capricious and unconstitutional nature of the federal death penalty.

President Biden ran on a platform promising to abolish the federal death penalty. Since his swearing in, President Biden's administration has elected not to seek, or de-authorized, dozens of federal capital cases involving intentional murders, some with greater numbers of victims than present here. There is no discernible, principled basis for distinguishing those murders, where the federal death penalty was neither sought nor imposed, from Sayfullo Saipov's case. The Constitution does not tolerate such arbitrary application of the death penalty; accordingly, the Court should strike the government's death notice and sentence Mr. Saipov to life imprisonment.

In the alternative, the Court should order discovery related to DOJ's decision-making process. There is ample evidence that the decision to seek death against Mr.

Saipov alone is both arbitrary and based on impermissible factors such as his religion and national origin.

## II. Arbitrary pursuit and imposition of the death penalty is unconstitutional.

Arbitrary imposition of punishment is the antithesis of the rule of law. For that reason, Justice Potter Stewart (who supplied critical votes for the holdings in *Furman v. Georgia,* 408 U.S. 238 (1972) (*per curiam*), and *Gregg v. Georgia,* 428 U.S. 153 (1976)) found the death penalty unconstitutional as administered in 1972:

> "These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual. For, of all the people convicted of [death-eligible crimes], many just as reprehensible as these, the petitioners are among a capriciously selected random handful upon which the sentence of death has in fact been imposed."

*Furman,* 408 U.S., at 309-310 (concurring opinion). *See also id.,* at 310 ("[T]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed"); *id.,* at 313 (White, J., concurring) ("[T]he death penalty is exacted with great infrequency even for the most atrocious crimes and ... there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not").

When the death penalty was reinstated in 1976, the Supreme Court acknowledged that the death penalty is (and would be) unconstitutional if "inflicted in an arbitrary and capricious manner." *Gregg,* 428 U.S. at 188 (joint opinion of Stewart, Powell, and Stevens, JJ.); *see also id.,* at 189 ("[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as

2

to minimize the risk of wholly arbitrary and capricious action"); *Godfrey v. Georgia,* 446 U.S. 420 (1980) (plurality opinion) (similar).

The Supreme Court has consequently sought to make the application of the death penalty less arbitrary by restricting its use to the so-called "worst of the worst." *Roper v. Simmons,* 543 U.S. 551 (2005) ("Capital punishment must be limited to those offenders who commit a narrow category of the most serious crimes and whose extreme culpability makes them the most deserving of execution."). But recent experience reveals that the federal death penalty operates without a discernible rubric for differentiating which of the "worst of the worst" receive the death penalty or life imprisonment.

Indeed, despite the *Gregg* Court's hope for fair administration of the death penalty, an examination of the federal death penalty in operation—particularly over the past several years—shows that there is no consistency or predictability in the manner in which the ultimate punishment is sought and imposed. Accordingly, pursuing the death penalty in this case is unconstitutional and the Court should strike the government's death notice.

III. **The federal death penalty is unconstitutional because there is no discernible, principled basis for why it is sought in some murder cases and not in others, as evidenced by Mr. Saipov's case in relation to others.**

The Federal Death Penalty Resource Project, described by Director Kevin McNally in his declaration (Exhibit A at 1-2), maintains a compendium of cases in which the government chose not to seek, or to drop its pursuit of, a death sentence in every federal capital case under the Biden Administration. These cases offer clear insight into the hopelessly irremediable problem of arbitrariness and caprice that

3

marks the administration of the federal death penalty system. There is no rhyme, reason, or predictability as to why the government chooses to seek death in some murder cases but not in others. And given the history of this case, in which then President Trump intemperately demanded Mr. Saipov's execution over Twitter and exploited the truck attack to promote his anti-immigrant agenda, there is a legitimate concern that the death penalty sometimes (and impermissibly) turns on the defendant's race, ethnicity, national origin, and religious beliefs.

DOJ's recent decisions not to pursue the death penalty against unquestionably guilty defendants in two mass/serial killing cases with greater numbers of victims than in Mr. Saipov's case provide vivid illustrations. A third case here in the Southern District of New York provides a chilling example of disparate decision-making within the same district.

Earlier this month, the government filed notice of its intent not to seek the death penalty against a white man who shot to death 23 shoppers in an El Paso Walmart (and injured at least 22 more) for the purpose of "defending my country" from "the Hispanic invasion of Texas" according to a racist, anti-immigrant screed he posted online the day of his attack. *United States v. Patrick Crusius*, No. EP-20-CR-389, DE #82, #254 (W.D. Tex.). The shooting was well-planned and clearly premeditated: A couple of months before the attack, the defendant purchased his semiautomatic rifle (a variant of the AK-47) and 1,000 rounds of ammunition, and he targeted a Walmart in El Paso, nine hours away from where he lived in Allen, Texas.

In November 2022, the government also withdrew a death-penalty authorization for a gang enforcer responsible for at least 12 murders of Black men

4

committed over six years on behalf of a drug gang, tied to a Mexican cartel, that supplied cocaine throughout the Midwest. *See United States v. Anthony Jordan*, No. 4:15-cr-404, DE #1988, #1990, #3725 (E.D. Mo.).

The government's arbitrary decision-making is not limited to districts outside of this one. A little over a month ago here in the Southern District of New York, the government announced it had withdrawn a death penalty authorization against a white, former police officer who sold cocaine, and is accused of brutally killing four men in furtherance of his drug trafficking. *United States v. Nicholas Tartaglione*, 16 Cr. 832 (KMK) (S.D.N.Y.). Unlike Mr. Saipov, Mr. Tartaglione did not offer to plead guilty in exchange for deauthorization and he is headed to trial shortly.

In addition to these cases, the attached chart is replete with examples of RICO murders, prison slayings, and other intentional killings with gruesome facts. In total, DOJ has elected not to seek the death penalty in nearly 400 cases. They include:

- Defendants charged with committing 10 RICO murders as part of gang activity, with one defendant charged with 9 of the murders. *U.S. v. Reyes Castillo et al.*, (entries 16 and 17 on Attachment A);

- Defendants charged with involvement in 17 RICO murders as part of gang activity, with some defendants charged with personally participating in 7 murders. *U.S. v. Saenz et al.*, (entry 21 on Attachment A);

- Defendants charged with 9 RICO murders as part of gang activity, including one defendant charged with 7 murders. *U.S. v. Romeo Blackman*, (entry 28 on Attachment A);

- Defendants charged with 12 murders using guns, machetes, and knives as part of gang activity. *U.S. v. Angel Amadeo Guzman et al.*, (entry 47 on Attachment A);

- Defendants charged with participating in 19 murders with some

5

       defendants charged with personally participating in 7 and 8 murders each. *U.S. v. Deshawn Morgan et al.*, (entry 78 on Attachment A); and

- Defendant charged with kidnapping, sexually assaulting, and killing a three-year-old child. *United States v. Derick Irisha Brown*, (entry 108 on Attachment A);

Those represent a small set of the cases involving large numbers of victims and/or horrific facts. Yet in each case, the government did not seek the death penalty. In 26 other cases, many with similarly horrific facts, such as *Tartaglione* mentioned above, DOJ de-authorized a pending capital case. In most instances, the defendants were not required to plead guilty in exchange.

These recent decisions not to pursue the death penalty against defendants who committed grave crimes, some with larger numbers of victims, demonstrate that it would be disproportionate and arbitrary for the government to continue to do so against Mr. Saipov—especially given his continued willingness, expressed to the government repeatedly before trial, to plead guilty and accept a sentence of life imprisonment without release and incarceration in the most secure unit at the federal super-maximum security prison in Florence, Colorado. Indeed, when the Attorney General issued his July 2021 memorandum suspending executions and ordering a review of DOJ's capital policies, he based it in part on serious concerns about "arbitrariness in [the]application" of the federal death penalty. DOJ's capital protocol also emphasizes the need to avoid such disparities. *See* Justice Manual, § 9-10.140(B) (decision must "contextualize a given case within national norms or practice. For this reason, the multi-tier process used to make determinations in this Chapter is carefully designed to provide reviewers with access to the national decision-making

6

context, and thereby, to reduce disparities across districts.").

At the very least, it appears arbitrary for DOJ to spare some defendants but single out Mr. Saipov, a Muslim immigrant, for the death penalty even though their culpability is arguably greater. From the beginning, this case has been colored by Mr. Saipov's status as a Muslim immigrant from Uzbekistan. As detailed in Mr. Saipov's motion to preclude the government from seeking a death sentence or to appoint a special prosecutor (dkt. no. 75), then President Trump publicly demanded Mr. Saipov's speedy execution the day after his attack, calling him a "degenerate animal" and using the truck attack to criticize the State Department's Diversity Visa Lottery Program. Trump's nakedly political exploitation of the truck attack to advance anti-immigration policy that targeted Muslim immigrants is inextricably intertwined with his demand that Mr. Saipov face the death penalty. And it is an even more disturbing feature of Mr. Saipov's capital prosecution in light of the Biden Administration's decision to seek death against Mr. Saipov alone nationwide, despite his willingness to plead guilty, waive all appeals, and spend the rest of his life in prison in the most secure wing of the most secure prison in the world.

There are numerous crimes on the list of cases appended to this motion as to which a prosecutor could argue in summation, that the defendant represents the "worst of the worst." And yet, in case after case—with Mr. Saipov as the sole outlier—the government has elected not to pursue a death sentence.

Accordingly, the Court should dismiss the death notice and sentence Mr. Saipov to life imprisonment without the possibility of release.

IV. **In the alternative, the Court should order discovery on DOJ's reasoning for distinguishing Mr. Saipov's case from the other deauthorizations and no-seeks.**

The above facts demonstrate that DOJ is applying the death penalty arbitrarily. At the very least, the troubling lack of rhyme or reason to the decision-making requires further inquiry, and the Court should order discovery as to the reasons for the deauthorizations and no-seeks in a host of cases with greater numbers of victims, defendants with far worse criminal records, and an assortment of factual circumstances that are equally horrific, if not worse, than those present here.

In *United States v. Bass*, 536 U.S. 862 (2002), the Supreme Court held that the defendant had not made a sufficient showing to warrant discovery where he had not shown evidence "regarding the record of the decisionmakers in [his] case" or how the decisions related to "similarly situated defendants." *Id*. Here, Mr. Saipov easily clears both hurdles as demonstrated above by the large numbers of decisions by the current DOJ decision-makers not to seek the death penalty in cases demonstrably involving equally or more aggravating facts.

District courts have granted motions for discovery to assess the bases for federal capital charging decisions. In *United States v. Bradley*, 880 F. Supp. 271, 281 (M.D. Pa. 1994), the court issued a discovery order, admonished the parties to cooperate in expediting and simplifying the process, and stated that it would consider the government's privilege claims in camera. Likewise, in *United States v. Llera-Plaza*, 181 F. Supp. 2d 414 (E.D. Pa. 2002), the district court ordered, and the prosecution provided, discovery pertaining to other capital-eligible federal

8

prosecutions in the Eastern District of Pennsylvania. After two motions for reconsideration and partial production of the requested documents, the district court ordered the government "to produce for the court, under seal for its in camera inspection, certain of the materials covered by the earlier order."

Although the known facts about DOJ's decision-making are more than sufficient to strike the death notice here, if the Court requires additional information, it must order the information be provided. *C.f., e.g., Hidalgo v. Arizona*, 138 S. Ct. 1054, 1057 (2018) (Breyer, J., concurring in denial of certiorari) (explaining that questions regarding the failure of Arizona's capital sentencing scheme to genuinely narrow the class of death-eligible murder defendants were appropriate for an evidentiary hearing); *United States v. Armstrong*, 517 U.S. 456, 468 (1996) (acknowledging that discovery is available to allow a defendant to make out a claim of selective prosecution).

At a minimum, the Court should examine the purported rationales by the very same decision-makers in this case, *i.e.*, the current DOJ administration and the U.S. Attorney for the Southern District of New York. Accordingly, the Court should order the government to provide:

1) The bases for DOJ decisions to withdraw the death penalty authorization for all capital cases in the past two years.

2) The bases for DOJ decisions not to seek the death penalty in the past two years.

3) The recommendations of the local U.S. Attorney in each case responsive to #1 and #2 above, especially in light of the decisions in the Southern District of New York to seek the death penalty against Mr. Saipov but not against Mr. Tartaglione.

9

  4) The race, ethnicity, religion, and nationality of the defendants in the cases responsive to #1 and #2 above and whether any defendants who are eligible for the death penalty but against whom it is not being sought are Muslim immigrants.

In light of the known facts about the cases in which DOJ is not seeking the death penalty, the above information is vital for the Court to assure that seeking the death penalty against Mr. Saipov is not arbitrary or based on prohibited factors such as his religion, ethnicity, and national origin. It is also vital to know if the decision to seek the death penalty under the FDPA turns on nothing more than the recommendation of the local U.S. Attorney which is bound to create arbitrary disparities nationwide. This is especially important where, as here, the S.D.N.Y. U.S. Attorney's Office has dropped its pursuit of the death penalty against Mr. Tartaglione, despite his refusal to plead guilty, but continues to seek Mr. Saipov's execution, despite his willingness to plead guilty, waive all appellate and post-conviction rights, and receive a life sentence with SAMs.

## V. Conclusion

One cannot read the attached cases—chronicles of the many ways in which humans can demonstrate inhumanity—without coming to the realization that *all* of the cases are by their own terms horrible, and *all* involved the infliction of agony on victims and survivors. Yet, for indiscernible reasons, the government has arbitrarily decided to seek the death penalty for a single defendant nationwide. If any basis can be discerned, it is Mr. Saipov's ethnicity, national origin, and religion, none of which are permissible criteria for selecting defendants for capital punishment.

Mr. Saipov urges this court to strike the death penalty, or in the alternative order discovery, for the above-stated reasons.

Dated:     New York, New York
           January 30, 2023

Respectfully Submitted,

/s/
David E. Patton, Esq.
Andrew John Dalack, Esq.
Sylvie J. Levine, Esq.
Annalisa Mirón, Esq.
David Stern, Esq.
David A. Ruhnke, Esq.

Counsel for Sayfullo Saipov