# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

February 7, 2023

**By ECF**
Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> **Re:** ***United States v. Sayfullo Saipov***
> **17 Cr. 722 (VSB)**

Dear Judge Broderick:

We write regarding the Court's proposed penalty phase preliminary jury instructions.

While maintaining the defense's challenges (pending and decided) regarding the scope and permissibility of various aggravating factors, we respectfully submit the attached annotations to the Court's proposed preliminary instructions (*see* Exhibit A (redline); Exhibit B (clean)). In support of our annotations, we offer the following:

Section 1 (Overview):

On page 1 of the Court's proposed preliminary instructions, the defense objects to the Court's omission of non-unanimity language from the following passage, "In order to impose a sentence of death, all 12 jurors must agree that death is the appropriate sentence." This iteration of the jury's task differs dramatically from the language previously adopted by the Court throughout the written questionnaire and individual *voir dire* process. *See, e.g.*, Juror Questionnaire (Dkt. No. 476-1, at 36); Court's Pre-Questionnaire Instruction (Tr. at 11, Aug. 11, 2022); Court's Statement to the Daily Panels of Prospective Jurors (Order dated Oct. 7, 2022) (resolving a nearly identical issue in the defense's favor) (attached as Exhibit C). Throughout *voir dire*, jurors were repeatedly advised by the Court of the exact language proposed by the defense and were specifically asked if they could respect and abide the non-unanimity instruction. In fact, the Court asked every juror a variant of the following question as a follow up to their answers to questions 90, 129, 130, and 131 from the written questionnaire:

> In Questions 90, 129, 130, and 131 you stated you could follow certain
> legal principles:

That each juror comes to a personal and reasoned moral decision.
Every juror is entitled to be treated with dignity and respect, even if
they have different views or vote differently than you.
**That if even a single juror votes for life imprisonment and
other jurors vote for the death penalty, the Court will sentence
Mr. Saipov to life imprisonment.**

As you sit here today, are you still confident that you can accept and
follow these principles?

*See, e.g.*, Tr. at 266 (*voir dire* for Juror 37); Tr. at 331-32 (*voir dire* for Juror 55); Tr.
at 1071-72 (*voir dire* for Juror 160); Tr. at 1232-33 (*voir dire* for Juror 172); Tr. at
1263 (*voir dire* for Juror 178); Tr. at 1332-33 (*voir dire* for Juror 185); Tr. at 1574-75
(*voir dire* for Juror 202); Tr. at 1769-70 (*voir dire* for Juror 222); Tr. at 2203-04 (*voir
dire* for Juror 292); Tr. at 3024 (*voir dire* for Juror 407); Tr. at 3787-88 (*voir dire* for
Juror 462); and Tr. at 3750-51 (*voir dire* for Juror 466).

The defense relied on the Court's pointed questioning of prospective jurors
regarding the outcome of non-unanimity throughout jury selection: In proposing
follow-up questions for individual jurors; in evaluating the responses to the
questioning; and in making decisions about cause challenges and exercising
peremptory strikes of individual jurors. Indeed, the defense has planned its penalty
phase strategy around the Court's adoption of the non-unanimity instruction, and
has litigated this case in reliance on jurors' understanding that a non-unanimous
penalty-phase verdict is acceptable under the FDPA and will result in a life
sentence. It would be constitutional error to deviate from these instructions now.
*See, e.g., Knox v. Collins*, 928 F.2d 657, 661 (5th Cir. 1991) (court's failure to give
instruction consistent with instructions given in *voir dire* violated capital
defendant's right to due process, regardless of whether that instruction would have
been required in the first instance).

Notably, the defense proposed instruction not only correctly states the law
under the FDPA, but it was also given in the most recent federal capital trial in this
district, *United States v. Barnes*, as well as in each of the other three such trials in
this district (final instructions attached to this letter as Exhibit D) and in many
other such trials across the country (a list of which is available upon request). *See
also* 1 Modern Federal Jury Instructions-Criminal P 9A-1, *Overview,* para. 25 (2022)
(recommending such an instruction); Tenth Circuit Criminal Pattern Instruction
3.02, *Summary of Deliberative Process,* para. 10 (2021) (same).

Section 2 (Age and Gateway Factors):

The defense has added a section heading titled, "Age and Gateway Factors" to page 3 of the Court's proposed instructions, and hereby proposes to stipulate that Mr. Saipov was 18 years or older at the time of the offense and to have that stipulation noted in the instructions.

Section 3 (Statutory Aggravating Factors):

The defense has added a section heading titled, "Statutory Aggravating Factors" to page 4 of the Court's proposed instructions. We object to the definition of an "aggravating factor" as one that "makes worse or more offensive" or "intensifies" a particular crime, as this language does not appear in the FDPA or in any other decisions the defense is aware of that interprets or applies the term in other capital cases. This language also unduly broadens the scope of legally-permissible aggravation; aggravators must be noticed by the government and specific and concrete, and this language improperly encourages jurors to determine their own aggravation.[1]

The defense-proposed language also appropriately clarifies that the jury is limited to considering the specific aggravators that the Court will instruct them on, and that jurors should not speculate about or consider other potential aggravation. Further, the defense has separated the definition of "mitigation" from the definition of "aggravation" in order to avoid confusion and illustrate the qualitative difference between the two under the FDPA, and further objects to the definition of "mitigate" as "to make less severe" or "to moderate," because it improperly implies that mitigating evidence must have a nexus to the crime.[2]

With respect to the Court's instructions on each statutory aggravating factor, the defense objects to the reference to each deceased victim by name in its explanation of the "death during commission of another offense" aggravator. The defense's proposed language to refer to the "victim" or "victims" generally is consistent with the statute and the liability-phase instructions regarding Count 28 (substantive violation of 18 U.S.C. § 33). The jury has heard evidence of, received instructions on, and made findings on who the eight deceased victims are, and they will hear and receive more evidence. It is unnecessary to repeat the eight victims' names in the preliminary instructions.

---

[1] The defense did not include this objection in its annotations to the version of the preliminary remarks submitted to the Court on September 16, 2022 (dkt. no. 566-1).
[2] The defense did not include this objection in its annotations to the version of the preliminary remarks submitted to the Court on September 16, 2022 (dkt. no. 566-1).

Regarding the Court's explanation of the "substantial planning and premeditation" statutory aggravator, the instruction should refer to a singular "offense" because the final sentencing instructions and the verdict sheet will require jurors to evaluate each of the nine capital counts of conviction individually.

<u>Section 4 (Non-Statutory Aggravating Factors)</u>:

The defense has added a section heading titled, "Non-Statutory Aggravating Factors" on page 6 of the Court's proposed preliminary instructions. Preliminarily, the defense objects to referring to the "weighing" of the aggravators and mitigators as the "balancing stage of the analysis" in the first full paragraph of that section. Instead, the defense requests that the Court refer to this as the "selection stage," as this language makes it clear that the jury's duty is to determine whether life or death is the appropriate punishment without recourse to a mathematical calculation or purely objective analysis.

Regarding the Court's instructions on the six non-statutory aggravating factors, the defense again objects to repeating the names of the eight deceased victims in its explanation of the "victim impact" non-statutory aggravator. The defense also respectfully submits that its proposed language presents the simplest way to distinguish the deceased victims from the relevant surviving victims.

With respect to the "surviving victim impact" non-statutory aggravator, the defense notes that its objections to economic and psychiatric impact evidence are pending and we renew them here. However, even if the Court overrules our objections to economic and psychiatric impact evidence, the defense objects to listing the alleged impact evidence because it effectively spotlights and marshals before the jury the government's case through a judicial instruction. Indeed, although it was common a century or more ago, federal trial judges today "rarely" marshal or summarize the evidence through their instructions. *United States v. Mundy*, 539 F.3d 154, 159 (2d Cir. 2008). It is "for good reason" that the practice "has fallen into widespread disfavor," for "[j]udges cannot marshal the evidence without exercising their own judgment on how evidence should be described, which aspects should be stressed, which aspects ignored. In doing so, courts inescapably influence the jury on decisions which should be the jury's sole province." *Mundy*, 539 F.3d at 158. Indeed, the Sixth Circuit has also explained that "a district court treads on thin ice when [as in that case] it summarizes [the government's aggravating] evidence in instructing a jury, especially when the court does not treat the evidence similarly on both sides of a case." *United States v. Taylor*, 814 F.3d 340, 365 (6th Cir. 2016) (citing *Mundy*, 539 F.3d at 158-59).

Turning to the instruction on the non-statutory "future danger" aggravator, the defense objects to the marshaling of the government's evidence in support of Mr. Saipov's alleged future dangerousness, and, in line with its pending challenges to

the scope of the government's future-danger presentation (affirmative and rebuttal), objects to an instruction that fails to limit the jury's consideration of risk of future violence to the Special Security Unit at ADX Florence.

<u>Section 5 (Mitigating Factors)</u>:

The defense has added a section heading titled, "Mitigating Factors" on page 8 of the Court's proposed preliminary instructions. The defense objects to the Court's proposed opening language under this section (beginning with, "In addition to considering the existence of any non-statutory aggravating factors…") because it improperly treats the jury's determination and consideration of mitigation as an afterthought to its determination of aggravating factors, conveys skepticism that the jury will find any mitigation, and unnecessarily repeats the preponderance-of-the-evidence standard, which is fully explained later in the same paragraph.

In the discussion of non-unanimity on page 10, the defense submits that the use of the word "they" is confusing to jurors and obfuscates the individualized, moral determination each juror must make for him or herself. Relatedly, for the sake of consistency, clarity, and completeness, the Court should instruct that mitigation is "anything else relevant that you individually believe mitigates against the imposition of the death penalty *or supports a sentence of life in prison without the possibility of release*."

<u>Section 6 (Selection of Appropriate Punishment)</u>:

The defense has added a section heading titled, "Selection of Appropriate Punishment" on page 10 of the Court's proposed preliminary instructions. Our proposed edits to this section are designed to clarify that the jury's decision is not just to decide whether death is appropriate; rather, it is to determine whether death or a life sentence without the possibility of release is warranted after weighing the aggravators against the mitigators, or after weighing the aggravators standing alone.

The defense respectfully requests leave to be heard further on the issues outlined in this letter and detailed in the enclosures at the conference scheduled for tomorrow, Wednesday, February 8, 2023, at 1:00 p.m. and thereafter, as necessary.

Respectfully submitted,

_____/s/_____

David Patton
Andrew J. Dalack
Sylvie J. Levine
Annalisa Mirón
David A. Ruhnke
David Stern

Counsel for Sayfullo Saipov

Cc:    Government Counsel