UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

SAYFULLO HABIBULLAEVIC SAIPOV,

Defendant.

S1 17 Cr. 722 (VSB)

**THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
RENEWED MOTION TO STRIKE THE DEATH PENALTY NOTICE
AS UNCONSTITUTIONAL AND FOR DISCOVERY
INTO PROSECUTORIAL DECISION-MAKING**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

Andrew Dember
Amanda Houle
Alexander Li
Jason A. Richman
*Assistant United States Attorneys*
    *Of Counsel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 1

I.     Supreme Court Precedent Forecloses the Defendant's Constitutional Challenges to the DOJ's Decision to Seek the Death Penalty ............................................ 1

II.    This Court Has Already Properly Rejected the Defendant's Reliance on Statistics and Summary Case Data in Attacking Application of the Death Penalty .................................................................................................................................. 3

III.   The Defendant Is Not Entitled to Discovery Into Prosecutorial Decision-Making ................................................................................................................................ 4

      A.    The Defendant Has Not Made a Credible Showing of Selective Prosecution ................................................................................................. 5

      B.    The Two Cases Cited by the Defendant Are Inapposite and Inconsistent with the Overwhelming Weight of Authority .................................... 8

      C.    The Prosecutorial Materials Requested by the Defendant Are Privileged ........................................................................................................... 10

CONCLUSION ...................................................................................................................... 12

# **TABLE OF AUTHORITIES**

## **Cases**

*Boyer v. Chappell*, 793 F.3d 1092 (9th Cir. 2015) ................................................................... 2

*Cooey v. Coyle*, 289 F.3d 882 (6th Cir. 2002) ......................................................................... 2

*Gregg v. Georgia*, 428 U.S. 153 (1976) ................................................................................... 2

*In re U.S.*, 397 F.3d 274 (5th Cir. 2005) ............................................................................... 5, 8

*McCleskey v. Kemp*, 481 U.S. 279 (1987) ........................................................................ 2, 5, 7

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ........................................................... 10

*Silagy v. Peters*, 905 F.2d 986 (7th Cir. 1990) ........................................................................ 2

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ................... 10

*United States v. Aquart*, 912 F.3d 1 (2d Cir. 2018) ............................................................ 3, 4

*United States v. Armstrong*, 517 U.S. 456 (1996) ............................................................... 5, 9

*United States v. Barnes*, 532 F. Supp. 2d 625 (S.D.N.Y. 2008) .......................................... 7, 8

*United States v. Bass*, 536 U.S. 862 (2002) ................................................................... 5, 6, 9

*United States v. Bin Laden*, 126 F. Supp. 2d 256 (S.D.N.Y. 2000) ........................................ 8

*United States v. Bradley*, 880 F. Supp. 271 (M.D. Pa. 1994) ................................................. 9

*United States v. Christensen*, No. 17 Cr. 20037, 2019 WL 570730 (C.D. Ill. Feb. 12, 2019) ................................................................................................................................ 8

*United States v. Denis*, 246 F. Supp. 2d 1250 (S.D. Fla. 2002) .............................................. 9

*United States v. DesAnges*, 921 F. Supp. 349 (W.D. Va. 1996) ............................................. 9

*United States v. Edelin*, 134 F. Supp. 2d 59 (D.D.C. 2001) ............................................. 9, 12

*United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) ................................................. 11

*United States v. Frank*, 8 F. Supp. 2d 253 (S.D.N.Y. 1998) ................................................ 11

*United States v. Furrow*, 100 F. Supp. 2d 1170 (C.D. Cal. 2000) ........................................ 11

*United States v. George*, No. 17 Cr. 201, 2020 WL 8881620 (E.D. La. Apr. 27, 2020) .................................................................................................................................. 8

*United States v. Gilbert*, 75 F. Supp. 2d 12 (D. Mass. 1999) .......................................................... 9

*United States v. Hargrove*, No. 03 Cr. 20192, 2005 WL 2122310 (D. Kan. Aug. 25, 2005) ................................................................................................................................ 8, 12

*United States v. Henderson*, 485 F. Supp. 2d 831 (S.D. Ohio 2007) ............................................. 8

*United States v. Holloway*, 29 F. Supp. 2d 435 (M.D. Tenn. 1998) ............................................... 9

*United States v. Johnson*, 900 F. Supp. 2d 949 (N.D. Iowa 2012) ............................................ 6, 8

*United States v. Lawrence*, 735 F.3d 385 (6th Cir. 2013) ............................................................... 8

*United States v. Lecco*, No. 05 Cr. 107, 2009 WL 3347108 (S.D.W. Va. Oct. 15, 2009) ....................................................................................................................................... 8

*United States v. Llera Plaza*, 181 F. Supp. 2d 414 (E.D. Pa. 2002) ............................................... 9

*United States v. McCluskey*, No. 10 Cr. 2734, 2012 WL 13080252 (D.N.M. July 26, 2012) ................................................................................................................................ 8, 11

*United States v. Nguyen*, 928 F. Supp. 1525 (D. Kan. 1996) ....................................................... 11

*United States v. Nobles*, 422 U.S. 225 (1975) ............................................................................... 10

*United States v. Perez*, 222 F. Supp. 2d 164 (D. Conn. 2002) ................................................. 9, 11

*United States v. Roman*, 931 F. Supp. 960 (D.R.I. 1996) .............................................................. 9

*United States v. Savage*, No. 07 Cr. 550, 2013 WL 2060932 (E.D. Pa. May 15, 2013) ....................................................................................................................................... 8

*United States v. Solomon*, No. 05 Cr. 385, 2007 WL 1300769 (W.D. Pa. May 2, 2007) ....................................................................................................................................... 8

*United States v. Taylor* ("*Taylor (N.M.)*"), 608 F. Supp. 2d 1263 (D.N.M. 2009) ................... 8, 12

*United States v. Taylor* ("*Taylor (Tenn.)*"), 583 F. Supp. 2d 923 (E.D. Tenn. 2008) ....................................................................................................................................... 8

*United States v. Walker*, 910 F. Supp. 837 (N.D.N.Y. 1995) ......................................................... 9

*United States v. Watts*, No. 14 Cr. 40063, 2016 WL 305059 (S.D. Ill. Jan. 25, 2016) ....................................................................................................................................... 8

*United States v. Williams*, No. 00 Cr. 1008 (NRB), 2004 WL 2980027 (S.D.N.Y. Dec. 22, 2004) ........................................................................................................................ 8

*Unites States v. Johnson,* 136 F. Supp. 2d 553 (W.D. Va. 2001) ................................................... 9

## Constitutional Provisions

United States Constitution, Eighth Amendment ...................................................................... 1, 2, 3

United States Constitution, Fifth Amendment ......................................................................... 1, 2, 3

## Rules

Federal Rule of Criminal Procedure 16 ......................................................................................... 10

**PRELIMINARY STATEMENT**

By motion dated January 30, 2023 ("2d Mot.," Dkt. 699), defendant Sayfullo Saipov moves to strike the Notice of Intent to Seek the Death Penalty ("Notice," Dkt. 80) as unconstitutional, or, in the alternative, for discovery into the decision-making of the Department of Justice ("DOJ") on whether to seek the death penalty in his and other capital cases. The defendant's primary argument largely echoes his first constitutional challenge to the Notice, which the Court rejected in a thorough opinion two weeks ago. ("Op.," Dkt. 691). Because prosecutorial discretion in seeking the death penalty is not subject to the Fifth and Eighth Amendment analysis of capital sentencing procedures, and because, in any event, as this Court recently held, "an attack on the death penalty as arbitrarily applied based on statistics or data about its application in other cases will fail where governing law satisfactorily provides the constitutionally mandated safeguards to limit the risk that improper considerations will infect a death penalty determination" (Op. at 5),[1] the defendant's renewed motion to strike the Notice should be denied. Finally, because the defendant has not met his burden of showing both discriminatory effect and discriminatory intent, as required for a claim of selective prosecution, his alternative request for discovery into the DOJ's capital decision-making should also be denied.

**ARGUMENT**

**I.    Supreme Court Precedent Forecloses the Defendant's Constitutional Challenges to the DOJ's Decision to Seek the Death Penalty**

The defendant "renews his motion to dismiss the government's death notice because the federal death penalty is arbitrarily sought and imposed in violation of the Fifth and Eighth Amendments," on the ground that the DOJ is arbitrarily seeking the death penalty against him. (2d

---

[1] Unless otherwise specified, all case quotations omit internal quotation marks, citations, brackets, and alterations.

Mot. at 1). In a holding that forecloses the defendant's argument, the Supreme Court has made clear that the discretion of the "prosecutor . . . to select those persons whom he wishes to prosecute for a capital offense" is not part of the Fifth and Eighth Amendment analysis of capital sentencing procedures. *Gregg v. Georgia*, 428 U.S. 153, 199 (1976).[2] This is because the prosecutor's decision is one that "may *remove* a defendant from consideration as a candidate for the death penalty," and "[n]othing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution." *Id.* (emphasis added). "The concern of the [Supreme] Court has been to limit and channel the discretion of the sentencing body — *i.e.*, the judge or the jury — which actually imposes the sentence in a given case." *Silagy v. Peters*, 905 F.2d 986, 993 (7th Cir. 1990). "A prosecutor's decision . . . to commence or forego a death sentence hearing is not a decision to 'impose' the death sentence," and therefore "does not implicate the Court's eighth amendment concerns." *Id.*; *accord Cooey v. Coyle*, 289 F.3d 882, 922 (6th Cir. 2002) (rejecting argument that "prosecutors have too much discretion in bringing indictments" in capital cases); *Boyer v. Chappell*, 793 F.3d 1092, 1105 (9th Cir. 2015) (rejecting argument "that prosecutorial discretion to seek the death penalty renders it unconstitutional").

Accordingly, the defendant cannot make out a constitutional challenge to the DOJ's decision to seek the death penalty, and his motion must be denied.

---

[2] A prosecutor's decision to seek the death penalty in a particular case can be challenged as selective prosecution, in violation of equal protection. *McCleskey v. Kemp*, 481 U.S. 279, 293 (1987). The defendant does not argue selective prosecution, however, but instead "renews his motion to dismiss the government's death notice" as unconstitutional under *Gregg*. (2d Mot. at 1–3). To the extent that the defendant's argument could be construed as a claim of selective prosecution — which would require "exceptionally clear proof," *Kemp*, 481 U.S. at 297–98 — it necessarily fails because, as discussed below, the defendant has not even proffered sufficient evidence to warrant discovery on a selective prosecution claim. *See* Point III.A, *infra*.

## II. This Court Has Already Properly Rejected the Defendant's Reliance on Statistics and Summary Case Data in Attacking Application of the Death Penalty

As set out above, controlling Supreme Court precedent precludes the defendant's constitutional challenges to the DOJ's decision to seek the death penalty. The proper focus of the Fifth and Eighth Amendment analysis, therefore, is the statutory framework for determining whether to impose the death penalty — here, the Federal Death Penalty Act ("FDPA"). Consistent with clear Second Circuit and Supreme Court precedent, this Court has already rejected the defendant's constitutional challenges to the FDPA. The statistics cited by the defendant in his most recent motion do nothing to disturb this Court's prior ruling and, in fact, his statistical claims are foreclosed by this Court's prior analysis.

As this Court reasoned in rejecting the defendant's prior statistical-based claims, such arguments are largely foreclosed by *United States v. Aquart*, 912 F.3d 1, 54 (2d Cir. 2018).[3] The Court explained that "under controlling precedent, death penalty 'sentencing procedures' must be 'adequate to ensure that death sentences are not being arbitrarily and capriciously imposed in individual cases.'" (Op. at 5 (quoting *Aquart*, 912 F.3d at 54)). So long as "governing law 'satisfactorily provides the constitutionally mandated safeguards' to limit the risk that improper considerations will infect a death penalty determination," a defendant cannot attack the death

---

[3] The defendant's instant motion is effectively a repackaging of his prior claims. In his first motion to strike the Notice under the Fifth and Eighth Amendments, the defendant argued the FDPA was unconstitutional because, among other reasons, (i) "the federal death penalty is sought and imposed in an arbitrary, capricious and unusual manner" because it is "so infrequently sought, imposed, or carried out" ("1st Mot.," Dkt. 96, at 11); (ii) "there is no consistency or predictability in the manner in which federal juries (and in three cases, federal judges) have imposed or declined to impose the federal death penalty or, indeed, which cases are allowed to plead out to life terms or less and which proceed to trial" (1st Mot. at 12); and (iii) "[t]wo-thirds of the defendants authorized for a federal capital prosecution are members of racial minority groups[,] includ[ing] Mr. Saipov" (1st Mot. at 20). In support of his motion, the defendant cited statistics of the racial composition of capital prosecutions (1st Mot. at 19–23, 27–28, and Ex. A), as well as factual summaries of other capital cases (1st Mot. at 12–17).

3

penalty as arbitrarily applied "based on 'statistics' or data about its application." (Op. at 5 (quoting *Aquart*, 912 F.3d at 57)). Because the FDPA is sufficient "to protect against the sort of arbitrariness that Saipov purports to identify in his constitutional arguments," the Court held, "Saipov's argument that any arbitrariness suggested by statistics about disparate applications of the death penalty render it unconstitutional must be rejected." (Op. at 6).

The Court's reasoning applies equally to the defendant's renewed motion. Citing summaries of capital cases in this District and others, the defendant argues that "it appears arbitrary for DOJ to spare some defendants but single out Mr. Saipov, a Muslim immigrant, for the death penalty even though their culpability is arguably greater." (2d Mot. at 7). But the Second Circuit (and this Court) has rejected the premise of the defendant's argument: "that the likelihood of racial disproportionality allegedly shown in [a] study," or by "assertion that his capital case cannot be distinguished from 32 others in which juries did not vote death sentences," is the proper "constitutional measure of a due process violation." *Aquart*, 912 F.3d at 56; *see* Op. at 5. Rather, the question is whether the *statutory* capital sentencing procedures are sufficient to "ensure that death sentences [are] not being arbitrarily and capriciously imposed in individual cases." *Aquart*, 912 F.3d at 54. This Court has already ruled that the statutory capital sentencing procedures are sufficient and thus the defendant's motion should be denied on this basis as well.

### III.    The Defendant Is Not Entitled to Discovery Into Prosecutorial Decision-Making

In the alternative, the defendant argues that the Court should order wide-ranging discovery into the DOJ's capital decision-making, including "[t]he bases for DOJ decisions to withdraw the death penalty authorization for all capital cases in the past two years," "[t]he bases for DOJ decisions not to seek the death penalty in the past two years," and "[t]he recommendations of the local U.S. Attorney in each [such] case." (2d Mot. at 9). This request should be denied for two reasons. First, the defendant has not met his burden of "show[ing] some evidence of both

4

discriminatory effect and discriminatory intent." *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam).  Second, the materials requested by the defendant — which "go[ ] to the core of a prosecutor's function and implicate[ ] serious separation of powers concerns," *In re U.S.*, 397 F.3d 274, 285 (5th Cir. 2005) — are protected by the deliberative process privilege and the attorney work product doctrine.

### A.  The Defendant Has Not Made a Credible Showing of Selective Prosecution

"[A] defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent."  *Bass*, 536 U.S. at 863.  This standard is "rigorous," *United States v. Armstrong*, 517 U.S. 456, 468 (1996), because a "presumption of regularity supports . . . prosecutor[s'] decisions, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties," *id.* at 464.  Discovery into prosecutorial decisions imposes high costs:  It "may disclose the Government's prosecutorial strategy," *id.* at 468, "chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry," *id.* at 464, and "unnecessarily impair the performance of a core executive constitutional function," *id*.  Particularly in the capital context, "the policy considerations behind a prosecutor's traditionally wide discretion suggest the impropriety of [courts] requiring prosecutors to defend their decisions to seek death penalties." *Kemp*, 481 U.S. at 296.  Indeed, "absent far stronger proof, it is unnecessary to seek such [information], because a legitimate and unchallenged explanation for the decision is apparent from the record:  [the defendant] committed an act for which the United States Constitution . . . permit[s] imposition of the death penalty."  *Id.* at 296–97; *see also id.* at 297 ("Because discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused.").

5

In order to meet his burden on discriminatory effect, a defendant seeking discovery must "make a credible showing that similarly situated individuals of a different [race, ethnicity, religion, or national origin] were not prosecuted." *Bass*, 536 U.S. at 863. The defendant has not met that burden. The defendant highlights nine purportedly comparable cases in which the DOJ determined not to seek the death penalty (*Crusius*, *Jordan*, *Tartaglione*, *Castillo*, *Saenz*, *Blackman*, *Guzman*, *Morgan*, and *Brown*), but does not even approach satisfying his burden of demonstrating *why* those other defendants are "similarly situated" to him. (*See* 2d Mot. at 4–6). Instead, he cites that those cases involved "large numbers of victims and/or horrific facts" (2d Mot. at 6), and goes on to declare, in essence, that all 400-plus potential capital cases in his annex are similar because "*all* of the cases are by their own terms horrible, and *all* involved the infliction of agony on victims and survivors" (2d Mot. at 10). It is no showing at all for the defendant to declare that he is similarly situated to every other potential capital defendant — and with respect to the nine cases highlighted by the defendant, it is plainly insufficient to summarily declare that he is similarly situated to those defendants based almost exclusively on the number of victims murdered. Under these circumstances, the defendant's bare "assertion that the only things that differentiate [his] case are race, ethnicity, national origin, and [religion] is a gross over-simplification." *United States v. Johnson*, 900 F. Supp. 2d 949, 972 (N.D. Iowa 2012) (denying similar request for discovery in capital case).[4] Because the defendant has not met his burden of showing discriminatory effect, his motion must be denied.

---

[4] Though he invokes "race, ethnicity, national origin, and religion," the defendant provides little information about national origin and no information about religion in the nine comparator cases he highlights. Moreover, in seven out of those nine cases (*Jordan*, *Castillo*, *Saenz*, *Blackman*, *Guzman*, *Morgan*, and *Brown*), the DOJ determined not to seek the death penalty against minority defendants, which plainly contradicts the defendant's claim that the DOJ is discriminating on the basis of race.

While the defendant's failure to show discriminatory effect is dispositive of his claim, he has also failed to present evidence of discriminatory intent. "[T]o establish the discriminatory intent element in support of a request for discovery on a selective prosecution claim, a defendant must produce some evidence that 'the decisionmakers *in his case* acted with discriminatory purpose.'" *United States v. Barnes*, 532 F. Supp. 2d 625, 637 (S.D.N.Y. 2008) (quoting *Kemp*, 481 U.S. at 292) (denying similar request for discovery in capital case). The defendant has made no such showing. Here, as in *Barnes*, "while Defendant has attempted to make a substantial showing with regards to allegedly similarly situated individuals who were not selected for capital prosecution, Defendant has made no showing with respect to discriminatory intent, let alone some showing that prosecutors acted with discriminatory purpose *in his case*." *Id*. The defendant's sole "evidence" of discriminatory intent in his specific case is a reference to former President Trump's statements concerning the defendant following his attack. But this Court has already rejected the defendant's argument that the sentiment expressed by President Trump had any bearing on the capital selection process in this case, calling the defendant's argument "pure speculation made without a scintilla of direct factual support." (Opinion and Order, Dkt. 119 at 8).[5] Because the defendant has failed to offer evidence of discriminatory intent, his request for discovery in furtherance of a selection prosecution claim must be denied.

---

[5] The Court further found that "Saipov has offered no evidence that the President's remarks impacted the Attorney General's decision-making process in any way. To the contrary, Attorney General Sessions has categorically renounced other provocative remarks made by the President, stating, 'While I am Attorney General, the actions of the Department of Justice will not be improperly influenced by political considerations.'" (Dkt. 119 at 9). Moreover, the current Attorney General has reaffirmed the decision to seek the death penalty in this case. (Dkt. 565 ("[T]he Attorney General has decided to continue to seek the death penalty.")).

### B. The Two Cases Cited by the Defendant Are Inapposite and Inconsistent with the Overwhelming Weight of Authority

The overwhelming weight of authority confirms that discovery into the DOJ's capital decision-making should be denied, particularly when the request is based, as here, on statistical or summary comparisons against other cases. *See, e.g.*, *In re U.S.*, 397 F.3d at 283–85 (issuing writ of mandamus and vacating district court's discovery order); *United States v. Lawrence*, 735 F.3d 385, 438–39 & n.3 (6th Cir. 2013) (affirming denial of discovery for failure to show discriminatory effect or intent); *United States v. Williams*, No. 00 Cr. 1008 (NRB), 2004 WL 2980027, at *7–9 & n.18 (S.D.N.Y. Dec. 22, 2004) (denying discovery based on failure to show discriminatory effect or intent), *aff'd*, 506 F.3d 151 (2d Cir. 2007); *United States v. Bin Laden*, 126 F. Supp. 2d 256, 262–63 (S.D.N.Y. 2000) (same, based on failure to show discriminatory effect); *Barnes*, 532 F. Supp. 2d at 636–37 (same, based on failure to show discriminatory intent); *United States v. Taylor* ("*Taylor (Tenn.)*"), 583 F. Supp. 2d 923, 930–32 (E.D. Tenn. 2008) (same, based on failure to show discriminatory effect). Twenty additional decisions denying discovery into the DOJ's capital decision-making in capital cases follow in footnote 6 below.[6]

---

[6] *United States v. George*, No. 17 Cr. 201, 2020 WL 8881620, at *7–9 (E.D. La. Apr. 27, 2020) (failure to show discriminatory effect or intent); *United States v. Christensen*, No. 17 Cr. 20037, 2019 WL 570730, at *3 (C.D. Ill. Feb. 12, 2019) (failure to show discriminatory effect or intent); *United States v. Watts*, No. 14 Cr. 40063, 2016 WL 305059, at *2–5 (S.D. Ill. Jan. 25, 2016) (failure to show discriminatory effect or intent); *United States v. Savage*, No. 07 Cr. 550, 2013 WL 2060932, at *5 (E.D. Pa. May 15, 2013) (failure to show discriminatory effect); *United States v. Johnson*, 900 F. Supp. 2d 949, 970–72 (N.D. Iowa 2012) (failure to show discriminatory effect or intent); *United States v. McCluskey*, No. 10 Cr. 2734, 2012 WL 13080252, at *3–5 (D.N.M. July 26, 2012) (failure to show discriminatory effect or intent); *United States v. Taylor* ("*Taylor (N.M.)*"), 608 F. Supp. 2d 1263, 1265–67 (D.N.M. 2009) (failure to show discriminatory effect or intent); *United States v. Lecco*, No. 05 Cr. 107, 2009 WL 3347108, at *5–6 (S.D.W. Va. Oct. 15, 2009) (failure to show discriminatory effect); *United States v. Henderson*, 485 F. Supp. 2d 831, 861–63 (S.D. Ohio 2007) (failure to show discriminatory effect); *United States v. Solomon*, No. 05 Cr. 385, 2007 WL 1300769, at *1–3 (W.D. Pa. May 2, 2007); *United States v. Hargrove*, No. 03 Cr. 20192, 2005 WL 2122310, at *4–5 (D. Kan. Aug. 25, 2005); *United States v. Denis*, 246 F.

*(continued on next page)*

The defendant identifies only two district court decisions granting the discovery he seeks. Neither case is persuasive. In *United States v. Bradley*, 880 F. Supp. 271, 280 (M.D. Pa. 1994), the district court ordered discovery based on a statistical analysis purportedly showing that "black defendants have been disproportionately subject to capital prosecutions." This rationale was subsequently rejected by the Supreme Court in *Bass*. *See* 536 U.S. at 863–64 ("Even assuming that the *Armstrong* requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decisionmakers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*."). In the second case cited by the defendant, *United States v. Llera Plaza*, 181 F. Supp. 2d 414, 417 (E.D. Pa. 2002), the district court ultimately *denied* the defendants' request for discovery. Although the court did conduct an *in camera* review of certain prosecution files, the decision to do so was against the overwhelming weight of authority cited above and was based on specific findings, not present in this case, concerning similarities between two cases within the same district in which the defendants were all charged with the same offenses but were subjected to different penalties (a material distinction from the generalized rationale underlying the argument advanced by the defendant here).

---

Supp. 2d 1250, 1256 (S.D. Fla. 2002) (failure to show discriminatory effect), *aff'd*, 107 F. App'x 182 (11th Cir. 2004); *United States v. Perez*, 222 F. Supp. 2d 164, 173 (D. Conn. 2002) (failure to show discriminatory effect or intent); *United States v. Johnson*, 136 F. Supp. 2d 553, 564–66 (W.D. Va. 2001) (failure to show discriminatory effect or intent); *United States v. Edelin*, 134 F. Supp. 2d 59, 87–89 (D.D.C. 2001) (failure to show discriminatory effect or intent); *United States v. Gilbert*, 75 F. Supp. 2d 12, 15–16 (D. Mass. 1999) (failure to show discriminatory intent); *United States v. Holloway*, 29 F. Supp. 2d 435, 438–42 (M.D. Tenn. 1998) (failure to show discriminatory effect or intent); *United States v. Roman*, 931 F. Supp. 960, 964–68 (D.R.I. 1996) (failure to show discriminatory effect or intent); *United States v. DesAnges*, 921 F. Supp. 349, 357–58 (W.D. Va. 1996) (failure to show discriminatory effect or intent); *United States v. Walker*, 910 F. Supp. 837, 858–60 (N.D.N.Y. 1995) (failure to show discriminatory effect or intent).

Accordingly, and consistent with the overwhelming weight of authority, because the defendant has not met his burden of showing evidence of both discriminatory effect and discriminatory intent, his request for discovery into the DOJ's capital decision-making should be denied.

### C. The Prosecutorial Materials Requested by the Defendant Are Privileged

Even if they were otherwise subject to disclosure (which they are not, as explained above), the materials requested by the defendant — which include the "bases" of the DOJ's capital decision-making and the recommendations of U.S. Attorneys on whether to seek the death penalty (2d Mot. at 9) — are protected by the deliberative process privilege and the attorney work product doctrine. The "deliberative process privilege, which is a form of executive privilege, . . . shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). The work product doctrine shields "certain materials prepared by an attorney acting for his client in anticipation of litigation." *United States v. Nobles*, 422 U.S. 225, 238 (1975); *see also* Fed. R. Crim. P. 16(a)(2) (except as otherwise permitted, "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case"). "Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975).

The Ninth Circuit has held that a prosecutor's "death penalty evaluation form and prosecution memorandum are protected by the deliberative process and work product privileges."

*United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). These materials are subject to deliberative process privilege because they are (i) "predecisional" to the Attorney General's final determination of whether to seek the death penalty, and (ii) "deliberative" in that they contain opinions, recommendations, and advice about agency decision-making. *Id.* at 1246–47. These materials are also attorney work product because they are "internal government documents" prepared by attorneys "in anticipation of litigation." *Id.* at 1247. As another judge in this District has observed, "[t]here are strong policy reasons in favor of keeping confidential the internal deliberative process through which the Government decides whether to use its prosecutorial power to seek the most severe punishment possible." *United States v. Frank*, 8 F. Supp. 2d 253, 284 (S.D.N.Y. 1998) (Cote, J.). "Discovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty." *Id.*

Consistent with *Fernandez* and *Frank*, courts have routinely denied requests to access the DOJ's privileged analyses of whether to seek the death penalty in individual cases. *See, e.g.*, *United States v. Furrow*, 100 F. Supp. 2d 1170, 1174–78 (C.D. Cal. 2000) (death penalty evaluation form and prosecution memorandum protected under deliberative process privilege and work product doctrine); *Perez*, 222 F. Supp. 2d at 172 ("Insofar as [the] requests . . . specifically ask the Government to share deliberations comprising part of the process by which governmental decisions are formulated, they are denied."); *cf. United States v. Nguyen*, 928 F. Supp. 1525, 1552 (D. Kan. 1996) (denying discovery of "documents supporting the government's recommendation to seek the death penalty in this case" under Rule 16(a)(2)). This is true including where, as here, the defendant has requested discovery on a claim of selective prosecution. *See McCluskey*, 2012

WL 13080252, at *5 (materials protected by deliberative process privilege and attorney work product doctrine); *Taylor (N.M.)*, 608 F. Supp. 2d at 1269 (materials protected by deliberative process privilege, work product doctrine, and Rule 16(a)(2)); *Hargrove*, 2005 WL 2122310, at *6 (materials protected by deliberative process privilege, attorney client privilege, and work product doctrine); *Edelin*, 134 F. Supp. 2d at 89 (same).

## CONCLUSION

For all the foregoing reasons, the defendant's renewed motion to strike the Notice or, in the alternative, for discovery into prosecutorial decision-making should be denied.

Dated: New York, New York
February 8, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   /s/
Andrew Dember
Amanda Houle
Alexander Li
Jason A. Richman
Assistant United States Attorneys
(212) 637-2563/2194/2265/2589