UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                                     :

UNITED STATES OF AMERICA,        :        (S1) 17 CR. 722 (VSB)

                -v-                    :

SAYFULLO SAIPOV,                  :

             Defendant.       :

------------------------------------------------------x

# SAYFULLO SAIPOV'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE GOVERNMENT'S DEATH NOTICE BECAUSE OF THE ARBITRARY PURSUIT AND IMPOSITION OF THE FEDERAL DEATH PENALTY

**DAVID E. PATTON, ESQ.**
Federal Defenders of New York, Inc.
Attorney for Defendant
**SAYFULLO SAIPOV**
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700

**Of Counsel: Andrew John Dalack, Esq.**
                 **Sylvie J. Levine, Esq.**
                 **Annalisa Mirón, Esq.**
                 **David Stern, Esq.**
                 **David A. Ruhnke, Esq.**

TO:  **DAMIAN WILLIAMS, ESQ.**
      Acting United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, NY 10007

      Attn:  **Andrew Dember, Esq.**
              **Amanda Houle, Esq.**
              **Zander Li, Esq.**
              **Jason Richman, Esq.**
              Assistant United States Attorneys

**Table of Contents**

I. Introduction ........................................................................................................... 1

II. The government's inexplicable refusal to engage with the merits of Mr. Saipov's motion at least weighs in favor of discovery. ....................................................... 2

III. There is enough evidence in the record to trigger a selective prosecution inquiry. ............................................................................................................................... 4

IV. Conclusion ............................................................................................................ 5

## I. Introduction

Under the leadership of Attorney General Merrick Garland, the Justice Department has imposed a moratorium on federal executions because of concerns about the arbitrary application of capital punishment, and it has de-authorized or declined to authorize dozens of federal capital murders, including in murder-in-aid-of-racketeering cases and mass killings, the most notable of which was a vicious and premeditated hate crime in Texas that resulted in the deaths of 23 people. Yet, it continues to pursue the death penalty for Mr. Saipov despite his willingness to plead guilty, waive all appeals, and consent to lifetime imprisonment under Special Administrative Measures (SAMs) that will all but eliminate his third-party communications for the foreseeable future. These facts alone compel an explanation from the government, including through discovery, as to the basis for its distinguishing Mr. Saipov from these other death-eligible cases.

But rather than address the merits of Mr. Saipov's motion, the government urges the Court to dismiss it outright, pointing to cases and precedent establishing the near-absolute impregnability of prosecutorial discretion and rejecting challenges to the death penalty on arbitrariness grounds. The government's opposition misses the mark, however, because none of the cases it cited implicate circumstances remotely resembling the ones present here. Indeed, none of the decisions cited by the government addressed whether it violates the Fifth, Sixth, and Eighth Amendments to single out one defendant for the death penalty amidst a wave of no-seeks and de-authorizations, and a moratorium on executions expressly tethered to the Attorney

1

General's concerns about the arbitrary application of capital punishment. This is particularly true in light of evidence that the Trump Administration's decision to seek the death penalty was in part driven by Mr. Saipov's religion, national origin and immigration status.

Accordingly, the Court should grant Mr. Saipov's motion, strike the death notice, or, in the alternative, compel the government to provide discovery pursuant to *United States v. Armstrong*, 517 U.S. 456, 468 (1996).

## II. The government's inexplicable refusal to engage with the merits of Mr. Saipov's motion at least weighs in favor of discovery.

In declining to engage with the thrust of Mr. Saipov's motion—that the Justice Department's pursuit of the death penalty in this case is not based on a principled distinction between Mr. Saipov and other perpetrators of mass murders, racketeering-related killings, and vicious hate crimes—the government relies on out-of-circuit decisions broadly rejecting the notion that "prosecutorial discretion to seek the death penalty renders it unconstitutional" (Gov't Opp. at 7 (citing, *inter alia*, *Boyer v. Chappell*, 793 F.3d 1092, 1105)), and a single line from *Gregg v. Georgia*: That "[n]othing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution." 428 U.S. 153, 199. The issue raised by Mr. Saipov, however, is not just of prosecutorial discretion standing alone or of the implications of the Justice Department's broad prerogative to choose to seek the death penalty in some capital murder cases but not others. Rather, the issue is a specific one, triggered by the unique and unprecedented circumstances of Mr. Saipov's situation: That he is the only person singled out for a capital prosecution by a Justice

2

Department and presidential administration otherwise committed to ending the federal death penalty through an indefinite moratorium on executions and a swell of de-authorizations and no-seeks, including in capital prosecutions instigated by the previous administration.

At a minimum, the government's conspicuous refusal to contend with the specifics of Mr. Saipov's argument (instead falling back on general case law about prosecutorial discretion) reinforces the need for discovery. Indeed, in the absence of any principled justification (even in broad strokes) for the Attorney General's inexplicably different decisions about whether to seek the death penalty across similarly-situated defendants, the most appropriate inference is that there is no such principled distinction, and that the Attorney General is pursuing the death penalty in a manner that renders its application arbitrary in violation of the Eighth Amendment. This is especially true given the backdrop to Mr. Saipov's death notice when it was first filed, which came on the heels of then-President Trump's public calls for Mr. Saipov's execution and his use of Mr. Saipov's truck attack to rail against so-called "chain migration" and the diversity visa lottery system. *See, e.g.*, *National Security Threats—Chain Migration and the Visa Lottery System*, Trump White House Archives (Feb. 1, 2018), available at: https://trumpwhitehouse.archives.gov/articles/national-security-threats-chain-migration-visa-lottery-system/ (expressly citing to Mr. Saipov's truck attack as a reason to end the diversity visa lottery system).

### III. There is enough evidence in the record to trigger a selective prosecution inquiry.

As the government acknowledged in its response, there is clear precedent for challenging a prosecutor's decision to seek the death penalty in a particular case, in violation of equal protection principles enshrined in the Fifth and Fourteenth Amendments. *See* Gov't Opp. at 7 n.2 (citing *McCleskey v. Kemp*, 481 U.S. 279, 293 (1987)). It is axiomatic that the government's arbitrary application of the death penalty is a denial of equal protection, and there is ample evidence in the record to support a selective prosecution inquiry. As set forth in the defense's opening motion and in previous filings (*e.g.*, dkt. no. 75), in the days and weeks immediately following the truck attack, then-President Trump persistently demanded that Mr. Saipov face the death penalty based on nothing more than an intemperate assessment of his crime and his identity as an Uzbek Muslim immigrant who was a diversity visa lottery winner—an aspect of United States immigration policy that was long the focus of the Trump Administration's ire. And given the recent decision to accept Patrick Crusius's guilty plea to life imprisonment despite his unrepentant and premeditated hate killing of 23 Latinos at a Walmart in El Paso, Texas—Crusius being a white, U.S.-born citizen—the Court should have significant concern that a driving force behind the death notice in this case is Mr. Saipov's religion and national origin, in violation of the Fifth and Eighth Amendments.

Accordingly, the Court has a more than sufficient basis to order the government to produce discovery pertinent to its charging decision in this case to ensure that it was both principled and not based on impermissible ethnic or religious

discrimination.

## IV. Conclusion

For the reasons set forth herein and in Mr. Saipov's opening motion, the Court should strike the death notice and/or compel the government to produce discovery. In the alternative, the Court should hold an evidentiary hearing.

Dated:      New York, New York
February 9, 2023

Respectfully Submitted,

/s/
David E. Patton, Esq.
Andrew John Dalack, Esq.
Sylvie J. Levine, Esq.
Annalisa Mirón, Esq.
David Stern, Esq.
David A. Ruhnke, Esq.

Counsel for Sayfullo Saipov