UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                     :

UNITED STATES OF AMERICA,       :      (S1) 17 CR. 722 (VSB)

         -v-                                 :

SAYFULLO SAIPOV,                   :

         Defendant.          :

------------------------------------------------------x

## SAYFULLO SAIPOV'S SUR REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE GOVERNMENT'S DEATH NOTICE BECAUSE OF THE ARBITRARY PURSUIT AND IMPOSITION OF THE FEDERAL DEATH PENALTY

**DAVID E. PATTON, ESQ.**
Federal Defenders of New York, Inc.
Attorney for Defendant
    **SAYFULLO SAIPOV**
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700

**Of Counsel: Andrew John Dalack, Esq.**
                  **Sylvie J. Levine, Esq.**
                  **Annalisa Mirón, Esq.**
                  **David Stern, Esq.**
                  **David A. Ruhnke, Esq.**

TO:  **DAMIAN WILLIAMS, ESQ.**
      Acting United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, NY 10007

      Attn:  **Andrew Dember, Esq.**
              **Amanda Houle, Esq.**
              **Zander Li, Esq.**
              **Jason Richman, Esq.**
              Assistant United States Attorneys

Sayfullo Saipov, through counsel, submits this sur reply in further support of his motion to dismiss the death notice because of the arbitrary pursuit and imposition of the federal death penalty, or, in the alternative, to compel the government to produce documents and other materials relevant to its capital-case authorization process.

Yesterday, in the Washington Post, an unnamed federal official was quoted as having divulged details about the Department of Justice's ("DOJ") internal deliberations regarding why it declined to seek the death penalty against Patrick Crusius. This disclosure belies the government's assertion that the materials Mr. Saipov seeks about the DOJ's bases for pursuing the death penalty against him are protected by the deliberative process privilege and the attorney work product doctrine. Gov't Opp. at 17 (dkt. no. 712). To the extent those privileges apply, the DOJ's one-sided and self-serving disclosure of the Crusius capital-case deliberations to the Washington Post constitutes a waiver.

"A claim of deliberative process privilege, even when properly established, is not absolute[; t]he deliberative process privilege is qualified, requiring the court to balance the interests of the parties for and against disclosures." *Sikorsky Aircraft Corp. v. United States,* 106 Fed. Cl. 571, 577 (Ct. Cl. 2012) (citations omitted). Thus, "[t]he privilege may be defeated by a showing of evidentiary need by a plaintiff that outweighs the harm that disclosure of such information may cause to the defendant." *Id.* (internal quotes and citation omitted). The privilege may also be waived if the government produces documents related to the subject matter of the privileged matter or produces the privileged matter in other litigation. *Id.* (citations omitted). "While

documents may be pre-decisional and deliberative when originated, they will not be entitled to any deliberative privilege if they are applied by the decisionmakers—as 'secret law'—or otherwise expressly adopted or incorporated by reference into the final decision." *USX Corp. v. United States*, 664 F. Supp. 519, 522 (Ct. Int'l Trade 1987) (citations omitted). "In addition, factual material contained in deliberative documents also falls outside of the privilege, to the extent that it is severable." *Id.* at 522.

In this case, the limited disclosure Mr. Saipov seeks is necessary to prevent a manifest injustice: The arbitrary and unprincipled pursuit and imposition of the most severe punishment. Equally dispositive is the government's waiver of its privilege, as revealed yesterday in a Washington Post article, in which the author was trying to make sense of the DOJ's "confusing" death penalty standards. *See* David Nakamura, *Justice Department's standards on federal death penalty called confusing*, Washington Post (Feb. 11, 2023 at 1:04 p.m. EST), available at:

https://www.washingtonpost.com/national-security/2023/02/11/death-penalty-justice-department/.

In the article, Mr. Nakamura discussed the DOJ's decision to not seek the death penalty against Patrick Crusius, who targeted a particular Wal Mart in El Paso, Texas, hours away from where he lived, for a hate-inspired mass killing of nearly two dozen Latinos. According to Mr. Nakamura, the DOJ apparently "agreed with findings" made by a defense-hired expert in Crusius's case regarding his mental health in part "because the expert was someone that federal authorities also have consulted on cases and trusted." Mr. Nakamura attributed his inside information to a "a federal government official who spoke on the condition of anonymity to discuss

2

private deliberations."

The decision by an anonymous government official to discuss internal deliberations with a reporter to help explain the decision to not seek Crusius's execution is a waiver of the DOJ's assertion of its deliberative process and work product doctrine privileges over the materials Mr. Saipov seeks. The disclosure was clearly designed to help provide a defensible rational for the government's seemingly inconsistent and "confusing" death penalty decisions. If the government is willing to divulge its internal deliberations about its capital case deliberations regarding Crusius to a readership of hundreds of thousands of Americans to suit its own public relations needs, then it must also be willing—or compelled—to share its deliberations and the "bases" for its decision to pursue and accomplish Mr. Saipov's execution to undersigned counsel for the purpose of vindicating his Fifth, Sixth, and Eight Amendment rights. To deny the defense's motion without at least ordering the government to produce discovery would effectively prioritize the machinery of death over the Constitution's promise that no person be deprived of his life or liberty arbitrarily.

As Judge Gerald William Heaney of the Eighth Circuit once wrote in a concurring opinion begrudgingly upholding a death sentence:

> Finally, although I am bound to uphold the law, I write separately to add my voice to those who oppose the death penalty as violative of the United States Constitution. My thirty years' experience on this court have compelled me to conclude that the imposition of the death penalty is arbitrary and capricious. At every stage, I believe the decision of who shall live and who shall die for his crime turns less on the nature of the offense and the incorrigibility of the offender and more on inappropriate and indefensible considerations: the political and personal inclinations of prosecutors; the defendant's wealth, race, and intellect; the race and

3

economic status of the victim; the quality of the defendant's counsel; and the resources allocated to defense lawyers. Put simply, this country's unprincipled death penalty selection process is inconsistent with fundamental principles of due process.

*Singleton v. Norris*, 108 F.3d 872, 874-75 (8th Cir. 1997).

For the reasons set forth herein and in Mr. Saipov's opening and reply motions, the Court should strike the death notice and/or compel the government to produce discovery.

Dated:   New York, New York
         February 12, 2023

                                    Respectfully Submitted,

                                    _____/s/_____
                                    David E. Patton, Esq.
                                    Andrew John Dalack, Esq.
                                    Sylvie J. Levine, Esq.
                                    Annalisa Mirón, Esq.
                                    David Stern, Esq.
                                    David A. Ruhnke, Esq.

                                    Counsel for Sayfullo Saipov