

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 20, 2023

**BY ECF**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

  Re: *United States v. Sayfullo Habibullaevic Saipov*, S1 17 Cr. 722 (VSB)

Dear Judge Broderick:

  The Government writes regarding two issues concerning the defendant's recorded prison communications that the Government has introduced or will seek to introduce at trial.

  *First*, the Government addresses the defense's request for an instruction to the jury regarding one of the four recorded prison calls the Government played on February 16, 2023. (Trial Transcript ("Tr.") 2521-24). At sidebar, after the Government introduced and published the calls, the defense argued that the Court should provide a curative instruction to the jury regarding any comparison of the content of the calls and the testimony that preceded the introduction of the calls. (Tr. 2521-22). As further detailed below, the call portions about which the defense now complains were added at the defense's request; the defense was on notice that the Government was going to play calls on the afternoon of February 16; and the defense chose not to object before the calls were played, when the Government read the stipulation regarding the prison calls, or when the Government offered the exhibits into evidence. Instead, the defense chose to wait until after the calls were played, including the portions that the defense requested be added to the calls, to lodge an objection. Despite this waiver of any defense objection, in an abundance of caution, the Government does not object to the Court providing the jury with an instruction and proposes one below. The Government respectfully requests, however, that the defendant be reminded of the need to make real-time objections, which facilitate the efficient administration of the trial and allow the parties and Court to address any issues in advance of the testimony and introduction of exhibits.

  *Second*, the Government writes in response to the defendant's objections to the remaining prison calls that the Government seeks to introduce during the penalty phase. (Dkt. 732). The

defendant objects to certain of these communications on relevance and constitutional grounds. As further detailed below, and as the Court has determined before in ruling on similar objections, these statements are evidence relevant to disputed issues at trial and are not being offered for an improper purpose. The defense objections are without merit.

## I. Relevant Background

On September 2, 2022, consistent with the Court's scheduling order, the Government provided the defense with its exhibit lists (one for the liability phase, and one for the penalty phase). Included on these exhibit lists were a total of 17 recorded calls obtained from the Bureau of Prisons, including all of the calls discussed in this letter. On September 25, 2022, the Government provided the defense with highlighted versions of the transcripts (and translations) of these 17 recorded calls to indicate which portions the Government would seek to introduce at trial. On or about December 30, 2022, the Government produced updated versions of certain transcripts, based on revisions from the Government's linguists.

On January 7, 2023, the defense responded to the draft transcripts with a series of objections and requests. These included, for example, changes to voice attributions; changes to certain translations; and the addition or deletion of certain segments of these calls. As to the transcripts and translations that the Government was seeking to introduce at the liability phase, the parties resolved their disputes at that time and the Government introduced three recorded calls during the liability phase (GX 1207B, 1214, 1216). As noted in relevant part below, in the weeks that followed, the parties exchanged updated translations and transcripts in an attempt to resolve the remaining disputes as to the Government's proposed exhibits at the penalty phase.

## II. The Defendant's Arguments Are Meritless and the Defense Should Be Instructed to Make Timely Objections

Throughout the penalty phase of this trial, the defense has repeatedly declined to make objections and then complained of purported prejudice following admission of the relevant evidence or testimony. The defendant's most recent complaints concerning GX 1211 are an apt example. Despite having had repeated opportunities to object to the admission of GX 1211 *before* it was published to the jury, and despite the fact that the complained-of portions of GX 1211 were added to the exhibit *at the defendant's request*, the defendant now claims prejudice. As set out below, the defendant's arguments are meritless, and the Government did not offer GX 1211 for the purpose the defendant claims. While the Government does not believe the defendant has suffered any prejudice, in an abundance of caution, the Government proposes an instruction below. The Government respectfully proposes, however, that the Court should remind the defendant that objections should be timely made.

### A. The Defendant Requested the Portions of GX 1211 to Which He Now Objects

The two portions of GX 1211 about which the defense now complains are two segments of the call inserted at the defense's request. More specifically, in a January 7, 2023 email, the defense informed the Government that if the Government planned to introduce the segment of GX 1211 that the Government had indicated (which would ultimately become Segment A of GX 1211),

the defense requested that the Government include two additional segments, involving conversations between the defendant and two of his children. Prior to that defense request, the Government had not included any portions of GX 1211 that included the defendant's children. As requested by the defense, the Government added these two segments (which would become Segment B and Segment C of GX 1211).[1] The Court should not now entertain any claim from the defense about any alleged prejudice from the jury hearing the very segments of the call that the defense itself insisted upon putting before the jury, regardless of when the Government chose to play these recordings.

### B. The Government Did Not Offer GX 1211 as Any Comparison Between Victim Impact and Mr. Saipov's Family

The defendant's suggestion that the Government deliberately played the recordings (that the defendant insisted upon introducing) to invite comparison is baseless. The prison calls that the Government offered on February 16 are stark evidence of the defendant's lack of remorse and were offered for that purpose. Instead of thinking about the pain and loss he has caused his victims, the defendant is "doing awesome," "chilling here, bossing people around." (GX 1211-T). That was the clear import of the prison calls and it was the purpose of the Government's introducing these calls (and others that the Government will introduce next week). Indeed, the Government did not seek to introduce, for example, additional calls such as a call during which the defendant speaks to one of his children, GX 1202, and promises to bring his daughter "a beautiful toy," "beautiful dresses," and a "real pony." The defendant's characterization of the Government's motive in how it offered GX 1211 is entirely unfounded.

### C. The Defendant Did Not Timely Object to the Government's Publishing of GX 1211 Despite Ample Notice and Opportunity to Object

Thus, there is no merit to the defendant's objection. But even if there was, a review of the history relevant to the playing of GX 1211 reveals that the defense failed to timely object to the Government publishing the call, despite having numerous opportunities to do so.

The defense signed the stipulation concerning authenticity of the prison calls during the lunch break on February 16, 2023, and had been advised that the Government was seeking to admit prison calls that afternoon.[2] Following the lunch break, the Government called Mr. Young, and

---

[1] GX 1202 also includes a portion involving one of the defendant's children (Segment D). This segment, too, was requested by the defense.

[2] The Government had made certain revisions to the prison calls stipulation (GX 2025) at the defendant's request. During the lunch break on February 16, the defense signed the stipulation and transmitted it back to the Government noting, among other things, an understanding that the Government intended to admit prison calls other than GX 1203, 1204, 1207, 1208, and 1212 (which had outstanding objections) that afternoon. At that time, the defense also had notice that the Government had 3 remaining witnesses for the day—Anthony Young, Alexander Naessens, and Lieve Wyseur—because the Government had provided the list to the defense the night before.

The Honorable Vernon S. Broderick												Page 4
February 20, 2023

then Mr. Naessens. After Mr. Naessens finished testifying, the Government announced that it was going to read a stipulation before calling its next witness. (Tr. 2515:19-23). The defense did not ask for a sidebar and indicated it had no objection to the stipulation. (*Id.* at 2515:24-25). After the Government read the stipulation, including several introductory paragraphs inserted at the defense's request, the Government introduced GX 1205 and published it to the jury. (Tr. 2517:8-16). The Government then returned to the stipulation and read the paragraphs related to GX 1211, 1213, and 1215. (Tr. 2518:3-19). The Government then introduced GX 1211, 1213, and 1215. (Tr. 2518:20-23). The defense did not ask for a sidebar or object at any point during the introduction of these exhibits. After the Government published these calls to the jury, the Government asked for a sidebar to flag the anticipated timeline of the Government's last witness of the day for the Court. (Tr. 2520-21). At this sidebar—for the first time—the defense objected to "the government playing the calls of Mr. Saipov and his children right on the heels of the last witness, who talked about his young children being left without a mother." (Tr. 2521:16-19). The defense further alleged that it was "obviously a very deliberate decision to play those on the heels of his very emotional testimony" and asked for "an instruction about not comparing those and to make very clear to the jury that they are not to compare the situations, and that any inference by the government should be disregarded." (Tr. 2521-22).

As the timeline above demonstrates, the defendant had ample notice of the Government's intention to publish prison calls on the afternoon of February 16. The defense was also well aware of the content of the anticipated testimony of Mr. Naessens and Ms. Wyseur, and indeed, has litigated issues concerning this testimony. The defendant also had repeated opportunities to object or request a sidebar as the Government sought to introduce and then publish GX 1211, but the defendant did not do so. In sum, the defense had the opportunity but chose not to take up this issue at the appropriate time—before the calls were published to the jury.

Additionally, the defense has previously argued that it cannot object during the testimony of victim impact witnesses due to the message that would send to the jury. The Government does not agree that this strategic decision not to object during testimony excuses the defense's failure to lodge a real-time objection. *See, e.g.*, *United States v. Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995) ("If, however, the party consciously refrains from objecting as a tactical matter, then that action constitutes a true 'waiver,' which will negate even plain error review." (citations omitted)). Regardless, however, there was no similar dynamic at play when the Government introduced these recorded calls—there was no witness on the stand at all. There is simply no reason why the defense could not have lodged its objection (on multiple occasions) before the challenged calls were published to the jury.

Thus, even if there was some merit to the defendant's objection—and there was none, as discussed above—the defendant failed to make that objection in a timely manner, despite repeated opportunities to do so.

### D. In an Abundance of Caution, the Government Does Not Object to a Supplemental Instruction

Even though the defendant is wrong on the facts and the law, the Government, in an abundance of caution, does not object to the Court reminding the jury of the purpose of victim

The Honorable Vernon S. Broderick  Page 5
February 20, 2023

impact testimony, if the defense maintains its request for such an instruction. The Government respectfully submits that the Court should provide the jury with a modified version of the instruction the Court gave the jury at the onset of victim impact testimony:

> You have heard during the Government's case about the impact of the murders on the victims' family members and their close friends. The law permits you to hear and consider this evidence, and the Government has alleged an aggravating factor regarding the injury, harm, and loss to the victims' family and friends. However, by its nature, it is highly emotional testimony. I instruct you not to let the emotional nature of this evidence overwhelm your ability to follow the law as I will instruct you before deliberations. Ultimately, you must decide the proper punishment without undue passion.

(*See* Tr. 2033:7-18). The Government does not object if the Court wishes to include additional language, if the defense makes such a request, specifically mentioning GX 1211.

### III. The Remaining Objections

The defense objects to portions of five remaining recorded prison communications (GX 1203, 1204, 1207, 1208, and 1212). (Dkt. 732). The Government attaches the transcripts of these five calls as Exhibit A and discusses them each in turn below.

GX 1203. While the Government does not agree with the defendant's characterization of the call as irrelevant, the Government no longer plans to offer GX 1203 into evidence. This objection is therefore moot.

GX 1204 is a recorded call among the defendant and three of his family members. The defense objects to Segments A and B of GX 1204 and claims that the defendant's statements are not relevant. Segment A demonstrates the defendant's utter lack of remorse for what he has done; quite the contrary, he boasts of his time in prison and how good his life is, that he has "everything here" and praises God for it. Beyond that, the defense opened the penalty phase by arguing that life in prison is sufficient punishment because of how hard the sentence will be for the defendant. (Tr. 2023-24). For example, defense counsel argued that the defendant "will lose everything that makes life sweet" and will "never eat the food he loves again." (*Id.*). These statements in GX 1204 from the defendant are fair rebuttal to this argument—the defendant himself acknowledging that far from losing everything that makes life sweet, he even has (and enjoys) chocolate. In Segment B, similarly, the defendant responds to a family member asking if he was "having a hard time" by stating "Why? Why should I? I have the pleasure of learning the Quran, and have time for leisure. It is wonderful. Everything is alright." Again, this segment is relevant to demonstrate the defendant's lack of remorse; far from contrite while in prison, he instead boasts of how good his life is (which, again, is also fair response to the defense's argument concerning the defendant's life in prison). Further, similarly, the defense has provided in its list of mitigating factors to the Court two factors assertedly concerning the alternative to the death penalty in this case. (Tr. 1992-93). The second of these two alleges that it is mitigating that the defendant "will spend a minimum of 23 hours per day alone in a cell" if sentenced to life in prison. (*Id.*). The defendant's own perspective on his time incarcerated is certainly relevant in the jury's consideration on whether

The Honorable Vernon S. Broderick  Page 6
February 20, 2023

(and how) mitigating this is, and his statements concerning his time in prison are thus relevant. For all of these reasons, GX 1204 should be admitted.[3]

In addition, the defense argues that the defendant's statements about his religious practice in this and certain of the other calls detailed below are protected religious activities. As before, and as the Court has observed in ruling on other nearly identical motions made by the defense, the Government is not seeking to introduce these statements to criminalize the defendant's practice of his religion, but rather as evidence of aggravating factors that the Government has the burden of proving at the penalty phase. *See, e.g.*, *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (the First Amendment does not "prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent"). The defendant has repeatedly told his family members on recorded calls that he enjoys the solitude afforded him in prison and the time it gives him to study the Quran. These statements by the defendant demonstrate that while incarcerated he is not reflecting upon the pain and misery he has caused others. Nor is he miserable as the defense suggested in its opening statement. Instead, he is, as he states, doing "perfect" and enjoying the "pleasure of learning the Quran." It is for this reason, and not for any purpose of criminalizing the defendant's practice of his religion, that the Government offers these exhibits.

GX 1207A is a call between the defendant and one of his family members. The defense objects and claims that the defendant's statements about having prayer oil and learning the Quran are protected religious activities and not relevant.[4] The Government seeks to introduce 30 seconds of this call, during which the defendant informs his family member that he is working on memorizing a particular portion of the Quran, and that he has "some great deeds waiting ahead" that he has to "prepare" for. Further, the defendant proclaims that "[t]here is a great reason why I am here now. God is preparing me for something big. I have big, very big plans ahead of me, and then all will be good, God willing." This call—with the discussion of learning the Quran inextricably intertwined—is relevant for multiple reasons. First, again, it shows that the defendant's conditions of confinement are not sufficient punishment for this particular defendant. Second, portions of this quoted language evidence the defendant's future danger—his belief that he is being prepared for "something big" to come. Third, again, this demonstrates the defendant's continued lack of remorse—far from contrite or apologetic for what he has done, he boasts instead of the "great deeds" that await him and the "great reason" why he is in prison.

GX 1208 contains quoted language from the defendant himself and no other participant on the call. The defense objects and claims that it is not relevant and is unduly prejudicial. In full, the quoted language is as follows:

> Uh, this dumb ass came, this... uh, someone... or the lawyer? Sent me a letter asking for my permission! I am going to shove him back into his mother's, that fuckin'…

---

[3] The defendant also objects to one translation in Segment A of the word *attar*. The parties had been in discussion regarding that translation when the defendant filed his letter, and the Government is amenable to the change the defendant requested, as reflected now in Exhibit A.

[4] The defendant does not argue the relevance point in his filing with the Court, but did in previous communications with the Government.

The Honorable Vernon S. Broderick                                                                 Page 7
February 20, 2023

> who the fuck dares to write a letter to me like that. I will shove him back into his mother, dumb asses. That fuckin' face… that damned, filth. He must not write to me, ever. You shouldn't be ... without a headscarf in the pictures anymore. What am I... I never... I am not an irresponsible husband who lets his wife be seen freely by other men. Your stupid self, come on, give it to Aisha... Aisha?

The Government properly seeks to introduce this recording. First, the recording is evidence of the defendant's lack of remorse. This call is an example, among others, in which the defendant's words and tone reflect that he views himself as—as the Government argued in its opening—a famous solider of the Caliphate. The defendant's statements in this call questioning who "dares" to write him a letter are probative of his lack of remorse and should be admitted on that basis. Second, this call is further relevant to the Government's future dangerousness proof. The call is corroborative of other evidence the Government has introduced at the penalty phase concerning the defendant's aggression and threats toward others. The defense has challenged the evidence of these threats and implied through cross-examination that there was no actual risk posed by the defendant. Here, too, the defendant demonstrates his outbursts and threats, and this call also corroborates that testimony. [5]

      Lastly, GX 1212 is a call between the defendant and one of his family members. The Government disagrees with the defendant's objection on GX 1212—and does not believe it is colorable to argue that an instruction is appropriate to cure potentially misleading statements from the defendant *himself*, nor that the statement here is misleading—but, in any event, the Government no longer plans to offer GX 1212 into evidence, so any objection is moot.

[continued on next page]

---

[5] To the extent the Court has any concern about the reference to "the lawyer," the Government would be amenable to redacting those words, though does not believe any redaction is necessary.

The Honorable Vernon S. Broderick                                                                                           Page 8
February 20, 2023

\* \* \*

      Finally, the defense has not identified for the Government what, if any, additional recorded communications of the defendant that the Government will seek to introduce at the penalty phase. Instead, the defense has told the Government that it may seek to introduce additional recordings depending on which recordings the Government introduces. The Government has provided the defense with the full set of recordings that Government will seek to introduce, and there is no reason at this stage for the defense not to comply with the Government's request that the defense provide the Government with any calls that the defense anticipates introducing (and the Court's order that the defense provide the Government with defense exhibits within 24 hours of any guilty verdict, Dkt. 426 at 3). As such, the Government respectfully requests that the Court order the defense to provide its remaining exhibits to the Government by February 21, 2023.

                                                               Respectfully submitted,

                                                              DAMIAN WILLIAMS
                                                              United States Attorney

                                        By:       /s/
                                                             Andrew Dember
                                                             Amanda Houle
                                                             Jason A. Richman
                                                             Alexander Li
                                                             Assistant United States Attorneys

cc: Defense counsel (*by ECF*)