

February 21, 2023

**BY HAND & ECF**

The Honorable Vernon Broderick
United States Courthouse
40 Foley Square
New York, New York 10007

Re:   Access to proceedings in *U.S. v. Saipov*, 17-cr-722

Dear Judge Broderick:

I write on behalf of The New York Times Company ("The Times") and reporter Ben Weiser. The Associated Press also joins this letter. It is our understanding that the Court intends to exclude the press from the courtroom during the sentencing proceedings in this case and require members of the press to view the trial from an overflow courtroom or from the press room, via a video feed. We write to request that the Court, in recognition of critical First Amendment rights and the obvious public interest in these proceedings, reconsider its closure of the courtroom and permit a limited press pool to attend the proceedings in person in the courtroom.

As Your Honor is aware, the press and the public have a presumptive First Amendment right of access to criminal proceedings. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 604–06 (1982). The Supreme Court has found that "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole." *Id.* Moreover, the Second Circuit has recognized that even where alternative means to access a proceeding are available, "[t]he ability to see and to hear a proceeding as [it] unfolds is a vital component of the First Amendment right of access…" *United States v. Alcantara*, 396 F.3d 189, 201–02 (2d Cir. 2005). Accordingly, a crucial component of this right of access is the press's ability to experience firsthand the reactions and demeanor of the parties, attorneys, judge, and others in the room.

1

Under Supreme Court precedent, this presumptive access right, including the concomitant right to see and to hear a proceeding, "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Sup. Court of California, Riverside Cty.*, 464 U.S. 501, 510 (1984). That interest must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was
properly entered." *Id.*

While we understand that this Court will allow access through a live feed, our experience is that a video is not an adequate substitute for the First Amendment right of access to the courtroom itself. Prior high profile criminal proceedings in this Circuit that have utilized overflow rooms for reporters have resulted in the press being unable to see or hear important aspects of the proceedings. For example, in two recent high-profile trials in the Eastern District of New York, the 2019 NXIVM trial and the 2018-2019 trial of El Chapo, reporters in the overflow room missed the prosecutor's opening statement because either the microphone was turned off or because the technology was not functioning. Even without these difficulties, overflow room monitors can only show a narrow view of the courtroom because they use fixed single-angle cameras. As such, key components like the demeanor of those off-camera, the expression of those not facing the camera, and the conduct of those in the gallery are excluded from view. Thus, while overflow rooms are often a necessary complement, they are not an adequate substitute to in-person access.

We are mindful of the difficulties of accommodating large numbers of individuals wishing to attend these proceedings and the importance of facilitating access for family members and victims, in particular. We respectfully suggest, however, that designating a small number of seats for a press pool would accommodate these interests without impairing the right of access.

3

    We respectfully request that this Court reconsider its order limiting press access to the proceedings and, in recognition of the First Amendment right of access, permit a limited pool of reporters to attend in-person.

        Respectfully Submitted,

        */s/ Dana Green*

        Dana Green