

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 1, 2023

**BY ECF**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 518
New York, New York 10007

    Re:    *United States v. Sayfullo Habibullaevic Saipov*, S1 17 Cr. 722 (VSB)

Dear Judge Broderick:

    Yesterday, the parties advised the Court of a dispute regarding the admissibility of the defendant's disciplinary sanctions for the threatening words and conduct that he made towards prison staff on December 18, 2019, April 13, 2021, and November 16, 2021. (Tr. 3185–88). For the reasons below, the sanctions are not relevant to rebut the Government's proof regarding the aggravating factor of future dangerousness, and any minimal probative value regarding any other relevant issue in the penalty phase is outweighed by the dangers of confusing the issues and misleading the jury. *See* 18 U.S.C. § 3593(c). If the Court permits the sanctions to be entered into evidence, they should be accompanied by the relevant disciplinary reports.[1]

## The Trial Testimony

    Rosa Proto testified that on December 18, 2019, while working as a unit manager at the Metropolitan Correctional Center ("MCC") in Manhattan, New York, she directed the defendant to uncover a camera in his cell. (Tr. 2175, 2178). The defendant responded that "during the midnight shift the officer was an animal . . . and that he's not uncovering the camera until his head is chopped off." (Tr. 2179). The Government elicited no testimony about any disciplinary sanctions imposed by the prison, and successfully objected when defense counsel asked on cross-examination about the "consequences" (Tr. 2216) and the "punishment" for the defendant's misconduct (Tr. 2217).

    Felicia Noelien testified that on April 13, 2021, while working as a correctional officer at the MCC, she directed the defendant to uncover the light fixture in his cell. (Tr. 2699, 2702). The

---

[1] The Government offered to stipulate to the authenticity (but not admissibility) of the disciplinary reports, including the sanctions. The defense declined on the ground that it seeks only to introduce the sanctions.

The Honorable Vernon S. Broderick, U.S.D.J.
March 1, 2023
Page 2

defendant "got up, walked over, became irate, started raising his voice threatening [Officer Noelien], saying, 'You don't want to make me mad. I'll cover the cameras.'" (Tr. 2702). Again, the Government elicited no testimony about any disciplinary sanctions imposed by the prison. The defense did not cross-examine Officer Noeliens.

Josephine Dones testified that on November 16, 2021, while working as a correctional officer at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, she responded to the defendant's pressing the duress button in his cell. (Tr. 2257, 2259–60). The defendant asked "who last was around," accused Dones of banging his cell door, and declared: "I'm going to cut off heads. I want to cut off heads." (Tr. 2260). The defendant then "started punching the door and he cracked the cell window." (Tr. 2260). Again, the Government elicited no testimony about any disciplinary sanctions imposed by the prison. Nor did the defense on cross-examination.

### The Defendant's Sanctions

Following the December 18, 2019 incident, the MCC completed an incident report that included, among other things, a lengthy statement by the defendant, and referred the report to a discipline hearing officer ("DHO").[2] The DHO found the defendant committed the charged violations and imposed the following sanctions: disallowance of 27 days of good conduct time, 30 days of disciplinary segregation, and the loss of commissary privileges for 90 days. The DHO report, which includes the DHO's findings and sanctions, as well as the supporting records, are attached as Exhibit A.

Following the April 13, 2021 incident, the MCC completed an incident report that was reviewed by a UDC. The UDC found the defendant committed the charged violation and sanctioned him to the loss of commissary privileges for 60 days. The incident report, which includes the UDC's findings and sanction, is attached as Exhibit B.

Following the November 16, 2021 incident, the MDC completed an incident report and referred the report to a DHO. The DHO found the defendant committed the charged violations and imposed the following sanctions: disallowance of 27 days of good conduct time, 15 days of disciplinary segregation, and the loss of phone calls for 90 days. The incident report is attached

---

[2] Pursuant to Bureau of Prisons regulations, inmate incident reports are first reviewed by a unit discipline committee ("UDC"), which may make findings and impose certain sanctions not including the loss of good conduct time, disciplinary segregation, or monetary fines. *See* 28 C.F.R. § 541.7. If the offense is of heightened severity, the UDC can refer the incident report to a DHO. *See* 28 C.F.R. §§ 541.7, 541.8.

The Honorable Vernon S. Broderick, U.S.D.J.
March 1, 2023
Page 3

as Exhibit C.[3]  A redacted inmate disciplinary record showing the sanctions imposed for the three incidents at issue here, including the November 16, 2021 incident, is attached as Exhibit D.[4]

### Discussion

The Government offered at trial the defendant's threatening words and conduct towards prison staff as proof of his future dangerousness in prison.  The sanctions imposed by the prison disciplinary authorities are not relevant to that aggravating factor (or any other relevant consideration for the jury).  Take the December 18, 2019 incident:  That the DHO sanctioned the defendant to the loss of 27 days of good conduct time, 30 days of disciplinary segregation, and the loss of commissary privileges for 90 days — as opposed to some other sanction — provides the jury with no useful information about the threats he made on December 18, 2019.  Certainly those sanctions do not undermine Officer Proto's account of the threats; if anything, the sanctions mean the DHO *credited* her account.  But other than bolstering Officer Proto's testimony, the sanctions shed no light on the likelihood that the defendant will be dangerous in the future.  They are simply irrelevant.

Even if the sanctions were somehow relevant to the aggravating factor of future dangerousness, any probative value would be outweighed by the dangers of confusing the issues and misleading the jury.  *See* 18 U.S.C. § 3593(c).  Terms like "good conduct time," "disciplinary segregation," and "commissary privileges" — not to mention the system of prison discipline — are unfamiliar to the jury.  It would be misleading for the defense to argue (or for the jury to assume) that the defendant's threats were insignificant in light of the sanctions imposed, simply because the jury has no context to assess how severe the sanctions are.  Put another way, the jury has no way of knowing whether the sanctions imposed for these incidents are the maximum or minimum allowed by BOP regulation; absent some context, beyond just being irrelevant, the jury cannot situate these sanctions in the context of available punishment.  Thus, any reference to them has a great danger of confusing the issues and misleading the jury.

Should the Court deem the disciplinary sanctions admissible, they should at least be entered through the prison records attached as Exhibits A through D.  These records place the sanctions in the context of the charges and evidence actually evaluated by the UDC and/or DHO, including the statements of the correctional staff, the statements of the defendant, the charges brought, and the findings made.  Indeed, the reports explicitly indicate in some circumstances that the UDC and/or DHO considered the defendant's statements during the respective disciplinary hearings in

---

[3] The incident report indicates the UDC's recommended sanction, but not the sanction imposed by the DHO.  The Government does not have the DHO report for the November 16, 2021 incident and therefore includes the chronological disciplinary record attached as Exhibit D.

[4] Because the exhibits include statements by the defendant that are not public, the Government respectfully requests leave to file them under seal pending the verdict in the case.

The Honorable Vernon S. Broderick, U.S.D.J.
March 1, 2023
Page 4

assessing the defendant's guilt and the appropriate penalty.[5]  (*See, e.g.*, Ex. A at 2).  If the sanctions are admitted, this context would assist the jury in making some sense of them and appropriately weighing what the sanctions reflect.

## Conclusion

For the foregoing reasons, the Court should preclude evidence of the defendant's disciplinary sanctions for the December 18, 2019, April 13, 2021, and November 16, 2021 prison incidents, or, in the alternative, require the sanctions to be entered through the records attached as Exhibits A–D.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ____/s/_____
Andrew Dember
Amanda Houle
Jason A. Richman
Alexander Li
Assistant United States Attorneys

cc:  Defense counsel (*by ECF*)

---

[5] Out of an abundance of caution, the Government has redacted Box 23 of each incident report, which reads:  "Inmate Advised Of Right To Remain Silent; You Are Advised Of Your Right To Remain Silent At All Stages Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process.  You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act."  (Ex. A at 6; *see also* Ex. B at 2 (substantially similar warning); Ex. C at 3 (substantially similar warning)).  The Government has also redacted a similar provision of the discipline hearing rights advisement.  (Ex. A at 7).