**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

March 5, 2023

**By ECF**
Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    **United States v. Sayfullo Saipov**
            **S1 17 Cr. 722 (VSB)**

Dear Judge Broderick:

    The defense writes to respond to certain aspects of the government's final proposed jury charge and verdict form for the penalty phase (DE #757), filed Friday, March 3, 2023, that differ from the defense's proposed charge and verdict form (DE #756), also filed Friday.

    Many of those differences involve government objections or requests that (1) abandon instructions or verdict-form elements to which it has agreed since before voir dire, as reflected in the parties' joint proposed instructions submitted in September (DE #566), and that the defense had no idea it would seek to revisit until receiving a draft of the government's submission two days ago, (2) diverge from the instructions the Court has already given the jury, sometimes repeatedly, and on which defense counsel has relied, and (3) diverge from the instructions and verdict forms that other district courts in this district have consistently adopted in federal capital trials.

    The defense responds below to the government's new objections and requests (with citations to the appropriate page of the government's proposals, DE #757-1 and DE #757-2). The defense otherwise maintains all previously interposed instructional requests and objections.

**Introductory Instructions (DE #757-1 at 1)**

    The previous joint submission included selected general instructions on topics, such as evidence and the defendant's right not to testify, modified to account for important differences between the liability and penalty phases. *See, e.g.*, DE #566 at 8-10. The government now, for the first time, requests that almost two

dozen general instructions that were given in the liability phase be repeated at the penalty phase. Mr. Saipov objects.

Such a wholesale importation of the liability-phase instructions was not done in prior SDNY capital cases. No doubt that is because many of these liability-phase instructions do not fit and would even be improper at the penalty phase. Most are framed in the language of the liability phase, often referring to how the jury should or should not determine if the defendant's guilt is proven. Some call on jurors to broadly ignore considerations that have some relevance at least at this penalty phase, such as the defendant's political views and national origin. Some include wording from, or are even entirely based on, limitations imposed by the Rules of Evidence, which do not apply at the penalty phase. Moreover, to the extent any of the principles from those liability-phase instructions apply, they are simple ones that do not need to be repeated, such as, by example, telling jurors yet again what a stipulation is, since the jury heard them explained just a couple of weeks ago.

### No Presumption of Death (DE #757-1 at 4-7, 45)

The defense has requested the Court give the same instruction it gave at the start of the penalty phase, and that has been given in previous capital trials in this district: that the law neither requires nor assumes a defendant convicted of capital murder should be sentenced to death. But the government seeks to replace most of this instruction with a repetition of a different, later instruction on how the jury should reach its sentence determination. Elsewhere, the government proposes to water down the defense instruction by removing the key language that the law never "assumes" a death sentence, and to tell jurors only that the law never "requires" one. Mr. Saipov thus objects and maintains his requests.

### Weighing Versus Sufficient Outweighing (DE #757-1 at 5; *see also* 9, 15, 43)

Mr. Saipov's proposed instruction would distinguish and thus clarify the jury's obligation to determine whether the aggravating factors outweigh the mitigating ones from its obligation to also determine whether, if so, the former outweigh the latter sufficiently to justify a death sentence rather than life imprisonment without the possibility of release—*i.e.*, the standard under the FDPA. This language comes from the instruction given in *United States v. Barnes*, the last capital case tried in this district.

The government's stated objection goes only to whether the instruction should tell jurors that the reasonable-doubt standard governs these determinations, not whether the distinction between outweighing and sufficient outweighing should be clarified. Even if the Court removes the "reasonable doubt" language, there is no reason to eliminate the rest of the instruction. So too the instructions on pages 9, 15, and 43 that the government opposes for the same, narrow reason. Thus, Mr.

Saipov maintains his requests.

**Justifying a Death Sentence Versus a Life Sentence (DE #757-1 at 5-6, and throughout)**

Throughout the government's proposed charge, it now, for the first time, calls for the jury to be instructed ultimately to decide whether a death sentence is "justified", or its balancing of factors "justifies" a death sentence — in isolation and in the abstract, an up or down referendum. The government objects to language it agreed to in the joint submission last September, DE #566, in which the jury's decision is instead cast as a choice between a death sentence or a sentence of life imprisonment without possibility of release.

The government's stated reason is that the Federal Death Penalty Act, 18 U.S.C. § 3593(d), refers to the jury's decision in this way. But the government ignores that the statute, on its face, was designed to cover cases in which there were multiple alternatives to a death sentence — a sentence of life imprisonment or a lesser sentence — as well as cases like Mr. Saipov's, in which there is only one alternative to a death sentence (life imprisonment) under the capital statutes of conviction. *See* 18 U.S.C. §§ 34, 1959. Thus, the language of the statute plainly does not preclude the language proposed by the defense and that had been agreed on by the parties for months.

Perhaps more important, casting the decision in terms of whether a death sentence is justified in isolation incorrectly and prejudicially distorts the jury's duty: A juror could well conclude a death sentence *would* be an appropriate punishment, and thus be "justified," but also conclude that a life sentence would be *more* appropriate, and thus *more* "justified." Accordingly, failing to present the decision as a comparative one could lead to an arbitrary result, in violation of the Eighth Amendment, of having jurors vote for a death sentence they do not believe to be the more appropriate of the only two possible punishments.[1]

**Non-Unanimity (DE #757-1 at 7, 45, 49-50; verdict form, p.14-19)**

As the defense has told the Court, *see, e.g.,* DE 757-1 at 7 n.10; DE 710 at 1-2, every one of jurors has *already heard (or read)* that non-unanimity would result in the court's imposing a life sentence at least four times: In the Court's preliminary instructions at the start of voir dire, in very similar language during the Court's individual questioning, in the court's preliminary statement to each juror before they completed questionnaires, and in the jury questionnaire itself. At the

---

[1] For this reason, there is also no merit to the government's objection to the previously agreed to language that jurors must find "death is the only appropriate sentence" before they may impose it. DE #757-1 at 7.

3

conference on the preliminary penalty phase charge just two weeks ago, the government also *conceded* that such an instruction was appropriate for the final charge. *See* 2/13/23 Tr. at 1927 ("Ms. Houle: I don't want to belabor any of these points, I just want to clarify that the language proposed by the defense here would be appropriate at the concluding remarks...."). The defense has heavily relied, in its strategic decisions since jury selection, on this instruction and the reasonable expectation (and again, more recently, the assurance) that it would not be withdrawn. *See* DE #710 at 2 (citing *Knox v. Collins*, 928 F.2d 657, 661 (5th Cir. 1991) (court's failure to give instruction consistent with instructions given in voir dire violated capital defendant's right to due process, regardless of whether that instruction would have been required in the first instance). The instruction has also been given in *every* previous capital case tried in this district. *Id.* at 2-3. Thus, though the government now seeks to go back on its recent concession and object to the instruction, the Court should instruct the jury on the consequences of non-unanimity.[2]

Further, although the government had previously agreed (in September 2022) to instructing the jury that, if they were non-unanimous, they could report this to the Court and reflect their non-unanimity on the verdict sheet, it now objects to both. Again, as the defense has previously detailed, s*ee* DE #757-1 at 7 n.10; DE #710 at 1-2, the Court has repeatedly given that instruction (and the defense has relied on it in their strategic decision-making throughout), and other courts have included the non-unanimity option on the verdict sheet.

It would also be irrational and invite improper speculation, confusion, and questions to instruct jurors they could be non-unanimous and not include that as an option on the verdict form, as the government suggests in the alternative. *See* DE #757-1 at 51 n.58.

**Instructions on Stricken Testimony and Absent Witnesses (DE #757-1 at 11-12)**

---

[2] Moreover, the government's alternative modification of the phrasing is incorrect and makes no sense. The sentence on page 7 should read, as Mr. Saipov has requested: "if one or more jurors find that a sentence of life imprisonment without the possibility of release is the more appropriate sentence, the court will impose a sentence of life imprisonment without the possibility of release." It should *not* read, as the government suggests, "if one or more jurors find that a sentence of life imprisonment without the possibility of release is the more appropriate sentence, *and* the jury is not unanimous in its decision regarding punishment, then the court will impose a sentence of life imprisonment without the possibility of release" (emphasis added). For, as the next sentence goes on to say, "one or more jurors" includes all twelve jurors and thus embraces a unanimous as well as a non-unanimous vote for life.

The government proposes instructions warning jurors against considering two items of testimony, one given by a victim's mother and the other by Mr. Saipov's father. Mr. Saipov opposes the former. The Court struck the testimony at the time and told jurors to ignore it. While Mr. Saipov has questioned the sufficiency of that and other such post-hoc instructions, any effort now to repeat the instruction would only prejudice him further by reminding jurors of the testimony. As to the second cautionary instruction, on Mr. Saipov's father's testimony, Mr. Saipov believes the same is true, and we object to its inclusion. The fact that Mr. Saipov's father was detained by Uzbek authorities after the truck attack bears on his continuing love for Mr. Saipov and puts it in context—*i.e.*, despite his being arrested and detained by Uzbek authorities, he still loves his son. Indeed, the suffering and experiences of Mr. Saipov's other family members illustrates the same point: That they love him despite the pain, anguish, and consequences he caused through the truck attack, all of which bears on Mr. Saipov's background, record, and character.

Finally, the government requests a third cautionary instruction, telling jurors that it should give no consideration to the "absence" from the witness stand (and perhaps from the trial itself) of certain "people whose names you heard during the course of the trial." Mr. Saipov objects to such an instruction as unnecessary and inappropriate. The government does not cite any capital sentencings where such a charge was given. Nor does it identify how anything said or done at the penalty phase risks encouraging jurors to improperly speculate and hold against the government its failure to call any particular person as a witness. Finally, the instruction is overbroad and ultimately incorrect, since there may be testimony that provides jurors a reasonable basis to infer why certain people were not called as witnesses and/or were "absent" from the courtroom (particularly with respect to the government's future danger presentation).

**Anti-Sympathy Instruction and Instruction Inviting Jurors to Compare Victims' and Defendant's Families (DE #757-1 at 13-14)**

There are three aspects to this new section of the government's proposed charge: (1) an anti-sympathy instruction, (2) in instruction on the testimony of the victims' and defendant's families, and (3) an instruction, in the final paragraph, cautioning jurors not to be swayed by emotional displays from the gallery. Mr. Saipov does not object to the third (although he maintains it is insufficient to remedy the prejudice from those displays). He does object, for the reasons stated below, to the first two.

The government cites no authority or precedent for including such an anti-sympathy admonishment in a federal capital sentencing instruction. And it appears that no such instruction was given in any previous federal capital case tried in this district. That is because it would be inaccurate and confusing. Jurors must

5

be able to consider and give effect to *any* relevant mitigating evidence offered in support of a sentence less than death. *See, e.g., Penry v. Johnson*, 532 U.S. 782, 797 (2001). Thus, sympathy rooted in the mitigating evidence is permissible. Indeed, the instructions in this district in *United States v. Barnes* and *United States v. Williams* appropriately invited jurors to extend or consider "mercy."

Mr. Saipov also objects to the government's newly hatched extended, side-by-side comparison of the testimony by the victims' and defendants' families. This is offered under the guise of warning jurors not to (1) be overwhelmed by emotional testimony or (2) speculate about the witnesses' sentencing preference. But those simple points can readily be made — and are made in Mr. Saipov's proposed charge, DE #756-1 at 6, 21, in the appropriate section rather than as a preface. It does not require: (1) rehashing the victim-impact aggravating factor (which is fully spelled out later in the aggravating-factor section of the instructions); (2) inviting the jury to compare the victims' relatives with the defendant's (which the government has previously attempted to do though it is improper, *see, e.g.*, DE #731); or (3) narrowing and mischaracterizing the mitigating scope and significance of Mr. Saipov's family testimony, as the government's charge also does (*e.g.,* suggesting it did not bear at all on the crime, although it is plainly relevant to illustrate how the truck attack was related to Mr. Saipov's indoctrination into ISIS propaganda).

**Duplicative Instruction on Defendant's Right Not to Testify (DE #757-1 at 35)**

The government proposes that a second, lengthy instruction on Mr. Saipov's right not to testify be given as part of the instruction on the aggravating factor of lack of remorse. If this is meant to protect Mr. Saipov, he believes it would, on the contrary, be prejudicial and objects to it. It is unnecessary to repeat the instruction. And tying it to lack of remorse only risks prompting jurors, to whom the idea had not occurred, to think that a lack of testimony might be evidence of lack of remorse.

**Mitigating Factor General Instructions (DE #757-1 at 37-40)**

Again seeking to modify or remove language it has long agreed to, and that has routinely been employed in capital trials in this district, *e.g. United States v. Barnes*, the government asks to instruct that a juror who finds a mitigating factor proven need not "weigh" it. *See* p.37, 38. That would be incorrect and prejudicial. Although jurors are certainly free to decide how *much* weight to give a mitigating factor, and to give it only slight weight, as the Supreme Court explained in *Eddings v. Oklahoma*, 455 U.S. U.S. 104, 113-14 (1982): "[T]he sentencer may not give it no weight," since that is effectively the same as ignoring it.

The government also objects, again reversing its previous agreement, to an instruction cautioning against second-guessing the Court's legal decision to instruct

6

on the existence of specific mitigation. The government's suggestion that it is up to the jurors, not the Court, to decide if a mitigating factor is or is not mitigating is also contradicted by the government's recently filed motion, DE #755 urging the Court to make that very determination for three of Mr. Saipov's proposed mitigating factors. To let jurors usurp that decision and thereby ignore mitigating factors that have been indisputably proven would also violate Mr. Saipov's rights under the Eighth Amendment and the FDPA, 18 U.S.C. §§ 3592, 3593.

Accordingly, the Court should not change "weight" to "consider" as the government requests on pages 37 and 38 of its proposed charge, and the Court should overrule the government's objection to the instruction on pages 38 through 40 informing jurors they should not second-guess the Court's decision to instruct on a particular mitigating factor.

### Instructing That Certain Mitigating Factors are Established or Undisputed (DE #757-1 at 41, 44)

The government's proposed modification to this section would also improperly suggest that jurors can ignore a proven and found mitigating factor by giving it no weight and thus effectively ignoring it. The government's objections and accompanying requested modification should be rejected. Alternatively, the Court should simply eliminate this section (*i.e.*, the paragraph beginning with "I have some specific comments regarding this list" and ending with the government's proposed language "to give them").

### Duty to Deliberate (DE #757-1 at 49)

Again, changing course from the previously agreed upon instruction, the government requests a "duty to deliberate" charge it adapts from the Court's liability-phase instructions. But again, the penalty phase — in which jurors make individual not group findings of mitigating factors, and in which non-unanimity is permitted and results in a life sentence, not a do-over — is entirely different from a penalty phase. Indeed, the government's proposed instruction was not given in *United States v. Barnes*, the most recent capital trial in this district. Mr. Saipov objects.

### Miscellaneous

On page 7 of DE #757-1: The government now requests to change "individual jurors" to "you must" and "Members of a death penalty jury" to "you" in the instruction on jurors' consideration of aggravating and mitigating factors. Mr. Saipov objects. Because each juror is instructed to make individual findings of mitigating factors regardless of which such factors other jurors find, and because each juror will therefore be weighing a different set of mitigating factors against the

7

aggravating ones, it is important to convey to them the individual nature of the weighing process. The government's changes would blur that in a misleading fashion.

On page 44 of DE #757-1: Despite a lengthy charge that takes jurors into the complex mechanics of the "machinery" of a death decision, in which concepts important to the government are repeated over and over, the government nonetheless objects to language (that it previously consented to) reminding jurors that they are deciding "the appropriateness of sentencing another human being to death." The government's stated reason is that this phrase is used one other time in the instructions.

It is not too much to ask that the jury be reminded twice of the gravity of the task before them. Despite his crime, Mr. Saipov is a human being, and the government is asking the jury to authorize the state to kill him. Accordingly, the defense maintains its request.

Respectfully submitted,

_____/s/_____
David Patton
Andrew J. Dalack
Sylvie J. Levine
Annalisa Mirón
David Stern

Counsel for Sayfullo Saipov

cc:   Government Counsel