# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

March 8, 2023

**By ECF**
Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:   *United States v. Sayfullo Saipov*
>        **S1 17 Cr. 722 (VSB)**

Dear Judge Broderick:

We write requesting the following curative instructions in light of certain arguments made by the government during its rebuttal summation. The government responds to each request as set forth below.

First, the government urged jurors to impose a death sentence because a sentence of life imprisonment without the possibility of release would be "the minimum" punishment under the law even if there were no aggravating factors. This both misstates the law and improperly diminishes the severity of lifetime imprisonment without the possibility of release. Accordingly, the Court should instruct the jury as follows: "During its rebuttal summation, the government cast a life sentence without the possibility of release as 'the minimum' punishment under the law even if there were no aggravating factors. But a finding of aggravating factors does not make a death sentence required or presumed or make consideration of mitigating factors any less important or required. Moreover, there is no evidence in the record as to what the punishment would be under the law if there were no aggravating factors and you should disregard the government's characterization of a life sentence as 'the minimum' punishment under the law."

**Government response:** The Government's comments were appropriate and correctly stated the law. Indeed, both parties referenced the concept of a baseline sentence. (*See* Tr. 3467 (Defense counsel: "And by your verdict last month, you guaranteed he will spend the rest of his life in prison.")). Nevertheless, out of an abundance of caution, in response to the defense request for a curative instruction, the Government would not object to the following: "If you find no aggravating factors have been proven, the defendant will be sentenced to life imprisonment without the possibility of release. But a finding of aggravating factors does not

make a death sentence required or presumed or make consideration of mitigating factors any less important or required."

Second, the government argued, as to the mitigating factors involving Mr. Saipov's family's love for him: "Think about whether those . . . are actually mitigating." Likewise, of the mitigating factor that Mr. Saipov "was convinced by ISIS propaganda to seek martyrdom," the government said: "That's not mitigating." Because these arguments improperly urged the jury to effectively ignore certain of Mr. Saipov's mitigating factors, the Court should instruct the jury as follows: "As you will hear shortly, the law requires you to consider any mitigating factor you individually find has been proven by a preponderance of the evidence. That means that the law prohibits you from ignoring any mitigating factor that you individually find."

**Government response:** The Government believes this instruction is already covered in the Court's draft, but does not object to it being included again.

Third, the government told jurors that they are not to "come to a verdict based on sympathy for the defendant's family." This was improper and directly at odds with the law, which empowers jurors in a capital case to have sympathy for, or bestow mercy upon, a defendant based on anything related to the offense and/or his background, record, or character. Accordingly, the Court should admonish jurors before the charge as follows: "During its rebuttal summation, the government discouraged you from basing a verdict on sympathy for the defendant's family. But as you will hear me instruct, you are entitled to consider mercy or sympathy for Mr. Saipov as long as it is connected to or arises in some way from the evidence."

**Government response:** The Government consents to this instruction but believes "But" in the second sentence should be deleted. The Government's argument was in line with the instruction that follows — the jury is not permitted to base its sentencing decision on mere sympathy for the defendant's family.

Fourth, the government urged jurors to conclude that it had proved the future danger aggravator because Mr. Saipov supposedly "remains a danger" and "remains a threat" in prison. But as the Court is aware, the government's burden is not to merely establish (in nebulous terms) that Mr. Saipov is "dangerous" or "threatening"; rather, the government must prove beyond a reasonable doubt that Mr. Saipov is likely to commit criminal acts of violence in prison beyond a reasonable doubt. Accordingly, the Court should instruct the jury as follows: "The government's fourth non-statutory aggravating factor alleges that Mr. Saipov poses a future danger from prison. The government must prove more than just that Mr. Saipov remains a danger or a threat. Rather, this aggravating factor can only be found and considered in your sentencing decision if all 12 of you are unanimously

persuaded beyond a reasonable doubt that Mr. Saipov is likely to commit criminal acts of violence in prison if not sentenced to death."

**Government response:**  The Government objects to this instruction.  The jury will already be instructed that:  "You must agree unanimously, and separately as to each count, that the Government has proven beyond a reasonable doubt the existence of any of the alleged non-statutory aggravating factors before you may consider that non-statutory aggravating factor in your deliberations."  The jury will further be instructed that the fourth alleged non-statutory aggravator is:  "Mr. Saipov is likely to commit criminal acts of violence in the future such that he poses a continuing and serious threat to the lives and safety of others. . . .  In deciding whether this alleged aggravating factor has been proved, you must understand and accept that if he is not sentenced to death, Mr. Saipov will be in prison for the rest of his life with no possibility of release.  You must consider only the danger that Mr. Saipov may present in prison."  The Government's arguments were in line with these instructions and no further instruction is needed.

Fifth, the government urged jurors to find "future dangerousness" because there supposedly is no "guarantee" Mr. Saipov will not commit criminal acts of violence in H Unit at ADX Florence.  That misstates the government's burden.  The Court should instruct the jury as follows: "The government must prove beyond a reasonable doubt that Mr. Saipov is likely to commit future acts of violence in prison.  The issue is not whether the Bureau of Prisons can guarantee Mr. Saipov will not commit future acts of violence, rather it is whether the government has established that Mr. Saipov is likely to commit future acts of violence in prison.  There is no burden on Mr. Saipov whatsoever in this regard.

**Government response:**  Defense counsel argued extensively in summation that the defendant will be secure within H-Unit.  (*See, e.g.*, Tr. 3471 ("He's headed to a particularly secure unit within ADX."); Tr. 3477–78 (H-Unit is "highly secured, . . . there has not been a single murder, a single escape, a single serious assault, a single contraband cell phone, a single controlled substance.").  It is proper rebuttal to point out the limits of this security, including that H-Unit is no "guarantee" that the defendant will not engage in future violence.  The Government's argument for future dangerousness was principally based on affirmative evidence, including the defendant's own statements, writings, and acts, but the Government was also entitled to highlight the limitations in what the defense vigorously argued would secure the defendant.  This is valid rebuttal.  The Third Circuit recently approved a similar line of argument:  "Rather than implying the Attorney General or BOP officials might erroneously or lawlessly remove Savage's SAMs, prosecutors merely emphasized what both side's experts had testified to — no one can really say how long Savage will remain on SAMs, but everyone knows SAMs are not intended as a permanent solution.  Additionally, as both experts conceded, although the H Unit/SAMs combination may effectively control Savage's behavior, no precaution

3

can eliminate all security risks." *United States v. Savage*, 970 F.3d 217, 297 (3d Cir. 2020).

Respectfully Submitted,

_____/s/_____

David Patton
Andrew Dalack
Sylvie Levine
David Stern

Cc: Government Counsel