**Federal Defenders
OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

March 21, 2023

**APPLICATION DENIED
SO ORDERED**
VERNON S. BRODERICK
U.S.D.J.  05/16/2023

By June 16, 2023, Defense counsel shall provide the number of volunteer attorneys, non-legal volunteers, paralegals, and attorneys who worked on this matter from 2018 to the present, broken down by year. The numbers may be provided ex parte and under seal.

<u>Via ECF</u>

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Centre Street
New York, NY 10007

**Re:** *United States v. Sayfullo Saipov*
**17 Cr. 722 (VSB)**

Dear Judge Broderick:

    On February 24, 2023, the Court ordered the defense to provide to the Court, "the number of people in the following categories for each year beginning with 2018 through the present who have worked on the case: lawyers; volunteer attorneys; other, non-legal volunteers; paralegals." ("Order") (Dkt. No. 750). In response to a defense request, the Court stayed the Order until seven days after the sentencing verdict. For the following reasons, I respectfully request that the Court vacate the Order.

    As an initial matter, defense staffing information is not relevant to any outstanding issue. The Court initially requested the information in the context of defense arguments concerning the government's failure to provide a sufficient informative outline with respect to victim impact testimony.[1] The government argued that the defense had enough information from the 3500 material that had been produced to be able to anticipate and litigate in advance the issues surrounding victim impact. The defense argued that the 3500 was no substitute for an informative outline but never claimed a lack of ability to review it, and indeed as a factual matter did review that material. The Court then ruled against the defense for reasons unrelated to staffing or resources.

---

[1] The Court directed the information be produced during the hearing regarding the defense request for an informative outline regarding the victim impact testimony. Tr. at 1812 ("So beginning when Ms. Houle said began the production of the 3500 material related to the impact was sometime in 2018. So beginning with 2018, I would like to get a sense of how many lawyers were working on the case in each year, 2018, 2019, 2020, up through the trial, as well as volunteer attorneys who may have worked on the matter.").

In addition, given the jury's sentencing phase verdict, the adequacy of the government's informative outline is now moot.  The defense will not file any post-trial motions or appeal any issue relating to the informative outline – or any other aspect of the sentencing phase.  Nor will there be any post-trial litigation whatsoever surrounding any aspect of the sufficiency of defense resources or staffing. For that reason alone, I respectfully request that the Court vacate the Order.

There are, however, other compelling reasons to vacate the Order.  Because there is no controversy in dispute that would justify its disclosure, counsel is ethically required to protect information related to defense staffing and resources.  Such information is both attorney work product and confidential under the New York Rules of Professional Responsibility.  Moreover, revealing staffing information would violate Mr. Saipov's Sixth Amendment right to competent, loyal, and unconflicted counsel.

The Second Circuit has held that application of the attorney work product doctrine in criminal cases is "even more vital" than in civil cases because of its "role in assuring the proper functioning of the criminal justice system." *In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2d Cir. 2000) (quoting *United States v. Nobles,* 422 U.S. 225, 238 (1975)).  At its core, the work product doctrine provides "the lawyer with an essential zone of privacy, where the lawyer can work 'free from unnecessary intrusion by opposing parties and their counsel.'" *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).  For that reason, even in the context of grand jury subpoenas, in which compliance with demands for evidence is strongest, the government must show a "substantial need" for so-called "fact" work product.  *Id.* citing *In re Sealed Case,* 676 F.2d 793, 806 (D.C. Cir. 1982) (citing *Branzburg v. Hayes,* 408 U.S. 665, 688 & n. 26(1972) ("[n]owhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena.")).  And it must clear a still higher bar – "a highly persuasive showing of [need]" – for "opinion" work product which may reveal "mental impressions, conclusions, opinions, or legal theories of an attorney." *Id.* at 809 n.49.

Here, whether viewed as fact or opinion work product, defense staffing decisions are protected from disclosure.  How the defense chooses to staff a case, including decisions about the mix of attorneys and various types of non-attorneys, is non-public information that relates entirely to the "essential zone of privacy" that must exist in order for attorneys to function in the best interests of a client "free from unnecessary intrusion."  Staffing decisions, even without information about the specific identity of the staff, reveal impressions and theories of counsel because the allocation of resources speak directly to areas of counsel's perceived need on the

case.[2] If such information were discoverable, it would require counsel to consider the impact of disclosure during the course of the representation, thereby impacting the representation and intruding upon the "essential zone of privacy" the work product doctrine is meant to protect.

Those work product protections, depending on whether the information is viewed as revealing facts or opinions (and here both are implicated), could arguably be overcome in cases of compelling need, such as grand jury investigations in which there has been a showing that alternatives are unavailable and the information sought is highly material. But in the instant case, where the information is not necessary to resolve any issue in dispute, the protection should remain.

Just as significant as the work product doctrine, there is the ethical requirement prohibiting counsel from revealing confidential information, regardless of whether it qualifies for an evidentiary privilege. Confidential information sweeps more broadly than the evidentiary doctrines of work product or attorney-client privilege. It encompasses "all information relating to the representation of a client, whatever its source" if, among other things, the information would be "detrimental to the client if disclosed." *See* N.Y. Rule of Prof. Resp. 1.6(a). "Rule 1.6 is arguably the most important single rule in the Rules of Professional Conduct. It embodies the basic duty of confidentiality, which is fundamental to an understanding of loyalty, conflicts of interest, and the adversary system." Simon's N.Y. Rules of Prof. Conduct Annotated, Vol. 1, § 1.6:1 (2022).

Staffing information is core confidential information "relating to" Mr. Saipov's representation and absent a specified exception may not be revealed. One exception to the prohibition on revealing confidential information is Rule 1.6(b)(6) which permits (but does not require) disclosure to "comply with other law or court order." Thus, a lawful court order may overcome the ethical prohibition on disclosure. But counsel is ethically obligated to challenge the lawfulness of any order compelling the disclosure of confidential information where a good faith basis for the challenge exists. Here, counsel is unaware of any jurisdictional basis to compel disclosure of confidential staffing information. Absent a controversy in dispute, there is no jurisdictional basis for the Court to compel disclosure of defense staffing information because there is no statutory or other basis for judicial supervision of staffing decisions in individual cases. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (federal district courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by [the] Constitution

---

[2] In addition, to the extent staffing information were to be used in some way against Mr. Saipov, counsel would be required to further explain the amount of time spent by particular staff, and the tasks they engaged in. Absent such context, the raw total number of staff who have worked in any way on the case would either be misleading or meaningless for purposes of assessing the sufficiency of defense resources.

3

and [by] statute.").

Requiring disclosure would have consequences not just for this case and for individual attorney decision-making, but for organizations like public defender offices more generally in which public attacks on resource expenditures have been historically used to damage the effectiveness of counsel. *See, e.g.,* Jeffrey Toobin, *Death in Georgia: The High Price of Trying to Save and Infamous Killer's Life*, The New Yorker (Jan. 27, 2008) at https://www.newyorker.com/magazine/2008/02/04/death-in-georgia; Errin Haynes, *Nichols Case Looms Over Indigent Criminal Defense Hearing*, A.P. (Nov. 1 2007) at https://www.law.com/dailyreportonline/almID/1202552257031/.

Lastly, the decision whether to disclose confidential staffing information implicates the Sixth Amendment. Mr. Saipov has a Sixth Amendment right to competent, loyal, and conflict-free counsel as measured by "prevailing norms of practice as reflected in American Bar Association standards and the like…" *Strickland v. Washington*, 466 U.S. 668, 688 (1984). This includes an attorney free from "interfere[ence]" from "the ability of counsel to make independent decisions about how to conduct the defense." *Id.* at 686.

Counsel must be free to make judgments about adequate staffing without the competing concern about how disclosure of staffing information might negatively impact the client or counsel themselves. Were defense counsel required to provide staffing information to the Court, counsel would necessarily need to weigh the requirement of adequate staffing against the possible negative personal or organizational effects of disclosure. Moreover, in this instance, if the revelation of staffing information were used to Mr. Saipov's detriment, disclosure would directly pit his interest against his counsel's interest. On the one hand, counsel's disclosure would harm his interests; on the other, failure of counsel to disclose the information could subject counsel to contempt proceedings.

Accordingly, because staffing information is not necessary to resolve any issue in the case now or in the future, and because ordering disclosure would raise numerous challenging ethical and constitutional issues, I respectfully request that the Court vacate the February 24 Order.

Respectfully Submitted,

/s
David Patton
Counsel for Sayfullo Saipov

cc: Govt. counsel via ECF