UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                    :
UNITED STATES OF AMERICA            :
                                                                    :
            -against-                        :                     S1 17-CR-722 (VSB)
                                                                    :
SAYFULLO HABIBULLAEVIC SAIPOV,   :                     **OPINION & ORDER**
                                                                    :
                              Defendant.                 :
                                                                    :
------------------------------------------------------------X

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Defendant Sayfullo Habibullaevic Saipov ("Defendant" or "Saipov") was charged in a twenty-eight count superseding indictment, filed on June 19, 2018 (the "Indictment" (Doc. 61.)) Saipov was convicted on all twenty-eight counts in the indictment when the jury returned its verdict on January 26, 2023. On March 13, 2023, the jury rendered its penalty phase decision by indicating that they were unable to reach a unanimous decision on any of the capital counts.

       Before me are Saipov's letters regarding the Government's alleged *Brady* violations, (Docs. 503, 510, 525, 594), the Defense's supplemental ex-parte letter filed under seal on August 25, 2022, the Government's opposition, (Doc. 521 at 23–44), and the Government's submissions in response to my September 14, 2022 Order. (Docs. 571, 586.) On October 7, 2022, during the final pre-trial conference I issued an oral ruling on this motion but indicated that I would be filing a more detailed, written decision. (Tr. 27:13-19.)[1] This Opinion & Order provides additional detail for my oral decision. Because the information disclosed by the Government consists of information known to the Defendant, I find that the Government was under no obligation to produce the information at issue under *Brady*, and therefore, Saipov's request for an

---

[1] "Tr." refers to the transcript from the final pre-trial conference held on October 7, 2022.

evidentiary hearing into alleged *Brady* violations is DENIED.  In addition, because the information in question was produced to Saipov in advance of the start of individual *voir dire*, I find that Saipov was provided adequate time to effectively use the disclosed information, and therefore, Saipov's request for a continuance of trial and any other relief requested as a result of the alleged *Brady* violations is DENIED.

I. **Background and Procedural History**

On August 25, 2022, Saipov filed a letter motion stating that "the Government has produced *Brady* material . . . that has been in the FBI's possession for years" and "implicates the core of the defense's mitigation investigation[.]" (Doc. 503 at 1.)  That same day, Saipov filed an ex-parte supplemental letter under seal elaborating on the mitigating nature of the evidence disclosed.  Saipov ultimately requested an evidentiary hearing "(1) to determine the scope of the violation and appropriate remedies, and (2) to satisfy the Court and the defense that there are no additional discoverable materials that are in the possession of law enforcement agents that have not been (or are in the process of being) disclosed." (Doc. 503 at 7.)  I ordered the parties to meet-and-confer and file a proposed briefing schedule for the Government's response and any reply from the Defense.  (Doc. 506).  The Government agreed to include its response in its supplemental motion *in limine* brief, and the Defense agreed to file any reply by September 6, 2022.  (Doc. 509.)  On August 29, 2022, Saipov filed an additional letter motion indicating that he would be seeking a continuance of the October 11, 2022 trial date based on the alleged *Brady* violations by the Government.[2]  (Doc. 510.)

---

[2] Individual *voir dire* began on October 11, 2022, and concluded on January 5, 2023.

On September 2, 2022[3], the Government filed its reply memorandum in further support of its supplemental motions *in limine*, including its opposition to Saipov's *Brady* violations motion and request for a continuance of trial. (Doc. 521 at 23–45.) The Government argued that (1) the materials were not exculpatory, (2) the Defense was "largely . . . on notice of the nature of the recently produced reports," (3) Saipov was already in possession of the information because he was aware of who radicalized him, and (4) the bulk of the materials were not in the Prosecution Team's possession until August 2022. (Doc. 521 at 23.)

Saipov filed his reply to the Government's response on September 6, 2022.[4] (Doc. 525.) In his reply, Saipov emphasized that the disclosures in question were relevant to the case as they concerned mitigating factors related to his sentencing. (*Id.* at 2.) In addition, Saipov argued that the reports in the possession of the Federal Bureau of Investigation ("FBI"), "the investigating agency in this case" were "subject to mandatory discovery under *Brady*" and contrary to the Government's assertion, separate FBI field offices did not constitute separate agencies for the purpose of the Government meeting its *Brady* obligations. (*Id.* at 11–13.)

After reviewing the parties' briefing, I ordered the Government to provide me with copies of the 71 reports in question and affidavits of individuals with personal knowledge related, but not limited, to the FBI agents, squads, and offices involved in the investigation, every prosecutor involved in the case, and the "FBI Saipov Casefile" and "FBI agency-wide electronic casefile." (Doc. 563.)

On September 20, 2022, the Government delivered electronic and hardcopy binders of the 71 reports. (*See* Doc. 571.) The 71 reports requested, along with 17 additional reports

---

[3] The reply memorandum is dated September 2, 2022, but the header supplied by ECF ("ECF Header") states September 3, 2022.

[4] Saipov's reply letter is dated September 6, 2022, but the ECF Header states September 7, 2022.

provided due to the Defense's reference to them in prior briefing are broken down as follows: (i) 28 reports previously in the possession of the Prosecution Team; (ii) 43 reports pertaining to Saipov that were not previously in the possession of the Prosecution Team; and (iii) 17 reports pertaining to another individual (none of which were previously in the possession of the Prosecution Team). With regard to the requested affidavits, the Government requested a brief extension, (Doc. 575), and submitted the affidavits on October 3, 2022, (Doc. 586). In its supporting letter, the Government claimed that "the Declarations demonstrate that the scope of the Prosecution Team in this case . . . does not include the entirety of the FBI as the defense claims, and thus the majority of the recently produced reports were not in the possession of the Prosecution Team until August 2022, after which they were promptly produced to the defense." (Doc. 586 at 1.) The Government also argued that Saipov's motion should be denied "based on the contents of the reports and the fact that they have been produced well in advance of any penalty phase." (*Id.*)

On October 5, 2022, Saipov submitted a reply to the Government's response and disclosures. (Doc. 594.) In response to the Government's claim that none of the reports were exculpatory, Saipov argued that "[e]vidence of mental health issues or third party culpability is unambiguously 'favorable to the defense' for purposes of sentencing in a federal death penalty case." (*Id.* at 1 (citing 18 U.S.C. § 3592(a)(4) and (a)(6)).)

On October 7, 2022, the American Civil Liberties Union, Advancing Real Change, Inc., and the New York Civil Liberties Union sought leave to file an amicus brief in support of Saipov's request for a 90-day adjournment of his capital trial and a hearing to determine other remedies. (Doc. 596.)[5]

---

[5] For the sake of clarity, though not endorsed on the docket, the motion for leave to file an amicus brief was granted

On October 7, 2022, during the final pre-trial conference, after reviewing the parties' briefing, the Government's responsive declarations, the 71 reports in question, and the proposed amicus brief, I issued an oral decision. After finding that the majority of the material provided by the Government did not qualify as *Brady* information under the law because it was known to the Defendant or his counsel and that the Defense had adequate time to make use of that material at trial, I denied Saipov's request for an adjournment of the trial date and a hearing regarding the alleged *Brady* violations.

## II. Legal Standard

"There are three components of a true *Brady* violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *United States v. Hunter*, 32 F.4th 22, 30–31 (2d Cir. 2022) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). "[I]n a death penalty prosecution, the *Brady* obligation requires the Government to disclose material information that exculpates the defendant of the crime and that would be material to the defendant's presentation of factors mitigating against a sentence of death." *United States v. Frank*, 11 F. Supp. 2d 322, 326 (S.D.N.Y. 1998). Mitigating factors include information related to whether the defendant was equally or less culpable than other co-conspirators.[6] *United States v. Bin Laden*, 156 F. Supp. 2d 359, 369 (S.D.N.Y. 2001) ("The circumstance that others who are equally culpable will not be subject to the death penalty is a comparative factor which reflects a determination by Congress that it is appropriate for jurors to consider questions of proportionality and equity when they are

---

and the Amicus Brief was considered in connection with my oral decision and this Opinion & Order.

[6] The consideration of equally culpable individuals extends to uncharged co-conspirators and accomplices and is not limited to indicted defendants. *United States v. Beckford*, 962 F. Supp. 804, 812 (E.D. Va. 1997) (collecting cases).

evaluating whether a death sentence is appropriate."); *United States v. Karake*, 281 F. Supp. 2d 302, 308 (D.D.C. 2003) (requiring the Government to disclose "information that indicates that others were equally or more culpable than the defendant with respect to the planning, financing, directing, organizing or executing of the attacks which are the subject of this indictment.")

Evidence is considered material if "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Halloran*, 821 F.3d 321, 341 (2d Cir. 2016) (quoting *United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011)); *see also United States v. Bagley,* 473 U.S. 667, 682 (1985) (quoting *United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005)) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). "'[A]s long as a defendant possesses *Brady* evidence in time for its effective use,' there can be no *Brady* violation." *Halloran*, 821 F.3d at 341 (quoting *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001)) (finding no *Brady* violation where the Government produced evidence eight days after the beginning of trial.)

Even if evidence is exculpatory and material as defined above, the Government is not required to disclose it "if the defendant knows or should have known of 'the essential facts permitting him to take advantage of any exculpatory evidence.'" *Frank*, 11 F. Supp. 2d at 327 (quoting *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993).) "[T]he Government is under no obligation to disclose its investigative files simply because they contain information which could assist the defendant. . . . [but] is required, however, to disclose sufficient information to the defendant to insure that the defendant will not be denied access to exculpatory evidence known only to the Government." *Id.* at 327.

The Government's obligation under *Brady* "extends only to material evidence that is known to the prosecutor." *United States v. Meregildo*, 920 F. Supp. 2d 434, 440 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.1998)). "An individual prosecutor is presumed, however, to have knowledge of all information gathered in connection with his office's investigation of the case." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *see also United States v. Giffen*, 379 F. Supp. 2d 337, 343 (S.D.N.Y. 2004) (allowing defendant access to documents the "Government acknowledge[d] that it reviewed . . . at the CIA and the Department of State during the course of its investigation.") "In the Second Circuit, a prosecutor's constructive knowledge only extends to those individuals who are 'an arm of the prosecutor' or part of the 'prosecution team'" but "[t]here is no clear test to determine when an individual is a member of the prosecution team." *Meregildo*, 920 F. Supp. 2d at 440–41. It is not an individual's status or job title that dictates the imputation of knowledge to the prosecutor, but rather "what the person *did*." *United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022) (quoting *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) (emphasis in original)). The prosecution team may be comprised of many members with varying roles, but "[a]t its core, members of the team perform investigative duties and make strategic decisions about the prosecution of the case." *Meregildo*, 920 F. Supp. 2d at 441.

> The prosecution team may also include individuals who are not strategic decision-makers. . . . Those may include testifying police officers and federal agents who submit to the direction of the prosecutor and aid in the Government's investigation. But the prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation. And, even when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper.

7

*Id.* In general, the prosecutor, as principal, is responsible for the knowledge of an agent when the agent has a "duty to give the principal information" or when the agent acts on his knowledge regarding a matter that is "within his power to bind the principal." Restatement (Second) of Agency § 272; *see also Meregildo*, 920 F. Supp. 2d at 444 ("An agent's duty to disclose is . . . linked to his power to bind the principal.")

### III. Discussion

#### A. The Prosecution Team

I find that the lion's share of materials in question were not in the possession of the Prosecution Team. The Government represents that "the Prosecution Team consists of the undersigned and predecessor prosecutors from the U.S. Attorney's Office for the Southern District of New York and particular FBI counterterrorism agents from the New York Field Office of the FBI who are charged with the investigation and prosecution of Saipov." (Doc. 521 at 23 n.4.) In complying with its obligations under *Brady*, the Prosecution Team reviewed the FBI's Saipov investigation electronic casefile, ("FBI Saipov Casefile"). (*Id.* at 27.) This "review involved AUSAs from the Prosecution Team reviewing every report in the FBI Saipov Casefile, comparing (in coordination with paralegal assistance) those reports against the Prosecution Team's prior productions to the defense, and re-reviewing any reports that were not previously produced for potentially discoverable information." (*Id.* at n.6.) In addition to conducting a supplemental review of the FBI Saipov Casefile, the Prosecution Team requested a search of the FBI's agency-wide electronic casefile system for any reports mentioning the name "Saipov." (*Id.*) "Following these two reviews . . . the Prosecution Team identified a total of 71 reports for production to the defense. Twenty-eight of these reports had previously been in the possession of the Prosecution Team and the remaining 43 had not. These reports—which, with

any attachments, generally numbered only a few pages each—were produced between August 16, 2022 and September 2, 2022." (*Id.* at 28.) With regard to the entities within the FBI that generated some of the reports in question, I credit the Government's assertion that these reports "were generated without *any* involvement or direction from any of the prosecutors in this case." (*Id.* at 37) (emphasis in original). As such, these entities and the corresponding reports do not reflect any "strategic decision about the prosecution of the case." *Meregildo*, 920 F. Supp. 2d at 441. Accordingly, I find that under the circumstances presented here, these FBI field offices are not part of the Prosecution Team and, as such, the Government's *Brady* obligations do not attach to the 43 reports not previously in the possession of the Prosecution Team. I now turn to the material contained in the 28 reports previously in the possession of the Prosecution Team.

### B. *Brady Obligations*

Even for those documents that are categorized as within the possession of the Prosecution Team, I find that the evidence does not qualify as *Brady* material. First, any evidence known to Saipov is not *Brady* material. "Evidence, even if exculpatory and material, is not required to be disclosed [ ] if the defendant knows or should have known of 'the essential facts permitting him to take advantage of any exculpatory evidence.'" *United States v. Frank*, 11 F. Supp. 2d 322, 327 (S.D.N.Y. 1998) (quoting *Zackson*, 6 F.3d at 918.) Saipov attempts to categorize his knowledge of the material as "irrelevant" and limit the Government's argument by stating that he "had no information whatsoever about the existence of the witness statements and reports now being disclosed." (Doc. 594 at 7.) In furtherance of his argument, Saipov points to the facts of *Brady*, arguing that the defendant's knowledge that he did not commit the crime was irrelevant to the Government's *Brady* violation in failing to disclose that another individual confessed to the murder. (*Id.*) However, this analogy ignores the progeny of cases post-*Brady*, which explicitly

9

exclude information stemming from essential facts which the defendant knew or should have known. *See, e.g., United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir. 1982) ("The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government."); *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (finding that "Zackson had sufficient knowledge. . . to allow him to take advantage of any potentially exculpatory evidence . . . ."); *United States v. Frank*, 11 F. Supp. 2d 322, 327–28 (S.D.N.Y. 1998) ("Frank does not contend that he was unaware of any of the other four pieces of information or even of the identity of the witnesses with that information. There was no requirement, therefore, that the Government disclose this information."). The evidence in question here includes information related to individuals who allegedly radicalized Saipov. Saipov may not have known about the existence of the reports or witness statements, but he has first-hand knowledge as to the individuals who may or may not have radicalized him. Here, the question is whether "the defendant knows or should have known of 'the essential facts permitting him to take advantage of any exculpatory evidence[,]'" in this case, the identities of the individuals with whom he spoke or otherwise communicated. *Frank*, 11 F. Supp. 2d at 327 (quoting *Zackson*, 6 F.3d at 918.) His knowledge of whether or not the Government possessed reports and/or witness statements of these individuals is irrelevant to Saipov's knowledge.[7]

Second, with regard to the category of evidence purportedly related to potential mental illness or psychological information, the information related to Saipov's mental health is only

---

[7] Whether Saipov understood that these individuals were attempting to radicalize him does not diminish his knowledge of his interactions with the individuals in question. There is no question he knew the substance of his conversations with these individuals and what, if any, information they provided to him.

10

marginally valuable on its face. I agree with Saipov's assertion that "[e]vidence of mental health issues . . . is unambiguously favorable to the defense for purposes of sentencing in a federal death penalty case." (Doc. 594 at 1.) However, while some of the information in question is relevant to the mitigation themes that the Defense has pursued in preparation for trial, the delayed disclosure of this information did not cause the Defense to abandon these themes or the investigation of these themes.[8] Therefore, the evidence is not material since there is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Halloran*, 821 F.3d at 341 (quoting *United States v. Persico*, 645 F.3d 85, 111 (2d Cir.2011)).

Regardless of whether the information was in the possession of members of the Prosecution Team, or the information was known to Saipov, Saipov was not prejudiced by the delayed disclosure; therefore, there can be no *Brady* violation. *See Hunter*, 32 F.4th at 30. The Defense had ample time to run down any leads that it deemed necessary in order to make effective use of the information at trial.[9] The Defense was provided with the material at issue by

---

[8] I also note that the Defense did not present any evidence concerning Saipov's mental health or the mental health history of his family, despite having access to Saipov's family members for years and calling multiple members of his family during trial. In other words, the Defense had access to individuals likely to have first-hand knowledge of Saipov's mental health history and the mental health history of his family members, and apparently made the strategic choice not to pursue that defense during trial.

[9] The Defense's argument, at least in part, is premised on the notion that it did not have the time or personnel to review the alleged *Brady* material. I find this argument entirely unpersuasive. The docket lists seven attorneys as part of the Defense team—two learned counsel and five attorneys from the Federal Defenders of New York—although there are no doubt other legal professionals involved in the defense and supporting these attorneys. I have requested the Defense to produce ex-parte and under seal the number of attorneys, volunteers, and paralegals who worked on this case since 2018, broken down by year. To the extent that this information indicates that the Defense team is larger than indicated by the docket, it militates against the claim that the Defense did not have the personnel to make use of the alleged *Brady* material. In any event, I find that the Defense had sufficient attorneys to investigate and make use of the information it claims to be *Brady* information. Moreover, to facilitate Saipov's effective use of the information at trial, "the Prosecution Team [made] efforts to confer with defense counsel and the FBI about what steps the Prosecution Team can take to facilitate the defense investigation into the recently produced materials, including by making individuals available to the defense." (Doc. 521 at 43.) I note that despite this offer to assist the Defense "by making individuals available" as of October 7, 2022 the Defense had not sought such assistance from the Government. (Tr. 28:11-21.)

11

September 2, 2022 at the latest, (Doc. 521 at 28), and at that time the penalty phase of the case was not expected to start until December 2023 at the earliest, (Doc. 521 at 44); therefore, I find that the Defense had ample time to make use of this material.

In any event, individual *voir dire* began on October 11, 2022, opening statements and testimony began on January 9, 2023, and the penalty phase began on February 13, 2023. By the time the penalty phase began, Saipov had nearly five months to prepare his defense and make effective use of the information in question. Therefore, I find that Saipov was not prejudiced in any way by the disclosures in question.

### IV.     Request for Continuance of Trial

As indicated in my oral opinion on October 7, 2022, I denied Saipov's request for a 90-day adjournment of the trial date. Saipov had more than sufficient time between the alleged *Brady* violations and the start of the trial phase on January 9, 2023 to make effective use of the information in question. *Halloran*, 821 F.3d at 341 ("[A]s long as a defendant possesses *Brady* evidence in time for its effective use, there can be no *Brady* violation.") Moreover, unrelated to my reasoning regarding the *Brady* allegations, I accepted the Defense's proposal, which the Government consented to, to extend the break between the trial phase and the penalty phase from one week to two weeks, beginning on the Monday following the issuance of a verdict. (Doc. 644.) Although Saipov argued that this time was necessary to "accommodate the preparation and testimonials of family members who will not be permitted to travel to the United States (the parties anticipate that the defense will propose video statements from these witnesses in lieu of Rule 15 depositions),"[10] (*id.*), it also provided additional time to make use of any of the

---

[10] I note that the Defense apparently did not need to make use of Rule 15 depositions since Saipov's family members were paroled into the United States so that they could testify during the penalty phase. To the extent Rule 15 depositions occurred with regard to other family members they were not used during trial.

information that was the subject of the alleged *Brady* violations, thereby further curing any potential prejudice to Saipov.

### V.     Conclusion

For the foregoing reasons, Saipov's request for an evidentiary hearing into alleged *Brady* violations, motion for continuance of trial, and any other relief requested as a result of the Government's alleged *Brady* violations is DENIED.

SO ORDERED.

Dated:  May 16, 2023
        New York, New York

_____
Vernon S. Broderick
United States District Judge