UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
          :
UNITED STATES OF AMERICA         :
          :
          :        S1 17-CR-722 (VSB)
       -against-         :
          :        **OPINION & ORDER**
          :
SAYFULLO HABIBULLAEVIC SAIPOV,   :
          :
       Defendant.        :
          :
------------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      Defendant Sayfullo Habibullaevic Saipov ("Defendant" or "Saipov") was charged in a twenty-eight count superseding indictment, filed on June 19, 2018. Saipov was convicted on all twenty-eight counts in the indictment when the jury returned its verdict on January 26, 2023. On March 13, 2023, the jury rendered its penalty phase decision by indicating that they were unable to reach a unanimous decision on any of the capital counts.

      On January 6, 2023, prior to the start of the trial phase, I issued an oral decision denying Defendant's Motion to Stay Proceedings and for Alternative Remedies to Enforce his Rights under the Sixth Amendment and Jury Selection and Service Act to a Petit Jury Drawn from a Fair Cross-Section of the Community. In my oral decision, I told the parties that I would provide a written opinion regarding my decision. For the reasons stated in my oral decision, and elaborated on in this Opinion & Order, Saipov's motion to stay proceedings and for alternative remedies to support his rights under the Sixth Amendment and Jury Selection Service Act is DENIED.

I.      **Procedural History**

On June 19, 2018, the Government returned a superseding indictment against Defendant, arising out of the October 31, 2017 truck attack. (Doc. 61.) The superseding indictment charges Saipov with eight counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); eight counts of assault with a dangerous weapon and attempted murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and 1959(a)(5); ten additional counts of attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); one count of providing material support and resources to a designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B; and one count of violence and destruction of a motor vehicle resulting in death, in violation of 18 U.S.C. §§ 33(a) and 34. (*Id.*)

On November 5, 2019, Saipov filed a letter motion seeking "access to the records and papers used in connection with the constitution of the Master and Qualified Jury Wheels in the United States District Court for the Southern District of New York, pursuant to the Fifth and Sixth Amendments to the United States constitution and the Jury Selection and Service Act ("JSSA"), 28 U.S.C. §§ 1867(a) and (f)." (Doc. 218.) I ordered the Government to respond to the letter motion by November 8, 2019. (Doc. 219.) The Government filed its response, (Doc. 221), and requested an order "authorizing the Jury Clerk to disclose any necessary information about the Requested Records" on a conference call between the Jury Clerk, Defense counsel, and the Government, (Doc. 222). I granted the request for authorization, (*id.*), and authorized the Jury Administrator to provide the requested information, (Doc. 225). On September 9, 2023, Saipov requested production of the petit jury records by September 16, 2022, (Doc. 555), which I granted on September 13, 2022, (Doc. 560).

On October 10, 2022, one day before the start of *voir dire*, Saipov filed his motion to stay proceedings and for alternative remedies to enforce his rights under the Sixth Amendment and the Jury Selection and Service Act. (Doc. 602.) The Government filed its opposition on November 7, 2022, (Doc. 621), and Saipov filed his reply on November 17, 2022, (Doc. 632). Due to Saipov's request to stay proceedings, I issued an oral decision on January 6, 2023, the Friday before the start of trial, denying his motion. (Tr. 23:2-22.)[1] I found that under the test outlined in *Duren v. Missouri*, 439 U.S. 357, 364 (1979), even though Black and Hispanic[2] individuals are classified as distinctive groups, Saipov failed to establish either significant underrepresentation or systemic exclusion. I similarly rejected Saipov's systemic underrepresentation challenge under the JSSA and found that the practice in the Southern District of New York of removing inactive voters does not violate the JSSA.

## II. Background

The JSSA dictates that a criminal defendant "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes," 28 U.S.C. § 1861, and requires each federal district court to "devise and place into operation a written plan for random selection of grand and petit jurors." 28 U.S.C. § 1863(a). The relevant plan in the Southern District of New York has been in operation since 2009 and sets the terms for the random selection of grand and petit jurors in this district. *See* Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York ("SDNY Jury Plan") (Feb. 13, 2009), https://www.nysd.uscourts.gov/sites/default/files/pdf/juryplan_feb_2009.pdf. Pursuant to the

---

[1] "Tr." refers to the pre-trial transcript from January 6, 2023, following the conclusion of jury selection.

[2] Throughout this Opinion, the terms Latino and Hispanic will be used interchangeably as reflected in the terminology of the relevant case law and pending motions.

3

SDNY Jury Plan, prospective jurors are drawn at random from voter registration lists to fill Master Jury Wheels for the district's two divisions, Manhattan and White Plains. *See id*., art. III.A–C. The two Master Jury Wheels are "emptied and refilled" every four years in accordance with presidential election cycles. *Id*., art. III.B. "Once or twice each year, or more frequently, if necessary, at times to be determined by the Chief Judge, the Clerk shall draw from the Master Wheels the names and addresses of persons to whom questionnaires will be sent for the purpose of examining their qualifications and availability for jury service." *Id*., art. III.D. The individuals who return their questionnaires and who meet the qualification requirements based on their responses comprise the respective Qualified Jury Wheels for Manhattan and White Plains. *Id*. The SDNY Jury Plan's qualification criteria are based on "neutral standards such as the ability to speak English, citizenship and age, mental capacity, and criminal record." *United States v. Schulte*, No. 17-CR-548, 2021 WL 1146094, at *2 n.1 (S.D.N.Y. Mar. 24, 2021). Petit and grand jury venires are composed of a random selection of those individuals in the Qualified Jury Wheel. SDNY Jury Plan, art. III.F.

      Defendant argues that "the summoned jury in his case does not represent a fair-cross section of the community" because "the Qualified Jury Wheel underrepresents Black or Latino persons, and such underrepresentation is statistically significant." (Doc. 602 at 1.) Defendant also asserts that the "jury plan consistently excludes registered voters who are flagged as 'inactive' from the Master Jury Wheel" and "the excluded registered voters are unevenly distributed across the Manhattan Division, with the greatest rates of exclusion in New York and Bronx Counties, the two counties with the highest concentrations of Black and Latino eligible jurors." (*Id.* at 1–2.) Ultimately, Defendant claims that "the jury selection process in the SDNY

violates Mr. Saipov's fair-cross section rights under the Sixth Amendment and the JSSA." (*Id.* at 2.)

### III. Discussion

#### A. *Applicable Law*

"The Sixth Amendment guarantees a criminal defendant a jury selected from a fair-cross section of the community." *United States v. Rioux*, 97 F.3d 648, 654 (2d Cir. 1996) (citing *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975)). Under the three-part test established in *Duren v. Missouri*, to demonstrate a *prima facie* violation of the fair cross-section requirement of the Sixth Amendment, a defendant must establish: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." 439 U.S. 357, 364 (1979). The three-pronged fair cross-section test established for Sixth Amendment challenges also governs fair cross-section challenges under the JSSA. *United States v. Allen*, No. 20-CR-366 (NSR), 2021 WL 431458, at *3 (S.D.N.Y. Feb. 8, 2021) (citing *Rioux*, 97 F.3d at 654).

A defendant may challenge a district's failure to comply with the mandates of the JSSA by "mov[ing] to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of [the JSSA] in selecting the grand or petit jury." 28 U.S.C. § 1867(a).

B. *Application*

1. **Defendant's Sixth Amendment Claim**

As mentioned in my oral opinion on January 6, 2023, my colleagues in this District have consistently rejected this type of Sixth Amendment and JSSA challenge to the SDNY Jury Plan.[3] I join them in concluding that the SDNY Jury Plan is constitutional and find that the drawing of Defendant's jury did not violate his Sixth Amendment right to a jury drawn from a fair cross-section of the community. Both parties agree that Black and Latino individuals are "distinctive groups" under the first prong of *Duren*, (*see* Doc. 602 at 6–7; Doc. 621 at 6), a view that is supported by caselaw in this District. *See Rioux*, 97 F.3d at 654 ("Blacks and Hispanics are unquestionably 'distinctive' groups for the purposes of fair-cross-section analysis.")

Because I find that Defendant has failed to demonstrate that any underrepresentation is a result of systematic exclusion in the jury selection process, there is no need to assess whether Defendant has made a *prima facie* showing of underrepresentation. *Neilly*, 2021 WL 3913559, at *3 (citing *Tagliaferro*, 2021 WL 1172502, at *3 n.1 (describing the *Duren* framework as a "conjunctive test")). "There is systematic exclusion when the underrepresentation is due to the system of jury selection itself, rather than external forces." *Rioux*, 97 F.3d at 658. "To demonstrate systematic exclusion, the Defendant must isolate specific flaws in the Jury Plan and then prove that those flaws are what caused the underrepresentation at issue." *Tagliaferro*, 2021 WL 1172502, at *3. "The law is clear that evidence of mathematical disparity, without more, is

---

[3] *See, e.g.*, *United States v. Lawrence*, 553 F. Supp. 3d 131 (S.D.N.Y. 2021); *United States v. Suquilanda*, No. 21 CR 263 (VM), 2021 WL 3500868, at *1 (S.D.N.Y. Aug. 9, 2021); *United States v. Scott*, 545 F. Supp. 3d 152 (S.D.N.Y. 2021); *United States v. Charles*, No. 20 CR 419(VM), 2021 WL 2457139 (S.D.N.Y. June 16, 2021); *United States v. Middlebrooks*, No. 21 CR. 89 (RMB), 2021 WL 2402162 (S.D.N.Y. June 10, 2021); *United States v. Balde*, No. 20-CR-281 (KPF), Dkt. 85 (May 17, 2021); *United States v. Segovia-Landa*, No. 20-CR-287 (JPO), 2021 WL 1966117 (S.D.N.Y. May 17, 2021); *United States v. Nieves*, No. 19-CR-354 (JSR), Dkt. 108 (Apr. 14, 2021*)*; *United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 1172502 (S.D.N.Y. Mar. 29, 2021); *Schulte*, 2021 WL 1146094; *United States v. Allen*, 2021 WL 431458; *United States v. Neilly*, No. 21-CR-94 (VEC), 2021 WL 3913559 (S.D.N.Y. Sept. 1, 2021).

insufficient to make out a prima facie case of improper jury selection." *Anderson v. Casscles*, 531 F.2d 682, 685 (2d Cir. 1976); *see also Suquilanda*, 2021 WL 3500868, at *4 (same). Additionally, persistent underrepresentation is insufficient to demonstrate systematic exclusion. *See Neilly,* 2021 WL 3913559, at *3; *see also Lawrence*, 553 F. Supp. 3d at 142 (making no specific finding, but challenging defendant's reliance on *Duren* and *Biaggi* for the proposition that systematic exclusion can be shown by underrepresentation over a significant period of time).

Defendant puts forward three main causes of alleged disparity:  (1) the decision to draw the Master Jury Wheel exclusively from voter registration rolls, (2) the decision to only refill the Master Wheel every four years[4], and (3) the exclusion of inactive voters from the Master Jury Wheel.  (Doc. 602 at 5.)  These exact causes have been raised, litigated, and labeled by other judges in this District as "external forces" and "thus cannot, as a matter of law, support Defendant's Sixth Amendment claim."  *Neilly*, 2021 WL 3913559, at *4; *see also Charles*, 2021 WL 2457139, at *5 ("[V]oters become inactive when they move, which constitutes an external force and undermines finding a violation"); *Middlebrooks*, 2021 WL 2402162, at *4 ("As to inactive voters, it is entirely logical for a jury selection process to exclude individuals who have since moved." (internal quotation marks omitted)); *Schanbarger v. Macy*, 77 F.3d 1424, 1424 (2d Cir. 1996) (per curiam) ("[A] jury venire drawn from voter registration lists violates neither the Sixth Amendment's fair cross-section requirement nor the Fifth Amendment's guarantee of Equal Protection.").  Accordingly, Defendant's request for relief under the Sixth Amendment is denied.

---

[4] Defendant raises a related fourth cause claiming "11.39% of the jury eligible population in the Manhattan division . . . has moved in the last year and refilling the Master Jury Wheels every four years makes it less likely for the clerk to receive qualification forms from potential jurors."  (Doc. 602 at 5.)  I consider this cause as part of cause two listed above.

7

### 2. Defendant's JSSA Claims

Because a fair cross-section challenge under the JSSA is evaluated using the same *Duren* test as Sixth Amendment claims, (*see Allen*, 2021 WL 431458, at *3), Defendant's JSSA challenge concerning the exclusion of Black and Latino individuals from the jury pool is denied for the reasons stated above.

Defendant also alleges that the "total exclusion of 'inactive' voters from the qualified wheel violates the JSSA." (Doc. 602 at 26.) "The exclusion of inactive voters — 'registered voters whose status is changed to inactive because the county elections boards have received information, whether accurate or not, that the voter has moved' — from the master wheel is 'entirely logical for a jury selection process.'" *Neilly,* 2021 WL 3913559, at *5 (quoting *Allen*, 2021 WL 431458, at *10). The "JSSA contemplates that the lists from which the master wheel will be drawn will be imperfect and that not all citizens technically eligible to serve on juries will be considered for the master wheel. . . . Therefore, though the exclusion of inactive voters may prevent some citizens from serving on juries, it does not amount to a violation of the JSSA." *United States v. Li*, No. 20 CR. 568 (AT), 2022 WL 2440434, at *5 (S.D.N.Y. July 5, 2022). Accordingly, Defendant fails to prove that the SDNY Jury Plan violates the JSSA.

### IV. Conclusion

For the reasons stated in my oral decision and above, I DENY Defendant Saipov's motion to stay his trial or implement alternative remedies.

SO ORDERED.

Dated: May 16, 2023
      New York, New York

                                              Vernon S. Broderick
                                              United States District Judge